1 ANDREW P. BRIDGES (CSB No. 122761)
  abridges@fenwick.com
2 JEDEDIAH WAKEFIELD (CSB No. 178058)
  jwakefield@fenwick.com
3 TODD R. GREGORIAN (CSB No. 236096)
  tgregorian@fenwick.com
4 FENWICK & WEST LLP
  555 California Street, 12th Floor
5 San Francisco, CA 94104
  Telephone: 415.875.2300
6 Facsimile: 415.281.1350

7 RONALD P. SLATES, SBN: 43712
  rslates2@rslateslaw.com
8 KONRAD L. TROPE, SBN: 133214
  ktrope@rslateslaw.com
9 JESSE YANCO, SBN: 308866
  jyanco@rslateslaw.com
10 RONALD P. SLATES, P.C.
   500 South Grand Avenue, Suite 2010
11 Los Angeles, CA 90071
   Telephone: 213.624.1515
12 Facsimile: 213.624.7536

13 Attorneys for Plaintiffs/Judgment Creditors,
   GIGANEWS, INC. and LIVEWIRE SERVICES, INC.
14

15              UNITED STATES DISTRICT COURT

16              CENTRAL DISTRICT OF CALIFORNIA

17

18 GIGANEWS, INC., a Texas corporation;      Case No.: 7:17-cv-05075
   and LIVEWIRE SERVICES, INC., a
19 Nevada corporation,                       **COMPLAINT FOR:**

20                 Plaintiffs,                **1) Violation of Uniform
                                                 Fraudulent Transfer Act For
21         v.                                    Actual Fraudulent Transfer
                                                 Pursuant to California Civil
22 PERFECT 10, INC., a California                Code § 3439(a)(1)**
   corporation; NORMAN ZADA, an
23 individual; and DOES 1-50, inclusive,     **2) Violation of Uniform
                                                 Fraudulent Transfer Act For
24                 Defendants.                   Constructive Fraudulent
                                                 Transfer Pursuant to
25                                               California Civil Code §
                                                 3439(a)(2)(B)**
26                                            **DEMAND FOR JURY TRIAL**

27

28

COMPLAINT                                     CASE NO. 7:17-cv-05075

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Plaintiffs/Judgment Creditors, Giganews Inc. ("Giganews") and Livewire Services, Inc. ("Livewire") ("Plaintiffs") hereby respectfully bring this Complaint and allege as follows:

## INTRODUCTION

1.      On March 24, 2015, the United States District Court for the Central District of California, in *Perfect 10, Inc. v. Giganews, Inc., et al.,* Case No. 2:11-cv-07098-AB-JPR (Honorable Andre Birotte, Jr., presiding) (the "Related Case"), entered judgment in favor of Plaintiffs Giganews and Livewire, and against Perfect 10, Inc. ("Perfect 10"), in the amount of $5,637,352.53, which represents an award of attorneys' fees and costs based upon Plaintiffs' successful defense against Perfect 10's unmeritorious claims for copyright infringement.

2.      Perfect 10, through Norman Zada ("Zada") and in conspiracy with him, is a serial litigant that has filed over two dozen suits for copyright infringement.  In connection with those lawsuits, Defendants sought to extract settlements from businesses that otherwise would be forced to incur immense amounts of attorneys' fees and costs in defending against Perfect 10's suits to final judgment on the merits.

3.      Plaintiffs Giganews and Livewire believe, and therefore allege, that Perfect 10, through Zada, has continued to send improper notifications of claimed infringement to online service providers and is currently litigating infringement claims in Germany against AOL, Inc.

4.      *As of now (over two years since the judgment), Perfect 10 has not voluntarily paid any amount of the judgment*.  Instead, Perfect 10, through the unlawful acts of Zada and in conspiracy with him, has intentionally avoided satisfaction of the judgment through a series of fraudulent transfers of Perfect 10's corporate assets to Zada's personal possession.  These transfers include, but are not limited to, transfers of Perfect 10's cash in the amount of approximately $1,750,000 to Zada's personal bank accounts and sale of substantially all of Perfect 10's

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

physical assets to Zada for less than their true value.  These illegal and fraudulent transfers began in or around early 2014.  Zada continues to operate Perfect 10's business while disregarding satisfaction of the judgment, as he personally pays Perfect 10's corporate expenses through his bank accounts using the unlawfully transferred monies in order avoid attachment. Accordingly, the Court should hold Defendants liable for their unlawful transfers of assets.

## **PARTIES**

5.     Plaintiff Giganews is a Texas corporation with its principal place of business in Austin, Texas.  Giganews is a Usenet service provider and owns and operates several Usenet servers.  Usenet (or USENET) "'is an international collection of organizations and individuals (known as 'peers') whose computers connect to one another and [the peers] exchange messages posted by USENET users.'"  *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 663-664 (9th Cir. 2017), *quoting with approval Ellison v. Robertson,* 357 F.3d 1017, 1074, n.1 (9th Cir. 2004).  Persons gain access to USENET through a commercial USENET provider such as Giganews or an Internet service provider. *Perfect 10,* at 663, *citing with approval Arista Records, LLC v. Usenet.com, Inc.,* 633 F.Supp.2d 124, 130 (S.D.N.Y. 2009).  Giganews provides USENET access to its subscribers over the Internet for a fee.

6.     Plaintiff Livewire is a Nevada corporation with its principal place of business in Austin, Texas.  Livewire also provides USENET access to its subscribers over the Internet for a fee using Giganews servers.  Livewire does not own any USENET servers.

7.     Defendant Perfect 10 is a California corporation with its principal place of business at 11803 Northfield Ct., Los Angeles, California 90077.  Perfect 10 was the publisher of the adult magazine PERFECT 10, and it now operates an adult website at *perfect10.com*, which features images of nude and semi-nude female models.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8.  Defendant Norman Zada, also known as Norm Zada, Norman Zadeh, Norm Zadeh, and Dr. Zada, is an individual who resides at 11803 Norfield Court, Los Angeles, California 90077, which is the same address as Perfect 10's principal place of business.  Zada is the sole owner, President, and Chief Executive Officer of Perfect 10.  Plaintiffs refer to both Perfect 10 and Zada as "Defendants" in this Complaint.

9.  Plaintiffs do not know the true names and capacities of defendants, individuals or otherwise, whom they have sued under fictitious names as Does 1 through 50.  Plaintiffs will amend this Complaint to allege the Doe defendants' true names and capacities when they have learned them.

10.  Plaintiffs believe and therefore allege that each defendant, including Does 1 through 50, at all relevant times acted in concert with, and in conspiracy with, every one of the other defendants.

11.  At all relevant times defendants, and each of them, were owners,  co-owners, agents, representatives, partners, and/or alter egos of their co-defendants, or otherwise acting on behalf of every other defendant and acted within the course and scope of their authorities as owners, co-owners, agents, representatives, partners, and/or alter egos of their co-defendants, with the full knowledge, permission and consent of every other defendant, each co-defendant having ratified the acts of the other co-defendants.

12.  Plaintiffs intend every reference to defendants or to any of them as a reference to all defendants, and to each of them named and unnamed, including all fictitiously named defendants, unless it specifically qualifies the reference.

## JURISDICTION AND VENUE

13.  This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and diversity exists among the parties.

14.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

(b)(2) because Defendants reside in this judicial district and the events or omissions giving rise to the claims occurred in this judicial district.

## FACTS COMMON TO ALL CAUSES OF ACTION

15.    On April 28, 2011, Defendant Perfect 10 filed suit against Plaintiffs Giganews and Livewire in the Related Case, alleging unmeritorious claims for direct and indirect copyright infringement of Perfect 10's copyrighted adult content images, trademark infringement, trademark dilution, unfair competition, and publicity rights violations.  Exhibit 1 [Dkt. Entry 1 of the Related Case] and Exhibit 2 [Dkt. Entry 105 of the Related Case] are the original complaint and the first amended complaint in the Related Case.  Defendant Zada controlled, directed, and personally participated in litigation of the Related Case.

16.    After considerable motion practice in the Related Case, involving a docket with over several hundred entries, after which only certain copyright claims for direct and indirect infringement remained based upon earlier dismissal orders [Dkt. Entries 97 and 129 of the Related Case], the parties filed a total of seven competing motions for partial summary judgment.  On November 14, 2014, in the Related Case, Judge Birotte issued two orders which granted partial summary judgment in favor of Giganews and Livewire on Perfect 10's claims for direct copyright infringement, and partial summary judgment in favor of Giganews on Perfect 10's claims for indirect copyright infringement, the legal effect of which, together with the earlier dismissal rulings, resolved all of Perfect 10's claims in favor of Plaintiffs.  Exhibit 3 [Dkt. Entry 619 of the Related Case] and Exhibit 4 [Dkt. Entry 620 of the Related Case] are copies of those two orders by Judge Birotte on November 14, 2014.

17.    On November 26, 2014, the District Court entered final judgment in favor of Giganews and Livewire on all of Perfect 10's claims in the Related Case. Exhibit 5 [Dkt. Entry 628 of the Related Case] is a copy of the final judgment.  Key language stated:

1  The Court **GRANTS FINAL JUDGMENT** in favor of [Giganews and

2  Livewire] and against Perfect 10 as to all the claims by [Perfect 10] in the

3  case . . . . The Court **DECLARES** that [Giganews and Livewire] did not

4  infringe any of Perfect 10's copyrights, either directly or indirectly, and thus

5  are not liable for direct infringement, contributory infringement or vicarious

6  infringement. The Court also **DECLARES** that [Giganews and Livewire]

7  bear no liability to Perfect 10 for any asserted causes of action . . . .

8  Giganews and Livewire may seek reimbursement of their reasonable

9  attorneys' fees to the extent allowed by 15 U.S.C. § 1117, 17 U.S.C. § 505,

10  Cal. Civ. Code § 3344, or any other applicable law.

11  Exhibit 5 at 1:25-2:15 (emphasis in original).

12  18.    On March 24, 2015, the court in the Related Case (Honorable Andre

13  Birotte Jr., presiding), granted Plaintiffs' Motion for Attorneys' Fees and Expenses,

14  awarding Plaintiffs reasonable fees in the amount of $5,213,117.06, and costs in the

15  amount of $424,235.47, for the total amount of $5,637,352.53.  Exhibit 6 [Dkt.

16  Entry 686 of the Related Case] is a copy of that order.  In it, the Court observed:

17  Perfect 10's undisputed conduct in this action has been inconsistent with a

18  party interested in protecting its copyrights. *All of the evidence before the*

19  *Court demonstrates that Perfect 10 is in the business of litigation, not*

20  *protecting its copyrights or "stimulat[ing] artistic creativity for the general*

21  *public good."*

22  Exhibit 6 at 17:15-20 (emphasis added) (internal citations omitted).

23  *Rather than bringing suit for the purpose of protecting its copyrights and*

24  *stimulating artistic creativity, the evidence reveals that Zada's interest in the*

25  *copyrights held by his "tax write-off" is solely in litigation.*  In deposition,

26  for example, Perfect 10's President and CEO Norma Zada testified that, to

27  date, it has filed between 20 and 30 copyright infringement lawsuits.  In the

28  life of the company, more than half of Perfect 10's revenues have been

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

generated by litigation. *However, all of those revenues were generated by settlements and defaults – Perfect 10 has never obtained a judgment in a contested proceeding in any of its roughly two dozen copyright lawsuits.* Similarly, litigation expenses make up the largest share of Perfect 10's expenses, which are on par with, if not greater than, Perfect 10's personnel expenses.  In his capacity as President and CEO, Zada spends "eight hours a day," 365 days a year on litigation, "working on various court cases that [Perfect 10] ha[s] going on."  Indeed, Zada admitted that, in the past, Perfect 10 has expressly purchased copyrights from other copyright holders "because [Perfect 10] thought they would be helpful in [its] litigation efforts."

*Id.* at 18:23-19:1 (emphasis added) (internal citations omitted).

19.     Plaintiffs Giganews and Livewire believe and therefore allege that, beginning in early 2014, Zada caused Perfect 10 to begin unlawfully transferring Perfect 10's corporate assets to Zada in anticipation of unfavorable court rulings and a possible judgment against Perfect 10 for attorneys' fees.  According to Perfect 10's General Ledger as of December 31, 2014 (a copy of the relevant pages of which is Exhibit 7), Perfect 10, through Zada, made the following transfers of Perfect 10's cash to Zada on the following dates, *including a transfer to Zada of approximately $850,000 on November 20, 2014, approximately six (6) days after this Court granted summary judgment in favor of Plaintiffs on November 14, 2014*:

| DATE OF TRANSFER TO ZADA | AMOUNT OF TRANSFER |
| --- | --- |
| 01/03/14 | $200,000 |
| 03/10/14 | $50,000 |
| 03/19/14 | $100,000 |
| 05/14/14 | $100,000 |
| 05/28/14 | $100,000 |
| 07/08/14 | $150,000 |
| 09/04/14 | $100,000 |

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

| | |
|---|---|
| 10/07/14 | $100,000 |
| 11/20/14 | $850,000 |
| **Total:** | **$1,750,000** |

20.    Further substantiating the fraudulent nature of these transfers, during the Judgment Debtor's Examination of Zada on January 28, 2016 (relevant transcript excerpts of which are Exhibit 8) *Zada confessed that he caused the transfer of $850,000 from Perfect 10 to his personal bank account due to the "summary judgment orders":*

**Q:**    There's a withdrawal on November 20, 2014.  It's an online banking transfer CHK 0277 in the amount of $850,000.  Do you see that?

**A:**    Yes.

**Q:**    Is that to your personal account?

**A:**    Yes.

**Q:**    Do you share that account with anyone else?

**A:**    No.

**Q:**    That's a personal account you have at Bank of America?

**A:**    Correct.

**Q:**    At the same branch as your Perfect 10 account?

**A:**    I think it's the same branch.

**Q:**    What did that – what prompted that transfer of $850,000?

**A:**    Well, I had been – you know, we had gotten a significant amount of settlements in 2014.  We had a settlement of $1.1 million in, I believe, June.  I was entitled to that money.  *And after the summary judgment orders were issued, I did not see any point in keeping more cash than we needed in the account.*

Exhibit 8 at 150:15-151:12 (emphasis added).

21.    On or around March 2015 (within a few weeks of the court's order

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

awarding attorneys' fees and costs), Zada fraudulently transferred substantially all of Perfect 10's physical assets (i.e., non-cash assets) to himself in a sham transaction for inadequate consideration.  *Id.* at 87:22-93:11; 109:25-110:4.  These assets include, but are not limited to, Perfect 10's car, furniture, magazines, computer servers, external hard drives, and t-shirts.  *Id.* at 88:13-19.  Zada admitted that he caused Perfect 10 to make these transfers because "it would have been totally disruptive to have those [assets] seized" in satisfaction of the judgment. *Id.* at 110:5-111:5.

22.    Perfect 10 continues to operate much as it has in the past.  It still offers for sale the magazines and t-shirts that Zada purchased; when a customer expresses interest, Zada simply "gives" those assets back to Perfect 10 to complete the sale. *Id.* at 88:2-8; 103:9-19.  Zada has sent new notices of claimed infringement under the Digital Millennium Copyright Act ("DMCA") on behalf of Perfect 10 to online service providers, and it has continued to pursue Perfect 10's copyright litigation against AOL in Germany.  *Id.* at 55:18-21; 65:25-66:5.

23.    On July 16, 2015, Perfect 10's office manager and paralegal, Melanie Poblete, wrote in an email to Bruce Hersh, the CPA for Perfect 10, that "Perfect 10 has a $5M judgment against it now and so we probably need to reallocate how we pay things. When are you free to talk to [Zada] and me?"  Exhibit 9 is a copy of that email.

24.    During Poblete's deposition on December 6, 2016, (relevant transcript excerpts of which are Exhibit 10)**,** she admitted that Zada began personally paying Perfect 10's corporate expenses, ostensibly with the unlawfully transferred funds, in order to avoid attachment:

> **Q:**    And it appears that you say, "Norm is very concerned about the
> utilities being paid by Perfect 10 now that there's a judgment against
> Perfect 10.  Should the utilities be paid by Norman Zada? What do
> you recall about Mr. Zada's concerns about the judgment lien against

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Perfect 10?

2    **A:**    *What I remember is that Norm was worried that Perfect 10*

3    *shouldn't be paying anything because there was a judgment against it*

4    *and money that came in should be given over . . .* Dr. Zada pays it

5    because he doesn't want there to be any kind of, you know,

6    speculation that Perfect 10 is somehow, you know, paying something

7    it shouldn't when there's a judgment against it.

8    Exhibit 10, at 121:21-122:13 (emphasis added).

9    **Q:**    You said in [your July 16, 2015, email sent to Bruce Hersh],

10   'Perfect 10 has a $5 million judgment against it now and we probably

11   need to reallocate how we pay things.' Is that your belief at the time?

12   **A:**    *I think this has to do with what I said earlier, that Norm Zada*

13   *wanted to make sure that Perfect 10 wasn't paying bills with money*

14   *that should go towards the judgment.*

15   *Id.,* at 136:12-19 (emphasis added).

16       25.    Furthermore, Poblete admitted that "nothing" had changed at Perfect

17   10's office after Perfect 10 transferred substantially all of its physical assets to

18   Zada. *Id.* at 30:4-31:10. The office furniture and computers remain in the same

19   room as when Perfect 10 owned them, and they are still used for Perfect 10's

20   business. *Id.*

21                          **<u>FIRST CAUSE OF ACTION</u>**

22   **Violation of Uniform Fraudulent Transfer Act for Actual Fraudulent**

23   **Transfer Pursuant to California Civil Code § 3439(a)(1)**

24   **(AGAINST ALL DEFENDANTS AND EACH OF THEM)**

25       26.    Plaintiffs incorporate by reference and re-allege here all the preceding

26   paragraphs.

27       27.    California Civil Code § 3439.04(a) states as follows:

28       A transfer made or obligation incurred by a debtor is voidable as to a

COMPLAINT                                9                    CASE NO. 7:17-cv-05075

creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:

(1) With actual intent to hinder, delay, or defraud any creditor of the debtor.

28.    Beginning in early 2014, Perfect 10, through Zada and in conspiracy with him, began unlawfully transferring Perfect 10's corporate assets to Zada as it became reasonably apparent that Perfect 10 would be ultimately be held liable for Plaintiffs' attorneys' fees and costs in defeating Perfect 10's unmeritorious suit.  In total, between January 3, 2014, and November 20, 2014, Perfect 10, through Zada and in conspiracy with him, transferred to Zada approximately $1,750,000 of Perfect 10's cash in order to avoid satisfaction of the judgment and attachment of such assets.  On or around March 2015, Perfect 10 also transferred substantially all of its physical assets to Zada, including but not limited to Perfect 10's car, furniture, magazines, computer servers, external hard drives, and t-shirts, in order to avoid satisfaction of the judgment and attachment of such assets, without a reasonably equivalent value in exchange for such transfers.

29.    Zada continues to operate Perfect 10's business while disregarding satisfaction of the judgment due to Plaintiffs of $5,637,352.53 (representing an award of Plaintiffs' attorneys' fees and costs incurred in its successful defense of Perfect 10's infringement claims on the merits), plus accruing interest on that amount, as he personally pays Perfect 10's corporate expenses through his bank accounts using the unlawfully transferred monies in order avoid satisfaction of the judgment and attachment of such assets.  Furthermore, Perfect 10 continues to use and physically possess the unlawfully transferred physical assets that Zada now owns, including but not limited to computers and office furniture.

30.    The transfers from Perfect 10 to Zada bear the "badges of fraud" that California Civil Code 3439.04(b)) recognizes, indicating that particular transfers of

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

assets were with the intent to "hinder, delay or defraud" creditors.  They included but are not limited to the facts that: (1) these transfers from Perfect 10 to Zada were to an insider;  (2) at its offices Perfect 10 continues to retain physical possession and control of the unlawfully transferred assets; (3) the transfers happened when it became reasonably apparent that a large judgment (representing an award of attorneys' fees and costs) would be entered against Perfect 10 as a result of its unmeritorious and unsuccessful suit for copyright infringement; (4) the cash transfers were for substantially all of Perfect 10's liquid funds; (5) the non-cash transfers were substantially all of Perfect 10's physical assets; (6) Perfect 10 received no reasonably equivalent consideration in exchange for these transfers; and (7) Perfect 10 was practically insolvent as a result of these transfers (with Zada then personally paying Perfect 10's corporate expenses with the unlawfully transferred funds in order to avoid attachment)

31.     Defendants' unlawful conduct was a substantial factor in harming Plaintiffs.  As a consequence, Plaintiffs are entitled to a judgment against Defendants, and each of them, in the sum of the unlawfully transferred amounts of at least $1,750,000, or in an amount to be proven at trial, together with interest on that amount at the legal rate of 10% per annum from and after March 24, 2015. Plaintiffs are also entitled to avoidance of the transfers to Zada to the extent they necessary to satisfy Plaintiffs' claims, or any other relief the circumstances may require against Defendants, including but not limited to an accounting of all profits earned by Defendants from or in connection with the unlawfully transferred assets.

32.     Oppression, fraud, and malice characterized Defendants' behavior with respect to the transfers and other conduct at issue.  Defendants' unlawful transfer of Perfect 10's corporate assets to Zada in order to evade attachment and satisfaction of the judgment makes it clear that Defendants intended to harm Plaintiffs and subject Plaintiffs to a cruel and unjust hardship in conscious disregard of Plaintiffs' rights, justifying an award of punitive and exemplary damages against Defendants.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

33.   To the extent there have been any fraudulent transfers of Perfect 10's corporate assets to Zada or any other person or entity, and any transfer of unlawfully retained assets by Zada to any other person or entity, which took place on or after January 1, 2016 (the effective date of enactment of the Uniform Voidable Transfer Act), which unlawful transfers may become apparent during discovery in this action, Plaintiffs will seek leave of this Court to amend this Complaint to add additional causes of action under that Act.

## SECOND CAUSE OF ACTION

### Violation of Uniform Fraudulent Transfer Act for Constructive Fraudulent Transfer Pursuant to California Civil Code § 3439(a)(2)(B)

### (AGAINST ALL DEFENDANTS AND EACH OF THEM)

34.   Plaintiffs incorporate by reference and re-allege here all preceding paragraphs.

35.   California Civil Code § 3439.04(a) states as follows:

A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:

(2) With receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor . . . .  (B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

36.   Beginning in early 2014, Perfect 10, through Zada and in conspiracy with him, began unlawfully transferring Perfect 10's corporate assets to Zada. Perfect 10, through Zada, reasonably believed that Perfect 10 would be ultimately liable for Plaintiffs' attorneys' fees and costs incurred in defeating Perfect 10's unmeritorious suit. In total, between January 3, 2014, and November 20, 2014, Perfect 10 transferred to Zada approximately $1,750,000 of Perfect 10's cash,

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

without a reasonably equivalent value in exchange for the transfers, in order to avoid satisfaction of the judgment and attachment of those assets. On or around March 2015, Perfect 10 also transferred substantially all of its physical assets to Zada, including but not limited to Perfect 10's car, furniture, magazines, computer servers, external hard drives, and t-shirts, without a reasonably equivalent value in exchange for the transfers in order to avoid satisfaction of the judgment and attachment of those assets.

37.     Perfect 10, through Zada, continues to operate its business while disregarding satisfaction of the judgment due to Plaintiffs of $5,637,352.53 plus accruing interest on that amount, as Zada personally pays Perfect 10's corporate expenses through his bank accounts using the unlawfully transferred monies in order to avoid satisfaction of the judgment and attachment of assets. Furthermore, Perfect 10 continues to use and physically possess the unlawfully transferred physical assets that Zada now owns, including but not limited to computers and office furniture.

38.     Defendants' conduct was a substantial factor in harming Plaintiffs. As a consequence, Plaintiffs are entitled to a judgment against Defendants, and each of them, in the sum of the unlawfully transferred amounts of at least $1,750,000, or in an amount to be proven at trial, together with interest on that sum at the legal rate of 10% per annum from and after March 24, 2015. Plaintiffs are also entitled to avoidance of the transfers to Zada to the extent necessary to satisfy Plaintiffs' claims, or any other relief the circumstances may require against Defendants, including but not limited to an accounting of all profits earned by Defendants from or in connection with the unlawfully transferred assets.

39.     Oppression, fraud, and malice characterized Defendants' behavior with respect to the transfers and other conduct at issue. Defendants' unlawful transfer of Perfect 10's corporate assets to Zada in order evade attachment and satisfaction of the judgment makes it clear that Defendants intended to harm Plaintiffs and subject

Plaintiffs to a cruel and unjust hardship in conscious disregard of Plaintiffs' rights, justifying an award of punitive and exemplary damages against Defendants.

40.     To the extent there have been any fraudulent transfers of Perfect 10's corporate assets to Zada or any other person or entity, and any transfer of unlawfully retained assets by Zada to any other person or entity, which took place on or after January 1, 2016, the effective date of enactment of the Uniform Voidable Transfer Act, which unlawful transfers may be revealed during discovery in this action, Plaintiffs will seek leave of this Court to amend this Complaint to add additional causes of action under that Act.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief on each cause of action as follows:

1.     That the Court enjoin Perfect 10 from further transferring or disposing of any assets of any type, including but not limited to cash, personal property, real property and/or intangible property to Zada, or his employees, representatives, attorneys and agents, and/or anyone acting on his behalf or in conspiracy with him, and enjoining and restraining Zada from transferring, conveying, assigning, encumbering, hypothecating or otherwise disposing of any of the unlawfully transferred assets to any other person or entity.

2.     That the Court declare that all defendants, and each of them, including but not limited to Defendants Perfect 10 and Zada; their employees, representatives, attorneys and agents; and/or anyone acting on their behalf hold the unlawfully transferred assets in trust for Plaintiffs.

3.     That the Court grant Plaintiffs against all defendants jointly and severally a judgment for the value of the assets Perfect 10 unlawfully transferred, including but not limited to unlawfully transferred assets not yet discovered, equal to the value at the time of the transfer, subject to adjustment as the equities may require, or in an amount to be proved at trial, but in no event less than the sum of $1,750,000, plus interest accruing on that sum at the legal rate of 10% per annum

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    from and after March 24, 2015.

2        4.    That the Court order all defendants, and each of them, to account to

3    Plaintiffs for all profits and proceeds from or in connection with the unlawfully

4    transferred assets, including unlawfully transferred assets not yet discovered.

5        5.    That the Court award Plaintiffs punitive and exemplary damages from

6    all defendants jointly and severally in the amount of $20,000,000, or in such other

7    amount that the Court determines to bear a reasonable relationship to Plaintiffs'

8    actual damages and does not otherwise violate the requirements of due process.

9        6.    That the Court award Plaintiffs their attorneys' fees against all

10   defendants jointly and severally pursuant to, and including but not limited to,

11   California Code of Civil Procedure § 685.040.

12       7.    That the Court award Plaintiffs costs of suit against all defendants

13   jointly and severally.

14       8.    That the Court grant any other relief that it considers just and proper.

15   \\\

16   \\\

17   \\\

18   \\\

19   \\\

20   \\\

21   \\\

22   \\\

23   \\\

24   \\\

25   \\\

26   \\\

27   \\\

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a jury trial.

DATED:  July 10, 2017

Respectfully submitted,

**FENWICK & WEST LLP**

By:    *Andrew P. Bridges*
                Andrew P. Bridges

**RONALD P. SLATES P.C.**

By:    *Ronald P. Slates*
                Ronald P. Slates

Attorneys for Plaintiffs/Judgment Creditors,
GIGANEWS, INC., and LIVEWIRE
SERVICES, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

COMPLAINT

16

CASE NO. 7:17-cv-05075