Matthew C. Mickelson (S.B.N. 203867)
**LAW OFFICES OF MATTHEW C. MICKELSON**
16055 Ventura Boulevard, Ste. 1230
Encino, CA 91436
818-382-3360

Attorney for Defendants PERFECT 10, INC.
and NORMAN ZADA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIGANEWS, INC., a Texas corporation; LIVEWIRE SERVICES, INC., a Nevada corporation,<br><br>                    Plaintiffs,<br>          v.<br>PERFECT 10, INC., a California corporation, NORMAN  ZADA, an individual, and DOES 1-50, inclusive<br><br>                    Defendants. | Case No.: 2:17-cv-05075-AB (JPR)<br><br>***Before Honorable André Birotte, Jr.***<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS**<br><br>[*Request to Take Judicial Notice Filed Separately Herewith*]<br><br><br>Date:          October 20, 2017<br>Time:          10:00 a.m.<br>Courtroom:  7B,  350 West First Street,<br>                    Los Angeles, CA  90012 |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that at 10:00 a.m. on October 20, 2017, at 10 a.m. or as soon thereafter as this matter may be heard, in Courtroom 7B of the United States District Court for the Central District of California, located at 350 West First Street, Los Angeles, CA 90012, Defendants Perfect 10, Inc. and Norman Zada will move to dismiss the Complaint against them pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, for two separate reasons. First, the facts alleged in the Complaint cannot plausibly support a fraudulent transfer claim given the judicially-recognizable fact that Defendants made an offer to satisfy the judgment in full, thereby creating a plausible alternative explanation of Defendants' conduct that is not illegal. *See, e.g.*, *Bell Atlantic Corp. v. Twombly,* (2007) 550 U.S. 544, 556-557 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 682 (2009). Second, the fraudulent transfer claims are precluded under the doctrine of collateral estoppel by this Court's previous order (and the Ninth Circuit's affirmance of that order) denying Plaintiffs' motion to affix liability to Defendant Norman Zada on the grounds of alter ego in the related case, *Perfect 10, Inc. v. Giganews*, 2:11-cv-07098-AB.

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Request for Judicial Notice, on the papers and records on file herein, and on such oral and documentary evidence as may be presented at the time of the hearing.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on August 16, 2017 and August 24, 2017.

DATED:  September 5, 2017            LAW OFFICES OF MATTHEW C. MICKELSON

By: _/s/ Matthew C. Mickelson_____
    MATTHEW C. MICKELSON
    Attorney for Defendants Perfect 10, Inc.
    and NORMAN ZADA

# TABLE OF CONTENTS

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ............................. 1

II.   STATEMENT OF FACTS.................................................................. 3

III.  ARGUMENT.................................................................................... 5

      A.    Legal Standard On Motions To Dismiss Under Rule 12(b)(6) of the
            Federal Rules of Civil Procedure ............................................. 5

      B.    Plaintiffs' Claims Under The Uniform Fraudulent Transfer Act
            Should Be Dismissed Because They Are Implausible Given The
            Judicially-Noticeable Facts In the Record. ................................. 6

            1.    Claims of Illegal Conduct That Are Contradicted by Facts
                    Showing A Legal Reason For That Conduct Will Not, Without
                    More, Survive A Motion to Dismiss............................. 6

            2.    Defendants' Offer, Made Days After the Fee Judgment, to Pay
                    Plaintiffs More Cash Than Was Transferred to Dr. Zada,
                    Eviscerates Plaintiffs' Claims of Actual Fraudulent Intent. ........ 8

                  a.    Of the Two Explanations For The Transfers, Only The
                          Innocent One Is Plausible And Supported By Facts .......... 9

                  b.    No Usenet Case Had Been Won by the Usenet Operator  12

            3.    Defendants' Offer Days After the Judgment to Pay Plaintiffs
                      More Cash Than Was Previously Transferred Negates Plaintiffs
                      Claims of Constructive Fraudulent Intent. ................................. 12

      C.    Plaintiffs' Claims Are Barred Under the Doctrine of Collateral
            Estoppel ............................................................................ 14

            1.    Doctrine of Collateral Estoppel Bars Relitigation of Actual
                      Fraudulent Intent........................................................ 14

            2.    Doctrine of Collateral Estoppel Bars Relitigation of Issue that
                      Defendants Believed Perfect 10 Would Incur Debts Beyond Its
                      Ability to Pay .............................................................. 15

IV. CONCLUSION .................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*ALS Scan, Inc. v. RemarQ Communities, Inc.*, 239 F.3d 619 (4th Cir. 2001)........... 12

*Arista Records LLC v. Usenet.com, Inc.*, 633 F.Supp.2d 124 (S.D.N.Y. 2009) ....... 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)................................................................ 1, 6, 7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)................................................ 1

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) ...................................................... 6, 7

*Bostick v. Flex Equip. Co, Inc.,* 147 Cal.App.4th 80, 96 (2007) .............................. 14

*Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 597 (8th Cir. 2009) ........................ 7

*Coto Settlement v. Eisenberg,*  593 F.3d 1031, 1038 (9th Cir. 2010) ........................ 5

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990, 996 (9th Cir. 2014)....................................................................... 8

*Ellison v. Robertson,* 357 F.3d 1072 (9th Cir. 2004) ............................................... 12

*Fantasy, Inc. v. Fogerty,* 94 F.3d 553 (9th Cir. 1996)............................................. 11

*Fidelity Nat'l Title Ins. Co. v. Schroeder*  179 Cal.App.4th 834 (2009)..................... 9

*Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112 (9th Cir. 2014) ................. 7

*In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104 (9th Cir. 2013) ................... 7

*Levitt v. Yelp! Inc.*, 765 F.3d 1123 (9th Cir. 2014)..................................................... 8

*Lewis v. Superior Court,* 30 Cal.App.4th 1850 (1994)............................................. 15

*Lucido v. Superior Court,* 51 Cal.3d 335 (2009) ..................................................... 14

*Mattel, Inc. v. MGA Entertainment, Inc.*,
    2011 WL 3420603 (C.D. Cal. Aug 04, 2011) ........................................... 11

*Mattel, Inc. v. Walking Mountain Prods*,
    2004 WL 1454100 (C.D.Cal. June 21, 2004) ........................................... 11

*Mehrtash v. Mehrtash,*  93 Cal.App.4th 75 (2001)..................................................... 9

*Pardo v. Olsen & Sons, Inc.*, 40 F.3d 1063 (9th Cir. 1994) ........................................ 14

*Perfect 10, Inc. v. Giganews, Inc*. United States District Court for the Central
District of California, Case No. 2:11-cv-07098-AB-JPR ........................................ 3

*Perfect 10, Inc. v. GUBA, LLC,*
2002 WL 34940074 (N.D. Cal. Dec. 30, 2002) ........................................ 12

*Playboy Enterprises, Inc. v. Webbworld, Inc.,*
968 F.Supp. 1171 (N.D. Tex. 1997) ........................................ 12

*Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005 (9th Cir. 2012) ........................ 5

*Starr v. Baca,* 652 F.3d 1202 (9th Cir.2011) ........................................ 7

*Strom v. United States,* 641 F.3d 1051 (9th Cir. 2011) ........................................ 5

**Statutes**

Cal. Civil Code § 3439.04(a)(1) ........................................ passim

FCRP 12(b)(6) ........................................ 5

Fed. R. Civ. P. 8(a)(2) ........................................ 6

Uniform Voidable Transactions Act ........................................ 8, 9, 13

# I.  INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs in this case ask the Court to believe the incredible.  Their Complaint weaves a sinister story of fraud, alleging that Defendants Dr. Norman Zada and Perfect 10, Inc. are guilty of the illegal transfer of assets to avoid payment of the fee judgment Plaintiffs hold against Perfect 10.  Their evidence?  $1.75 million in cash transfers from Perfect 10 to Dr. Zada which took place before judgment was entered, plus the movement of a piddling amount of goods (primarily a six-year-old Lexus and some old magazine copies) to Dr. Zada (and for which Dr. Zada paid $70,000, more than a fair sum).  Plaintiffs loudly proclaim that these facts show that Defendants held the fraudulent intent to deprive Plaintiffs of the $1.75 million that was transferred.

Plaintiffs leave one gigantic fact completely out of their Complaint, however.  As this Court well knows – because Defendants' offer to pay in full was previously brought to the Court's attention – **Defendants offered to pay Plaintiffs $2 million dollars, plus a first trust deed of $3.829 million on Dr. Zada's home, only 10 days after judgment was rendered.  The total sum offered was more than the judgment, by almost $200,000.  But Plaintiffs turned down the offer.**

It takes a lot of gall for Plaintiffs to charge that Defendants have fraudulently transferred assets, while failing to mention that the entire sum, and more, of the transferred monies was laid out in front of them, offered on a silver platter, and they turned it down.  But here we are.

A complaint must have some semblance of plausibility to survive a motion to dismiss under the standard set out by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Here, there is no such plausibility at all.  To put it most simply, *a debtor holding the fraudulent intent to transfer assets does not offer the creditor more than the assets transferred only days after a judgment is rendered.*  The two propositions are completely irreconcilable.  Given the facts judicially noticeable in the record (the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
RULE 12(B)(6) MOTION TO DISMISS

offer was entered into evidence by Plaintiffs in various filings before both this Court and the Ninth Circuit), the Complaint's allegations make no sense at all. They are implausible, impossible actually, and must be dismissed.

And if that is not enough, this Court, in adjudicating a motion to amend the judgment to add Norm Zada as a judgment debtor (affirmed by the Ninth Circuit), ruled that Perfect 10 was not "undercapitalized to pay its reasonably foreseeable debts," and that "[t]here is no evidence [Dr. Zada] 'stripped' Perfect 10 of its assets." It also found that Plaintiffs here "failed to demonstrate that Perfect 10 currently has insufficient assets to satisfy the judgment were it to sell some or all of its intellectual property." In affirming this Court's ruling, the Ninth Circuit went further. After reviewing most of the allegedly unlawful transfers detailed in the Complaint, including both the first transfer made on January 3, 2014, and the last transfer made on November 20, 2014, the Ninth Circuit held that none of those transfers constituted evidence that Perfect 10 was stripped of its assets and that "there is no evidence of bad faith." These rulings serve as collateral estoppel, and negate any inference that Dr. Zada made any transfer with the requisite bad faith needed to incur liability under either fraudulent transfer statute.

It is beyond the scope of this Motion to explain why Plaintiffs have filed a lawsuit which is completely implausible under the known facts, especially when those relevant facts are completely ignored in their Complaint. A certain level of vindictiveness may be inferred. In any event, this Court should not allow this seemingly endless litigation to be perpetuated under the vehicle of this particular lawsuit in light of the judicially-noticeable fact that Defendants offered to pay the judgment in full and the prior findings of no evidence of stripping of assets or bad faith made by this Court and the Ninth Circuit. Defendants' motion to dismiss should be granted.

Plaintiffs appear to have no respect for the Court's limited resources, as they have filed their complaint before either a) determining if Perfect 10's copyrights and

trademarks could be sold for an amount to satisfy the judgement, b) waiting for the Supreme Court to decide the case, or c) waiting for Perfect 10's case against AOL Germany to be decided, any one of which could render Plaintiff's complaint moot.

## II.      STATEMENT OF FACTS

On November 26, 2014, final judgment was entered against Perfect 10 in *Perfect 10, Inc. v. Giganews, Inc*. United States District Court for the Central District of California Case No. 2:11-cv-07098-AB-JPR (the "Related Action.") (Complaint at ¶ 17.)  On March 24, 2015, this Court granted Plaintiffs' Motion for Attorney's Fees and Expenses in the amount of $5,637,352.53 (*Id.* at ¶ 18.)

On April 4, 2015, Perfect 10 offered to pay the entirety of the judgment against it, along with almost $200,000 extra for Plaintiffs' post-judgment attorney's fees, as follows:  a $2 million cash payment to be made immediately, along with a trust lien in favor of Plaintiffs on the home of Dr. Zada in the amount of $3,829,352.40 (with the lien to be released should Perfect 10 be successful in its appeal.)  Plaintiffs rejected this offer and refused to make a counter-offer.  (*See* Request to Take Judicial Notice, filed separately herewith ("RJN"), Exh. 1 [Exhibit 14 to the Declaration of Andrew P. Bridges, setting forth Perfect 10's offer] and Exh. 3 [pages 1-2 of Reply Brief of Defendants-Appellees Giganews, Inc. and Livewire Services, Inc. in Support of Cross-Appeal, setting forth the offer, with highlighting added for the convenience of the Court].)

On April 21, 2015, Plaintiffs filed a motion seeking to add Dr. Zada to the judgment on the grounds that he was the alter ego of Perfect 10.  (Case No. 2:11-cv-07098-AB-JPR Dkt. 703.)  In support of their alter ego motion, Plaintiffs submitted to the Court a financial statement that Perfect 10 had produced to Plaintiffs, which showed transfers made by Perfect 10 up through March 31, 2014 (*See* RJN, Exh. 2 [Exhibit 2 to the Reply Declaration of Todd R. Gregorian, at p. 514, highlighting in original].)  That financial statement shows three of the transfers that Plaintiffs now allege are fraudulent in the Complaint in this action – the payments to Dr. Zada on

1    January 3, March 10, and March 19, 2014, totaling $350,000.  (*See* Complaint, ¶ 19.)

2        On June 3, 2015, after considering and reviewing substantial evidence

3    presented by both sides, this Court denied Plaintiffs' alter ego motion.  (*See* RJN,

4    Exh. 6, Dkt. 734]).  This Court determined that Perfect 10 was not "undercapitalized

5    to pay its reasonably foreseeable debts" and that "[t]here is no evidence [Dr. Zada]

6    'stripped' Perfect 10 of its assets." (*Id*. at p. 7.)  The Court also held that Plaintiffs

7    here "failed to demonstrate that Perfect 10 currently has insufficient assets to satisfy

8    the judgment were it to sell some or all of its intellectual property." (*Id*. at p. 7.)

9        After Perfect 10 appealed, Plaintiffs filed a cross-appeal of this Court's Order

10   denying the alter ego motion.  In connection with that cross-appeal, Plaintiffs filed a

11   Request for Judicial Notice.  In that request, Plaintiffs filed a transcript of a debtor

12   examination of Dr. Zada taken on January 28, 2016, excerpts of which are attached

13   as RJN, Exh. 4 [highlighting in original]).  During that examination, Dr. Zada

14   confirmed that Perfect 10 had transferred $850,000 to him on November 20, 2014

15   (*id*. at 150:15-151:14), and $100,000 on October 7, 2014.  (*Id*. at 155:3-5.)  Dr. Zada

16   testified in that same debtor examination that he was "entitled to that money" (*id*. at

17   151:9-10), because of Dr. Zada's capital contributions of over $53 million to Perfect

18   10 (*id*. at 151:24-25).  *See also* RJN, Exh. 6, at p. 7, n.3 (This Court notes that Dr.

19   Zada has drawn down his capital contributions to Perfect 10 over the last several

20   years).

21       On January 23, 2017, the Ninth Circuit rendered its decision affirming this

22   Court's judgments and orders made in the Related Case in all respects. (RJN Exh.

23   5.)  With regard to Plaintiffs' cross-appeal regarding the alter-ego motion, the Ninth

24   Circuit determined that "there is no evidence of bad faith" in any of the conduct

25   complained about in Plaintiffs' alter ego motion or supplemental request for judicial

26   notice.  (RJN Exh. 5, p. 38.)  The Ninth Circuit went on to conclude that "this is not

27   a case where a sole shareholder operated a company with little or no assets, nor is

28   this a case where a company was stripped of its assets to shield its sole shareholder

from adverse judgments." (RJN Exh. 5, p. 38.) Finally, although the Ninth Circuit declined to judicially notice the documents Plaintiffs filed with it, nonetheless it found that "even if we were to grant Appellees' request, those transcripts would not alter our conclusion that the district court did not clearly err." (*Id.*)[1]

## III.   ARGUMENT

Plaintiffs have filed a Complaint which makes allegations that are implausible in light of undisputed judicially-noticeable evidence, and barred by the doctrine of collateral estoppel, based on rulings by this Court and the Ninth Circuit. For those reasons, the complaint must be dismissed without leave to amend.

### A.   Legal Standard On Motions To Dismiss Under Rule 12(b)(6) of the Federal Rules of Civil Procedure

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is similar to the common law general demurrer—i.e., it tests the *legal sufficiency* of the claim or claims stated in the complaint. (*Strom v. United States,* 641 F.3d 1051, 1067 (9th Cir. 2011).) In ruling on such a motion to dismiss, the Court may take consider judicially-noticeable matters. (*See Coto Settlement v. Eisenberg,* 593 F.3d 1031, 1038 (9th Cir. 2010) ["On a motion to dismiss, we may consider materials incorporated into the complaint or matters of public record"]; *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1024 n. 9 (9th Cir. 2012) ["Although, as a general rule, a district court may not consider materials beyond the pleadings in ruling on a Rule 12(b)(6) motion, one exception to this general rule is that a 'court may take judicial notice of matters of public record without converting

---

[1] This decision, of course, negates Plaintiffs' boilerplate allegations in the Complaint that Defendants are "alter egos" of each other. (Complaint, at ¶11). Moreover, it is not true, as alleged in the Complaint, that Perfect 10 has not voluntarily paid any monies pursuant to the judgment (Complaint at ¶¶ 4, 28); the latest report of the Receiver shows that Defendants have cooperated and that various sums have been collected from Perfect 10 by the Receiver (Related Case Docket No. 825, at 2:16-17, 4:5.)

a motion to dismiss into a motion for summary judgment, as long as the facts noticed are not subject to reasonable dispute.'"].)

> **B.    Plaintiffs' Claims Under The Uniform Fraudulent Transfer Act Should Be Dismissed Because They Are Implausible Given The Judicially-Noticeable Facts In the Record.**
>
> > **1.    Claims of Illegal Conduct That Are Contradicted by Facts Showing A Legal Reason For That Conduct Will Not, Without More, Survive A Motion to Dismiss.**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) [*quoting Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)]).  While the Court must accept as true all of the well-pleaded allegations of the complaint, this rule "is inapplicable to legal conclusions." (*Id.)* Thus, a complaint that merely offers "'naked assertions[s]' devoid of 'further factual enhancement'" is insufficient to survive a motion to dismiss.  (*Id.) (quoting Twombly*, 550 U.S. at 557).  Likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient.  (*Id.)* The "plausibility standard … asks for more than the sheer possibility that a defendant acted unlawfully."  (*Id*.) Where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to satisfy the requirements of Fed. R. Civ. P. 8(a)(2) and should be dismissed.  (*Id*. at 679.)

Most importantly, for purposes of this case, if all that a plaintiff has alleged are facts consistent with illegal behavior, but there is an "obvious" and legal alternative explanation for the conduct, the facts alleged by plaintiff will not "plausibly establish" the improper purpose. (*See Ashcroft v. Iqbal*, *supra*, 556 U.S. at 682 [allegation that plaintiff's arrest was result of unlawful discrimination against Muslim men was *not* "plausible" *in view of more likely explanation* for arrest (detention of illegal aliens who had potential connections to those who committed

1  terrorist acts); *Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 597 (8th Cir. 2009)

2  ["An inference pressed by the plaintiff is not plausible if the facts he points to are

3  precisely the result one would expect from lawful conduct in which the defendant is

4  known to have engaged."].)

5      This issue was explored at length by the Ninth Circuit in *In re Century*

6  *Aluminum Co. Sec. Litig.,* 729 F.3d 1104 (9th Cir. 2013):

> When faced with two possible explanations, only one of which can be
> true and only one of which results in liability, plaintiffs cannot offer
> allegations that are "merely consistent with" their favored explanation
> but are also consistent with the alternative explanation. *Iqbal,* 556 U.S.
> at 678, 129 S.Ct. 1937 (internal quotation marks omitted). Something
> more is needed, such as facts tending to exclude the possibility that the
> alternative explanation is true, *see Twombly,* 550 U.S. at 554, 127 S.Ct.
> 1955, in order to render plaintiffs' allegations plausible within the
> meaning of *Iqbal* and *Twombly.* Here, plaintiffs' allegations remain
> stuck in "neutral territory," *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955,
> because they do not tend to exclude the possibility that their shares
> came from the pool of previously issued shares [non-illegal conduct].
>
> This holding is consistent with our opinion in *Starr v. Baca,* 652 F.3d
> 1202 (9th Cir.2011), where there were two *plausible* explanations in
> contention. *Id.* at 1216. "If there are two alternative explanations, one
> advanced by defendant and the other advanced by plaintiff, *both of*
> *which are plausible,* plaintiff's complaint survives a motion to dismiss
> under Rule 12(b)(6)." *Id.* (emphasis added). Here, however, plaintiffs'
> explanation is merely *possible* rather than plausible. To render their
> explanation plausible, plaintiffs must do more than allege facts that are
> merely consistent with both their explanation and defendants'
> competing explanation.

*Id.* at 1108 (emphasis in original); *see also Gonzalez v. Planned Parenthood of L.A.,*

759 F.3d 1112, 1116 (9th Cir. 2014) (affirming dismissal where plaintiff's allegation

that defendant knowingly submitted false claims was only "merely *possible* rather

than plausible," and could not overcome the plausible and obvious explanation that

defendant did not knowingly submit false claims); *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (explaining that courts "must consider" "obvious alternative explanation[s]" for a defendant's behavior when analyzing plausibility).

Overall, the Ninth Circuit has developed a two-step process to determine the plausibility of a complaint's allegations and whether it can survive a motion to dismiss:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation. . . . In all cases, evaluating a complaint's plausibility is a "context-specific" endeavor that requires courts to 'draw on ... judicial experience and common sense.'"

*Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (quotations and citations omitted).

### 2. Defendants' Offer, Made Days After the Fee Judgment, to Pay Plaintiffs More Cash Than Was Transferred to Dr. Zada, Eviscerates Plaintiffs' Claims of Actual Fraudulent Intent.

The Complaint alleges two causes of action: The first for violation of the Uniform Voidable Transactions Act (the "UVTA"), alleging actual fraudulent transfer, and the second for violation of the UVTA, alleging constructive fraud.[2]

With regard to the first cause of action, a plaintiff must prove that a debtor made the transfer (or incurred the obligation) with "*actual intent* to hinder, delay, or defraud *any* creditor of the debtor." (Cal. Civil Code § 3439.04(a)(1) (emphasis

---

[2] The Complaint refers to the previous name of the statute, the Uniform Fraudulent Transfer Act.

added).)  In addition, the plaintiff must also affirmatively show that he or she has been *injured* by the voidable transfer. The alleged voidable transfer must put beyond the creditor's reach property that could satisfy the debt. (*Mehrtash v. Mehrtash*,  93 Cal.App.4th 75, 80 (2001) ["Mere intent to delay or defraud is not sufficient; injury to the creditor must be shown affirmatively"]; *Fidelity Nat'l Title Ins. Co. v. Schroeder*  179 Cal.App.4th 834, 841, 844 (2009).)

Here, the Complaint cannot plausibly make a case for violation of the UVTA, because the judicially-noticeable record is clear that Defendants offered to pay the fee judgment in full only days after it was rendered.  On April 4, 2015, eleven days after the $5.637 million attorney's fees award was entered on March 24, 2015, Perfect 10 offered to pay Plaintiffs  $5.829 million, $192,000 more than the award. Plaintiffs rejected this offer and refused to make a counter-offer.  (RJN, Exh. 1, Exh. 3 at pp. 1-2.  The fact that $2 million in cash (along with the $3.826 million trust deed) was offered to the Plaintiffs after the judgment was issued in and of itself also negates Plaintiff's damage claim, since they cannot complain of alleged damages of $1.75 million when they were provided with the means to secure not just $2 million in cash, but the full amount. Finally, the fact that Dr. Zada and Perfect 10 did not have the funds to pay the full amount in cash is no basis to allege fraud.  Dr. Zada and Perfect 10 did the best they could do given the limited amount of cash they had available.[3]

### a.  Of the Two Explanations For The Transfers, Only The Innocent One Is Plausible And Supported By Facts

Plaintiffs' explanation for the $1,750,000 in transfers made from Perfect 10 to

---

[3] There are businesses that purchase first trust deeds for only a minor discount to their face value.  What Perfect 10 and Dr. Zada effectively offered, was $2 million in cash immediately, plus payment in full should Perfect 10 lose its appeal.

*can't*

Dr. Zada, beginning on January 3, 2014[4], and ending on November 20, 2014, before the fee judgement was entered, is that they were made deliberately, in anticipation of unfavorable rulings, to avoid paying those monies to Plaintiffs.   (Complaint at ¶¶ 19, 28, 36.)

The existence of the offer by Defendants to pay $2 million in cash to Plaintiffs as part of a full price offer makes the above explanation implausible in the extreme.

Plaintiffs' Complaint asks the Court to believe two irreconcilable propositions – that Perfect 10 and Dr. Zada possessed the *fraudulent intent* to hinder, delay or defraud Plaintiffs from recovering their fee judgement by transferring $1,750,000 in funds prior to entry of judgement, **and yet those same Defendants offered to pay $250,000 more than that sum in cash, along with a trust deed on Dr. Zada's house valued at $3.829 million, only days after the judgment was entered.**

These two propositions simply do not jibe.  A debtor who possesses the mental state to fraudulently transfer assets would, at a minimum, make sure to *keep* those funds out of the creditor's reach, *not offer them up on a silver platter* **as soon as a judgment was entered**.

The alternative, innocent, legal, and plausible explanation for the transfers, which also has the virtue of being supported by the known facts – is that Dr. Zada was taking funds from Perfect 10 in partial payback of the more than $53 million in capital contributions he had made to the company.  (RJN, Exh. 4, at 151:24-25.)  Such transfers cannot be voidable as against Dr. Zada, the transferee, since they were taken in good faith and for a reasonably equivalent value.  (Cal. Civil Code § 3439.08(a) (*see* Section III.B.3, below.)

The fact that the transfers were made in the ordinary course and without any fraudulent intent is also shown by the fact that Perfect 10 held significant funds in its

---

[4] The beginning date of January 3, 2014 appears to be completely arbitrary. No facts are provided to support Plaintiff's allegation that the supposed fraud began on that date.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
RULE 12(B)(6) MOTION TO DISMISS

accounts even after various transfers, regularly holding onto more than $1,000,000 in net assets and equity and possessing in excess of $2 million of such as late as March, 2014.  (*See* RJN, Exh. 6, at p. 7.)  Indeed, from 2006 through 2013, Perfect 10 maintained an average balance at the end of the year in all Perfect 10 bank accounts of $422,611.05.  (RJN, Exh. 2, pp. 275, 302, 328, 352, 376 412, 444, 475.) Plaintiffs do not explain why Dr. Zada would maintain several times Perfect 10's historical bank balance for most of 2014 (particularly in an ultra-low interest rate environment), if he expected an adverse attorney's fee award (Complaint at ¶¶28, 36), or intended to defraud Plaintiffs.

The plausibility of the innocent explanation is even more convincing, given that no alleged infringer in a copyright case had ever been awarded fees of any significance unless either a) the alleged infringer was found to actually own the works in dispute, or b) established a fair use defense.  (RJN Exh. 7, Dkt. 650-3, Case 2:11-cv-07098-AB-SH.)[5]  Neither was the case here.  Perfect 10 and Dr. Zada therefore had a reasonable and good faith belief that there would no creditors against which these transfers would prejudice.  There is no support whatsoever for Plaintiff's contention that Dr. Zada anticipated a fee award against Perfect 10, which is not only pure conjecture, but defies logic and commons sense.  Plaintiffs provide no plausible explanation as to why Perfect 10 would continue litigating a case it expected to lose, or reject Plaintiff's 2014 settlement offer.  Nor do Plaintiffs point to a single prior victory by a Usenet operator to support their contention that Perfect 10 believed it would lose (Complaint ¶¶ 28, 36), because there are none.  Finally,

---

[5] For example, in two of the three cases involving awards over $1,000,000, the defendant was found to own the copyrights in dispute.  *See, Mattel, Inc. v. MGA Entertainment, Inc*., 2011 WL 3420603 (C.D. Cal. Aug 04, 2011) and *Fantasy, Inc. v. Fogerty,* 94 F.3d 553 (9th Cir. 1996).  In the third case, the defendant established a fair use defense, and the plaintiff against whom the $1,826,000 fee award was levied was Mattel, Inc. a multi-billion dollar company, who could easily pay the award. *Mattel, Inc. v. Walking Mountain Prods*, 2004 WL 1454100 at *4 (C.D.Cal. June 21, 2004)

Plaintiffs cannot identify a single prior instance where a court found Perfect 10's complaint to be meritless, or awarded fees against Perfect 10.

### b. No Usenet Case Had Been Won by the Usenet Operator

Plaintiffs cannot site a single Usenet case where the Usenet provider won, because none did, prior to this case.

The following Usenet cases were lost by the Usenet operator on summary judgment: *Arista Records LLC v. Usenet.com, Inc.*, 633 F.Supp.2d 124 (S.D.N.Y. 2009); *Perfect 10, Inc. v. GUBA, LLC*, 2002 WL 34940074 (N.D. Cal. Dec. 30, 2002); and *Playboy Enterprises, Inc. v. Webbworld, Inc.*, 968 F.Supp. 1171 (N.D. Tex. 1997). In *ALS Scan, Inc. v. RemarQ Communities, Inc.*, 239 F.3d 619 (4th Cir. 2001), the case was remanded back to the district court for further proceedings and was ultimately settled. *Ellison v. Robertson,* 357 F.3d 1072 (9th Cir. 2004), involved AOL, a company whose Usenet operation represented less than .25% of its business. That case was remanded back to the district court for further proceedings and was also ultimately settled.

### 3. Defendants' Offer Days After the Judgment to Pay Plaintiffs More Cash Than Was Previously Transferred Negates Plaintiffs Claims of Constructive Fraudulent Intent.

Regarding the Second Cause of Action, a plaintiff must prove that the defendant made the transfer (or incurred the obligation) *without* receiving "*reasonably equivalent value*" in exchange (¶ *3:325*) *and* the debtor intended to incur or believed (or reasonably should have believed) that the debtor would *incur*

*debts beyond the debtor's ability to repay*  (Cal. Civ. Code § 3439.04(a)(2)(B)).[6]

As an initial matter, no facts are alleged in the Complaint to substantiate these required elements.  But even if there were, the $2 million cash offer and $3.829 million trust deed from Defendants negates the required mental states in their entirety.  Defendants could not possibly have possessed the mental belief at the time of the transfers that no money would be available to pay debts that would have been covered by those transfers, where Defendants offered almost immediately to pay even more than the amount of those transfers to Plaintiffs.[7]

The bottom line is that the Court is faced with two explanations for the transfer of funds from Perfect 10 to Dr. Zada from early to late 2014.  The innocent explanation is simple – Dr. Zada had the right to receive those funds as a partial drawdown of his enormous capital contributions to Perfect 10, and he had no inkling that such transfers would work to the derogation of any creditors since a fee award of the kind and scope eventually entered was unprecedented in previous court cases. Plaintiffs' sinister view of the facts is that Perfect 10 transferred the money to Dr. Zada to frustrate Plaintiffs' yet-to-exist judgment – *even though Defendants offered to pay them every penny of the transferred funds, and more, only days after the*

---

[6] The constructive fraud provisions of the UVTA contain two other situations in which transfers will be deemed voidable, but Plaintiffs in their Complaint only allege that Defendants have committed a voidable transfer pursuant to Civil Code section 3439.04(a)(2)(B), the "intended to incur, or reasonably believed that debtor would incur, debts beyond debtor's ability to pay as they became due" section of the statute. (Complaint, ¶ 35-36.)

[7] The lack of an intent to denude Perfect 10 of assets is also shown by Plaintiffs' own evidence – Dr. Zada's testimony during his judgment debtor examination, submitted to the Ninth Circuit, in which he indicated that $500,000 to $550,000 of the $850,000 transferred was put back into Perfect 10's account in 2015.  (RJN, Exh. 4, at 151:13-14.)

*can't*

*judgment was entered.[8]*

Plaintiffs' story is fundamentally at odds with judicially-noticeable facts. The only plausible explanation of the facts here is the innocent one.  Accordingly, the Motion to dismiss should be granted.

## C.   Plaintiffs' Claims Are Barred Under the Doctrine of Collateral Estoppel

In a diversity case, such as this one, the collateral estoppel rules of the forum state are employed.  (*Pardo v. Olsen & Sons, Inc*., 40 F.3d 1063, 1066 (9th Cir. 1994).)  In California, the doctrine of collateral estoppel precludes relitigation of issues argued and decided in prior proceedings.  (*Lucido v. Superior Court,* 51 Cal.3d 335, 341 (2009).)  The doctrine applies if: (a) the issue sought to be precluded is identical to the one in the former proceeding, (b) the issue was actually litigated in the former proceeding, (c) the issue was necessarily decided in the former proceeding, and (d) the decision in the former proceeding was final and on the merits. (*Id*.)  In addition, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.  (*Id*.)  The "identical issue" element merely addresses whether "identical factual allegations" are at stake, not whether the ultimate issues or dispositions are the same.  (*Bostick v. Flex Equip. Co, Inc.,* 147 Cal.App.4th 80, 96 (2007).)

Here, both claims are barred by the doctrine of collateral estoppel.

## 1.   Doctrine of Collateral Estoppel Bars Relitigation of Actual Fraudulent Intent

---

[8] The fact that $2,000,000 in cash was offered, $250,000 more than was transferred (along with a $3.829 million trust deed), also disposes of Plaintiffs' complaints that various small items of personal property were fraudulently transferred to Dr. Zada. (*See* Complaint, ¶ 21.)  Plaintiffs provide no explanation as to why the $70,000 that Dr. Zada paid Perfect 10 for a six-year-old Lexus, t-shirts, magazines and a few desks and computers, was not a fair price (RJN, Exh. 4, at 88:15-91:21, 110:5-24), let alone why such items could possibly be worth more than the $250,000 in extra cash offered to settle the case.

1   With regard to the Civil Code section 3439.04(a)(1) claim, the doctrine bars
2   the relitigation of fraudulent intent.  (*See Lewis v. Superior Court,* 30 Cal.App.4th
3   1850, 1859 (1994) ["'Fraudulent intent,' 'collusion,' 'active participation,'
4   'fraudulent scheme'—this is the language of *deliberate wrongful conduct.* It belies
5   any notion that one can become a fraudulent transferee by accident, or even
6   negligently"].)

7   As noted above, the Ninth Circuit, after reviewing the majority  of the
8   transfers alleged in Plaintiffs' Complaint, including both the first alleged fraudulent
9   transfer on January 3, 2014, and the last alleged fraudulent transfer on November 20,
10  2014,  determined that "there is no evidence of bad faith."  RJN Exh. 5, p. 38.  The
11  Ninth Circuit went on to conclude that "this is not a case where a sole shareholder
12  operated a company with little or no assets, nor is this a case where a company was
13  stripped of its assets to shield its sole shareholder from adverse judgments."  (*Id.*)

14  In other words, the Ninth Circuit has already found that the complained of
15  transfers were not done with fraudulent intent.  Plaintiffs are thus precluded from
16  relitigating those issues.

17      **2.    Doctrine of Collateral Estoppel Bars Relitigation of Issue that
18              Defendants Believed Perfect 10 Would Incur Debts Beyond
19              Its Ability to Pay**

20  Under section 3439.04(2)(B), Plaintiffs must prove that Perfect 10 believed it
21  would incur debts beyond its ability to pay as they became due.  But this Court
22  previously ruled that Perfect 10 was not "undercapitalized to pay its reasonably
23  foreseeable debts," and that "[t]here is no evidence [Zada] 'stripped' Perfect 10 of its
24  assets." RJN Exh. 6, p. 7  It also found that Plaintiffs here "failed to demonstrate that
25  Perfect 10 currently has insufficient assets to satisfy the judgment were it to sell
26  some or all of its intellectual property."  (*Id.* at p. 7.)  These findings were affirmed
27  by the Ninth Circuit.  RJN Exh. 5, p 38.

28  These judicial findings are fundamentally at odds with any allegation that

1
2
3
4

Defendants "intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due."  Accordingly, Plaintiffs' constructive fraudulent transfer claim is also barred by the doctrine of collateral estoppel.

5

**IV. CONCLUSION**

6
7
8
9
10

Plaintiffs have filed their complaint only because they refused to accept Defendant's full price offer and then lost their alter ego motion.  After refusing Defendant's full price offer, Plaintiffs have no legitimate basis to allege fraud.  For all of the foregoing reasons, Defendants respectfully requests that the Court grant their motion to dismiss in its entirety without leave to amend.

11
12

DATED:  September 5, 2017          LAW OFFICES OF MATTHEW C. MICKELSON

13
14
15
16

By:  _/s/ Matthew C. Mickelson_
         MATTHEW C. MICKELSON
         Attorney for Defendants Perfect 10, Inc.
         and NORMAN ZADA

17
18
19
20
21
22
23
24
25
26
27
28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
RULE 12(B)(6) MOTION TO DISMISS