Matthew C. Mickelson (S.B.N. 203867)
**LAW OFFICES OF MATTHEW C. MICKELSON**
16055 Ventura Boulevard, Ste. 1230
Encino, CA 91436
818-382-3360

Attorney for Defendants PERFECT 10, INC.
and NORMAN ZADA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIGANEWS, INC., a Texas corporation; LIVEWIRE SERVICES, INC., a Nevada corporation, <br><br>                         Plaintiffs, <br>           v. <br> PERFECT 10, INC., a California corporation, NORMAN  ZADA, an individual, and DOES 1-50, inclusive <br><br>                    Defendants. | Case No.: 2:17-cv-05075-AB (JPR) <br><br> ***Before Honorable André Birotte, Jr.*** <br><br> **DEFENDANT'S REPLY IN SUPPORT OF DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS** <br><br> Date:         October 20, 2017 <br> Time:        10:00 a.m. <br> Courtroom:  7B,  350 West First Street, <br>                   Los Angeles, CA  90012 |

## INTRODUCTION

Plaintiffs' claims of fraudulent transfer should be dismissed for two separate reasons.  First, they are completely implausible in light of Defendant's full-price offer to pay the judgement and therefore cannot satisfy established Federal pleading standards.   Second, the Ninth Circuit has already reviewed most of the complained of transfers and determined that they were not done in bad faith and did not constitute a stripping of assets to benefit Dr. Zada – in other words, that they were not fraudulent transfers.

The cornerstone of Plaintiffs' complaint is that in January, 2014, Defendants Perfect 10, Inc. and Dr. Norman Zada realized that they would lose the case and began transferring $1.75 million to Dr. Zada to prevent Plaintiffs from receiving that money.  Plaintiffs' Complaint failed to mention a key fact:  Eleven days after judgment was entered, Defendants offered to pay $2 million in cash, plus a deed of trust worth millions more, in full payment of the judgement.  This crucial fact renders Plaintiffs' claims of fraudulent transfer implausible in the extreme – how could Defendants have intended to prevent Plaintiffs from receiving the $1.75 million when more than amount was offered as part of a full payment of the judgement days after the judgement was entered?  Defendants' Motion to Dismiss put this entire issue in play, and to avoid dismissal under *Ashcroft v. Iqbal* and *Bell Atlantic v. Twombly*, Plaintiffs had to explain in some fashion why, in light of the offer, their claims still hold some plausibility.  Plaintiffs have no such explanation. (See Section II, below.)

In the appeal of their alter-ego motion, Plaintiffs put most of the transfers they complain of now, including the $850,000 transfer on November 20, 2014, before the Ninth Circuit as evidence of wrongdoing by Perfect 10 and Dr. Zada.   The Ninth Circuit, however, concluded that none of the transfers before it showed any evidence of "bad faith" or constituted a stripping of assets done to benefit Dr. Zada.  This means they were not and could not be construed as fraudulent.  Plaintiffs are thus

DEFENDANTS' REPLY IN SUPPORT OF RULE 12(B)(6) MOTION TO DISMISS

barred from relitigating the issue of whether the transfers presented to the Ninth Circuit were fraudulent, because the Ninth Circuit has already ruled that they were not.

This case has gone on for years already.  Relitigation of already decided issues is precluded by law.  The Motion to Dismiss should be granted with prejudice.

## ARGUMENT

## I.   THE COURT SHOULD NOT BE DISTRACTED BY THE OPPOSITION'S FALSE FACTUAL STATEMENTS

Before delving into issues of plausibility and collateral estoppel, it is important to address, at the beginning, several unsupported assertions of fact alleged in the Opposition.

The most striking of these is the Opposition's avowal that "Zada admitted under oath that he made these transfers to avoid execution of the Court's judgment…" (Opp. 1:20-21), and, even more brazenly, that "this is the rare case where the plaintiff has pleaded, with specific evidence, that defendants directly admitted the fraudulent nature of the transfers under oath."  (Opp. 8:14-16.)

First of all, these assertions are completely contradicted by the Ninth Circuit's findings, after reviewing most of the transfers complained of here, including the last transfer of $850,000 (Defendants' Request for Judicial Notice ["RJN"] Exh. 3, p. 2. n1; RJN Exh. 4, pp. 151, 155; RJN Exh. 2 p. 514), that there was no evidence that Defendants Dr. Zada and Perfect 10 had acted in "bad faith."   That determination necessarily eliminates the possibility of fraudulent intent. (*See* Section III, below.) But even if the Ninth Circuit had not ruled on this issue, no evidence in the Complaint or its exhibits even remotely supports these breathtaking contentions.

Most obviously, neither Dr. Zada nor Melanie Poblette (Perfect 10's former paralegal) admitted that Perfect 10 or Dr. Zada defrauded anybody.  But beyond that, the statements quoted in the Opposition and the Complaint provide no backing whatsoever for the Opposition's breathtaking conclusion.  Dr. Zada at his debtor

examination specifically stated that he was a creditor of Perfect 10 ("I was entitled to that money" [Opp. 5:7-8]) – which, of course, is correct, given that he was owed more than $53 million in capital contributions to Perfect 10. (RJN[1] Exh. 4 at 151:24-25.)  A payment to a valid creditor cannot be construed as a fraudulent transfer under California law.  (*See* Civ.C. § 3432 [debtors are permitted to pay one creditor in *preference* over another].)  Such transfers made for proper consideration are *not* recoverable as voidable transfers notwithstanding the fact the transfers may prevent some creditors from collecting on their debts: "[I]t is difficult to perceive how the payment of a debt which [is] justly owed, and which was past due, can be tortured into an act to hinder, delay, and defraud creditors." [*Lyons v. Security Pac. Nat'l Bank* (1995) 40 CA4th 1001, 1019-1020].)

Moreover, Plaintiffs incorrectly twist Melanie Poblete's testimony (Opp. 8:10-11.) What Ms. Poblete testified, was that "Norm was worried that Perfect 10 shouldn't be paying anything because there was a judgement against it and any money that came in should be given over.  So he didn't want to be improper and pay something out of the Perfect 10 account that would have been entitled to – you know, as a judgement payment."  (Complaint, Exh. 10 at 122:2-13.)  The meaning of "given over" in her testimony was clear.  She meant given over to *Plaintiffs*.  The Opposition inserted "to Zada" after given over (Opp. 8:10-11), in an improper effort

---

[1] Plaintiffs concurrently filed a self-styled "Opposition" to the RJN, along with their Opposition to the Motion to Dismiss. The Opposition to the RJN, however, provides only a vague, general objection to the documents submitted in Defendants' RJN; it does not point to any specific documents, does not identify any reasoned basis or grounds to exclude any particular document, and therefore does not provide Defendants with any ability to respond to the Plaintiffs contentions. Moreover, the Opposition to the RJN is procedurally improper – it does not come in the form of a motion, which is required (*see Chen v. Metropolitan Ins. & Annuity Co.* (5th Cir. 1990) 907 F.2d 566, 569); and neither did Plaintiffs submit objections to specific evidence in proper form.  The Court should accordingly disregard Plaintiffs' Opposition to the RJN.

1   to completely change the interpretation of her testimony.[2]

2         In short, there are no "confessions" to support Plaintiffs' fraudulent transfer

3   allegations.

4   **II.      PLAINTIFFS CANNOT EXPLAIN HOW THEIR FRAUDULENT**

5   **CONVEYANCE ALLEGATIONS ARE PLAUSIBLE GIVEN THE**

6   **OFFER TO PAY MORE THAN THE AMOUNT TRANSFERRED**

7         The Opposition provides four reasons as to why the Complaint's allegations

8   should survive despite the fact that Defendants offered to pay the transferred money

9   to them soon after entry of judgment.  None explain how the allegations of

10  fraudulent transfer are plausible given Defendants' offer to pay the judgement in

11  full.

12        Their first argument is that Defendants' offer to pay the judgement is "outside

13  the four corners of the complaint," and therefore inadmissible here.  (Opp. 8:26-

14  9:10.)  As explained in the Motion to Dismiss, matters subject to judicial notice may

15  be relied upon by the Court in motions to dismiss.  (*See Coto Settlement v.*

16  *Eisenberg,*  593 F.3d 1031, 1038 (9th Cir. 2010); *Skilstaf, Inc. v. CVS Caremark*

17  *Corp.*, 669 F.3d 1005, 1024 n. 9 (9th Cir. 2012).  In any event, nowhere do Plaintiffs

18  contest either the existence of or contents of the offer made by Defendants to

19  Plaintiffs, nor could they, given they specifically relied upon the offer in their

20  Motion to attach alter ego liability to Dr. Zada, and are therefore judicially estopped

21  from denying its existence here. *(See Keshish v. Allstate Ins. Co.*, 959 F. Supp. 2d

22  1226, 1241 (C.D. Cal. 2013) ["Courts uniformly recognize that the purpose of the

23  judicial estoppel doctrine is to protect the integrity of the judicial process by

24  ───────────────

25        [2] These kinds of misleading or false statements are found throughout the
    Opposition.  On page 1, for example, Plaintiffs assert that "in the two and a half

26  years since the Court entered judgment against Perfect 10, Giganews has only
    collected a few hundred dollars of the more than $5 million awarded."  Not true –

27  the Receiver has reported that $14,686.07 was received from Perfect 10.  (See Dkt.
    825 [receiver's report] at 4:5); Defendants' Motion to Dismiss at 5, note 1.)

28

1    prohibiting parties from changing positions as circumstances warrant."].)  The

2    undeniable reality is that there was an offer to satisfy the judgment, which included a

3    cash payment greater than the amount transferred out of Perfect 10.  This crucial fact

4    negates at least one of the elements necessary to establish fraudulent conveyance

5    under the Uniform Voidable Transfer Act, and therefore makes Plaintiffs' causes of

6    action completely implausible.

7          Reason two offered by Plaintiffs are citations to California case law regarding

8    determination of fraudulent intent at the pleading stage.  (Opp. 9:11-10:5.)  All of

9    these are completely irrelevant.  This is a federal, not state case – a venue chosen by

10   the Plaintiffs – and as such, federal procedural law applies here.  (*Hyan v. Hummer*

11   (9th Cir. 2016) 825 F.3d 1043, 1046.)  As a case governed by the federal rules of

12   civil procedure, the District Court possesses the ability and the duty to employ

13   common-sense reasoning to sift out implausible from plausible actions (*Levitt v.*

14   *Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014),  and to dismiss those that do not

15   meet the requisite guidelines set forth by the Supreme Court in *Ashcroft v. Iqbal*, 556

16   U.S. 662, 678 (2009) and *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007).  In

17   order to survive this Motion to Dismiss, Plaintiffs cannot simply cite to case law

18   from another jurisdiction; they needed to explain why their contentions are plausible

19   under the federal standards given the known facts.  They have failed to do so.

20         The third argument offered by Plaintiffs is that Defendants' offer to pay the

21   judgement somehow imputes a finding of bad faith to Defendants.  (Opp. 10:6-10.)

22   But the only reasoning provided is Plaintiffs unsubstantiated fears that somehow

23   Plaintiffs' right to foreclose on the property would be contested at some unknown

24   future date.  This is nonsensical.  Regardless of the validity of Plaintiffs'

25   trepidations, for purposes of this Motion none of them are relevant. The uncontested

26   fact is that Defendants offered Plaintiffs $2 million in cash.  This sum exceeds all the

27   amounts transferred, as well as any conceivable value of the knick-knacks purchased

28   by Dr. Zada from Perfect 10 that Plaintiffs complain about.  Whether or not

1    Plaintiffs would have had some sort of difficulty enforcing or selling a first deed of

2    trust against Dr. Zada's home (which they could have readily determined was worth

3    more than the first trust deed offered of $3.829 million), the fact is that by accepting

4    the offer, Plaintiffs would have walked away with more cash than they are suing

5    over now.  Plaintiffs Complaint must deal with the striking fact that Defendants

6    wanted to give to Plaintiffs the money Plaintiffs now accuse Defendants of stealing

7    – an implausible, if not contradictory, allegation.

8          Finally, Plaintiffs assert that, regardless of the offer to settle, the only intent

9    that matters is Defendants' mental state at the time the transfers were made, and that

10   a later good faith settlement offer does not negate Defendants' alleged fraudulent

11   intent possessed at the earlier transfer date.  (Opp. 10:18-22.)  But Plaintiffs

12   misapprehend Defendants' reasoning.  The Motion to Dismiss asserted that the later

13   offer to satisfy the judgment *by definition* makes implausible the conclusion that

14   fraud motivated the earlier funds transfers.  A person who intends to fraudulently

15   transfer funds does so to keep those assets out of the hands of creditors; upon entry

16   of judgement, they do not immediately offer those funds to the creditor. If Dr. Zada

17   was motivated by the desire to keep the transferred funds out of Plaintiffs' hands, he

18   would never have made an offer to give those monies to Plaintiffs.  Because he did

19   indeed make such an offer, it is implausible in the extreme that he ever possessed

20   such an intent.  Rather more innocent explanations are vastly more probable:  that

21   Dr. Zada took a small fraction of millions owed as a legitimate creditor; and/or that

22   no court had ever entered a judgment of such magnitude against a plaintiff in Perfect

23

24

25

26

27

28

1    10's position, and so Dr. Zada would have had no motive to fraudulently transfer

2    funds because he saw no possibility of what eventually came to pass.) [3]

3        Because only the innocent explanations for Defendants conduct possess the

4    requisite plausibility, Plaintiffs' sinister gloss on the facts must be discarded, and the

5    Complaint dismissed.  (*Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 597 (8th Cir.

6    2009) ["An inference pressed by the plaintiff is not plausible if the facts he points to

7    are precisely the result one would expect from lawful conduct in which the

8    defendant is known to have engaged."].)

9    **III.   THE NINTH CIRCUIT'S FINDINGS OF NO BAD FAITH OR**

10           **STRIPPING OF ASSETS PRECLUDE A FINDING OF**

11           **FRAUDULENT TRANSTER**

12       Simply put, the Ninth Circuit has already examined most of the transfers now

13   before this court, including the final transfer of $850,000 made on November 20,

14   2014, and concluded that none of them constituted a stripping of assets to benefit Dr.

15   Zada, i.e., a fraudulent transfer.  (RJN Exh. 5, p. 38.)  The Ninth Circuit also found

16   that none of the transfers were evidence of bad faith.

17       Under any classification, "bad faith" is a lesser evil than "fraudulent intent,"

18   and therefore a conclusion that no bad faith exists by definition precludes the finding

19   of the more devious mental state of fraud. (*See United States v. Benny*, 786 F.2d

20       [3] The cases supporting this assertion were detailed at length in Defendants'
21   Motion (at pp. 11-12), and Plaintiffs offer nothing to contest them. To the best of
     Perfect 10's knowledge, the award of $5.63 million was the second largest against a
22   copyright plaintiff in U.S. history, and hundreds of times larger than any other award
23   on the basis of award size divided by annual sales of the plaintiff.  For example,
     using Mattel's current sales of $5.4 billion (see barchart.com/stocks/quotes/MAT),
24   the $137 million attorneys fees award against it (Motion to dismiss at 11) was 1/40
25   times sales.  In comparison, the $5.63 million fee award against Perfect 10 was 140
     times Perfect 10's sales of $40,000 a year.  Case 11-cv-7098 AB (SHx), Dkt. 650-8
26   ¶15. In other words, compared to sales, the award against Perfect 10 was more than
27   5000 times the size of the award against Mattel, and MGA, the defendant in that
     case, was a content creator whereas Giganews is not.
28

1410, 1417 (9th Cir. 1986) [upholding jury instructions stating that "Bad faith is an essential element of fraudulent intent**";** *In re Leavitt*, 171 F.3d 1219, 1224–25 (9th Cir. 1999);  ["[N]either malice nor actual fraud is required to find a lack of good faith. . . . .-malfeasance is not a prerequisite to bad faith. *In re @Vantage.Com*, 2007 WL 2688815, at *2 (Bankr. N.D. Cal. Sept. 13, 2007)  ["a finding of bad faith does not require a finding of fraudulent intent"]; s*ee also Lewis v. Superior Court,* 30 Cal.App.4th 1850, 1859 (1994)).  Accordingly, the conclusion of no bad faith is fatal to any claim that Defendants possessed the sort of fraudulent mental state necessary for Plaintiffs to prevail in this action; and as well as the determination there was no undercapitalization eviscerates a required element in the Second Cause of Action claim under Civil Code section 3439.04(2)(B).

Because all of the transfers complained of were either found not to be fraudulent by the Ninth Circuit, or are similar to transfers found not to be fraudulent by the Ninth Circuit, Plaintiff's claims of fraudulent transfer must be dismissed.

The Opposition's arguments regarding collateral estoppel are not well-taken. Plaintiffs claim that the Ninth Circuit's finding of no "bad faith" on the part of Perfect 10 and Dr. Zada applied only to the single issue of "undercapitalization," and not the transfers attacked in the Complaint.  (Opp. 12:13-16.)  Plaintiffs are reading the Ninth Circuit decision far too narrowly, as well as ignoring this Court's determination on the same issue, which the Ninth Circuit upheld in its entirety. This Court concluded that Perfect 10 was not undercapitalized and that "[t]here is no evidence [Dr. Zada] 'stripped' Perfect 10 of its assets" (s*ee* RJN Exh. 6, Dkt. 734,  at p. 7), and the Ninth Circuit in parallel concluded that no bad faith was shown because "this is not a case where a sole shareholder operated a company with little or no assets, nor is this a case where a company was stripped of its assets to shield its sole shareholder from adverse judgments."  (RJN Exh. 5, p. 38.)

Plaintiffs also appear to be asserting in their Opposition that because the cause of action in their alter ego motion was in some respects different from their causes of

action here, collateral estoppel cannot apply.  But that is not the law.  "[E]ven though the causes of action be different, the prior determination of an issue is conclusive in a subsequent suit between the same parties as to that issue and every matter which might have been urged to sustain or defeat its determination." (*Pacific Mut. Life Ins. Co. of Calif. v. McConnell* (1955) 44 C.2d 715, 724; *see also Price v. Sixth District Agricultural Assn.* (1927) 201 C. 502, 511 ["Appellants … seem to contend that an issue heard and determined in a former case is binding only as to such grounds supporting or opposing said issue as were actually urged and litigated.  But an issue may not be thus split into pieces. If it has been determined in a former action, it is binding notwithstanding the parties litigant may have omitted to urge for or against it matters which, if urged, would have produced an opposite result."].)

Here, the District Court and the Ninth Circuit found that there was no stripping of assets to benefit Dr. Zada.  The Ninth Circuit further found that none of the transfers before it were done in bad faith.  That the findings were made as part of a determination that there was no undercapitalization is irrelevant.  These made findings preclude this Court from further litigating those required elements of fraudulent transfer under collateral estoppel principles.  Accordingly, dismissal of the claims is required.

Finally, Plaintiffs assert there can be no collateral estoppel because they did not possess a "full and fair ability to litigate the issues of UFTA violations in Perfect 10's original copyright case."  (Opp. 13:21-26.)  Specifically, they assert that the issue of an $850,000 transfer from Perfect 10 to Dr. Zada was not litigated.  Of course, Plaintiffs did indeed litigate the issue of the $850,000 transfer by bringing it to the attention of the Ninth Circuit, both in their appellate brief as well as in their motion for judicial notice.  (RJN Exh. 3, p. 2 n1; Exh. 4, p. 151:5-14).  The Ninth Circuit found that transfer (and others before it) did not constitute evidence of either a stripping of assets or bad faith.  (RJN Exh. 5, p. 38)  That ruling is binding and effective.  "[W]here the court heard evidence and argument from both parties, and

1  specifically ruled on the issue, a party may not escape the ruling's binding effect on

2  the ground it was not logically essential to the court's ultimate determination."

3  (*United States v. Johnson* (9th Cir. 2001) 256 F.3d 895, 915.)

4      This matter has been litigated for years, both in this Court and before the

5  Ninth Circuit.  Plaintiffs should not be given a third opportunity to make their case

6  again.  The Motion to dismiss should be granted with prejudice.

7  **IV.   CONCLUSION**

8      Plaintiffs have filed their complaint only because they refused to accept

9  Defendants' full price offer and then lost their alter ego motion.  After refusing

10  Defendants' full price offer, Plaintiffs have no legitimate basis to allege fraud.  For

11  all of the foregoing reasons, Defendants respectfully request that the Court grant

12  their motion to dismiss in its entirety without leave to amend.

13  DATED:  October 6, 2017    LAW OFFICES OF MATTHEW C. MICKELSON

15      By: _/s/ Matthew C. Mickelson_

16      MATTHEW C. MICKELSON
Attorney for Defendants Perfect 10, Inc.
and NORMAN ZADA