UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | CV 17-05075-AB (JPRx) | Date: | November 27, 2017 |
|---|---|---|---|

| Title: | *Giganews, Inc., et al. v. Perfect 10, Inc., et al.* |
|---|---|

Present: The Honorable **ANDRÉ BIROTTE JR., United States District Judge**

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** [In Chambers] ORDER RE DEFENDANTS' MOTION TO DISMISS [12]

Pending before the Court is Perfect 10, Inc. ("Perfect 10") and Norman Zada's ("Zada") (collectively, "Defendants") Motion to Dismiss Plaintiff Giganews, Inc. ("Giganews") and Livewire Services, Inc.'s ("Livewire") (collectively, "Plaintiffs") Complaint. The Court heard oral argument on the matter on October 20, 2017, and took the matter under submission. Based on the papers submitted by both parties, and after considering the arguments made at the hearing, Defendants' Motion is **GRANTED in part** and **DENIED in part**.

   **I.   FACTUAL BACKGROUND**

The parties to this action are familiar to the Court. Plaintiff Giganews is a Texas corporation with its principal place of business in Austin, Texas. (Dkt. No.

1, Plaintiffs' Complaint (hereinafter, "Compl.") ¶ 5.)  Giganews is a Usenet service provider and owns and operates several Usenet servers.  (*Id*.)  Plaintiff Livewire is a Nevada corporation with its principal place of business in Austin, Texas.  (Compl. ¶ 6.)  Livewire also provides Usenet access to its subscribers for a fee using Giganews servers.  (*Id*.)  Defendant Perfect 10 is a California corporation with its principal place of business in California.  (Compl. ¶ 7.)  Perfect 10 was the publisher of the adult magazine *Perfect 10* and it now operates an adult website at perfect10.com, which features images of nude and semi-nude female models.  (Compl. ¶ 7.)  Defendant Zada is an individual who resides in California.  (Compl. ¶ 8.)  Zada is the sole owner, President, and Chief Executive Officer of Perfect 10.  (Compl. ¶ 8.)

On April 28, 2011, Perfect 10 filed suit against Plaintiffs alleging copyright infringement, trademark infringement, trademark dilution, unfair competition, and publicity rights violations.  (Compl. ¶ 15.)  After significant motion practice, the parties filed a total of seven competing motions for partial summary judgment.  (Compl. ¶ 16.)  On November 14, 2014, this Court issued two orders which granted partial summary judgment in favor of Giganews and Livewire and conclusively resolved all of Perfect 10's claims in favor of Plaintiffs.  (*Id*; *Perfect 10, Inc. v. Giganews, Inc*., Case No. 11-07098-AB (hereinafter, "the Related Case"), Dkt. Nos. 619, 620.)  On November 26, 2014, this Court entered final judgment in favor of Giganews and Livewire.  (Related Case, Dkt. No. 628.)  The Court declared that Giganews and Livewire could seek attorneys' fees to the extent allowed by any applicable statutes or law.  (Compl. ¶ 17.)  On March 24, 2015, the Court granted Plaintiffs' Motion for Attorneys' Fees and Expenses in the amount of $5,637,352.53.  (Compl. ¶ 18.)

Plaintiffs allege that beginning in early 2014, Zada began to unlawfully transfer Perfect 10's corporate assets to himself in anticipation of unfavorable court rulings and a possible judgment against Perfect 10 for attorneys' fees.  (Compl. ¶ 19.)  According to Perfect 10's General Ledger, beginning in January 2014, Perfect 10, through Zada, made several transfers totaling $1,750,000.00 to Zada's personal account.  (*Id*.)  The last transfer, in the amount of $850,000.00, was made on November 20, 2014, six days after the Court granted summary judgment against Perfect 10.  (*Id*.)  In support of the alleged fraudulent intent behind these transactions, Plaintiffs offer a statement by Zada during the Judgment Debtor's Examination on January 28, 2016.  In response to a question inquiring the reason for the $850,000.00 transfer, Zada responds: "And after the summary judgment orders were issued, I did not see any point in keeping more cash than we needed in

the account." (Compl. ¶ 20.) Plaintiffs also offer a statement by Melanie Poblete, Perfect 10's office manager and paralegal. (Compl. ¶ 23.) During her deposition on December 6, 2016, in response to a question about an email she sent regarding Perfect 10's bills, she answered, "What I remember is that Norm was worried that Perfect 10 shouldn't be paying anything because there was a judgment against it and money that came in should be given over . . . . Dr. Zada pays it because he doesn't want there to be any kind of, you know, speculation that Perfect 10 is somehow, you know, paying something it shouldn't when there's a judgment against it." (Compl. ¶ 24.)

On or around March 2015, Zada also transferred substantially all of Perfect 10's physical assets to himself in a transaction that Plaintiffs allege was for inadequate consideration. (Compl. ¶ 21.) These assets include Perfect 10's car, furniture, magazines, computer servers, external hard drives, and t-shirts. (*Id.*) Perfect 10 continues to operate as it has in the past. (Compl. ¶ 22.) These assets remain in the same room as when Perfect 10 owned them, and they are still used for Perfect 10's business. (Compl. ¶ 25.)

## II.     PROCEDURAL BACKGROUND

Before filing this lawsuit, Plaintiffs requested the Court add Zada as a debtor in the judgment against Perfect 10 for attorneys' fees. (Related Case, Dkt. No. 703.) Plaintiffs based their request on the theory that Zada was an alter ego of Perfect 10. (*See id.*) The Court denied Plaintiffs' Motion to alter the judgment to add Zada as a debtor and held that Zada was not an alter ego of Perfect 10. (Related Case, Dkt. No. 734.) The Ninth Circuit affirmed this Court's decision denying the Motion and its holding as to Zada's alter ego liability. (*See* Dkt. No. 13, Defendants' Request to Take Judicial Notice in Support of Defendants' Motion to Dismiss Plaintiffs' Complaint (hereinafter, "RJN"), Exhibit 5 ("Ex. 5.").)

In their briefing to the Ninth Circuit, Plaintiffs offered several pieces of evidence to prove up their alter ego theory. They argued that Zada had undercapitalized Perfect 10 by stripping its assets. Reply Brief of Defendants-Appellees Giganews, Inc. and Live Wire Services, Inc. in Support of Cross-Appeal (hereinafter, "Reply Br."), 2016 WL 3866449, at *15. Plaintiffs requested the court take judicial notice of several post-judgment transcripts that contained the transactions from Perfect 10 to Zada which form the factual basis for the current allegations of fraudulent conveyance. Reply Br. at *2 n.1. Counsel for Defendants informed the Court during oral argument that the Ninth Circuit took

notice of all the transactions at issue here except the last transfer in the amount of $850,000.00. The court stated that were it to take notice, it would not have altered its conclusion as to Zada's alter ego liability. *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 678 (9th Cir. 2017).

Plaintiffs filed their Complaint in the current action on July 10, 2017, alleging two causes of action: (1) Violation of Uniform Fraudulent Transfer Act For Actual Fraudulent Transfer and (2) Violation of Uniform Fraudulent Transfer Act For Constructive Fraudulent Transfer. (Dkt. No. 1.) On September 5, 2017, Defendants filed their Motion to Dismiss. (Dkt. No. 12, Defendants' Motion to Dismiss (hereinafter, "Mot.").) On September 29, 2017, Plaintiffs opposed. (Dkt. No. 17, Plaintiffs' Opposition to Defendants' Rule 12(b)(6) Motion to Dismiss (hereinafter, "Opp'n").) On October 6, 2017, Defendants replied. (Dkt. No. 19, Defendants' Reply in Support of Defendants' Rule 12(b)(6) Motion to Dismiss (hereinafter, "Reply").)

## III. LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 8 requires a plaintiff to present a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To defeat a Rule 12(b)(6) motion to dismiss, the complaint must provide enough detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must also be "plausible on its face," allowing the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

When ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (2009) (internal quotation marks

omitted).

IV. **DISCUSSION**

   1. **Plaintiffs Have Sufficiently Pled Their Actual Fraudulent Transfer Claim**

Plaintiffs' first cause of action stems from California Civil Code § 3439.04.[1] Under UVTA, to state a claim for Actual Fraudulent Transfer, a plaintiff must plead that a transfer or obligation incurred by a debtor as to a creditor was made "with actual intent to hinder, delay, or defraud any creditor of the debtor." Cal. Civ. Code § 3439.04(a)(1). Because actual intent is often difficult to prove, courts frequently look to the "badges" fraud listed in the statute itself:

(1) Whether the transfer or obligation was to an insider;
(2) Whether the debtor retained possession or control of the property transferred after the transfer;
(3) Whether the transfer or obligation was disclosed or concealed;
(4) Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
(5) Whether the transfer was of substantially all of the debtor's assets;
(6) Whether the debtor absconded;
(7) Whether the debtor removed or concealed assets;
(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred; and,
(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

Cal. Civ. Code § 3439.04(b)(1)-(11). "The factors are intended to provide guidance to the trial court, not compel a finding one way or another." *LaChapelle*

---

1 Plaintiffs refer to this section as the Uniform Fraudulent Transfer Act, (*see* Compl.), but its current title is the Uniform Voidable Transactions Act ("UVTA"). *See* Cal. Civ. Code § 3439.04.

*v. Kim*, No. 15-02195-JSC, 2015 U.S. Dist. LEXIS 161801, at *14 (N.D. Cal. Dec. 2, 2015).

Since a claim for actual fraudulent transfer involves an allegation of fraud, it is subject to Rule 9(b), which requires a party to state with particularity the circumstances constituting fraud or mistake. *Kelleher v. Kelleher*, No. 13-15450-MEJ, 2014 U.S. Dist. LEXIS 2773, at *16 (N.D. Cal. Jan. 9, 2014); *LaChapelle*, 2015 U.S. Dist. LEXIS 161801, at *14. "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong. Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged. A party alleging fraud must set forth *more* than the neutral facts necessary to identify the transaction." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal citations and quotations omitted).

Here, Plaintiffs allege seven "badges" of fraud:

(1) these transfers from Perfect 10 to Zada were to an insider;
(2) at its offices Perfect 10 continues to retain physical possession and control of the unlawfully transferred assets;
(3) the transfers happened when it became reasonably apparent that a large judgment (representing an award of attorneys' fees and costs) would be entered against Perfect 10 as a result of its unmeritorious and unsuccessful suit for copyright infringement;
(4) the cash transfers were for substantially all of Perfect 10's liquid funds;
(5) the non-cash transfers were substantially all of Perfect 10's physical assets;
(6) Perfect 10 received no reasonably equivalent consideration in exchange for these transfers; and,
(7) Perfect 10 was practically insolvent as a result of these transfers.

(Compl. ¶ 30.) The Court finds that Plaintiffs have sufficiently pled the who, what, where, when, and how of the alleged fraud. *See Hale Bros. Inv. Co. v. StudentsFirst Inst.*, No. 16-02284-JAM-EFB, 2017 WL 590255, at *3–4 (E.D. Cal. Feb. 14, 2017). Allegations (1)-(3) above, together with Zada's deposition statements, are sufficient to establish three distinct "badges" of fraud. Specifically, Zada testified that he bought Perfect 10's physical assets because it would have been "disruptive" to have them seized following the judgment, that he transferred $850,000 from Perfect 10's account because "after the summary judgment orders

were issued, [he] did not see any point in keeping more cash than [they] needed in the account," and that the summary judgment order prompted him to take the money out "in one sum instead of just taking it out more slowly." (Dkt. No. 1-8 at 110, 151–52.) Further, Zada stated that he put money back into the account to pay legal bills, but that very little remains in the account because Defendant "has been attaching it." (*Id.* at 152.) Furthermore, the last transfer from Perfect 10 to Zada was made only a week after the Court entered summary judgment against Perfect 10. (Compl. ¶ 19.) Taken together, these facts are sufficient at this stage to establish that Zada possessed the actual intent to evade the judgment. *See Oracle Am., Inc. v. Appleby*, No. 16-02090-JST, 2016 WL 5339799, at *10 (N.D. Cal. Sept. 22, 2016).

In their Motion, Defendants argue that this claim is precluded under the doctrine of collateral estoppel or issue preclusion. (Mot. at 15.) They argue that the Ninth Circuit has already reviewed the transactions in question and established the absence of any bad faith. (Mot. at 15.) The quote referring to bad faith reads in its entirety: "Nothing in the record suggest that Perfect 10 was so undercapitalized that it could not meet its reasonably expected debts, *and particularly in light of Perfect 10's ability to satisfy past judgments against it*, *there is no evidence of bad faith*." *Perfect 10, Inc.*, 847 F.3d at 678. However, the last transfer from Perfect 10 to Zada for $850,000.00 was not properly before the court because the court declined to take judicial notice of it. *Perfect 10, Inc.*, 847 F.3d at 678. The court stated that had it taken notice of the transaction, it would not have changed its conclusion on alter ego. *Id.* This statement by the court is not only *obiter dictum*, it also does not explain what the court reasoned about the transfer that would not have affected its holding on alter ego. After all, in its statement above, the court was looking only at information "in the record" and concluding that "nothing in the record" evidenced any bad faith. *Perfect 10, Inc.*, 847 F.3d at 678. The last transfer from Perfect 10 to Zada for $850,000.00 was not "in the record" because the court did not judicially notice it. Thus, the court's reference to bad faith is not sufficient to carry the preclusive effect Defendants want to give it.

The Court **DENIES** Defendants' Motion to Dismiss as to Plaintiff's Actual Fraudulent Transfer claim.

### 2. Plaintiffs' Constructive Fraudulent Transfer Claim Fails

To state a claim for Constructive Fraudulent Transfer, a plaintiff must plead that a debtor made a transfer or incurred an obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor either: "(1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, (2) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due." Cal. Civ. Code § 3439.04(a)(2)(A)-(B). "A claim of constructive fraudulent transfer is not subject to the heightened pleading requirements of Rule (9)(b)." *Martinez v. CACH, L.L.C.*, No. 10-1625-DMS, 2011 U.S. Dist. LEXIS 68586, at *15 (S.D. Cal. June 27, 2011).

Plaintiffs have failed to offer any factual allegations to support this clam, but provide instead only legal conclusions. For example, Plaintiffs allege that the transfers from Perfect 10 to Zada were made without a "reasonably equivalent value" in exchange, but offer no facts supporting their conclusion that the amount paid did not constitute adequate consideration. (Compl. ¶ 36.) Indeed, Plaintiffs do not explain or address Zada's deposition statements regarding the value of the items purchased, but merely state that the value received was inadquate. (*See* Dkt. 1-8 at 88–93, 109–110.) In addition, Plaintiffs have decided to pursue the second option for alleging constructive fraudulent transfer which requires that they plead that Zada believed or reasonably should have believed that Perfect 10 would incur debts beyond its ability to pay. Beyond a conclusory allegation that Perfect 10 was "practically insolvent," Plaintiffs fail to sufficiently plead how Perfect 10 would be entirely unable to pay the upcoming judgment against it. (Compl. ¶ 30.)

Defendants argue in their Opposition that the issue of Perfect 10's insolvency is precluded under the doctrine of collateral estoppel. (Opp'n at 15.) In a diversity action, the forum state's law applies to determine the preclusive effect of a previous judgment that also stemmed from a diversity action. *Bates v. Union Oil Co.*, 944 F.2d 647, 649 (9th Cir. 1991). California courts apply the same three-part test to preclusion, regardless of whether the defense is issue or claim preclusion: "The prerequisite elements for applying the doctrine to either an entire cause of action or one or more issues are the same: (1) A claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and, (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding." *People v. Barragan*, 32 Cal. 4th 236, 252 (2004). There are no

issues here with either the second or third element of issue preclusion since the parties are identical and the previous action came to a final judgment on appeal. The dispute, as it often does in cases of res judicata, centers on the identity of the issues.

      Defendants argue that both this Court and the Ninth Circuit concluded that Perfect 10 was not so undercapitalized as to not be able to pay its reasonably foreseeable debts.  (Opp'n at 15.)  The Court agrees.  The Ninth Circuit affirmed this Court's holding that "Perfect 10 has regularly maintained enough capital to consistently pay its debts for almost 20 years."  *Perfect 10, Inc.*, 847 F.3d at 678.  However, the last transaction at issue here was not before this Court then as it is now.  Plaintiffs discovered this transaction between the time this Court issued its order on alter ego and the Ninth Circuit issued its opinion on the appeal.  *Perfect 10, Inc.*, 847 F.3d at 678.  Thus, while the Court held that Perfect 10 was not insolvent then, different facts have been brought to the attention of the Court in the current suit.  The presence of these facts necessarily distinguishes the insolvency issue in the previous litigation from the one before the Court now.  However, as stated above, Plaintiffs must still offer the Court sufficient factual allegations on the current condition of Perfect 10' solvency to survive the Motion to Dismiss on this claim.

      The Court **GRANTS** Defendant's Motion to Dismiss as to Plaintiffs' Constructive Fraudulent Transfer claim.  Plaintiff's Constructive Fraudulent Transfer claim is dismissed **with leave to amend**.  Plaintiff may attempt to cure the deficiencies in its Complaint by filing an amended complaint within twenty-one (21) days after the issuance of this Order.

      The Scheduling Conference is continued to Friday, January 12, 2018, at 10:00 am.

      **IT IS SO ORDERED.**