ANDREW P. BRIDGES (CSB No. 122761)
abridges@fenwick.com
JEDEDIAH WAKEFIELD (CSB No. 178058)
jwakefield@fenwick.com
TODD R. GREGORIAN (CSB No. 236096)
tgregorian@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:  415.875.2300
Facsimile:   415.281.1350

RONALD P. SLATES, SBN: 43712
rslates2@rslateslaw.com
KONRAD L. TROPE, SBN: 133214
ktrope@rslateslaw.com
RONALD P. SLATES, P.C.
500 South Grand Avenue, Suite 2010
Los Angeles, CA 90071
Telephone:  213.624.1515
Facsimile:   213.624.7536

Attorneys for Plaintiffs/Judgment Creditors,
GIGANEWS, INC. and LIVEWIRE SERVICES, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIGANEWS, INC., a Texas corporation; and LIVEWIRE SERVICES, INC., a Nevada corporation,<br><br>Plaintiffs,<br><br>v.<br><br>PERFECT 10, INC., a California corporation; NORMAN ZADA, an individual; and DOES 1-50, inclusive,<br><br>Defendants. | Case No.: 2:17-cv-05075-AB (JPR)<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>1) **Violation of Uniform Fraudulent Transfer Act For Actual Fraudulent Transfer**<br><br>2) **Violation of Uniform Fraudulent Transfer Act For Constructive Fraudulent Transfer**<br><br>3) **Transfer of Personal Property Not Accompanied by Transfer of Possession**<br><br>**DEMAND FOR JURY TRIAL** |

FIRST AMENDED COMPLAINT

CASE NO. 2:17-cv-05075-AB (JPR)

Plaintiffs/Judgment Creditors, Giganews Inc. ("Giganews") and Livewire Services, Inc. ("Livewire") ("Plaintiffs") hereby respectfully bring this Complaint and allege as follows:

**<u>INTRODUCTION</u>**

1.     On March 24, 2015, the United States District Court for the Central District of California, in *Perfect 10, Inc. v. Giganews, Inc., et al.,* Case No. 2:11-cv-07098-AB-JPR (Honorable Andre Birotte, Jr., presiding) (the "Related Case"), entered judgment in favor of Plaintiffs Giganews and Livewire, and against Perfect 10, Inc. ("Perfect 10"), in the amount of $5,637,352.53, which represents an award of attorney's fees and costs based upon Plaintiffs' successful defense against Perfect 10's unmeritorious claims for copyright infringement.

2.     Perfect 10, through Norman Zada ("Zada") and in conspiracy with him, is a serial litigant that has filed over two dozen suits for copyright infringement.  In connection with those lawsuits, Defendants sought to extract settlements from businesses that otherwise would be forced to incur immense amounts of attorney's fees and costs in defending against Perfect 10's suits to final judgment on the merits.

3.     After the judgment in the Related Case, Perfect 10, through Zada, continued to send notifications of claimed infringement to online service providers including Google, and continued to litigate infringement claims in Germany against AOL, Inc.

4.     *As of now (over two years since the judgment), Perfect 10 has not voluntarily paid any amount of the judgment.*  Instead, Perfect 10, through the unlawful acts of Zada and in conspiracy with him, has avoided satisfaction of the judgment through a series of fraudulent transfers of Perfect 10's corporate assets to Zada's personal possession.  These transfers include, but are not limited to, transfers of Perfect 10's cash in the amount of approximately $1,750,000 to Zada's personal bank accounts and sale of substantially all of Perfect 10's physical assets

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

to Zada for less than their true value.  These illegal and fraudulent transfers began in or around early 2014.  Zada continues to operate Perfect 10's business while disregarding satisfaction of the judgment, as he personally pays Perfect 10's corporate expenses through his bank accounts using the unlawfully transferred monies in order avoid attachment.  Accordingly, the Court should hold Defendants liable for their unlawful transfers of assets.

## PARTIES

5.      Plaintiff Giganews is a Texas corporation with its principal place of business in Austin, Texas.  Giganews is a Usenet service provider and owns and operates several Usenet servers.  Usenet (or USENET) "'is an international collection of organizations and individuals (known as 'peers') whose computers connect to one another and [the peers] exchange messages posted by USENET users.'"  *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 663-664 (9th Cir. 2017), *quoting with approval Ellison v. Robertson,* 357 F.3d 1017, 1074, n.1 (9th Cir. 2004).  Persons gain access to USENET through a commercial USENET provider such as Giganews or an Internet service provider. *Perfect 10,* at 663, *citing with approval Arista Records, LLC v. Usenet.com, Inc.,* 633 F.Supp.2d 124, 130 (S.D.N.Y. 2009).  Giganews provides USENET access to its subscribers over the Internet for a fee.

6.      Plaintiff Livewire is a Nevada corporation with its principal place of business in Austin, Texas.  Livewire also provides USENET access to its subscribers over the Internet for a fee using Giganews servers.  Livewire does not own any USENET servers.

7.      Defendant Perfect 10 is a California corporation with its principal place of business at 11803 Norfield Ct., Los Angeles, California 90077.  Perfect 10 was the publisher of the adult magazine PERFECT 10, and it now operates an adult website at *perfect10.com*, which features images of nude and semi-nude female models.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8. Defendant Norman Zada, also known as Norm Zada, Norman Zadeh, Norm Zadeh, and Dr. Zada, is an individual who resides at 11803 Norfield Court, Los Angeles, California 90077, the same address as Perfect 10's principal place of business. Zada is the sole owner, President, and Chief Executive Officer of Perfect 10. Plaintiffs refer to both Perfect 10 and Zada as "Defendants" in this Complaint.

9. Plaintiffs do not know the true names and capacities of defendants, individuals or otherwise, whom they have sued under fictitious names as Does 1 through 50. Plaintiffs will amend this Complaint to allege the Doe defendants' true names and capacities when they have learned them.

10. Plaintiffs believe and therefore allege that each defendant, including Does 1 through 50, at all relevant times acted in concert with, and in conspiracy with, every one of the other defendants.

11. At all relevant times defendants, and each of them, were owners, co-owners, agents, representatives, partners, and/or alter egos of their co-defendants, or otherwise acting on behalf of every other defendant and acted within the course and scope of their authorities as owners, co-owners, agents, representatives, partners, and/or alter egos of their co-defendants, with the full knowledge, permission and consent of every other defendant, each co-defendant having ratified the acts of the other co-defendants.

12. Plaintiffs intend every reference to defendants or to any of them as a reference to all defendants, and to each of them named and unnamed, including all fictitiously named defendants, unless it specifically qualifies the reference.

## JURISDICTION AND VENUE

13. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and diversity exists among the parties.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendants reside in this judicial district and the events or omissions

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   giving rise to the claims occurred in this judicial district.

2   ## FACTS COMMON TO ALL CAUSES OF ACTION

3   15.   On April 28, 2011, Defendant Perfect 10 filed suit against Plaintiffs

4   Giganews and Livewire in the Related Case, alleging unmeritorious claims for

5   direct and indirect copyright infringement of Perfect 10's copyrighted adult content

6   images, trademark infringement, trademark dilution, unfair competition, and

7   publicity rights violations.  Exhibit 1 [Related Case, Dkt. 1] and Exhibit 2 [Related

8   Case, Dkt. 105] are the original complaint and the first amended complaint in the

9   Related Case.  Defendant Zada controlled, directed, and personally participated in

10   litigation of the Related Case.

11   16.   After considerable motion practice involving a docket with over

12   several hundred entries, only certain copyright claims for direct and indirect

13   infringement remained in the case.  [*See* Related Case, Dkts. 97 and 129.]  The

14   parties filed a total of seven competing motions for partial summary judgment

15   directed to these remaining claims.

16   17.   On November 14, 2014, Judge Birotte granted partial summary

17   judgment in favor of Giganews and Livewire on Perfect 10's claims for direct

18   copyright infringement, and partial summary judgment in favor of Giganews on

19   Perfect 10's claims for indirect copyright infringement, which, together with earlier

20   dismissal rulings, resolved all of Perfect 10's claims in favor of Plaintiffs.  Exhibit

21   3 [Related Case, Dkt. 619] and Exhibit 4 [Related Case, Dkt. 620] are copies of

22   those two orders.

23   18.   On November 26, 2014, the District Court entered final judgment in

24   favor of Giganews and Livewire on all of Perfect 10's claims.  Exhibit 5 [Related

25   Case, Dkt. 628] is a copy of the final judgment.  Key language stated:

26   The Court **GRANTS FINAL JUDGMENT** in favor of [Giganews and

27   Livewire] and against Perfect 10 as to all the claims by [Perfect 10] in the

28   case . . . .  The Court **DECLARES** that [Giganews and Livewire] did not

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

infringe any of Perfect 10's copyrights, either directly or indirectly, and thus are not liable for direct infringement, contributory infringement or vicarious infringement. The Court also **DECLARES** that [Giganews and Livewire] bear no liability to Perfect 10 for any asserted causes of action . . . . Giganews and Livewire may seek reimbursement of their reasonable attorney's fees to the extent allowed by 15 U.S.C. § 1117, 17 U.S.C. § 505, Cal. Civ. Code § 3344, or any other applicable law.

Exhibit 5 at 1:25-2:15 (emphasis in original).

19.     On March 24, 2015, the Court granted Plaintiffs' motion for attorney's fees and expenses, awarding Plaintiffs reasonable fees in the amount of $5,213,117.06, and costs in the amount of $424,235.47, for the total amount of $5,637,352.53.  Exhibit 6 [Related Case, Dkt. 686] is a copy of that order.  In it, the Court observed:

Perfect 10's undisputed conduct in this action has been inconsistent with a party interested in protecting its copyrights. All of the evidence before the Court demonstrates that Perfect 10 is in the business of litigation, not protecting its copyrights or "stimulat[ing] artistic creativity for the general public good."

Exhibit 6 at 17:15-20 (internal citations omitted).

*Rather than bringing suit for the purpose of protecting its copyrights and stimulating artistic creativity, the evidence reveals that Zada's interest in the copyrights held by his "tax write-off" is solely in litigation.*  In deposition, for example, Perfect 10's President and CEO Norma Zada testified that, to date, it has filed between 20 and 30 copyright infringement lawsuits.  In the life of the company, more than half of Perfect 10's revenues have been generated by litigation. *However, all of those revenues were generated by settlements and defaults – Perfect 10 has never obtained a judgment in a contested proceeding in any of its roughly two dozen copyright lawsuits.*

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Similarly, litigation expenses make up the largest share of Perfect 10's expenses, which are on par with, if not greater than, Perfect 10's personnel expenses.  In his capacity as President and CEO, Zada spends "eight hours a day," 365 days a year on litigation, "working on various court cases that [Perfect 10] ha[s] going on."  Indeed, Zada admitted that, in the past, Perfect 10 has expressly purchased copyrights from other copyright holders "because [Perfect 10] thought they would be helpful in [its] litigation efforts."

*Id.* at 18:23-19:1 (emphasis added) (internal citations omitted).

20.     Plaintiffs Giganews and Livewire believe and therefore allege that, beginning in early 2014, Zada caused Perfect 10 to begin unlawfully transferring Perfect 10's corporate assets to Zada in anticipation of unfavorable court rulings and a possible judgment against Perfect 10 for attorney's fees.  According to Perfect 10's General Ledger as of December 31, 2014 (Exhibit 7), Perfect 10, through Zada, made the following transfers of Perfect 10's cash to Zada on the following dates, *including a transfer to Zada of approximately $850,000 on November 20, 2014, approximately six (6) days after this Court granted summary judgment in favor of Plaintiffs on November 14, 2014*:

| <u>DATE OF TRANSFER TO ZADA</u> | <u>AMOUNT OF TRANSFER</u> |
|---|---|
| 01/03/14 | $200,000 |
| 03/10/14 | $50,000 |
| 03/19/14 | $100,000 |
| 05/14/14 | $100,000 |
| 05/28/14 | $100,000 |
| 07/08/14 | $150,000 |
| 09/04/14 | $100,000 |
| 10/07/14 | $100,000 |
| 11/20/14 | $850,000 |
| **Total:** | **$1,750,000** |

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21.    During his judgment debtor's examination on January 28, 2016, *Zada confessed that he caused the transfer of $850,000 from Perfect 10 to his personal bank account due to the "summary judgment orders":*

Q:    There's a withdrawal on November 20, 2014.  It's an online banking transfer CHK 0277 in the amount of $850,000.  Do you see that?

A:    Yes.

Q:    Is that to your personal account?

A:    Yes.

Q:    Do you share that account with anyone else?

A:    No.

Q:    That's a personal account you have at Bank of America?

A:    Correct.

Q:    At the same branch as your Perfect 10 account?

A:    I think it's the same branch.

Q:    What did that – what prompted that transfer of $850,000?

A:    Well, I had been – you know, we had gotten a significant amount of settlements in 2014.  We had a settlement of $1.1 million in, I believe, June.  I was entitled to that money.  *And after the summary judgment orders were issued, I did not see any point in keeping more cash than we needed in the account.*

Exhibit 8 at 150:15-151:12 (emphasis added).

22.    As discussed above, the Court issued the attorney's fee award on March 24, 2015.  Zada and Perfect 10 immediately took steps to shield Perfect 10 assets from a judgment.  That *same day*, Perfect 10 and Zada resolved to transfer its computer servers, external hard drives, furniture, and other office items to Zada to avoid "disruption" from an adverse judgment.

23.    Three days later, on March 27, 2015, Zada and Perfect 10 transferred

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

$454,002.05 to Eric Benink and the law firm of Krause, Kaflayan, Benink & Slavens, LLP. The transfer was not for services rendered, but rather to "protect" such funds from the adverse judgment against Perfect 10, which at that time potentially also included a separate sanctions order against Perfect 10's attorneys.

24. A few days later, on April 1, 2015, Perfect 10 and Zada resolved to transfer substantially all of Perfect 10's remaining physical assets to Zada in a sham transaction for inadequate consideration. *Id.* at 87:22-93:11; 109:25-110:4. These assets include, but are not limited to, Perfect 10's car, furniture, magazines, computer servers, external hard drives, and t-shirts and all other real assets. *See id.* at 88:13-19.

25. Zada admitted that he caused Perfect 10 to make the transfers because "it would have been totally disruptive to have those [assets] seized" in satisfaction of the judgment. *Id.* at 110:5-111:5.

26. The physical asset transfers were for inadequate consideration for at least the reasons that:

    a. Zada purported to pay a total of $70,000, in two separate transfers of $20,000 and $50,000. However, after making such payments, Zada continued freely transferring cash between Perfect 10 and himself, making those payments illusory; and

    b. Plaintiffs believe and therefore allege that the value of the assets transferred exceeded the $70,000 that Zada paid for them.

27. On April 4, 2015, eleven days after the Court entered the attorney's fees award, and after taking the above steps to insulate Perfect 10's cash and assets from the judgment, Perfect 10 and Zada offered to settle the litigation by paying $2 million in cash along with illusory future contingent rights to foreclose on Zada's residence and office, but reserving the right to appeal the judgment.

28. Zada and Perfect 10 have represented to this Court that as of the date of the settlement offer: "Dr. Zada and Perfect 10 did not have the funds to pay the

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

full amount [of the judgment] in cash," and "Dr. Zada and Perfect 10 did the best they could do given the limited amount of cash they had available." [Dkt. 12 at 9:17-20.]

29.     These representations were false and fraudulent, in furtherance of Zada and Perfect 10's ongoing attempt to hinder collection of the judgment.  On information and belief, Zada did not possess a "limited" amount of cash, but instead possessed sufficient cash and other assets to pay the judgment in full, including the cash fraudulently transferred from Perfect 10.

30.     As set forth above, Perfect 10 and Zada have directly admitted through testimony and corporate records that the transfers were in anticipation of, and to avoid enforcement of, the Court's judgment and the "disruption" caused thereby. The transfers were also made to hinder Perfect 10 creditors generally, as Perfect 10 lacked the ability to pay its creditors without Zada contributing back some portion of the fraudulently transferred funds.

31.     Perfect 10 continues to operate much as it has in the past.  It still offers for sale the magazines and t-shirts that Zada purchased; when a customer expresses interest, Zada simply "gives" those assets back to Perfect 10 to complete the sale. *Id.* at 88:2-8; 103:9-19.  The Perfect 10 web site still operates and appears to be set up to accept new subscriptions

32.     Zada has sent new notices of claimed infringement under the Digital Millennium Copyright Act ("DMCA") on behalf of Perfect 10 to online service providers, and it has continued to pursue Perfect 10's copyright litigation against AOL in Germany. *Id.* at 55:18-21; 65:25-66:5.

33.     On July 16, 2015, Perfect 10's office manager and paralegal, Melanie Poblete, wrote in an email to Bruce Hersh, the CPA for Perfect 10, that "Perfect 10 has a $5M judgment against it now and so we probably need to reallocate how we pay things. When are you free to talk to [Zada] and me?"  Exhibit 9 is a copy of that email.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

34.     During Poblete's deposition on December 6, 2016, she admitted that Zada began personally paying Perfect 10's corporate expenses, ostensibly with the unlawfully transferred funds, in order to avoid attachment:

> **Q:**     And it appears that you say, "Norm is very concerned about the utilities being paid by Perfect 10 now that there's a judgment against Perfect 10.  Should the utilities be paid by Norman Zada? What do you recall about Mr. Zada's concerns about the judgment lien against Perfect 10?
>
> **A:**     *What I remember is that Norm was worried that Perfect 10 shouldn't be paying anything because there was a judgment against it and money that came in should be given over* . . . Dr. Zada pays it because he doesn't want there to be any kind of, you know, speculation that Perfect 10 is somehow, you know, paying something it shouldn't when there's a judgment against it.

Exhibit 10, at 121:21-122:13 (emphasis added).

> **Q:**     You said in [your July 16, 2015, email sent to Bruce Hersh], 'Perfect 10 has a $5 million judgment against it now and we probably need to reallocate how we pay things.' Is that your belief at the time?
>
> **A:**     *I think this has to do with what I said earlier, that Norm Zada wanted to make sure that Perfect 10 wasn't paying bills with money that should go towards the judgment.*

*Id.,* at 136:12-19 (emphasis added).

35.     Furthermore, Poblete admitted that "nothing" had changed at Perfect 10's office after Perfect 10 transferred substantially all of its physical assets to Zada. *Id.* at 30:4-31:10.  The office furniture and computers remain in the same room as when Perfect 10 owned them, and they are still used for Perfect 10's business. *Id.*

FIRST AMENDED COMPLAINT                    10                    CASE NO. 2:17-cv-05075-AB (JPR)

**FIRST CAUSE OF ACTION**

**Violation of Uniform Fraudulent Transfer Act for Actual Fraudulent Transfer Pursuant to California Civil Code § 3439(a)(1)**

**(AGAINST ALL DEFENDANTS AND EACH OF THEM)**

36.     Plaintiffs incorporate by reference and re-allege here all the preceding paragraphs.

37.     California Civil Code § 3439.04(a) states as follows:

A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:

 (1) With actual intent to hinder, delay, or defraud any creditor of the debtor.

38.     Beginning in early 2014, Perfect 10, through Zada and in conspiracy with him, began unlawfully transferring Perfect 10's corporate assets to Zada as it became reasonably apparent that Perfect 10 would be ultimately be held liable for Plaintiffs' attorney's fees and costs in defeating Perfect 10's unmeritorious suit.  In total, between January 3, 2014, and November 20, 2014, Perfect 10, through Zada and in conspiracy with him, transferred to Zada approximately $1,750,000 of Perfect 10's cash in order to hinder or delay creditors of Perfect 10, including avoiding satisfaction of the judgment and attachment of such assets.  On or around March 2015, Perfect 10 also transferred substantially all of its physical assets to Zada, including but not limited to Perfect 10's car, furniture, magazines, computer servers, external hard drives, and t-shirts, in order to avoid satisfaction of the judgment and attachment of such assets.

39.     Zada continues to operate Perfect 10's business while disregarding satisfaction of the judgment due to Plaintiffs of $5,637,352.53, (representing an award of Plaintiffs' attorney's fees and costs incurred in its successful defense of

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Perfect 10's infringement claims on the merits), plus accruing interest on that amount, as he personally pays Perfect 10's corporate expenses through his bank accounts using the unlawfully transferred monies in order avoid satisfaction of the judgment and attachment of such assets.  Furthermore, Perfect 10 continues to use and physically possess the unlawfully transferred physical assets that Zada now owns, including but not limited to computers and office furniture.

40.    The transfers from Perfect 10 to Zada also bear the "badges of fraud" that California Civil Code 3439.04(b)) recognizes as indicating that particular transfers of assets were made with the intent to "hinder, delay or defraud" creditors. These include but are not limited to the facts that: (1) the transfers from Perfect 10 to Zada were to an insider;  (2) at its offices Perfect 10 continues to retain physical possession and control of the unlawfully transferred assets that are nominally owned by Zada; (3) the transfers happened when it became reasonably apparent that a large judgment would be entered against Perfect 10 as a result of its unmeritorious and unsuccessful suit for copyright infringement; (4) the cash transfers were for substantially all of Perfect 10's liquid funds; (5) the non-cash transfers were substantially all of Perfect 10's physical assets; (6) Perfect 10 received no reasonably equivalent consideration in exchange for these transfers; and (7) Perfect 10 was practically insolvent as a result of these transfers (with Zada then personally paying Perfect 10's corporate expenses with the unlawfully transferred funds in order to avoid attachment).

41.    Defendants' unlawful conduct was a substantial factor in harming Plaintiffs.  As a consequence, Plaintiffs are entitled to a judgment against Defendants, and each of them, in the sum of the unlawfully transferred amounts of at least $1,750,000, or in an amount to be proven at trial, together with interest on that amount at the legal rate of 10% per annum from and after March 24, 2015. Plaintiffs are also entitled to avoidance of the transfers to Zada to the extent they necessary to satisfy Plaintiffs' claims, or any other relief the circumstances may

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

require against Defendants, including but not limited to an accounting of all profits earned by Defendants from or in connection with the unlawfully transferred assets.

42.    Oppression, fraud, and malice characterized Defendants' behavior with respect to the transfers and other conduct at issue.  Defendants' unlawful transfer of Perfect 10's corporate assets to Zada in order to evade attachment and satisfaction of the judgment makes it clear that Defendants intended to harm Plaintiffs and subject Plaintiffs to a cruel and unjust hardship in conscious disregard of Plaintiffs' rights, justifying an award of punitive and exemplary damages against Defendants.

43.    To the extent there have been any fraudulent transfers of Perfect 10's corporate assets to Zada or any other person or entity, and any transfer of unlawfully retained assets by Zada to any other person or entity, which took place on or after January 1, 2016 (the effective date of enactment of the Uniform Voidable Transfer Act), which unlawful transfers may become apparent during discovery in this action, Plaintiffs will seek leave of this Court to amend this Complaint to add additional causes of action under that Act.

## SECOND CAUSE OF ACTION

### Violation of Uniform Fraudulent Transfer Act for Constructive Fraudulent Transfer Pursuant to California Civil Code § 3439(a)(2)(B)

### (AGAINST ALL DEFENDANTS AND EACH OF THEM)

44.    Plaintiffs incorporate by reference and re-allege here all preceding paragraphs.

45.    California Civil Code § 3439.04(a) states as follows:

A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:

(2) With receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor . . . .  (B) Intended to incur, or

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   believed or reasonably should have believed that the debtor would

2   incur, debts beyond the debtor's ability to pay as they became due.

3   46.   Beginning in early 2014, Perfect 10, through Zada and in conspiracy

4   with him, began unlawfully transferring Perfect 10's corporate assets to Zada.  In

5   total, between January 3, 2014, and November 20, 2014, Perfect 10 transferred to

6   Zada approximately $1,750,000 of Perfect 10's cash.

7   47.   In its tax filing for 2014, Perfect 10 reported ordinary income of

8   $1,335,866, yet it reported that it made a distribution (evidently to Zada) of

9   $1,496,886 and a loan payment (presumably to Zada) of $266,863.  In that tax

10  filing it also reported current assets at the end of the year of approximately

11  $390,000; it had spent $645,000 in legal fees the previous year, which fees were

12  continuing into 2015, and it showed an accumulated adjustments account of *minus*

13  $51,737,929, showing the company to be deeper in the hole at the end of the year

14  than in the beginning of the year.

15  48.   Plaintiffs believe, and therefore allege, that Perfect 10 made no profit

16  and incurred substantial losses in early 2015 as it faced a catastrophic ruin in its

17  litigation enterprise.

18  49.   On or around March 27, 2015, Perfect 10 transferred to Eric Benink in

19  excess of $450,000 of Perfect 10's cash.  That transfer was without a reasonably

20  equivalent value in exchange because Perfect 10 received no goods, services, or

21  other valuable consideration in exchange for it.  Plaintiffs believe, and therefore

22  allege, that Perfect 10 and Zada wanted to protect Perfect 10's attorney against the

23  judgment and a sanctions order that they expected.  When the Court ruled that the

24  sanctions order was moot, Benink returned the money to Perfect 10, which

25  proceeded to dissipate the funds, primarily to Zada.

26  50.   Around the same time, in March 2015, Perfect 10 also transferred

27  substantially all of its physical assets to Zada.  In the words of its office manager

28  and paralegal, Mr. Zada told her "something about how he bought everything from

Perfect 10." That included Perfect 10's automobile, all its office equipment including multiple computers used by at least six persons (with up to three computers for one person) and a whole data storage facility; all its furniture in the 6-bedroom, 7000 square foot house that Perfect 10 used as its headquarters; and all its inventory of merchandise, including magazines, videos, calendars, and t-shirts.

51.    Perfect 10's tax return for 2014 showed an inventory of photographic equipment, furniture and equipment, and computer equipment with an original cost of $555,464.  Even taking into account declines in value owing to age and wear and tear, Plaintiffs believe and therefore allege that the value by 2015 was at least $100,000.

52.    In addition, Zada recalled Perfect 10's inventory of magazines as including up to 4000 copies.  At the time Perfect 10 offered back issues of its magazines at prices of $10, $15, or $30 per copy on its website and video DVDs at prices of $10 to $18.  eBay sellers offer used copies of Perfect 10 magazines at prices up to $17.99 and new (wrapped) copies at prices up to $39.99.  Based on these figures, Plaintiffs believe and therefore allege that the retail value of the materials was at least $50,000 and the wholesale value was at least $25,000.

53.    Perfect 10 did not get an independent appraisal of the value of the transferred assets and did not document the sale with a detailed bill of sale.  Taking into account all of the assets, Plaintiffs believe and therefore allege that the transfers were without a reasonably equivalent value in exchange, as set forth above.

54.    Perfect 10 and Zada reasonably believed or should have reasonably believed that Perfect 10 would be ultimately liable for Plaintiffs' attorney's fees and costs in the millions of dollars that they incurred in defeating Perfect 10's unmeritorious suit.

55.    Perfect 10 and Zada also reasonably believed or should have reasonably believed that Perfect 10 would continue to incur debts that it would not

1    be able to pay on its own without expenditure of Zada's personal funds.

2        56.    Perfect 10, through Zada, continues to operate its business while

3    disregarding satisfaction of the judgment due to Plaintiffs, as Zada personally pays

4    Perfect 10's corporate expenses through his bank accounts using the unlawfully

5    transferred monies in order to avoid satisfaction of the judgment and attachment of

6    assets.  Furthermore, Perfect 10 continues to use and possess the unlawfully

7    transferred physical assets that Zada now nominally owns, including but not limited

8    to computers and office furniture.

9        57.    Defendants' conduct was a substantial factor in harming Plaintiffs.  As

10   a consequence, Plaintiffs are entitled to a judgment against Defendants, and each of

11   them, in the sum of the unlawfully transferred amounts of at least $2,204,002, or in

12   an amount to be proven at trial, together with interest on that sum at the legal rate of

13   10% per annum from and after March 24, 2015.  Plaintiffs are also entitled to

14   avoidance of the transfers to Zada to the extent necessary to satisfy Plaintiffs'

15   claims, or any other relief the circumstances may require against Defendants,

16   including but not limited to an accounting of all profits earned by Defendants from

17   or in connection with the unlawfully transferred assets.

18       58.    Oppression, fraud, and malice characterized Defendants' behavior with

19   respect to the transfers and other conduct at issue.  Defendants' unlawful transfer of

20   Perfect 10's corporate assets to Zada in order evade attachment and satisfaction of

21   the judgment makes it clear that Defendants intended to harm Plaintiffs and subject

22   Plaintiffs to a cruel and unjust hardship in conscious disregard of Plaintiffs' rights,

23   justifying an award of punitive and exemplary damages against Defendants.

24       59.    To the extent there have been any fraudulent transfers of Perfect 10's

25   corporate assets to Zada or any other person or entity, and any transfer of

26   unlawfully retained assets by Zada to any other person or entity, which took place

27   on or after January 1, 2016, the effective date of enactment of the Uniform

28   Voidable Transfer Act, which unlawful transfers may be revealed during discovery

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

in this action, Plaintiffs will seek leave of this Court to amend this Complaint to add additional causes of action under that Act.

### THIRD CAUSE OF ACTION

**Fraudulent Conveyance of Personal Property Without Delivery in Violation of California Civil Code § 3440**

**(AGAINST ALL DEFENDANTS AND EACH OF THEM)**

60.     Plaintiffs incorporate by reference and re-allege here all preceding paragraphs.

61.     According to California Civil Code §3440, "every transfer of personal property made by a person having at the time the possession of the property, and not accompanied by  an immediate delivery followed by  an actual and continued change of possession of property, is void as against the transferor's creditors (secured or unsecured) at the time of the transfer …."

62.     As described above, Poblete admitted that "nothing" had changed at Perfect 10's office after Perfect 10 transferred substantially all of its physical assets to Zada.  *Id.* at 30:4-31:10.  The office furniture and computers remain in the same room as when Perfect 10 owned them, and they are still used for Perfect 10's business.  *Id.*

63.     Thus, the physical assets, i.e. personal property, transferred by Perfect 10 to Zada where no delivery or physical change of possession took place are void transfers as against the claims of Plaintiffs.

64.     Perfect 10, through Zada, continues to operate its business while disregarding satisfaction of the judgment due to Plaintiffs, as Zada personally pays Perfect 10's corporate expenses through his bank accounts using the unlawfully transferred monies in order to avoid satisfaction of the judgment and attachment of assets.  Furthermore, Perfect 10 continues to use and possess the unlawfully transferred physical assets that Zada now nominally owns, including but not limited to computers and office furniture.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

65.     Defendants' conduct was a substantial factor in harming Plaintiffs.  As a consequence, Plaintiffs are entitled to a judgment against Defendants, and each of them, in an amount to be proven at trial, together with interest on that sum at the legal rate of 10% per annum from and after March 24, 2015.

66.     Defendants' conduct has also caused Plaintiffs irreparable injury. Unless restrained and enjoined, the Defendants will continue to commit similar acts, including potential further fraudulent conveyances of Perfect 10 physical property.  Damages are not adequate to compensate Plaintiffs for these actual and threatened injuries.

67.     Plaintiffs are also entitled to avoidance of the transfers to Zada to the extent necessary to satisfy Plaintiffs' claims, or any other relief the circumstances may require against Defendants, including but not limited to an accounting of all profits earned by Defendants from or in connection with the unlawfully transferred assets.

68.     By reason of the fraudulent and otherwise wrongful manner in which Zada obtained the alleged right, claim or interest in and to the property, Zada has no legal or equitable right, claim or interest therein, but, instead is an involuntary trustee holding said property and profits therefrom in constructive trust for the Plaintiffs with the duty to convey the same to Plaintiffs forthwith.

69.     Oppression, fraud, and malice characterized Defendants' behavior with respect to the transfers and other conduct at issue.  Defendants' unlawful transfer of Perfect 10's corporate assets to Zada in order evade attachment and satisfaction of the judgment makes it clear that Defendants intended to harm Plaintiffs and subject Plaintiffs to a cruel and unjust hardship in conscious disregard of Plaintiffs' rights, justifying an award of punitive and exemplary damages against Defendants.

70.     To the extent there have been any fraudulent transfers of Perfect 10's corporate assets to Zada or any other person or entity, and any transfer of unlawfully retained assets by Zada to any other person or entity, which took place

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   on or after January 1, 2016, the effective date of enactment of the Uniform

2   Voidable Transfer Act, which unlawful transfers may be revealed during discovery

3   in this action, Plaintiffs will seek leave of this Court to amend this Complaint to add

4   additional causes of action under that Act.

5   ### PRAYER FOR RELIEF

6       WHEREFORE, Plaintiffs pray for relief on each cause of action as follows:

7       1.    That the Court award Plaintiffs such preliminary injunctive and

8   ancillary relief as may be necessary to avert the likelihood of Plaintiffs' irreparable

9   injury during the pendency of this action and to preserve the possibility of effective

10  final relief, including, but not limited to, a temporary restraining order, a

11  preliminary injunction, an order freezing assets of the Defendants, writs of

12  possession and/or attachment.

13      2.    That the Court enjoin Perfect 10 from further transferring or disposing

14  of any assets of any type, including but not limited to cash, personal property, real

15  property and/or intangible property to Zada, or his employees, representatives,

16  attorneys and agents, and/or anyone acting on his behalf or in conspiracy with him,

17  and enjoining and restraining Zada from transferring, conveying, assigning,

18  encumbering, hypothecating or otherwise disposing of any of the unlawfully

19  transferred assets to any other person or entity.

20      3.    That the Court declare that all defendants, and each of them, including

21  but not limited to Defendants Perfect 10 and Zada; their employees, representatives,

22  attorneys and agents; and/or anyone acting on their behalf hold the unlawfully

23  transferred assets in trust for Plaintiffs.

24      4.    That the Court grant Plaintiffs against all defendants jointly and

25  severally a judgment for the value of the assets Perfect 10 unlawfully transferred,

26  including but not limited to unlawfully transferred assets not yet discovered, equal

27  to the value at the time of the transfer, subject to adjustment as the equities may

28  require, or in an amount to be proved at trial, but in no event less than the sum of

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

$2,204,002, plus interest accruing on that sum at the legal rate of 10% per annum from and after March 24, 2015.

5. That the Court order all defendants, and each of them, to account to Plaintiffs for all profits and proceeds from or in connection with the unlawfully transferred assets, including unlawfully transferred assets not yet discovered.

6. That the Court award Plaintiffs punitive and exemplary damages from all defendants jointly and severally in the amount of $20,000,000, or in such other amount that the Court determines to bear a reasonable relationship to Plaintiffs' actual damages and does not otherwise violate the requirements of due process.

7. That the Court award Plaintiffs their attorney's fees against all defendants jointly and severally pursuant to, and including but not limited to, California Code of Civil Procedure § 685.040.

8. That the Court award Plaintiffs costs of suit against all defendants jointly and severally.

9. That the Court grant any other relief that it considers just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a jury trial.


Dated: December 18, 2017          Respectfully submitted,

**FENWICK & WEST LLP**

By:     */s/Andrew P. Bridges*
          Andrew P. Bridges


**RONALD P. SLATES P.C.**


By:     */s/Ronald P. Slates*
          Ronald P. Slates

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Attorneys for Plaintiffs/Judgment Creditors,
2    GIGANEWS, INC., and LIVEWIRE
     SERVICES, INC.
3

4

5                **ATTESTATION OF SIGNATURES**

6        I hereby attest that the concurrence in the filing of this document has been

7    obtained from the signatory indicated by a "conformed" signature (/s/) within this

8    e-filed document.

9

10                      By: */s/Andrew P. Bridges*
                            Andrew P. Bridges
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28