Matthew C. Mickelson (S.B.N. 203867)
**LAW OFFICES OF MATTHEW C. MICKELSON**
16055 Ventura Boulevard, Ste. 1230
Encino, CA 91436
818-382-3360

Attorney for Defendants PERFECT 10, INC.
and NORMAN ZADA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIGANEWS, INC., a Texas corporation; LIVEWIRE SERVICES, INC., a Nevada corporation,<br><br>Plaintiffs,<br><br>v.<br><br>PERFECT 10, INC., a California corporation, NORMAN ZADA, an individual, and DOES 1-50, inclusive<br><br>Defendants. | Case No.: 2:17-cv-05075-AB (JPR)<br><br>***Before Honorable André Birotte, Jr.***<br><br>**DEFENDANTS PERFECT 10, INC'S AND NORMAN ZADA'S NOTICE OF MOTION AND MOTION UNDER RULE 12(C) FOR JUDGMENT ON THE PLEADINGS; REQUEST FOR JUDICIAL NOTICE IN SUPPORT THEREOF; [PROPOSED] ORDER**<br><br>[*Request to Take Judicial Notice Filed Separately Herewith*]<br><br>Date:        March 2, 2018<br>Time:        10:00 a.m.<br>Courtroom:  7B,  350 West First Street,<br>                  Los Angeles, CA  90012 |

DEFENDANTS' RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that at 10:00 a.m. on March 2, 2018, or as soon thereafter as this matter may be heard, in Courtroom 7B of the United States District Court for the Central District of California, located at 350 West First Street, Los Angeles, CA 90012, Defendants Perfect 10, Inc. and Norman Zada will move to dismiss the First Amended Complaint ("FAC") against them pursuant to Federal Rule of Civil Procedure 12(c), in light of new factual allegations made in the FAC, and in light of recent arrests of multiple Usenet operators. The FAC's new facts and the arrests completely change the factual landscape. Specifically, Defendants' offer of full payment days after the judgement was entered is now in the factual record and destroys the plausibility of both the first and second causes of actions. *See, e.g.*, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556-557 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 682 (2009). Also, recent arrests of multiple Usenet operators around the globe makes Plaintiffs' key allegation that Perfect 10 knew it would lose the case as early as January 3, 2014, implausible to the extreme. The third cause of action must be dismissed because it violates F.R.C.P. 15, and is untimely.

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Request for Judicial Notice, on the papers and records on file herein, and on such oral and documentary evidence as may be presented at the time of the hearing.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on January 17, 2018.

DATED:  February 2, 2018            LAW OFFICES OF MATTHEW C. MICKELSON

By: _/s/ Matthew C. Mickelson_
MATTHEW C. MICKELSON
Attorney for Defendants Perfect 10, Inc.
and NORMAN ZADA

# TABLE OF CONTENTS

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ............................... 1

II.    STATEMENT OF FACTS ................................................................................. 4

III.   ARGUMENT .................................................................................................... 5

    A.    Legal Standard On Motions For Judgment on the Pleadings
          Under Rule 12(c) of the Federal Rules of Civil Procedure.................... 5

    B.    Plaintiffs Have Failed to Offer Sufficient Facts To Substantiate
          the Required Elements of Their Second Cause of Action. ..................... 6

    C.    The Allegations of the Complaint Are Rendered Implausible By
          The New Factual Assertions in the FAC. ............................................. 11

          1.    Defendants' Offer, Made Days After the Fee Judgment, to
                Pay Plaintiffs More Cash Than Was Transferred to Dr. Zada,
                Eviscerates Plaintiffs' Claims of Actual Fraudulent Intent. ....... 12

          2.    Defendants' Offer Days After the Judgment to Pay Plaintiffs
                 More Cash Than Was Previously Transferred Negates
                Plaintiffs Claims of Constructive Fraudulent Intent.................. 14

          3.    The Known Facts Support the Innocent Explanation for
                The Transfers. .............................................................................. 15

    D.    The Entire FAC Must Be Dismissed On The Grounds of
          Collateral Estoppel. ............................................................................. 20

    E.    The Third Cause of Action Must Be Dismissed Because Plaintiffs
          Have Not Sought Leave to Amend Their Complaint to Add Such
          A Cause of Action ................................................................................ 22

IV.    CONCLUSION ............................................................................................... 24

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
DEFENDANTS' RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Arista Records LLC v. Usenet.com, Inc.*
   633 F.Supp.2d 124 (S.D.N.Y. 2009) ....................................................................... 17

4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................ 6, 11, 12

5

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) ................................................ 6, 11, 12

6

*Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585 (8th Cir. 2009) ............................... 12

7

8

*Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*
   637 F.3d 1047 (9th Cir. 2011) ...................................................................................... 5

9

*Coto Settlement v. Eisenberg,*  593 F.3d 1031 (9th Cir. 2010) ................................... 5

10

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*
   751 F.3d 990 (9th Cir. 2014) ..................................................................................... 12

11

12

*Erickson v. Boston Scientific Corp.* 846 F.Supp.2d 1085 (CD CA 2011) ................... 5

13

*Fantasy, Inc. v. Fogerty,* 94 F.3d 553 (9th Cir. 1996) ............................................... 16

14

*Fidelity Nat'l Title Ins. Co. v. Schroeder*  179 Cal.App.4th 834 (2009) .................... 13

15

16

*Galbraith v. County of Santa Clara* 307 F.3d 1119 (9th Cir. 2002) .......................... 9

17

*Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112 (9th Cir. 2014) ................ 12

18

19

*Harris v. Amgen, Inc.* 788 F.3d 916  (9th Cir. 2015) ................................................. 23

20

*Hilao v. Estate of Marcos*, 393 F.3d 987 (9th Cir. 2004) .......................................... 21

21

*In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104 (9th Cir. 2013) ................. 12

22

*Mattel, Inc. v. MGA Entertainment, Inc.*, 2011 WL 3420603
   (C.D. Cal. Aug 04, 2011) ........................................................................................... 16

23

24

*Mattel, Inc. v. Walking Mountain Prods*, 2004 WL 1454100
   (C.D.Cal. June 21, 2004) ........................................................................................... 16

25

26

*Mehrtash v. Mehrtash,*  93 Cal.App.4th 75 (2001) ................................................... 13

27

*Perfect 10, Inc. v. GUBA, LLC*, 2002 WL 34940074
   (N.D. Cal. Dec. 30, 2002) .......................................................................................... 17

28

ii                          Case No.: 2:17-cv-05075-AB (JPR)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
DEFENDANTS' RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS

*Rubtsov v. Los Angeles Cty. Dep't of Children & Family Servs.*,
2015 WL 2227801 (C.D. Cal. May 12, 2015) ........................................................ 23

*Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005 (9th Cir. 2012)...................... 5

*Strom v. United States,* 641 F.3d 1051 (9th Cir. 2011) ................................................ 5

*United States v. Crawford*, 372 F.3d 1048 (9th Cir. 2004) ....................................... 21

*Valadez-Lopez v. Chertoff*, 656 F.3d 851 (9th Cir. 2011) ........................................ 11

*Von Saher v. Norton Simon Museum of Art at Pasadena*
592 F.3d 954 (9th Cir. 2010)........................................................................... 23

## Statutes

Cal. Civil Code § 3439.04(a)(1) ...................................................................... 4, 13, 14

Code of Civ. Prod. § 3440 ............................................................................... 3, 4, 23

F.R.C.P. 8(a)(2).......................................................................................................... 6

F.R.C.P. 12(b) ................................................................................................... passim

F.R.C.P. 15(a)(1)(B) ............................................................................................ 4, 22

F.R.C.P. 26(c) ............................................................................................................ 5

Uniform Voidable Transactions Act................................................................... 13, 14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
DEFENDANTS' RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS

1

# I.    INTRODUCTION AND SUMMARY OF ARGUMENT

2

3          In an effort to cure the deficiencies in their initial Complaint, Plaintiffs have

4    added a number of new factual allegations to their First Amended Complaint

5    ("FAC.")  Instead of salvaging their claims, however, these additional allegations

6    eviscerate each and every one of Plaintiffs' causes of action.  The most damaging

7    new fact is Plaintiffs' admission that they were offered $2 million in cash as part of

8    an offer to pay the judgment in full, days after the judgment was entered.

9          The Court previously elected not to rule on whether such an offer made

10   Plaintiffs' claims implausible, presumably because it was not among Plaintiffs'

11   original factual allegations.   Now that Plaintiffs have admitted the offer's existence,

12   however, it makes each allegation of fraud completely implausible.  The argument is

13   simple -- parties attempting to prevent a debtor from being paid do not offer the

14   debtor full payment once the judgement is entered.  The $2 million cash portion of

15   the offer exceeds the $1,750,000 Plaintiffs claim was illegally removed, and ruins

16   their contention that Perfect 10 was unable to pay that money back, a necessary part

17   of a claim of constructive fraud.   Under Plaintiffs' new set of facts, Perfect 10 clearly

18   had the ability to pay the money back because it offered to pay the money back, in

     fact, it offered to pay the entire judgment.

19         Secondly, there have been two recent raids and arrests of Usenet Operators.

20   The first occurred in March of 2016 and the most recent occurred in late 2017.  In the

21   most recent raid, at least 42 individuals were arrested for operating Usenet sites with

22   servers in Canada, Germany, the Netherlands, Spain, and Switzerland.  Along with

23   other judicially-recognizable facts detailed in this Motion, this new fact destroys

24   Plaintiffs' completely unsupported and key allegation that it "became reasonably

25   apparent that a large judgment would be entered against Perfect 10" (FAC ¶40) as far

26   back as January 3, 2014.  Obviously, if Usenet Operators in other jurisdictions are

27   arrested for conduct similar to that of Giganews, and no Usenet Operator had ever

28   previously won a case in the United, States, it could not have been "reasonably

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
DEFENDANTS' RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS

1   apparent" that Giganews would win here, let alone receive a massive fee award.

2          The case before this court is not the typical fraudulent transfer case where the

3   defendant made a business of stiffing contractors or stealing from clients, as in the

4   case of Bernie Madoff.  In a typical fraudulent transfer case, after misappropriating

5   funds, the thief or villain gets sued, and, realizing he will have to pay the

6   misappropriated funds back, transfers the misappropriated funds to a relative, friend

7   or spouse in order to prevent the injured parties from getting any portion of their

8   stolen money back.

9          Plaintiffs have alleged no such facts.  Perfect 10 did not borrow money from

10  Plaintiffs and refuse to return it, or steal money from Plaintiffs.  This case began

11  because Plaintiffs copied and sold Defendants' content without permission or

12  payment.  Perfect 10 was certain it would win because it had won a similar case

13  against Usenet Operator GUBA in 2002, because the Recording Industry Association

14  of America ("RIAA") had won a similar case in 2009, and because there are

15  prohibitions in this country against exploiting other people's property without

16  permission.[1]  And while Perfect 10 can list many reasons why it expected to win,

17  Plaintiffs *provide no facts whatsoever* as to why Perfect 10 expected to lose far back

18  as January 3, 2014, an integral part of their allegations.  See Section III.B.3 below.

19          With regard to Plaintiffs' Second Cause of Action for constructive fraudulent

20  _____

21  [1] Perfect 10's view of Plaintiffs as simply thieves of intellectual property was shared
    by both the RIAA and the Motion Picture Association of America ("MPAA"), who
22  filed Amicus Briefs before the Ninth Circuit in support of Perfect 10's arguments.  In
    its Amicus brief (Case: 15-55500, Dkt. Entry 28, filed 12/23/2015, the RIAA
23  described Plaintiffs as "shady companies" engaged in "blatant copyright
    infringement."  *See* Defendants' Request for Judicial Notice ("RNJ" Exh. 5, p. 14.
24  The RIAA presented multiple reasons why it believed that Plaintiffs should have
    been held liable for copyright infringement.  *Id*. pp. 7-13.  In other words, it wasn't
25  just Perfect 10 who expected to win, the respected legal arms of both the movie and
    recording industries expected Plaintiffs to be found liable as well.  And now, with the
26  arrests overseas, European authorities clearly view the Usenet practice of copying
27  and selling access to unlicensed copyrighted works illegal as well.
28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
DEFENDANTS' RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS

1  transfer, Plaintiffs throw out a few numbers bearing on Perfect 10's profitability in

2  2014.  If anything, such allegations of Perfect 10 profitability harm Plaintiffs' claims

3  that Perfect 10 would be unable to pay a debt of $1.75 million, should it happen to

4  occur.  And these figures have nothing – zero – to do with whether or not the cash

5  transfers to Dr. Zada were made without receiving equivalent value.  A reader will

6  search in vain through the entire FAC to find any actual fact, rather than a conclusory

7  assertion, supporting the contention that the transfers were not reciprocated with

8  equivalent value.

9      Similarly useless are the FAC's factual allegations regarding the transfer of

10  Perfect 10's physical property to Dr. Zada.  Indeed, here Plaintiffs make allegations

11  that they know to be false.  They continue to contend that Perfect 10 unlawfully

12  transferred the 2009 Lexus to Dr. Zada when they have been sent its pink slip which

13  shows that Dr. Zada actually owned the car when he mistakenly paid Perfect 10 for it.

14  With this new fact, Plaintiffs have no basis to assert that $70,000 was an insufficient

15  amount for a few beds, computers, a desk, and 4000 magazines that *retailed* for $6.99

16  each.  See Section III.A below.

17      Additionally, Defendants request that the Court revisit its ruling on collateral

18  estoppel with respect to the FAC, because at least $5 million in transfers were in the

19  record before the Ninth Circuit, including *several of the transfers at issue here*.  The

20  Ninth Circuit's finding that none of those transfers were done in bad faith, is

21  preclusive with respect to at least those transfers, in our view.    See Section III.C

22  below.

23      Finally, Plaintiffs have sneaked in a new third cause of action for fraudulent

24  conveyance of personal property without delivery (Code of Civ. Prod. § 3440.)  They

25  did not request leave to amend their original Complaint to add this new claim; the

26  Court only gave them leave to amend the Second Cause of Action.  The Court should

27  therefore dismiss this cause of action because it was added more than 21 days after

28  Defendants served the Motion to Dismiss, without leave of Court. (See F.R.C.P.

15(a)(1)(B).)  Moreover, it is time-barred. (See Code of Civ. Proc. § 3440.6.)

In sum, the known facts contradict the FAC.  The $70,000 that Dr. Zada paid for the personal property transferred to him by Perfect 10 was easily more than that property was worth; the $2 million in cash plus the mortgage on Dr. Zada's house that was offered as full payment of the judgment makes the claim of fraudulent transfer implausible in the extreme; and a number of the transfers at issue were officially in the record and found to be non-fraudulent by the Ninth Circuit.  The Court should dismiss the FAC with prejudice.

## II.   STATEMENT OF FACTS

Plaintiffs filed their original Complaint in this action on July 10, 2017, alleging two causes of action:  the first for fraudulent transfer in which the Defendants were accused of actual intent to defraud the Plaintiffs pursuant to Civil Code section 3439.04(a)(1); and a second cause of action for constructive fraudulent transfer pursuant to Civil Code section 3439.04(a)(4).  Defendants filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) against both causes of action.  On November 27, 2017, the Court granted that Motion in part, denying it with regard to the Complaint's first cause of action for actual fraudulent intent, but granting it with regard to the complaint's second cause of action, stating that "[t]he Court GRANTS Defendant's Motion to Dismiss as to Plaintiffs' Constructive Fraudulent Transfer claim.  Plaintiff's Constructive Fraudulent Transfer claim is dismissed with leave to amend."  (Docket 25 at p. 9.)

Defendants filed their FAC on December 18, 2017.  (Docket 26.)  The FAC does not just amend and add to the allegations of the second cause of action for constructive fraudulent transfer, for which the Court gave leave to amend.  Instead, the FAC includes *new and significant factual assertions and admissions* bearing on allegations concerning Defendants' alleged intent to defraud, a required element in Plaintiffs' First Cause of Action (See FAC, ¶¶ 37, 38, 40) and Defendants' alleged intent to incur debts beyond the debtor's ability to pay, a required element in

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
DEFENDANTS' RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiffs' Second Cause of Action. (See FAC, ¶ 45, 55.)  In addition, the FAC adds a new third cause of action for fraudulent conveyance of personal property without delivery.  These new assertions include statements that Dr. Zada paid $70,000 to Perfect 10 for its physical assets on or about April 1, 2015 (*id*. at ¶ 26); and that Defendants offered to pay $2 million in cash plus a deed of trust on Dr. Zada's house to settle the related case on April 4, 2015 (*id*. at ¶ 27.)

## III.    ARGUMENT

### A.    Legal Standard On Motions For Judgment on the Pleadings Under Rule 12(c) of the Federal Rules of Civil Procedure

A motion for judgment on the pleadings may be made "After the pleadings are closed—but early enough not to delay trial . . ." (F.R.C.P. 26(c).)

Rules 12(b)(6) and (c) are virtually interchangeable. In deciding a Rule 12(c) motion, the court applies the same standards applicable to a Rule 12(b)(6) motion. (*Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.* 637 F.3d 1047, 1054, fn. 4 (9th Cir. 2011)—"Rule 12(c) is 'functionally identical' to Rule 12(b)(6)"; *Erickson v. Boston Scientific Corp.* 846 F.Supp.2d 1085, 1089 (CD CA 2011). This includes the *Twombly/Iqbal* "plausibility" standard. (*Chavez v. United States* 683 F.3d 1102, 1108-1109 (9th Cir. 2012).)  Failure to plead with particularity as required by Rule 9(b) can be challenged by a Rule 12(c) motion. (*Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, *supra*, 637 F.3d at 1054-1055.)

Accordingly, a motion for judgment on the pleadings under Rule 12(c) is similar to the common law general demurrer—i.e., it tests the *legal sufficiency* of the claim or claims stated in the complaint. (*Strom v. United States,* 641 F.3d 1051, 1067 (9th Cir. 2011).)  In ruling on such a motion to dismiss, the Court may take consider judicially-noticeable matters.  (*See Coto Settlement v. Eisenberg,*  593 F.3d 1031, 1038 (9th Cir. 2010) ["On a motion to dismiss, we may consider materials incorporated into the complaint or matters of public record"]; *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1024 n. 9 (9th Cir. 2012) ["Although, as a general

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
DEFENDANTS' RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS

1  rule, a district court may not consider materials beyond the pleadings in ruling on a
2  Rule 12(b)(6) motion, one exception to this general rule is that a 'court may take
3  judicial notice of matters of public record without converting a motion to dismiss into
4  a motion for summary judgment, as long as the facts noticed are not subject to
5  reasonable dispute.'"].)

6      "To survive a motion to dismiss, a complaint must contain sufficient factual
7  matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"
8  (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) [*quoting Bell Atlantic v. Twombly*, 550
9  U.S. 544, 570 (2007)]).  While the Court must accept as true all of the well-pleaded
10  allegations of the complaint, this rule "is inapplicable to legal conclusions." (*Id.)*
11  Thus, a complaint that merely offers "'naked assertions[s]' devoid of 'further factual
12  enhancement'" is insufficient to survive a motion to dismiss.  (*Id.) (quoting Twombly*,
13  550 U.S. at 557).  Likewise, "[t]hreadbare recitals of the elements of a cause of
14  action, supported by mere conclusory statements" are insufficient.  (*Id.)*  The
15  "plausibility standard … asks for more than the sheer possibility that a defendant
16  acted unlawfully."  (*Id*.) Where "the well-pleaded facts do not permit the court to
17  infer more than the mere possibility of misconduct," the complaint fails to satisfy the
18  requirements of Fed. R. Civ. P. 8(a)(2) and should be dismissed.  (*Id*. at 679.)

19  **B.    Plaintiffs Have Failed to Offer Sufficient Facts To Substantiate the**
20         **Required Elements of Their Second Cause of Action.**

21      Regarding the FAC's Second Cause of Action for constructive fraudulent
22  transfer, a plaintiff must prove that the defendant made the transfer (or incurred the
23  obligation) *without* receiving "*reasonably equivalent value*" in exchange *and* the
24  debtor intended to incur or believed (or reasonably should have believed) that the
25  debtor would *incur debts beyond the debtor's ability to repay*  (Cal. Civ. Code §
26  3439.04(a)(2)(B)).

27      In its Order granting Defendants' Motion to Dismiss, the Court ruled that:

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
DEFENDANTS' RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS

1

2

3

4

5

6

7

8

9

"Plaintiffs allege that the transfers from Perfect 10 to Zada were made without a "reasonably equivalent value" in exchange, but offer no facts supporting their conclusion that the amount paid did not constitute adequate consideration. (Compl. ¶ 36.) Indeed, Plaintiffs do not explain or address Zada's deposition statements regarding the value of the items purchased, but merely state that the value received was inadequate. (See Dkt. 1-8 at 88–93, 109–110.) In addition, Plaintiffs have decided to pursue the second option for alleging constructive fraudulent transfer which requires that they plead that Zada believed or reasonably should have believed that Perfect 10 would incur debts beyond its ability to pay. Beyond a conclusory allegation that Perfect 10 was 'practically insolvent,' Plaintiffs fail to sufficiently plead how Perfect 10 would be entirely unable to pay the upcoming judgment against it."

10

11

The FAC does nothing to remedy these deficiencies and actually weakens them further.

12

13

14

15

16

17

18

The original Complaint's paragraph 36 asserted that the $1.75 million in transfers was not made "with a reasonably equivalent value in exchange for the transfers." The FAC now adds a new paragraph (47) alleging that Perfect 10's tax returns show it made more than $1.4 million in income in 2014[2], that it distributed around $1.75 million to Dr. Zada, that it possessed more than $390,000 in its assets at the end of the year, and that it had an accumulated adjustments account balance of minus $51,737,929.

19

20

21

22

23

24

25

Even if these figures are accurate and are interpreted correctly, *they do nothing whatsoever to answer the questions asked by the Court* -- which was what *facts* Plaintiffs have to show that the $1.75 million transfer was made without reasonably equivalent value in exchange, and what facts do Plaintiffs have to show that Perfect 10 was incapable of paying the $1.75 million to them in the event of a judgement? Clearly, if the transferred monies were rightfully and reasonably owed to Dr. Zada, Perfect 10s's profitability or lack thereof is of no relevance. Plaintiffs have provided

26

27

28

---

[2] If anything, this new allegation suggests that Perfect 10 could have paid $1.75 million without a loan from Dr. Zada if it had been allowed to stay in business as it made $1.4 million in 2014 alone.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
DEFENDANTS' RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS

no new facts to suggest that the $1.75 million, which was transferred before any judgment was entered, was not owed to Dr. Zada, who provided that money to Perfect 10 and millions more.  Nor does a deficit in the accumulated adjustments account, which is merely a measure of previously taxed but undistributed earnings from an S-corporation, address either of the Court's questions.  Moreover, paragraph 49, alleging a transfer of $450,000 to Eric Benink that was later transferred back to Perfect 10, also does nothing whatsoever to explain why the other transfers to Dr. Zada were not in repayment of monies that Dr. Zada had extended to Perfect 10 or were otherwise unearned by him.[3]

With regard to the transfer of physical assets from Perfect 10 to Dr. Zada, which Plaintiffs now acknowledge were purchased for $70,000 (see FAC ¶ 26), Plaintiffs assert that the transferred magazines and DVDs had a wholesale value of $25,000 and a retail value of $50,000.  These allegations are complete unsupported fantasy[4], as well as directly contrary to Dr. Zada's testimony which Plaintiffs are relying on in their FAC.  Dr. Zada testified that he previously sold Perfect 10 magazines en masse for 10 cents each, but that he nevertheless valued them at $2

---

[3] Dr. Zada ran Perfect 10 for 20 years and never took a salary while lending Perfect 10 all of the money in the Perfect 10 bank account.  Any monies transferred to Dr. Zada would result in an equal reduction in Perfect 10's debt to Dr. Zada – an equivalent value in exchange.

[4] Plaintiffs' analysis of the value of Perfect 10's magazines is completely contradicted by Dr. Zada's testimony that Perfect 10 was not selling many magazines (see FAC Exh. 8, p. 7), as well as by Perfect 10's financials, which are in Plaintiffs' possession.  For example, the Jan-Mar 14 financial report (RNJ Exh. 3, p. 13) shows that Perfect 10 made a total of **$2,490.95** selling magazines and T-shirts during the Jan-Mar 14 quarter, which required paying an employee approximately $80,000/year to do so, as part of their duties.  The simple fact is that there is a huge difference between selling magazines en masse and selling them one by one, which requires the hiring of employees.   If one has to pay a person $40,000 to sell 4,000 magazines for $10 each, then the "value" of the magazines is actually zero.  Plaintiffs' failure to include the expense of selling 4,000 magazines one by one makes their analysis meaningless.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
DEFENDANTS' RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS

1   each for the purposes of the transfer, a substantial overvaluation.  (FAC Exh. 8, p.

2   10.)  In other words, Dr. Zada testified that 4,000 magazines were worth $400

3   wholesale, but that he valued them at $8,000 for the purposes of the transfer.

4   Plaintiffs have provided no facts whatsoever to suggest that 4,000 magazines which

5   retailed for $6.99 each could be sold en masse for $25,000, which is what they claim

6   by alleging that the magazines were worth $25,000 wholesale.  But even if that were

7   the case, the numbers still don't add up, so Plaintiffs make allegations that they know

8   to be false, first, that a car was transferred from Perfect 10 to Dr. Zada, and second,

9   that the value of the computer equipment, furniture and other assets transferred was

10  in the realm of six figures. (See FAC, ¶¶ 24, 50, and 51.)   These allegations are

11  completely belied by documents that are judicially noticeable in the record.  The car

12  was not transferred to Dr. Zada in 2015; it was already owned by him for several

13  years at that point.  (*See* Exh. "A" to Answer, Defendants' Request for Judicial

14  Notice ("RJN") Exh. "1.")   Furthermore, Plaintiffs assert that the other transferred

15  materials (a few used computers, beds, a couch, and a desk) had a $100,000 value

16  upon transfer, based upon Perfect 10 tax returns showing the equipment was

17  originally worth $555,464 (FAC ¶ 51.)  However the tax returns show that the

18  property had depreciated by $538,949 (see RJN Exh. "2" p. 2)[5], leaving a total value

19  of all the transferred items as estimated by the tax returns of $16,515.  Plaintiffs have

20  no facts to support their fantastical claim that a few used beds, computers, a desk and

21  a couch, were worth anywhere close to $100,000.  They didn't bother to cite to Ebay

22  or any other respected source for the value of used beds, furniture and computers,

23

24  [5] The tax returns were mentioned in the FAC, but not attached as an exhibit.
25  Accordingly, Defendants are entitled to have the Court review them on this Motion.
    (*See Branch v. Tunnell* 14 F.3d 449, 454 (9th Cir. 1994) (overruled on other grounds
26  by *Galbraith v. County of Santa Clara* 307 F.3d 1119, 1127 (9th Cir. 2002)) [if
    plaintiff fails to attach documents relied upon in Complaint, defendant may attach to
27  a motion the documents referred to in the complaint *to show that they do not support*
28  plaintiff's claim.].)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
DEFENDANTS' RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS

1    because such sources, such as Ebay, show used computers to be worth roughly $200
2    each, and used beds to be worth roughly $500 each.  It's not close.
3        Even if the completely unsupported estimate of $25,000 is accepted for the
4    wholesale value of the magazines and DVD's transferred to Dr. Zada, that plus the
5    estimated value of the other items based on the tax returns of $16,515 makes a total
6    value of the transferred items of $25,000 + $16,515 = $41,515.  In other words, Dr.
7    Zada still overpaid for that property by more than $28,000.  It also means that
8    Plaintiffs, despite their most strenuous efforts, simply fail to allege facts in the FAC
9    that show the transfers were made for less than equivalent value.
10       Finally, the Court ruled that in their original Complaint, Plaintiffs had failed to
11   properly plead facts showing that Defendants believed or reasonably should have
12   believed that Perfect 10 would incur debts beyond its ability to pay, beyond the
13   conclusory assertion that Perfect 10 was "practically insolvent."  That failure is made
14   much worse by the FAC, which now admits to an offer to pay the judgment in full,
15   which included $2 million in cash.  The removal of $1.75 million did not result in a
16   debt "beyond Perfect 10's ability to pay," because Perfect 10 offered to pay more
17   than that in cash.   See Section III.B below.  Plaintiffs' only facts to substantiate their
18   claim of Perfect 10's inability to pay its debts are provided in paragraph 47 of the
19   FAC. Crucially, *none of these facts and figures actually show that Perfect 10 was*
20   *unable to pay its debts in 2014.*  Instead, the FAC's own exhibit (Exhibit 7) shows an
21   average balance of ready cash in Perfect 10's bank account of more than $1 million
22   most of that year, and shows no evidence of any debt going unpaid.
23       With regard to Defendants' mental state (i.e. whether Defendants knew or
24   should have known it would have debts that it would be unable to pay), all the FAC
25   has to allege are the completely conclusory assertions that Defendants knew or
26   should have known that Perfect 10 would be responsible for millions of dollars in
27   attorney's fees, and that Perfect 10 should have known it would not be able to pay its
28   debts.  (FAC at ¶¶ 54-55.)  *Not one fact supports these allegations*; and in actuality,

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
DEFENDANTS' RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS

1  all known facts strongly militate against such a conclusion.  See Section III.B below.

2      The FAC simply does contain facts sufficient to state a claim for constructive

3  fraudulent transfer. The Second Cause of Action must therefore be dismissed.

4      ## C.      The Allegations of the Complaint Are Rendered Implausible By The

5          New Factual Assertions in the FAC.

6      Defendants' original Motion to Dismiss alleged that the original Complaint

7  should be dismissed on the grounds of implausibility.  That Motion based its

8  arguments upon documents not included in the original Complaint, but referenced via

9  a Request for Judicial Notice.  In its ruling on the Motion to Dismiss, the Court never

10  addressed Defendants' implausibility arguments, nor did it rule upon Defendants'

11  Request for Judicial Notice, presumably agreeing with Plaintiffs' argument that the

12  full-priced offer to pay was "outside the four corners of the complaint."  (Opposition,

13  Docket 17 at 8:26.)

14      However, the FAC now includes factual allegations that admit the existence of

15  Defendants' offer to pay the judgement in full with $2 million in cash and a first trust

16  deed on Dr. Zada's home, eleven days after the fee award was entered.  FAC ¶ , 27.)

17  Since an "amended complaint supersedes the original, the latter being treated

18  thereafter as non-existent" (*Valadez-Lopez v. Chertoff*, 656 F.3d 851, 857 (9th Cir.

19  2011), the FAC's new factual assertions create a "whole new ball game" in which the

20  plausibility issues may be reviewed again in a whole new light.  With this procedural

21  posture in mind, a recap of the authority governing plausibility analysis is provided

22  below.[6]

23      The legal standards governing plausibility under *Iqbal* and *Twombly* were

24  discussed at length in Defendants' Motion to Dismiss (Docket 12.)  In a nutshell,

25  _____

26  [6] On December 15, 2017, Defendants made an extremely generous offer of
$1,250,000 under Rule 68 to end the instant case, not because they believed Plaintiffs

27  were entitled to anything, but rather because this case is substantially damaging Dr.
Zada's health.  Plaintiffs, who have made hundreds of millions by not paying Perfect

28  10 and other copyright holders for the use of their works, never even responded.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
DEFENDANTS' RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS

"[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) [*quoting Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)]).  Most importantly, for purposes of this case, if all that a plaintiff has alleged are facts consistent with illegal behavior, but there is an "obvious" and legal alternative explanation for the conduct, the facts alleged by plaintiff will not "plausibly establish" the improper purpose. (*See Ashcroft v. Iqbal*, *supra*, 556 U.S. at 682 [allegation that plaintiff's arrest was result of unlawful discrimination against Muslim men was *not* "plausible" *in view of more likely explanation* for arrest (detention of illegal aliens who had potential connections to those who committed terrorist acts); *Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 597 (8th Cir. 2009) ["An inference pressed by the plaintiff is not plausible if the facts he points to are precisely the result one would expect from lawful conduct in which the defendant is known to have engaged."].)  See also *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104 (9th Cir. 2013):  *see also Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1116 (9th Cir. 2014) (affirming dismissal where plaintiff's allegation that defendant knowingly submitted false claims was only "merely *possible* rather than plausible," and could not overcome the plausible and obvious explanation that defendant did not knowingly submit false claims); *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (explaining that courts "must consider" "obvious alternative explanation[s]" for a defendant's behavior when analyzing plausibility).

## 1.   Defendants' Offer, Made Days After the Fee Judgment, to Pay Plaintiffs More Cash Than Was Transferred to Dr. Zada, Eviscerates Plaintiffs' Claims of Actual Fraudulent Intent.

The FAC now admits that, only days after the judgment was entered, Defendants offered $2 million plus a deed of trust against Dr. Zada's house in order to settle the related case.  (FAC at ¶ 27.)  This admission was, at the time of the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
DEFENDANTS' RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS

Motion to Dismiss, "outside the pleadings," because the original Complaint did not mention it.  Now that it is squarely put front and center by the FAC, the Court possesses the opportunity to clearly deal with the consequences of this crucial concession from the Plaintiffs, without any complicating issues of proof or the propriety of judicial notice.  A review of the facts alleged in the FAC leads to the ineluctable conclusion that the assertions of fraudulent transfer are simply not plausible, and must be dismissed.

The FAC's first two causes of action are for violation of the Uniform Voidable Transactions Act (the "UVTA"), alleging actual fraudulent transfer, and the second for violation of the UVTA, alleging constructive fraud.

With regard to the First Cause of Action, a plaintiff must prove that a debtor made the transfer (or incurred the obligation) with "*actual intent* to hinder, delay, or defraud *any* creditor of the debtor." (Cal. Civil Code § 3439.04(a)(1) (emphasis added).)  In addition, the plaintiff must also affirmatively show that he or she has been *injured* by the voidable transfer. The alleged voidable transfer must put beyond the creditor's reach property that could satisfy the debt. (*Mehrtash v. Mehrtash,*  93 Cal.App.4th 75, 80 (2001) ["Mere intent to delay or defraud is not sufficient; injury to the creditor must be shown affirmatively"]; *Fidelity Nat'l Title Ins. Co. v. Schroeder* 179 Cal.App.4th 834, 841, 844 (2009).)

Here, the FAC cannot plausibly make a case for violation of the UVTA, because it makes clear that Defendants offered to pay the fee judgment in full only days after it was rendered.  A debtor who possesses the mental state to fraudulently transfer assets would, at a minimum, make sure to *keep* those funds out of the creditor's reach, *not offer to pay them* plus millions more **as soon as a judgment was entered**. Accordingly, the assertion that Defendants possessed the mental state to hinder or defraud their creditors simply doesn't pass the plausibility test.

Secondly, during the period from January 3, 2014 to November 20, 2014,

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
DEFENDANTS' RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS

1   when the allegedly fraudulent transfers were made, *Dr. Zada was Perfect 10's only*
2   *creditor*.  Plaintiffs have provided no facts to support their allegation that Dr. Zada
3   expected that Plaintiffs would be creditors as no court had ever awarded fees against
4   Perfect 10, in more than 20 litigated cases.   Once Plaintiffs became creditors in
5   March 2015, Dr. Zada added hundreds of thousands of dollars back to the Perfect 10
6   bank account – no net monies were removed.  FAC Exh. 8, p. 17.  Plaintiffs were not
7   injured by the transfers, they were injured by their own refusal to accept a full price
8   offer.  That is not a proper basis to allege fraud or injury.

9           **2.**      **Defendants' Offer Days After the Judgment to Pay Plaintiffs**
10                      **More Cash Than Was Previously Transferred Negates**
11                      **Plaintiffs Claims of Constructive Fraudulent Intent.**

12        Regarding the Second Cause of Action, a plaintiff must prove that the
13  defendant made the transfer (or incurred the obligation) *without* receiving
14  "*reasonably equivalent value*" in exchange *and* the debtor intended to incur or
15  believed (or reasonably should have believed) that the debtor would *incur debts*
16  *beyond the debtor's ability to repay*  (Cal. Civ. Code § 3439.04(a)(2)(B)).[7]

17        As discussed above, no facts are alleged in the Complaint to substantiate these
18  required elements (See Section III.A, above.).  But even if there were, the $2 million
19  cash offer and $3.829 million trust deed from Defendants negates the required mental
20  states in their entirety.  Defendants could not possibly have possessed the mental
21  belief at the time of the transfers that no money would be available to pay debts that
22  would have been covered by those transfers, where Defendants offered almost
23  immediately to pay millions more than the amount of those transfers to Plaintiffs.

24  _____

25  [7] The constructive fraud provisions of the UVTA contain two other situations in
26  which transfers will be deemed voidable, but Plaintiffs in their FAC only allege that
    Defendants have committed a voidable transfer pursuant to Civil Code section
    3439.04(a)(2)(B), the "intended to incur, or reasonably believed that debtor would
27  incur, debts beyond debtor's ability to pay as they became due" section of the statute.
28  (FAC ¶ 45.)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
DEFENDANTS' RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS

### 3.     The Known Facts Support the Innocent Explanation for The Transfers.

The alternative, innocent, legal, and plausible explanation for the transfers -- which also has the virtue of being supported by the known facts – is that Dr. Zada, the only Perfect 10 creditor at the time, was taking funds from Perfect 10 in partial payback of the more than $53 million in loans and capital contributions he had made to the company.  Such transfers cannot be voidable as against Dr. Zada, the transferee, since they were taken in good faith and for a reasonably equivalent value. (Cal. Civil Code § 3439.08(a)

The fact that the transfers were made in the ordinary course and without any fraudulent intent is also shown by the fact that Perfect 10 held significant funds in its accounts even after various transfers, regularly holding onto more than $1,000,000 in net assets and equity and possessing in excess of $2.1 million of such as late as June 3, 2014.  (*See* FAC Exh. 7, p. 5.)  Moreover, the balances in Perfect 10's bank account at relevant times during this case were as follows: December 31, 2011: $392,060.19 (RJN Exh. 3, p. 9); December 31, 2012: $37,395.86 (RJN Exh. 3 p. 10); January 2, 2014: $857,636.08 (FAC Exh. 7, p. 2); June 03, 2014: $2,114,091.40 (FAC Exh. 7, p. 5); November 20, 2014: $1,174,581.41 (FAC Exh. 7, p. 9).  In other words, the average balance in the Perfect 10 account at the end of years 2011, 2012, and 2013 when the case was pending, was $392,060 + $37,395 + 857,636 divided by 3, which equals $429,030, and during the eleven months of 2014, when Plaintiffs contend that Dr. Zada was unlawfully removing money from Perfect 10's account, **the amount in the account actually increased $316,945, from $857,636.08 on January 2, 2014, to $1,174,581.41 on November 20, 2014!**  When Dr. Zada removed the $850,000 from the account on November 20, he still left $324,581.41 in the account, bringing the account back to roughly its historical average.  FAC Exh. 7, p. 9; RJN Exh. 3, pp. 4-11.

The plausibility of the innocent explanation is even more convincing, given

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
DEFENDANTS' RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS

that no alleged infringer in a copyright case had ever been awarded fees of any significance unless either a) the alleged infringer was found to actually own the works in dispute, or b) established a fair use defense.  Neither was the case here. Plaintiffs were not found to be the actual owners of the works allegedly infringed. They did not have to expend legal fees to demonstrate their ownership in the allegedly infringed works.[8]  Rather, they admittedly were using Perfect 10's works without permission or payment.   Furthermore, no court had ever awarded fees against Perfect 10.  Perfect 10 and Dr. Zada therefore had a reasonable and good faith belief that there would no creditors against which these transfers would prejudice, even after the summary judgement orders.  There is no support whatsoever for Plaintiff's contention that Dr. Zada anticipated a fee award against Perfect 10, which is not only pure conjecture, but defies logic and common sense.

Both Perfect 10's litigation experience and its knowledge of the Federal Government's hostile approach to copyright violators belied any conception that it believed it would lose the related case.  Defendants' eminently reasonable belief that it would triumph in the related case was supported by the following facts, all of which were documented voluminously in filings before this Court during the pendency of that case:

- In 2002 Perfect 10 received summary judgement against Usenet Operator, GUBA, LLC, on the issue of direct copyright infringement.  The GUBA court found that "it is also undisputed that GUBA obtained the subject images (332

---

[8] For example, in two of the three cases involving awards over $1,000,000, the defendant was found to own the copyrights in dispute.  *See, Mattel, Inc. v. MGA Entertainment, Inc*., 2011 WL 3420603 (C.D. Cal. Aug 04, 2011) and *Fantasy, Inc. v. Fogerty,* 94 F.3d 553 (9th Cir. 1996).  In other words, the defendant who was awarded fees was the **copyright holder** who had been unfairly accused of infringement.  In the third case, the defendant established a fair use defense, and the plaintiff against whom the $1,826,000 fee award was levied was Mattel, Inc. a multi-billion dollar company, who could easily pay the award. *Mattel, Inc. v. Walking Mountain Prods*, 2004 WL 1454100 at *4 (C.D.Cal. June 21, 2004)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
DEFENDANTS' RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS

Perfect 10 images), by using its proprietary software to 'retrieve binary files posted by users on the Usenet," which images GUBA then made available on its site for its customers."  From Perfect 10's standpoint, Giganews similarly copied Perfect 10 images from other Usenet Operators, and then made those unlicensed images available on its site for its customers, except that it was a much larger infringer (61,000 Perfect 10 images vs. 332 infringed by GUBA). *Perfect 10, Inc. v. GUBA, LLC*, 2002 WL 34940074 (N.D. Cal. Dec. 30, 2002).

- In 2009, a group of recording companies, including Arista Records, received summary judgement against Usenet Operator usenet.com, for direct, vicarious, and contributory liability.  In the course of that suit, Giganews's servers were examined because usenet.com had destroyed the music files on its servers. The songs on Giganews's servers at that time were found by the Court to be at least 94% infringing.  *Arista Records LLC v. Usenet.com, Inc.*, 633 F.Supp.2d 124 (S.D.N.Y. 2009)

- On May 19th, 2010, the Congressional Anti-piracy Caucus, issued a press release which stated, among other things, that "To assure the continued creation and distribution of music, movies, software and books, from which we all benefit, **we must ensure that our artists, creators, and producers are paid for their work. (***See*** Related Case: 2:11-cv-07098-AB-SH Document 26-3, filed 07/11/11 Page 1 of 21.)

- When ICE has raided websites and closed them down for criminal copyright infringement, it has posted a notice which appears in place of the shutdown website, which states: "It is unlawful to reproduce or distribute copyrighted materials, such as movies, music, software or games, without authorization." (See Related Case: 2:11-cv-07098-AB-SH Document 26-3, filed 07/11/11 page 6 of 21.)

- Defendants were aware that the Judge in this matter had previously sent individuals to jail for copyright infringement – in 2011, a press release was

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
DEFENDANTS' RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS

issued by the office of the then United States Attorney for the Central District of California, Andre Birotte, Jr.  The press release stated that one Gilberto Sanchez was sentenced to jail for a year for uploading a copy of the movie "X-Men Origins: Wolverine" to the website Megaupload.com.  Then U.S. attorney Birotte, was quoted as saying, "The Justice Department will pursue and prosecute persons who seek to steal the intellectual property of this nation." https://archives.fbi.gov/archives/losangeles/press-releases/2011/new-york-man-sentenced-to-one-year-in-federal-prison-for-illegally-uploading-copy-of-x-men-wolverine-movie-to-internet-site.  Perfect 10 provided evidence in the Related Case that Plaintiffs were offering hundreds of copies of that same movie and other unlicensed movies to their subscribers without permission or payment, even after receiving millions of notices from movie studios, including notices regarding that same movie, demanding that Plaintiffs stop selling access to movie studio property without permission.  (*See* Related Case 2:11-cv-07098-AB-SH Document 439-5, Exh. 11 pp. 1-4, Exh. 12, p. 1.)

- On January 19, 2012, the Justice Department issued a press release which indicated that $175 million had been seized from the operators of Megaupload.com, a file sharing site, and that those operators were being prosecuted for criminal copyright infringement.  The operators were accused of operating websites that "unlawfully reproduce and distribute infringing copies of copyrighted works, including movies."  (*See* Related Case 2:11-cv-07098-AB-SH Document 417 pp. 98-99 of 144 (Exh. 1 pp. 93-94).)  In this case, Perfect 10 provided evidence that Giganews offered more than 240 times as many copies of full length movies as did megaupload.com. (*Id.* at Document 508-2, p. 33 of 96 (Exh. 15, p. 1.)).

- On March 25, 2016, the operator of a Usenet provider "Newsoo" was arrested in France and the site closed down.  RJN, Exh. 6.  The article asserts that Newsoo was "small by Giganews standards."

1     • In late 2017, German police shut down multiple Usenet sites after raiding data

2          centers in Canada, Germany, the Netherlands, Spain, and Switzerland.  42

3          suspects involved in the operation of those Usenet providers were arrested.

4          RJN, Exh. 7.

5         All of the above judicially noticeable facts, from ICE's statement that it is

6    unlawful to reproduce or distribute copyrighted works without authorization, to

7    the Justice Department's criminal prosecution of the operators of the website

8    megaupload.com for doing just that, to the recent arrests of Usenet Operators in

9    Europe, support Dr. Zada's view when Perfect 10 filed this case that Plaintiffs

10   were involved in criminal copyright infringement and would surely lose.

11   Obviously, if Dr. Zada believed that Giganews was involved in criminal

12   copyright infringement, it could not possibly have become "reasonably apparent

13   [to him] that a large judgment would be entered against Perfect 10 as early as January

14   3, 2014."  FAC ¶40.  It goes without saying that a lawsuit against perceived thieves

15   for stealing one's property is not one a victim expects to lose, let alone be required to

16   pay millions in fees.

17       In contrast to all of the above judicially noticeable facts which support the

18   innocent interpretation of any alleged fraudulent transfers, Plaintiffs have no facts

19   whatsoever to support their completely implausible claim that on or before January 3,

20   2014, Perfect 10 expected to lose and to have to pay millions to parties who it

21   perceived to be the thieves of its content.  Plaintiffs simply cannot explain why

22   Perfect 10 would continue litigating a case it expected to lose, or reject Plaintiff's

23   2014 settlement offer.  Nor can they point to a single prior victory by a Usenet

24   operator to support their contention that Perfect 10 believed it would lose, because

25   there are none.  Finally, Plaintiffs cannot identify a single prior instance where a

26   court found Perfect 10's complaint to be meritless, or awarded fees against Perfect

27   10.

28       Plaintiffs' story is fundamentally at odds with facts both admitted by Plaintiffs

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
DEFENDANTS' RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS

1    in their FAC and judicially admissible. The only plausible explanation of the facts

2    here is the innocent one.  Accordingly, the Motion to dismiss should be granted.

3          **D.**    **The Entire FAC Must Be Dismissed On The Grounds of Collateral**

4              **Estoppel.**

5          In its Motion to Dismiss, Defendants argued that the Ninth Circuit's

6    determination that nothing done by Defendants was "in bad faith" and that there was

7    no "stripping" of assets precludes Plaintiffs' fraudulent transfer claims.  This Court

8    concluded that the Ninth Circuit's ruling in the related action did not encompass the

9    $850,000 transfer from Perfect 10 to Dr. Zada, because "the court was looking only

10   at information 'in the record' and concluding that 'nothing in the record' evidenced

11   any bad faith.  Perfect 10, Inc., 847 F.3d at   678.  The last transfer from Perfect 10 to

12   Zada for $850,000.00 was not 'in the record' because the court did not judicially

13   notice it."  (Docket 25 at p. 7.)

14         However, the first three alleged transfers beginning on January 3, 2014 (see

15   FAC ¶20) were in the record before both this court and the Ninth Circuit, along with

16   approximately $5 million in other transfers.  RJN Exh. 4, pp. 8-9.  None of those *$5*

17   *million in transfers* were found by the Ninth Circuit to constitute evidence of bad

18   faith or be an improper "stripping of assets."  Thus, at the minimum, the first three

19   transfers should be dismissed from Plaintiffs' claims.  We would respectfully argue

20   that any other transfers before November 20, 2014, should be stricken as well, unless

21   Plaintiffs can provide facts as to why those transfers are substantially different from

22   the first three that the Ninth Circuit already found were not fraudulent.   Finally, with

23   respect to the $850,000 transfer done after the summary judgment orders were

24   entered but before the fee award, Defendants respectfully ask that the Court review

25   its rationale in denying dismissal on collateral estoppel grounds, because even though

26   the $850,000 transfer was not "in the record" (in terms of being included in the

27   record on appeal before the Ninth Circuit), it was certainly considered by the Ninth

28   Circuit because Plaintiffs repeatedly referred to the existence of the $850,000 transfer

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
DEFENDANTS' RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS

in their briefs to the appellate court.  For example, Plaintiffs' reply brief contained the pleadings that "Among other things, Zada transferred $850,000 to himself from Perfect 10's bank account just days after Perfect 10 lost summary judgment in the case…. That transfer prevented Defendants from attaching the funds to satisfy the judgement, while Zada both maintained them as his own and continued to pay Perfect 10's expenses from them… In addition, Zada sold all of Perfect 10's physical assets to himself to protect them from seizure, then drained the sale proceeds back out of Perfect 10's bank account so they could not be attached." (RJN Exh. 4, p. 3-4 at n. 1). "Perfect 10's inability to pay resulted from and evidenced Zada's stripping of funds from Perfect 10, leaving it undercapitalized.  (RJN Exh. 4, p. 6).  As discussed above, during the pendency of this appeal, Defendants discovered that Zada drained Perfect 10's bank accounts following the district court's summary judgement ruling against it."  (RJN Exh. 4, p. 6 n. 4.)  "Losing a copyright case was a foreseeable risk that carried with it the risk of a fee award.  To avoid this risk, Zada undercapitalized Perfect 10, removing almost $6 million from his shell company since the beginning of this case."  (RJN Exh. 4, p. 8.)  The $850,000 transfer at issue now, most of which was returned to the Perfect 10 bank account, pales in comparison to the more than $5 million in transfers that were in the record before both this court and the Ninth Circuit, which the Ninth Circuit found did not constitute an unlawful stripping of assets.

An appellate court is not restricted only to reviewing facts that appear in the official record on appeal; it may also refer to factual matters *conceded or admitted* to in the briefs.  "A party . . . is bound by concessions made in its brief or at oral argument. *Hilao v. Estate of Marcos*, 393 F.3d 987, 993 (9th Cir. 2004).  *See also United States v. Crawford*, 372 F.3d 1048, 1055 (9th Cir. 2004) ["A judicial admission is binding before both trial and appellate courts"].)

Because the Ninth Circuit was not restricted to reviewing only the matters in the record in the appeal, but instead could (and, in its own words, did) review the fact

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
DEFENDANTS' RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS

that the $850,000 had been transferred from Perfect 10 to Dr. Zada, its determination that "there is no evidence of bad faith" necessarily precludes the element of fraudulent intent in the First Cause of Action, as well as eviscerating the Second Cause of Action's element requiring a showing that Defendants reasonably believed they would not be able to pay debts as they come due. Accordingly, the FAC as a whole must be dismissed on the ground of collateral estoppel.

**E.   The Third Cause of Action Must Be Dismissed Because Plaintiffs Have Not Sought Leave to Amend Their Complaint to Add Such A Cause of Action**

Prior to trial, a plaintiff has the right to amend its complaint once as a matter of right, but that right terminates 21 days after a defendant's service of a Motion to Dismiss under Rule 12. (F.R.C.P. 15(a)(1)(B).) Subsequent to that time, a plaintiff cannot amend its complaint without leave from the court or the other party's written consent. (*Id.* at 15(a)(2).)

Here, Defendants served their Motion to Dismiss under Rule 12(b)(6) on September 5, 2017. (Docket 12.) More than 21 days before Plaintiffs filed their First Amended Complaint, and Defendants have provided no written consent for an amendment. Accordingly, the FAC's Third Cause of Action, for fraudulent conveyance of personal property under Code of Civil Procedure section 3440 -- which was absent from the original Complaint and is altogether new -- must be dismissed.

It is true, of course, that the Court gave Plaintiffs leave to amend after Defendants' Motion to Dismiss was granted in part. However, the Court's order made clear that leave to amend was only to be granted to remedy the deficiencies in its Second Cause of Action, not to add new causes of action:

///

///

///

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
DEFENDANTS' RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS

1

> "The Court GRANTS Defendant's Motion to Dismiss as to
> Plaintiffs' Constructive Fraudulent Transfer claim.  Plaintiff's
> Constructive Fraudulent Transfer claim is dismissed with leave to
> amend. Plaintiff may attempt to cure the deficiencies in its
> Complaint by filing an amended complaint within twenty-one
> (21) days after the issuance of this Order."  (Docket 25 at p. 9.)

Because Plaintiffs have not sought and have not been granted leave from the Court to add a new cause of action, the Third Cause of Action should be dismissed. (*See Rubtsov v. Los Angeles Cty. Dep't of Children & Family Servs.,* 2015 WL 2227801, at *4 (C.D. Cal. May 12, 2015) [court dismisses amended complaint's new causes of action after previous motion to dismiss granted without leave to amend, because "Plaintiffs did not seek, nor did the court grant, leave to amend the complaint to add new claims"].)

Moreover, the Third Cause of Action is untimely, based on the exhibits attached to the FAC.  A claim under Civil Code section 3440 must be made within one year of plaintiffs' actual knowledge of the transfer. (Code of Civ. Proc. § 3440.6.)  Exhibit 8 to the FAC is the transcript of the debtor examination of Dr. Zada, which was taken on January 28, 2016.  That transcript shows that Dr. Zada testified on that date that he purchased the physical property from Perfect 10 in 2015.  (FAC Exh. 8, p. 7.)  More than a  year passed from January 28, 2016, when Plaintiffs undisputedly were notified of the transfers during Dr. Zada's debtor examination, and July 10, 2017, the date the original complaint in this action was filed. Accordingly, this cause of action is time-barred by the facts shown in the documents attached to the pleadings.  (*See Von Saher v. Norton Simon Museum of Art at Pasadena,* 592 F.3d 954, 969 (9th Cir. 2010) [where the facts and dates alleged in the complaint indicate the claim is barred by the statute of limitations, a motion to dismiss for failure to state a claim lies]; *Harris v. Amgen, Inc.* 788 F.3d 916, 934  (9th Cir. 2015) [reversed on other grounds in Amgen v. Harris 136 S.Ct. 758 (2016)[ [documents

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
DEFENDANTS' RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS

attached to the complaint and incorporated therein by reference are treated as part of the complaint when ruling on a Rule 12(b)(6) motion].)

**IV.    CONCLUSION**

Simply put, Defendants did not misappropriate Plaintiff's funds or otherwise defraud Plaintiffs in the related case.  The only reason that the related case was filed, is because Plaintiffs exploited Defendants content without permission or payment. Plaintiffs have provided no facts whatsoever to demonstrate that Defendants expected to lose a case where their property was being misappropriated, let alone have to pay the fees of the party doing the misappropriating.  The only reason that Plaintiffs are filing this case is because they refused Defendants full price offer and then lost their alter ego motion.  That is no basis to allege fraud against a party that honorably attempted to pay an enormous judgement that was completely unexpected.  For the reasons given above, the Court should grant this Motion, and Plaintiffs' FAC should be dismissed in its entirety without leave to amend.

DATED:  February 2, 2018             LAW OFFICES OF MATTHEW C. MICKELSON


                                     By:  _/s/ Matthew C. Mickelson_____
                                         MATTHEW C. MICKELSON
                                         Attorney for Defendants Perfect 10, Inc.
                                         and NORMAN ZADA

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
DEFENDANTS' RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS