UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIGANEWS, INC., et al.,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>PERFECT 10, INC., et al.,<br><br>　　　　　Defendants. | Case No.: CV 17-5075-AB (JPRx)<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS [33]** |

**I.　INTRODUCTION**

Pending before the Court is Defendants Perfect 10, Inc. and Norman Zada's (collectively "Defendants") Motion for Judgment on the Pleadings. (Dkt. No. 33.) Plaintiffs Giganews, Inc. and Livewire Services, Inc. (collectively "Plaintiffs") filed an Opposition, (Dkt. No. 35), and Defendants replied, (Dkt. No.37). After considering the papers filed in support of and in opposition to the instant Motion, the Court deems this matter appropriate for decision without oral argument of counsel. The hearing set for March 2, 2018 is hereby **VACATED**. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. For the following reasons, the Court **DENIES** Defendants' Motion.

**II.　BACKGROUND**

The facts of this case are familiar to the parties and the Court; therefore, only a

brief recitation of the relevant facts is provided. Plaintiff Giganews is a Usenet service provider that owns and operates several Usenet servers. (Dkt. No. 26, First Amended Complaint ("FAC") ¶ 5.) Usenet is a collection of organizations and individuals whose computers are connected to one another and who exchange messages between one another. (*Id.*) Plaintiff Livewire also provides Usenet access to its subscribers for a fee using Giganews servers. (*Id.*) Defendant Perfect 10 was the publisher of the adult magazine *Perfect 10*. (FAC ¶ 7.) Defendant Zada is the sole owner, President, and Chief Executive Officer of Perfect 10. (FAC ¶ 8.) Defendants now operate an adult website, perfect10.com, which features images of nude and semi-nude female models. (FAC ¶ 7.)

On April 28, 2011, Perfect 10 filed suit against Giganews and Livewire, alleging copyright infringement, trademark infringement, trademark dilution, unfair competition, and publicity rights violations. (FAC ¶ 15.) On November 14, 2014, this Court issued orders granting partial summary judgment in favor of Giganews and Livewire and conclusively resolving all of Perfect 10's claims in favor of Giganews and Livewire. (FAC ¶ 17; *see also Perfect 10, Inc. v. Giganews, Inc.*, Case No. 11-07098-AB (hereinafter, the "Related Case"), Dkt. Nos. 619, 620.) On November 26, 2014, the Court entered final judgment in favor of Giganews and Livewire. (Related Case, Dkt. No. 628.) The Court declared that Giganews and Livewire could seek attorneys' fees to the extent allowed by any applicable statutes or law. (FAC ¶ 18.) On March 24, 2015, the Court granted Plaintiffs' Motion for Attorneys' Fees and Expenses in the amount of $5,637,352.53. (FAC ¶ 19.)

The instant lawsuit followed thereafter. Plaintiffs allege that beginning in early 2014, Defendant Zada began to unlawfully transfer Perfect 10's corporate assets to himself in anticipation of unfavorable court rulings and a possible judgment against Perfect 10 for attorneys' fees. (FAC. ¶ 20.) According to Perfect 10's General Ledger, beginning in January 2014, Perfect 10 made several transfers totaling

$1,750,000 to Zada's personal account. (*Id.*) The last transfer, in the amount of $850,000, was made on November 20, 2014, six days after the Court granted summary judgment against Perfect 10. (*Id.*) Subsequently, during Zada's Judgment Debtor's Examination, Plaintiffs asked what prompted the $850,000 transfer. Zada responded: "[A]fter the summary judgment orders were issued, I did not see any point in keeping more cash than we needed in the account." (FAC ¶ 21.)

On March 24, 2014—the same day the Court issued its Order granting Plaintiffs attorneys' fees and expenses—Zada transferred certain Perfect 10 assets, including its computer servers, external hard drives, furniture, and other office items, to Zada. (FAC ¶ 22.) Within days thereafter, Perfect 10 also transferred over $450,000 to Eric Benink and the law firm of Krause, Kaflayan, Benink & Slavens, LLP, and transferred substantially all of Perfect 10's remaining physical assets to Zada in a transaction that Plaintiffs allege was for inadequate consideration. (FAC ¶¶ 24, 26.) These assets allegedly included Perfect 10's car, furniture, magazines, computer servers, external hard drives, and t-shirts. (FAC ¶ 24.) Plaintiffs claim Perfect 10 continues to operate as it has in the past, and that many of these assets remain in the same room as when Perfect 10 owned them and are still used for Perfect 10's business. (FAC ¶¶ 31, 35.) Zada allegedly admitted at his deposition that he effectuated these transfers because "it would have been totally disruptive to have those [assets] seized" to satisfy the judgment. (FAC ¶ 25.)

On April 4, 2014, Perfect 10 and Zada offered to settle this case. Defendants offered to pay $2 million in cash and relinquish the deed of trust to Zada's home and office in exchange for retaining their right to appeal. (FAC ¶ 27.) Defendants claimed they did not have enough cash available to satisfy the $5.637 million judgment, which is why they included the deed of trust in their offer. (*See* Dkt. No. 12 at 9.) Plaintiffs contend that this representation was false, and that Zada possessed sufficient cash and assets to satisfy the judgment in full, "including the cash

fraudulently transferred from Perfect 10." (FAC ¶ 29.)

## III. LEGAL STANDARD

Under Rule 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A Rule 12(c) motion follows the same standard as a motion to dismiss. *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012). A Rule 12(c) motion may thus be predicated on either (1) the lack of a cognizable legal theory, or (2) insufficient facts to support a cognizable legal claim. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In ruling on a Rule 12(c) motion, the Court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non–moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Id.* In a motion for judgment on the pleadings, the Court may consider information "contained in materials of which the court may take judicial notice." *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981, n.18 (9th Cir. 1999).

## IV. DISCUSSION

### A. Request for Judicial Notice[1]

Defendants request the Court take judicial notice of seven exhibits: (1) the pink slip for a 2009 Lexus, (2) excerpts from Perfect 10's 2014 tax return, (3) excerpts from the reply declaration of Todd R. Gregorian in support of Defendants' Motion to

---

[1] On February 23, 2018, Defendants filed a supplemental request for judicial notice. (Dkt. No. 38.) Defendants request the Court take judicial notice of an online article by the Hollywood Reporter and two additional amicus briefs filed in other courts. For the reasons stated in Section IV.A, Defendants' request is granted in part and denied in part. The Court notices that the amicus briefs were filed in other courts, but does not notice them for the truth of the facts contained therein. The article appears to be a commentary on the case wherein these amicus briefs were filed; however, it is unclear how this article is relevant given that Defendants also request the Court notice the amicus briefs themselves. Accordingly, the Court declines to take judicial notice of the article. (*Id.* at Ex. 8).

4.

Alter or Amend Judgment filed in a related case, (4) excerpts from Plaintiffs' reply brief in support of their Cross-Appeal filed in a related case, (5) excerpts from the Recording Industry Association of America's Amicus brief in support of Perfect 10 filed in a related case, (6) an article from torrentfreak.com, and (7) an article from usenetreviewz.com. (Dkt. No. 34 ("RJN").) Defendants argue that all of these documents are noticeable because they are either filed in related proceedings between the parties or undisputed matters of public record. (*Id.*) Plaintiffs object, arguing the documents are inadmissible for purposes of resolving the pending Motion. (*See* Dkt. No. 36.)

Pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of an "adjudicative fact" that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." When ruling on a Rule 12(c) Motion, a court may also consider documents attached to the complaint or documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (abrogated by statute on other grounds as recognized in *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (internal quotations and citation omitted); 5C Wright & Miller, Fed. Prac. & Proc. Civ. § 1367 (3d ed. 2002)) (When evaluating a 12(c) motion, courts may consider "competing pleadings, exhibits thereto, matters incorporated by reference in the pleadings, whatever is central or integral to the claim for relief or defense, and any facts of which the district court will take judicial notice.").

Although the Court may judicially notice that certain documents were filed in other proceedings, it may *not* notice those documents for the truth of any facts recited therein. *See Lee*, 250 F.3d at 690. Here, while many of these documents were filed in

other proceedings, all of the "facts" offered by the exhibits are subject to dispute, are not "generally known", or are not from sources whose accuracy cannot reasonably be questioned. Indeed, as to exhibits one and two, Plaintiffs dispute the ownership of the car and the alleged depreciated value of the assets. For the same reasons, a declaration by a party is not a matter appropriate for judicial notice: it clearly is subject to dispute, the facts are not generally known, and it is not from a source whose accuracy cannot reasonably be questioned. *See, e.g.*, *Abner v. Compton Unified Sch. Dist.*, No. CV 10-1517-DMG (PLA), 2010 WL 3244746, at *4 (C.D. Cal. June 8, 2010); *N.D. v. State Dep't of Educ.*, 600 F.3d 1104, 1113 n.7 (9th Cir. 2010) (declining to take judicial notice on appeal of declarations by parents about harm suffered by their children because: "The status of the disabled children is not generally known throughout the jurisdiction of the Ninth Circuit nor are the parents sources whose accuracy cannot reasonably be questioned"); *Turnacliff v. Westly*, 546 F.3d 1113, 1120 n.5 (9th Cir. 2008) (declining to take judicial notice of a declaration of a former employee filed in a different action because the facts described therein were "not generally known" nor was the former employee a "source whose accuracy cannot reasonably be questioned").

The same is true for exhibits five, six, and seven. While the Court may take notice that the amicus brief was filed, it may not notice the truth of the "facts" alleged therein, which are merely arguments favorable to Defendants' position in the related case. As to the website articles, these are plainly not from sources whose accuracy cannot reasonably be questioned. Indeed, many courts have cautioned taking judicial notice of website content and news articles. *See Estate of Fuller v. Maxfield & Oberton Holdings, LLC*, 906 F. Supp. 2d 997, 1004 (N.D. Cal. 2012) (holding that it is inappropriate for a court to take judicial notice of facts on a webpage whose source and reliability are unknown); *Schechter v. Smith*, No. EDCV-09-1653 MJG, 2011 WL 13174954, at 7 (C.D. Cal. Dec. 6, 2011) (taking judicial notice that news articles *were*

6.

*published* but refusing to "consider the contents of the articles as making true statements regarding" the matters reported). Accordingly, Defendants request is only granted to the limited extent the Court notices that exhibits one, three, four, and five were filed in related proceeds and that exhibits six and seven were published online on the dates provided.

### B. Plaintiffs Sufficiently Allege Actual Fraudulent Transfer

In its previous Order, the Court found that Plaintiffs properly alleged a claim for actual fraudulent transfer. (*See* Dkt. No. 25 at 5–7.) The Court rejected Defendants' argument that collateral estoppel barred Plaintiffs claims, noting among other things that the last transfer of $850,000 was not in the record before the Ninth Circuit. (*Id.* at 7.) Here, Defendants reargue that Plaintiffs' claim for actual fraudulent transfer is implausible because the settlement offer is now referenced in the FAC. (Dkt. No. 33 ("Mot.") at 12–13.) Specifically, Defendants assert that Plaintiffs cannot show "actual intent to hinder, delay, or defraud" because after the judgment was entered, Defendants offered to pay Plaintiffs $2 million in cash plus a first deed of trust on Zada's house. (Mot. at 13.) According to Defendants, a "debtor who possess the mental state to fraudulently transfer assets would, at a minimum, make sure to *keep* those funds out of the creditors reach, *not offer to pay them* plus millions more **as soon as a judgment was** entered." (*Id.* (emphasis in original).) Second, Defendants claim that Plaintiffs have not been injured by the alleged fraudulent transfer because (1) they rejected the above offer, and (2) the offer shows that the property was not "out of reach."

As Plaintiffs note, this is the same argument the Court rejected in resolving Defendants' motion to dismiss. (*See* Dkt. No. 25.) First, Defendants' argument focuses on Defendants' purported intent *after* the transfers at issue were made. What Defendants intended when they made the offer is irrelevant; it is Defendants' intent *at the time of transfer* that is of concern here. Nothing about this offer tends to show that

7.

Defendants did not have fraudulent intent when they executed the transfers. Plaintiffs have alleged sufficient facts to raise a genuine dispute as to Defendants' intent, which includes the timing of the transfers and Zada's deposition statements as to why he made the transfers. (*See generally* FAC; Dkt. No. 35 ("Opp'n") at 9–11.) Second, the Court is unpersuaded that Plaintiffs were not injured as a result of the transfers. Plaintiffs were not required to accept Defendants' offer, and merely offering to pay a certain amount does not necessarily mean the property offered is "reachable" in terms of satisfying the judgment. At minimum, Plaintiffs were injured to the extent that less money was available in Perfect 10's accounts to satisfy the judgment, and to the extent the physical assets were potentially worth more than Zada paid for them. Accordingly, Defendants' Motion must be **DENIED** as to Plaintiffs' actual fraudulent transfer claim.

### C. Plaintiffs Sufficiently Allege Constructive Fraudulent Transfer

In its prior Order, the Court dismissed Plaintiffs' constructive fraudulent intent claim because Plaintiffs failed to properly allege (1) that the transfers were made without receiving "reasonably equivalent value" in exchange, and (2) that Zada knew or reasonably should have known that Perfect 10 would incur debts beyond its ability to pay as a result of the transfers.

Defendants argue that Plaintiffs' amended allegations are still insufficient as to both elements. (Mot. at 14.) According to Defendants, the Lexus actually belonged to Zada all along, and he "mistakenly paid Perfect 10 for it." Defendants therefore conclude that "[w]ith this new fact, Plaintiffs have no basis to assert that $70,000 was an insufficient amount for a few beds, computers, a desk, and 4,000 magazines that *retailed* for $6.99 each." (Mot. at 3.) Further, Defendants claim the $2 million offer proves they did not believe they would incur debts beyond their ability to pay, in the sense that Defendants clearly had some money available and offered it to Plaintiffs. (*Id.*) Additionally, Defendants assert that there is an "obvious and legal alternative

8.

explanation for the conduct" that dooms Plaintiffs' claims. According to Defendants, Zada was Perfect 10's only creditor when the transfers were made. (Mot. at 15.) Thus, Defendants argue that the transfers were made "in partial payback of the more than $53 million in loans and capital contributions [Zada] had made to the company." (*Id.*)

As to the first element, Plaintiffs allege that "Zada purported to pay a total of $70,000 for the physical assets" but in actuality, he was continuously transferring cash "back from Perfect 10 to himself, making the payment illusory." (FAC ¶ 26; Opp'n at 6.) Further, Plaintiffs allege that the value of the transferred assets exceeded $70,000. (FAC ¶¶ 26, 50–53.) Plaintiffs also allege that specific monetary transfers were "not for services rendered" but to protect the funds from the adverse judgment. (FAC ¶ 23.) Moreover, Plaintiffs' suggest that the $850,000 transfer was not made as compensation to Zada because during his deposition, Zada stated that he removed the money because he "did not see any point in keeping more cash than [was] needed in the account." (FAC ¶ 21.)

As to whether Zada knew or reasonably should have known that the transfers would cause Perfect 10 to be unable to pay its debts, Plaintiffs allege that "Perfect 10 is in fact unable to pay its debts" and that Zada pays its bills from his personal account. (FAC ¶¶ 30–33, 33–35.) Plaintiffs state Zada knew exactly how much the award was for before he made the $850,000 transfer, yet he took it out despite the fact that it would leave Perfect 10 with less cash than it was required to pay pursuant to the judgment. Lastly, Plaintiffs assert that insolvency "would naturally result" from the transfers because Perfect 10's financial records allegedly reveal that in 2014, Perfect 10 transferred more money from its accounts than it generated in income. (Opp'n at 7.)

The Court finds Plaintiffs have alleged enough facts to support this cause of action. Viewing the above facts in the light most favorable to Plaintiffs, its plausible

that the transfers were made without reasonably equivalent value in return. For one, Defendants state in their papers that the $450,000 transfer to the law firm was later transferred *back* to Perfect 10. (*See* Mot. at 8.) This tends to refute the conclusion that it was initially transferred as payment for legal services. Also, Zada's statements with respect to why he made the $850,000 transfer do not necessarily support the finding that he did so to compensate himself for services already rendered. Considering all these facts together, the Court finds Plaintiffs have sufficiently alleged that Defendants believed or reasonably should have believed that Perfect 10 would incur debts beyond its ability to pay. Accordingly, the Court **DENIES** Defendants' Motion as to Plaintiffs' constructive fraudulent transfer claim.

### D. Plaintiff's Third Claim for Fraudulent Conveyance under California Civil Code Section 3440

#### a. The Scope of Amendment

Defendants ask the Court to strike Plaintiffs' newly alleged third cause of action for Fraudulent Conveyance under California Civil Code section 3440. According to Defendants, this amendment was improper because the Court only granted Plaintiffs leave to amend their constructive fraudulent transfer claim, and Plaintiffs have not separately sought leave to add a new cause of action. (Mot. at 22–23.)

In dismissing Plaintiffs fraudulent transfer claim, the Court stated: "Plaintiffs' Constructive Fraudulent Transfer claim is dismissed **with leave to amend**. Plaintiff may attempt to cure the deficiencies in its Complaint by filing an amended complaint within twenty-one (21) days after the issuance of this order." (Dkt. No. 29 at 9.) Indeed, given this language, the Court is inclined to find that adding an entirely new cause of action exceeded the scope of the Court's leave to amend, which was specific to Plaintiffs second cause of action and the defects therein.

However, Defendants answered the FAC on December 27, 2018. (*See* Dkt. No. 27.) Under Rule 12(f), a party may move to strike "either before responding to the

10.

pleading or, if a response is not allowed, within 21 days after being served with the pleading." If Defendants intended to move to strike these allegations, they were required to move to strike before filing their Answer. Accordingly, Defendants have waived this argument and the Court declines to strike Plaintiffs' third cause of action on these grounds.

### b. The Statute of Limitations

The statute for an action challenging a transfer proscribed by Section 3440 is one year after the earliest of: (1) the date when the claimant, in the exercise of reasonable diligence, should have discovered the transfer; (2) the date when the claimant actually discovered the transfer; (3) the date of actual change of possession of the transferred asset. Cal. Civ. Code § 3440.6. Defendants argue that Plaintiffs learned of the transfer of assets on January 28, 2016 during Zada's judgment debtor deposition. Thus, Defendants conclude that over one year passed between when Plaintiffs learned of the transfer and when they filed their complaint on July 10, 2017. (Mot. at 23.)

Plaintiffs assert that, under California law, the statute of limitations generally runs from the accrual of the last element essential to the cause of action. *See Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal. 3d 176, 187 (1971). However, Plaintiffs also suggest that the discovery rule should apply in this case. (Opp'n at 15.) Thus, even though Plaintiffs may have been aware of the transfer as of January 28, 2016, they claim the statute of limitations did not begin to run until they *discovered* that the assets had not been delivered in December 2016. According to Plaintiffs, nothing in Zada's deposition testimony alerted them that the items had not been delivered. (*Id.*)

"An affirmative defense, such as the statute of limitations, may be adjudicated on a motion to dismiss only if 'the facts that establish the defense [are] definitely ascertainable from the allegations of the complaint, the documents (if any)

11.

incorporated therein, matters of public record, and other matters of which the court may take judicial notice.'" *OrbusNeich Med. Co., Ltd., BVI v. Boston Scientific Corp.*, 694 F. Supp. 2d 106, 110 (D. Mass. 2010) (quoting *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 16 (1st Cir. 2003)). In such a case, the motion "can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Id.* (citation omitted). Determining whether the action is time-barred is ordinarily a question of fact. *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 810 (2005) (citation omitted). Because the statute of limitations is an affirmative defense, the "defendant has the burden of proving the action is time-barred." *Grisham v. Philip Morris, Inc.*, 670 F. Supp. 2d 1014, 1020 (C.D. Cal. 2009) (quoting *Gallardo v. DiCarlo*, 203 F. Supp. 2d 1160, 1169 (C.D. Cal. 2002)).

     Here, it is not clear from the face of the FAC that the statute of limitations has run, and there is a dispute as to when Plaintiffs had notice of the alleged failure to deliver. Under California law, the "general rule for defining the accrual of a cause of action sets the date as the time when the cause of action is complete with all of its elements. An exception is the discovery rule, which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action, until, that is, he at least suspects, or has reason to suspect, a factual basis for its elements." *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 389 (1999). Plaintiffs argue that they had no reason to suspect that Perfect 10 failed to deliver the items transferred to Zada until Ms. Poblete's testimony in December 2016, whereas Defendants contend that Plaintiffs had reason to suspect this based on Zada's January 2016 testimony. Whether the discovery rule applies in this case, and when Plaintiffs had reason to suspect a factual basis for this claim, are questions of fact that preclude judgment on the pleadings. Accordingly, the Court also **DENIES** Defendants' Motion to strike claim three on these grounds.

### E. The Court Will Not Reconsider its Prior Ruling that Plaintiffs' Claims Are Not Barred by the Doctrine of Collateral Estoppel

Within its Motion for Judgment on the Pleadings, Defendants ask the Court to reconsider its previous determination that collateral estoppel does not bar Plaintiffs' claims. (Mot. at 3, 20.) However, Defendants do not specifically move for reconsideration under Rule 59(e), nor do they explain what grounds justify reconsideration. Defendants merely restate the argument presented previously: the Ninth Circuit held that there was no evidence of bad faith in the record before it that would support alter ego liability for Zada. Although Defendants do not explain why reconsideration is proper, the Court will generally recite the reasons that collateral estoppel does not apply.

Collateral estoppel bars a party from relitigating an issue if the issue at stake is identical to the one alleged in the prior litigation, the issue was actually litigated in the prior litigation, and the determination of the issue in the prior litigation was a critical and necessary part of the judgment in the earlier action. *Disimone v. Browner*, 121 F.3d 1262, 1267 (9th Cir. 1997); *Figueroa v. Campbell Indus.*, 45 F.3d 311, 315 (9th Cir. 1995); *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320–21 (9th Cir. 1992). The issues here are not identical: the Ninth Circuit considered whether Zada was Perfect 10's alter ego, whereas here the issue is whether certain transfers from Perfect 10 to Zada were fraudulent. *See Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1357 (9th Cir. 1985) (en banc) ("Similarity between issues does not suffice: collateral estoppel is applied only when the issues are identical."). The issue before the Ninth Circuit concerned whether Zada had behaved in a way to shield *himself* from liability. Here, the issue is whether Zada acted to shield Perfect 10's assets from the Plaintiffs. Further, the rules law applied to these two issues are different, and the Ninth Circuit did not consider certain evidence now before this Court. To the extent Defendants request a more detailed analysis and reconsideration, the request is **DENIED**.

13.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings is **DENIED**.

**IT IS SO ORDERED.**

Dated: February 28, 2018



_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

14.