1    [Attorneys On Next Page]

2

3

4

5

6

7

8                 UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10                      WESTERN DIVISION

11

12   GIGANEWS, INC., a Texas              Case No.: 2:17-cv-05075-AB (JPR)
     corporation; and LIVEWIRE
13   SERVICES, INC., a Nevada            **DISCOVERY MATTER**
     corporation,                        ***Before Hon. Jean P. Rosenbluth***
14
                    Plaintiffs,          **JOINT STIPULATION REGARDING**
15                                       **PLAINTIFFS' MOTION TO COMPEL**
          v.                             **INTERROGATORY RESPONSES,**
16                                       **PRODUCTION OF DOCUMENTS,**
     PERFECT 10, INC., a California       **AND CONTINUED DEPOSITIONS OF**
17   corporation; NORMAN ZADA, an        **NORMAN ZADA AND PERFECT 10**
     individual; and DOES 1-50, inclusive, **(LOCAL RULE 37-2)**
18
                    Defendants.          Date:          September 10, 2018
19                                       **(Per Court Order, Dkt. 60)**
                                         Time:          10:00 am
20                                       Courtroom: 690, 255 E. Temple St.,
                                                        Los Angeles, CA 90012
21
                                         Discovery Cut-off:  Sept. 10, 2018
22                                       Trial Date:         January 15, 201

23

24

25

26

27

28
─────────────────────────────────────────────

ANDREW P. BRIDGES (CSB No. 122761)
abridges@fenwick.com
JEDEDIAH WAKEFIELD (CSB No. 178058)
jwakefield@fenwick.com
TODD R. GREGORIAN (CSB No. 236096)
tgregorian@fenwick.com
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:  415.875.2300
Facsimile:   415.281.1350

ERIC B. YOUNG (CSB No. 318754)
eyoung@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041
Telephone:  650.988-8500
Facsimile:   650.938-5200

RONALD P. SLATES, SBN: 43712
rslates2@rslateslaw.com
KONRAD L. TROPE, SBN: 133214
ktrope@rslateslaw.com
RONALD P. SLATES, P.C.
500 South Grand Avenue, Suite 2010
Los Angeles, CA 90071
Telephone:  213.624.1515
Facsimile:   213.624.7536

Attorneys for Plaintiffs/Judgment Creditors,
GIGANEWS, INC. and LIVEWIRE SERVICES, INC.


MATTHEW C. MICKELSON (S.B.N. 203867)
matthew@mickelsonlegal.com
LAW OFFICES OF MATTHEW C. MICKELSON
16055 Ventura Boulevard, Suite 1230
Encino, CA 94136
Telephone:  818.382.3360
Facsimile:   818.382.3364

Attorneys for Defendants
PERFECT 10, INC. and NORMAN ZADA

## I.     INTRODUCTION

The parties submit this joint stipulation on Plaintiffs Giganews and Livewire's motion to compel further interrogatory responses, production of documents, and deposition testimony of Norman Zada.  Civ. L. R. 37-2.  The parties conducted a conference of counsel by telephone on June 26, 2018, and on the record at the depositions of Norman Zada and Perfect 10 on July 11, 2018.  As Local Rule 37-2.1 requires, Plaintiffs attach a copy of the Court's scheduling order and recent order amending the schedule as Exhibits A and B to the Declaration of Todd Gregorian ("Gregorian Decl."), which accompanies this joint stipulation.

Fact discovery currently closes on September 10, 2018 and expert discovery closes on October 29, 2018.

### A.     Plaintiffs' Preliminary Statement

As the Court is aware, Plaintiffs in this case seek to recover cash and assets that Perfect 10's CEO Norman Zada transferred from Perfect 10 to himself to avoid paying the Court's $5+ million[1] fee award in *Perfect 10 v. Giganews*, C.D. Cal. No. CV 11-7098 ("Related Case").  Zada took $850,000 out of Perfect 10's bank account immediately after the District Court granted summary judgment.  *See* Related Case, Dkt. 802 at 3.  He "bought" Perfect 10's physical assets, nominally paying in cash, but then he continued to transfer that cash indiscriminately between Perfect 10 and his personal accounts.  Zada testified that he did so to avoid enforcement of the Court's judgment and the resulting "interference" with Perfect 10's business.

On July 19, 2018, the Court heard Defendants' motion to compel and for protective order, which it largely granted.  *See* Dkts. 45-1 ("1st MTC"), 52 ("Order").  The motion sought documents related to Perfect 10 and Zada's liabilities.  But the Court provided additional guidance in an attempt to head off

---

[1] The District Court awarded approximately $5.6 million; with an award of appellate fees by the Ninth Circuit, the award has climbed to approximately $6.5 million.

1   future disputes, specifically that Plaintiffs "are entitled to a complete statement of

2   [Zada's] accounts," and "an accounting of all of his assets."  Gregorian Decl. Ex. C

3   ("Hearing Transcript") at 18:4–16.

4       Defendants largely ignored the Court's guidance and made a minimal

5   production in response to its order.  Giganews and Livewire therefore seek the

6   Court's further assistance with these disputes:

7          1.    ***Ordering complete responses to Giganews's interrogatories and***

8       ***production of asset information.***

9       Plaintiffs' first motion to compel set forth the reasons why Defendants'

10  financial information, including about their assets, is relevant.  *See* Dkt. 45-1 at 9–

11  11.  The Court agreed, saying: "I do think you're entitled to an accounting of all of

12  his assets.  And so if to the extent that would help forestall any future motion work,

13  I'll make that clear because I'm going to say that you are entitled to it I think."

14  Hearing Transcript at 18:11–15.  Defendants have persistently refused to provide all

15  documents regarding funds and assets that are nominally Zada's, despite the

16  Court's clear instructions.  *See* Order at 1; Hearing Transcript at 24:14–22.

17      Defendants also provided inadequate interrogatory responses regarding their

18  asset transfers.  Plaintiffs bear the burden to show that Perfect 10 received

19  inadequate value in exchange for the transfers.  To do so, they must know which

20  assets Defendants transferred.  But Defendants have provided only generic

21  descriptions, such as "desks" or "computers" that are designed to preclude further

22  assessment of their value.

23         2.    ***Compelling additional deposition time that Zada squandered and***

24      ***ordering him to answer questions about his assets.***

25      Mr. Zada appeared for a deposition on July 11 in both his individual capacity

26  and as a representative for Perfect 10.  Plaintiffs agreed to have the depositions run

27

28

JOINT STIPULATION RE PLAINTIFFS'
MOTION TO COMPEL
   2   

1    concurrently for the sake of efficiency, but they reserved the right to full time for

2    both depositions.

3        Zada arrived almost an hour late.  Gregorian Decl. ¶ 13, Exs. I–K.  He

4    refused to answer questions about his assets based on objections the Court has now

5    rejected.  He also wasted extensive time on the record, taking a phone call, giving

6    long non-responsive speeches about the copyright case, and insulting Plaintiffs and

7    their attorneys.  The Court should grant Giganews and Livewire leave to take an

8    additional four hours of Mr. Zada and Perfect 10's testimony; order Mr. Zada and

9    Perfect 10 to pay the court reporter, videographer, and location expenses of the

10   additional deposition time; and compel Zada to give responsive answers to the

11   questions he refused to answer.

12       **B.    Defendants' Preliminary Statement**

13       Plaintiffs have failed to include Defendants Amended responses or

14   acknowledge Dr. Zada's extensive document production which they received on

15   August 1, 2018.   Declaration of Matt Mickelson ("Mickelson Decl.") ¶¶ 3-4, Exs.

16   1-5.  In order to avoid further motion practice, Dr. Zada went way beyond the

17   Court's July 19 order.  He produced not only documents regarding his liabilities,

18   but assets as well.  For example, he produced all statements for his personal Bank

19   of America accounts 0277, and 4569 from 2013 to 2018, all banking reconciliation

20   statements that he could locate, all quickbooks statements that he could locate, and

21   virtually all pages of brokerage statements from 2013-2018 (with the exception of

22   certain pages that list stock positions that Dr. Zada considers trade secret that

23   Plaintiffs have no need for).   He produced all related documents for Perfect 10

24   through 2018 as well.  Declaration of Norman Zada ("Zada Decl.") ¶ 2, Ex. 1.

25   Plaintiffs know this, yet they falsely claim that "Defendants largely ignored the

26   Court's guidance and made a minimal production in response to its order," and

27   "Defendants have persistently refused to provide all documents regarding funds and

28

JOINT STIPULATION RE PLAINTIFFS'          3          CASE NO.: 2:17-cv-05075-AB (JPR)
MOTION TO COMPEL

assets that are nominally Zada's despite the Court's clear instructions." Those are intentional mistruths, designed to poison the Court.

An examination of what Plaintiffs claim was a "meet and confer" (Exhibit D to the Gregorian Declaration) shows that there was never any meet and confer with regard to a privilege log, documents in native format, a second round of a deposition of Dr. Zada, or specific RFPs. The only thing that Plaintiffs properly met and conferred on was their interrogatory requests. The first letter on June 18, 2018, discusses solely interrogatory responses. It does discuss statements from Chase, Wells Fargo Advisors, etc. but those have been produced from 2013 to 2018. None of the current RFPs were discussed in that letter. The second letter only discusses interrogatories as well.[2]

We would respectfully request that the Court follow the rules regarding meet and confers, and deny Plaintiffs motion with respect to all requests for which it is clear that they did not meet and confer. Because it is clear that Plaintiffs did not meet and confer with respect to a privilege log, documents in native format, and a second deposition of Dr. Zada, we believe that those requests must be denied. It is also very clear from Exhibit D that Plaintiffs did not mention any of the RFPs discussed in their motion. In other words, Defendants had no opportunity to reduce the size of the motion, to reduce the Court's burden, which is exactly why parties are supposed to meet and confer. For that reason, Plaintiffs RFP requests must be denied as well.

---

[2] Plaintiffs' counsel raised the issue of Defendants' responses to the Request for Production during a telephone conversation on June 26. At that point, no documents had been produced. Since that date, Defendants have made multiple substantial document productions, the first on July 2, and the second on August 1, a week before Defendants received this joint stipulation, and several since. Given that a large document production was forthcoming on July 2, one which would provide many of the documents requested by Plaintiffs, the June 26 date was far too early to have any sort of meaningful meet and confer regarding requests for production. (See Mickelson Decl. ¶ 2.)

1   Plaintiffs did not identify anything until August 15th that inadvertently had
2   not been produced.  When they brought those items to Defendants' attention, they
3   were immediately produced.   Zada Decl. ¶ 2, Ex. 1.

4   What Plaintiffs appear to be doing, is simply requesting documents for all
5   requests for which Defendants made a privacy objection, even if the request was
6   already answered (See for example RFP 63), without explaining why the privacy
7   objection should be waived, or meeting and conferring.  This is highly improper, as
8   it wastes the Court's time, Defendants' time, and simply racks up legal bills.

9   With respect to an additional deposition of Dr. Zada at his expense, we
10  believe that this is highly inappropriate for multiple reasons.  First, Plaintiffs never
11  met and conferred on the matter.  Second, it was Plaintiffs who ended the
12  deposition early.  Dr. Zada was very responsive in his answers and even admitted
13  that he owned 17 ounces of gold and had between $50,000 and $100,000 in cash in
14  his safe. Zada Decl.  ¶ 8, Ex. 3.  Dr. Zada also identified the physical assets that he
15  purchased from Perfect 10 in detail.   Zada Decl. ¶ 8, Ex .3.  Plaintiffs spent a
16  significant amount of time asking Dr. Zada about his and Perfect 10's assets.  There
17  is nothing more to add, especially now that all documents concerning Dr. Zada's
18  assets have been produced.  Finally, we believe that Plaintiffs request is also highly
19  inappropriate given that they asked the Court to prevent Defendants from deposing
20  the one person Defendants sought to depose, and succeeded in that request.

21  Plaintiffs are continuing to smear Dr. Zada by contending with no cite to
22  evidence, that Zada testified that he removed money "to avoid enforcement of the
23  Court's judgment."  No cite is provided because no cite exists.  *Plaintiffs just made*
24  *up the claim.*  It should be noted that Dr. Zada and Perfect 10 offered to pay
25  Plaintiffs $ 2 million in cash with a $3.819 million first trust deed on Dr. Zada's
26  home days after the $5.63 million award was entered.  If Dr. had truly intended to

27

28

1   keep the $1.75 million as Plaintiffs claim, he would never have offered $4 million
2   more than that when Plaintiffs actually became creditors.

3        It is also not true that Defendants provided "only generic descriptions, such
4   as 'desks' or 'computers.' Dr. Zada specifically described his desk and couch as
5   being purchased in 2000 for around $10,000 and $8,000 respectively, with values
6   he estimates today of $3,000 and $2,000.  He doesn't have the receipts.  Zada Decl.
7   ¶ 8, Ex. 3.  What more can he do?

8        Defendants request that the Court review Defendants' actual production and
9   their amended responses before making any order.  We will be providing the Court
10  with a drive at the hearing which contains all of the documents that were produced.
11  If the Court concludes that Plaintiffs have completely mischaracterized Defendant's
12  production and responses, it should not grant any portion of the motion.

13       Discovery requests and responses at issue[3]

14  **II.    DISCOVERY REQUESTS AND RESPONSES AT ISSUE[4]**

15       **A.    Giganews's Second Set of Interrogatories to Perfect 10 and
16            Norman Zada.**

17            **1.    Interrogatory Nos. 3 and 4**

18  **Interrogatory No.3**

19       Identify all physical assets owned or otherwise controlled by Perfect 10
20  (including , but not limited to furniture, electronics, computer hardware,
21  photographic equipment, real property, and automobiles) at any time from January
22  1, 2011 to the present, including: (a) the current owner of the assets and (b) all
23  circumstances regarding the receipt, acquisition, transfer or disposition of the asset,

24  _____

25  [3] Plaintiffs served identical interrogatories and requests for production on Zada and Perfect 10.  Defendants' responses are almost identical, but vary in some respects, and appear to contradict each other in others.  Plaintiffs include [*bracketed sections*]
26  to identify these differences.  *See* Gregorian Decl. Exs. O and P.
    [4] Plaintiffs served identical interrogatories and requests for production on Zada and
27  Perfect 10.  Defendants' responses are almost identical, but vary in some respects, and appear to contradict each other in others.  Plaintiffs include [*bracketed sections*]
28  to identify these differences.  *See* Gregorian Decl. Exs. O and P.

1  including the amount of any consideration exchanged for the assets, the date of the

2  exchanges, and the parties to the exchanges.

3  **Perfect 10's Response to Interrogatory No. 3**

4  Perfect 10 incorporates the General Objections as set forth above herein.

5  Perfect 10 objects to this interrogatory on the grounds that it is burdensome,

6  oppressive, compound and overbroad. Perfect 10 further objects to this

7  interrogatory on the grounds that it seeks information not relevant to the subject

8  matter of the action, and not reasonably calculated to lead to the discovery of

9  admissible evidence. Perfect 10 further objects that this information is already in

10 the possession of Plaintiffs.

11 Subject to the above specific objections and Perfect 10's general objections,

12 Perfect 10 responds as follows:

13 [*Perfect 10 has had a very limited number of physical assets at any time from

14 January 1, 2011 onward. Perfect 10 is not aware of any significant change in the

15 physical assets owned by Perfect 10 between January 1, 2011 and March 2015

16 when Dr. Zada purchased most of Perfect 10's minimal physical assets for $70,000.

17 When that transfer took place, the only physical assets which Dr. Zada is certain

18 belonged to Perfect 10 were approximately 4,000 magazines, some tapes and

19 DVDs, some film, a few hats, T-shirts, and other physical assets that Perfect 10 sold

20 on its website. When Dr. Zada purchased the majority of Perfect 10's other

21 physical assets, such as computers, beds, and desks, he assumed those assets

22 belonged to Perfect 10 even though he was not certain if that was the case.*]

23 At the very maximum, the physical assets owned by Perfect 10, which were

24 transferred to Dr. Zada for two payments totaling $70,000, $20,000 on March 25,

25 2015 and $50,000 on April 1, 2015, were the following: 4000 Perfect 10

26 Magazines, 300 DVDs or tapes, 100 T-shirts, 50 hats, 3 bed sets, two desks, six

27 small computers and one larger computer, a scanner, a sofa, some chairs, five

28

printers, and miscellaneous office supplies. [*To the best of Dr. Zada's recollection, the 2009 Lexus was leased by Perfect 10 from 2009 to approximately April of 2012. When the lease expired, instead of returning the car, Dr. Zada purchased it and transferred it into his name. Because Bruce Hersh, Perfect 10's accountant, was not informed of this transaction, he mistakenly continued to list the Lexus as a Perfect 10 asset even though it belonged to Dr. Zada as of April of 2012.*] Dr. Zada did not purchase the Perfect 10's primary assets, which were its film and trademarks, which were worth at least $11.5 million to Perfect 10.  Those primary assets were provided to Plaintiffs, along with some desks and chairs and other office furniture, which Plaintiffs' receiver elected not to take.

**Zada's Response to Interrogatory No. 3**

Dr. Zada incorporates the General Objections as set forth above herein.

Dr. Zada objects to this interrogatory on the grounds that it is burdensome, oppressive, compound and overbroad.  Dr. Zada further objects to this interrogatory on the grounds that it seeks information not relevant to the subject matter of the action, and not reasonably calculated to lead to the discovery of admissible evidence.  Dr. Zada further objects that this information is already in the possession of Plaintiffs.  [*Dr. Zada further objects to this interrogatory on the ground that it invades his privacy and is prohibited by California Civil Code section 3295.*]

Subject to the above specific objections and Perfect 10's general objections, Dr. Zada responds as follows:

[*Dr. Zada owns the house at 11803 Norfield Court, which was purchased in or around November of 2010.  He purchased a rental property at 4572 Martson, in or around June 2015, to generate some income.  He purchased his 2009 Lexus in April of 2012 from Lexus when the lease agreement expired, for to the best of his recollection, approximately $33,000.  In March-April of 2015, Dr. Zada purchased from Perfect 10, some furniture and computers and other physical items for a total*

of $70,000. *Those items included his desk, his bed, his computers, the couch in his home, that would have been disruptive to have the receiver take, and which the receiver probably would not have wanted, as the receiver turned down other furniture. Dr. Zada also purchased approximately 4,000 magazines and some videos and other items that are discussed in more detail below. He did so because he believed that Perfect 10 would win its appeal and he needed those items to revive Perfect 10's business when that happened.*]

At the very maximum, the physical assets owned by Perfect 10, which were transferred to Dr. Zada for two payments totaling $70,000, $20,000 on March 25, 2015 and $50,000 on April 1, 2015, were the following: 4000 Perfect 10 Magazines, 300 DVDs or tapes, 100 T-shirts, 50 hats, 3 bed sets, two desks, six small computers and one larger computer, a scanner, a sofa, some chairs, five printers, and miscellaneous office supplies. Dr. Zada did not purchase the Perfect 10's primary assets, which were its film and trademarks, which were worth at least $11.5 million to Perfect 10. Those primary assets were provided to Plaintiffs, along with some desks and chairs and other office furniture, which Plaintiffs' receiver elected not to take. [*Dr. Zada objects to any further description of this physical assets, which are minimal in value but substantial in size (such as the books he owns), invades his privacy, and is [sic] irrelevant to this case.*]

**Interrogatory No. 4**

Identify all intangible assets owned or otherwise controlled by Perfect 10 (including, but not limited to furniture, electronics, computer hardware, photographic equipment, real property, and automobiles) at any time from January 1, 2011 to the present, including (a) the current owner of the assets and (b) all circumstances regarding the receipt, acquisition, transfer or disposition of the assets, including the amount of any consideration exchanged for the assets, the dates of the exchanges, and the parties to the exchanges.

1  **Perfect 10's Response to Interrogatory No. 4**

2  Perfect 10 incorporates the General Objections as set forth above herein.

3  Perfect 10 objects to this interrogatory on the grounds that it is inherently

4  contradictory, as furniture is not an "intangible asset." Perfect 10 further objects to

5  this interrogatory on the grounds that it seeks information not relevant to the subject

6  matter of the action, is compound, and is not reasonably calculated to lead to the

7  discovery of admissible evidence. Perfect 10 further objects that this information is

8  already in the possession of Plaintiffs.

9  Subject to the above specific objections and Perfect 10's general objections,

10  Perfect 10 responds as follows: [*As it understands the meaning of the term*

11  *"intangible," Perfect 10 is not. aware of any "intangible assets" owned by Perfect*

12  *10, other than a loan to Sean Chumura and Perfect 10's trademarks and*

13  *copyrights. By Perfect 10's estimation, to replicate those trademarks and*

14  *copyrights would cost at least $11.5 million. Any intangible assets would be listed*

15  *in Perfect 10's detailed financial statements, which are in Plaintiffs' possession.*]

16  **Zada's Response to Interrogatory No. 4**

17  Dr. Zada incorporates the General Objections as set forth above herein.

18  Dr. Zada objects to this interrogatory on the grounds that it is inherently

19  contradictory, as furniture is not an "intangible asset."  Dr. Zada further objects to

20  this interrogatory on the grounds that it seeks information not relevant to the subject

21  matter of the action, is compound, and is not reasonably calculated to lead to the

22  discovery of admissible evidence.  Dr. Zada further objects that this information is

23  already in the possession of Plaintiffs.  [*Dr. Zada further objects to this*

24  *interrogatory on the ground that it invades his privacy and is prohibited By*

25  *California Civil Code section 3295.*]

26  Subject to the above specific objections and Perfect 10's general objections,

27  Dr. Zada responds as follows:  [*Dr. Zada will produce documents sufficient to show*

28

JOINT STIPULATION RE PLAINTIFFS'        10
MOTION TO COMPEL                                    Case No.: 2:17-cv-05075-AB (JPR)

*that he did not have sufficient cash to pay $5.63 million when the award was entered in March of 2015. Those documents will include his personal 2014, 2015, and 2016 tax returns. His 2014 tax return lists total taxable interest of $1,534 and dividends of $4,778, from four accounts: Bank of America, Chase, Wells Fargo Advisors, and Morgan Stanley. Dr. Zada also had approximately $20,000 in a Putnam account. Dr. Zada will also provide copies of those accounts for the month of December, 2014. Together, those statements show that at the end of December 2014, Dr. Zada had approximately $1,507,000 at Chase, approximately $1,057,000 at Morgan Stanley, approximately $535,000 at Wells Fargo Advisors, and approximately 1,153,000 at bank of America, while Perfect 10 had approximately $263,734 at Bank of America. In other words, between Perfect 10 and Dr. Zada, they had about $4.5 million in cash and cash equivalents, not enough to pay $5.891 million.*

*Dr. Zada will also provide his Amex statements from January 2014 through January of 1017 [sic], and certain other credit card statements in response to RFP 6.*

*Dr. Zada objects to the production of any additional documents as they violate his privacy and are irrelevant to this case.*]

**Giganews's and Livewire's Position**

These interrogatories asked Defendants to identify their physical and intangible assets, including who currently owns each asset; all circumstances surrounding Defendants' receipt of the asset, acquisition, transfer, or disposition of the asset; and dates of any consideration exchanged for each asset. The Court has ruled that the relevant time period for this case is beginning January 1, 2013, and Plaintiffs agree to limit these requests to that time period.

Perfect 10 and Zada must identify their assets with the particularity the interrogatory demands; it is not their prerogative to cherry-pick which items to

disclose.  Perfect 10's response states that it had "very limited" relevant assets since 2011 and contains a general reference to "other physical assets that Perfect 10 sold on its website."  Mr. Zada's responses specifically acknowledge the existence of assets that he has not identified, and he commits to produce only documents "sufficient to show" information for specific accounts in 2015.  In other words, Defendants again offered selected information that they found convenient to disclose, rather than disclosing all of the reasonably available information in their possession, custody, or control.

Defendants objected to nearly all of the interrogatories on similar grounds. To avoid repetition, Plaintiffs address these objections here, and incorporate these arguments for the other interrogatories as appropriate:

**The Court has already overruled any "privacy" objections to disclosure of Defendants' financial information.**

Perfect 10 and Norm Zada continue to rely on a privacy objection that the Court has rejected.  The Court stated at the July 19 hearing that "[Plaintiffs are] entitled to an accounting of all of [Zada's] assets.  And so if to the extent that would help forestall any future motion work, I'll make that clear because I'm going to say that [Plaintiffs] are entitled to it."  Hearing Transcript at 18:4–16.  The Court also specifically discussed Zada's "privacy" objection:

> MR. MICKELSON:  And that wasn't produced on privacy grounds.
>
> THE COURT:  All right, well there is a protective order in this case.  And that is the heart of what this case is about, you know, the nonpayment of the judgment which, you know, is final by every definition of the word, and so [Plaintiffs] have a right to get whatever information they need to determine—given the allegations of the complaint, which Judge Birotte has already held state[s] a claim, you

1    know, they are entitled to pursue this—these theories about
2    transferring back and forth and etcetera, etcetera. *So you have to turn*
3    *over that stuff.*

4    *Id.* at 20:12–21:2 (emphasis added). The Court further explained that its "tentative
5    position without having seen full briefing on it, is that [Plaintiffs] would be entitled
6    to view his assets too." *Id.* at 28:13-17. In other words, the Court clearly stated
7    that it would not allow Defendants to withhold broad swaths of relevant financial
8    information on "privacy" grounds.

9        Plaintiffs' original motion to compel explained at length why privacy
10   objections are inappropriate here, where Zada himself is accused of financial fraud
11   that involves moving Perfect 10 funds and assets into his accounts. 1st MTC at
12   10–13, citing *Evans v. DSW, Inc.*, No. CV 16-3791-JGB (SPx), 2017 WL 9480800,
13   at *5 (C.D. Cal. Aug. 24, 2017); *Tatung Co. v. Hsu*, No. SA CV 13-1734-DOC
14   (ANx), 2015 WL 11116906, at *3 (C.D. Cal. Feb. 12, 2015); *Ashmore v. Dodds*,
15   No. 8:15-cv-00561-JMC, 2015 WL 6445985, at *4 (D.S.C. Oct. 23, 2015). Here,
16   "the gravamen of the lawsuit is inconsistent with the application of [any privacy]
17   privilege because the [information] sought may verify or contradict [Defendants']
18   claims." *Barrous v. BP P.L.C.*, No. C 10-2944 LHK PSG, 2011 WL 1431826, at
19   *4 (N.D. Cal. Apr. 14, 2011). The Court has already entered such a protective
20   order, which addresses privacy concerns. *See* Hearing Transcript at 20:12–21:2.

21   **Defendants' attempts to rely on their document production are improper and**
22   **inadequate.**

23       Perfect 10 and Zada tried to avoid identifying their assets by generally
24   referring to their document production or to poorly identified subsets. (Some of
25   these references are in the responses themselves; Defendants' counsel made others
26   during the conference for the motion.) These are improper.

27       A Rule 33(d) response is appropriate only if "the burden of deriving or
28   ascertaining the answer will be substantially the same for either party." *See* Fed. R.

Civ. P. 33(d); see also *O'Conner v. Boeing of N.A., Inc.*, 185 F.R.D. 272, 277 (C.D.
Cal. 1999) (internal citations omitted). The responses must specify "the records
that must be reviewed, in sufficient detail to enable the interrogating party to locate
and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d);
*see also Rainbow Pioneer No. 44-18-04A v. Hawaii-Nevada Inv. Corp.*, 711 F.2d
902, 906 (9th Cir. 1983); *West v. Ultimate Metals Co.*, No. 13-cv-3651-WHO
(MEJ), 2014 WL 466795, at *2 (N.D. Cal. Feb. 3, 2014).

Defendants' responses fail to satisfy their obligations. They identify no
specific documents by Bates number. *See* Resp. to Rog. No. 4 ("[a]ny intangible
assets would be listed in Perfect 10's detailed financial statements, which are in
Plaintiffs' possession"). And even if Defendants had identified their financial
records specifically, the burden to ascertain the responsive information remains
unequal. The financial records contain numerous entries that Plaintiffs do not
understand and cannot confirm without deposition testimony from Defendants.
Defendants, by contrast, know what those entries represent. Defendants may not
refer to "thousands of pages of documents" in response to an interrogatory that goes
"to the core of [a plaintiff's] . . . claim[s]." *Reinsdorf v. Sketchers U.S.A., Inc.*, No.
CV 10-7181 DDP (SSx), 2012 WL 12882125, at *2–4 (C.D. Cal May 11, 2012);
see also *Cambridge Elecs. Corp. v. MGA Elecs., Inc.*, 227 F.R.D. 313, 323 (C.D.
Cal. 2004). The Court should reject Defendants' attempt to rely on 33(d) and order
complete, verified responses.

### Defendants' time limitation is arbitrary and improper.

Defendants refused to identify assets they have possessed since 2015, and
they limited their production accordingly. *See* Gregorian Decl. ¶ 5, Ex. D. The
Court has indicated that the relevant period for examination of Defendants'
liabilities is from 2013 to the present.

The same time period should apply to Defendants' assets, transfers, and other financial interests, because they relate to the same inquiries: Perfect 10's solvency, the true ownership of various assets, and identification of any indirect or concealed fraudulent transfers between Defendants.

**Defendants' Position**

Plaintiffs have failed to include Defendants amended discovery responses which make clear that Dr. Zada made a major effort to produce all his personal financial documents from 2013 through 2018. They received a major production of those documents on August 1, 2018, a week before filing their joint stip, and have received more since. Because of Defendant's extensive production of virtually all of Dr. Zada's most personal financial information from 2013 through 2018, the vast majority of Plaintiffs' complaints here are moot. Zada Decl. ¶ 2, Ex. 1. The only conclusion to be drawn from Plaintiffs obstinate insistence on filing a motion to compel is that, once again, they are attempting to manufacture a discovery dispute to poison Judge Birotte against Defendants. To the best of his knowledge, Dr. Zada has produced all documents regarding his personal assets, and there is nothing else responsive for Dr. Zada to produce.[5]  Zada Decl. ¶ 2, Ex. 1. Plaintiffs falsely claim that "Mr. Zada's responses specifically acknowledge the existence of assets that he has not identified, and **he commits to produce only documents 'sufficient to show' information for specific accounts in 2015."** Plaintiffs know that isn't true because Dr. Zada produced virtually all bank statements and brokerage statements from 2013 through 2018 by August 1, and has since added a few missed pages to make the production complete. For example, Dr. Zada produced chase

---

[5] In a few instances Dr. Zada produced pages sufficient to show the value of the account but did not include the actual stocks positions for trade secret reasons. While Plaintiffs may be entitled to see the value of Dr. Zada's brokerage accounts, there is no reason why they need to see what stocks he holds or what trades he makes, and Defendants will appeal any order that requires him to disclose that information. (See Zada Decl. ¶ 2, Ex. 1)

statements as "chase added 2013-2018," and his personal bank statements as "BOA NZ 2015-2018." Defendants will bring a thumb drive with all the responsive documents on it to the hearing so that the Court can confirm this for itself. Zada Decl. ¶ 2, Ex. 1. Plaintiffs also falsely claim that "Defendants objected to nearly all the interrogatories on similar grounds." They did not include Defendants amended responses in their portion of the joint stip, which make clear that Defendants produced all responsive documents. (Mickelson Decl. Exh. 1-5.) The simple fact is that Dr. Zada produced virtually all of his personal statements from 2013 to 2018 by August 1 to avoid further motion practice but here we are again. Defendants' claims that Dr. Zada did not describe all of his assets in his deposition are false. For example, Dr. Zada testified that he had 17 ounces of gold and somewhere between $50,000 and $100,000 in his safe. Zada Decl. ¶ 8, Ex. 3. He also described the assets that he purchased from Perfect 10 to the best of his ability and in detail. Zada Decl. ¶ 8, Ex. 3.

Between his deposition transcript, his interrogatory responses, and his document productions, Dr. Zada has presented all of the information regarding his assets that he has. Zada Decl. ¶¶ 3, 5. In his deposition, he stated, "I'm going to tell you again, three bed sets purchased in 2000 for around 2,000 each, a desk purchased in 2000 for around 10,000, a couch purchased in 2000 for around 8,000, a scanner purchased in 2004 for around 8,000. Some small computers that were purchased - - I don't know when exactly, but they were not new, somewhere I'm saying between 2006 and 2010. One larger computer that was purchased I think for around seven thousand. And then some - - a couple of small printers, some pens and paper – you know that kind of stuff. There was really not much there." Zada Decl. ¶ 8, Ex. 3. The physical assets are also described in the interrogatory responses. (See response to Interrogatory 3.)

1  Next, Plaintiffs attempt to make an issue about Bates Numbers.  They

2  provide no case law supporting the assertion that a response to an interrogatory

3  under Rule 33(d) requires specific reference to Bates Numbers, because none exists

4  (indeed there is not even a requirement to Bates Number documents in the Federal

5  Rules.  (*See Franco-Gonzalez v. Holder*, No. CV 10-2211-DMG DTBX, 2013 WL

6  8116823, at *2 (C.D. Cal. May 3, 2013))   But the more important point here is that

7  Defendants' reference to the documents produced as a whole is absolutely

8  appropriate in the context of Plaintiffs' vast demands for information.  Plaintiffs in

9  their interrogatories demand a list of each and every single dollar or item of value

10  ever owned by Dr. Zada or Perfect 10, from 2011 on (now narrowed by the Court to

11  2013 on.) The appropriate response to such a request is to produce, in date order,

12  the bank and brokerage statements which encapsulate that information sought.

13  Reference to specific Bates Numbers is not needed because all of the responding

14  documents provide the information sought by Plaintiffs, which is the natural

15  consequence of a request that seeks all information on assets over a five year period

16  Dr. Zada produced documents that were neatly organized by bank, brokerage

17  house, etc.  For example, all Morgan Stanley statements were combined into a

18  single document.  All Wells Fargo advisor statements were combined into a single

19  document.   Zada Decl. ¶2, Ex. 1.  The list of Perfect 10's intellectual property has

20  been in Plaintiffs possession for years, and remains the same now.[6]  Finally, the

21  physical property, as discussed before, has been specifically and painstakingly

22  detailed in the discovery responses and in Dr. Zada's deposition testimony.

23  Plaintiffs can easily see where Dr. Zada has his money, they are just trying to

24  manufacture a claim that Dr. Zada is guilty of discovery abuse when exactly the

25  opposite is true.  In contrast, *Plaintiffs haven't produced a single document in this*

26  *case* and they have refused to answer most interrogatory and RFA requests.

27

28  [6] Moreover, after the Receiver took possession of Perfect 10's intellectual property is produced an inventory which is also in Plaintiffs' possession.

1   Plaintiff's make the **completely false claim** that "Defendants refused to

2   identify assets they have possessed since 2015 and they limited their production

3   accordingly.  See Gregorian Decl. ¶ 5, Ex. D."  In fact, Dr. Zada produced virtually

4   all brokerage and bank statements through 2018 by August 1, and has filled in the

5   few documents he missed since then.  Zada Decl.  ¶ 2, Ex. 1.  We respectfully

6   request that the Court make a determination as to whether Plaintiffs' statement

7   claiming that Dr. Zada limited his production to 2015 is truthful.  If it is not, we

8   request that the Court take whatever action it deems fit, including by so finding in

9   any ruling it makes with respect to Plaintiff's motion. (See Defendants' Proposed

10  Order).    Plaintiffs cite to Gregorian Decl. Exhibit D, but that document has an

11  email from Matt Mickelson, attorney for Defendants, stating that "All bank

12  statements and financial statements of all kinds for both Perfect 10 and Dr. Zada

13  have been produced from 2013 on…"   In other words, the cited to "evidence"

14  actually refutes the claim.  Plaintiffs apparently believe that the Court is just going

15  to take their word for it, and not review the claimed underlying evidence.

16   Plaintiffs also completely misstate the Court's ruling.  What the Court

17  preliminarily found was that Plaintiffs were entitled to an accounting of Zada's

18  assets, which they have received.  The Court did not find that Dr. Zada had no

19  privacy rights at all.  Specifically, after Defendants' attorney strongly disputed

20  Plaintiffs' right to personal, confidential and irrelevant financial documents from

21  2015 on, the Court stated "Yeah, and again, I mean, my tentative position without

22  having seen full briefing on it, is that they would be entitled to view his assets too,

23  but if, you know, you're going to have to -- you're right, that's not before me, and

24  we'll just see where that goes." (Plaintiffs' Exh. C at p. 28:13-17.)  So the Court has

25  *not* decided that Defendants have no privacy rights here and that Plaintiffs are

26  entitled to anything they want. Plaintiffs have all the documents regarding transfers

27  to and from Perfect 10's bank account.  That was produced long ago.  Plaintiffs

28

have simply not articulated a reason why personal private financial information from the current day (not four years ago, when the transfers occurred) has any relevance to their claims, and none of their cited case law bears on the factual situation that obtains here – a complaint alleging discrete, specific cases of fraudulent transfer from an entity to an individual, occurring several years ago. While financial information concerning the transfer of the funds is, of course, relevant, subsequent financial information has nothing to do with proving up Plaintiffs' claims.[7]

Plaintiffs also conveniently make claims without providing any specificity. For example, they say, "The financial records contain numerous entries that Plaintiffs do not understand …" What financial records, and why haven't Plaintiffs met and conferred on any of these matters or asked Defendants for an explanation? None whatsoever is provided in this motion.  Moreover, Plaintiffs possessed many of the produced documents at Dr. Zada's previous deposition, yet failed to ask about the supposedly obscure entrees in that venue.  The Court can't possibly know what to belief because Plaintiffs are making general complaints without identifying any specific problems.  Defendants have no idea what Plaintiffs think they are lacking either.  More importantly, the financial records are for the most part simple. They show assets and list dollar amount values.  This is not complex or complicated.

///

---

[7] As described above, this issue is basically moot since Dr. Zada has decided to produce all documents and information concerning his current assets; nonetheless, Defendants continue to interpose their privacy arguments to prevent any further attempts by Plaintiffs to rummage around Dr. Zada's personal life.

### 2.    Interrogatory No. 5

**Interrogatory No. 5**

For each asset that Interrogatory 3 or 4 calls to be identified, identify all facts regarding the asset's value, including all valuations of the assets, at any time from January 1, 2011 to the present.

**Perfect 10's Response to Interrogatory No. 5**

Perfect 10 objects to this interrogatory on the grounds that it is burdensome, oppressive, compound and overbroad. Perfect 10 further objects to this interrogatory on the grounds that it seeks information not relevant to the subject matter of the action, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to the above specific objections and Perfect 10's general objections, Perfect 10 responds as follows:

Because Perfect 10 previously sold magazines in bulk for around 10 cents per magazine, the 4000 magazines were worth approximately $400 in total. Because the cost of selling the T-shirts, hats, DVDs and other physical items offered by Perfect 10 exceeded sales, those were worth nothing. The bed sets were purchased for around $2,000 each in the year 2000. Based on prices shown on ebay, they were likely worth at most $500 each. Dr. Zada's desk cost about $10,000 in the year 2000. Based on prices shown on ebay, Perfect 10 estimates that it was probably worth around $3,000. The other office furniture was apparently worth nothing, because the receiver elected not to take it. Based on prices for used computers on Ebay, the six smaller computer and one larger computer were probably worth in total, at most $3,000. The scanner was purchased in or around 2004 for around $8,000, to the best of Dr. Zada's recollection. It would probably be worth at most $2,000 today. Assuming that the printers and office supplies were worth $2,000, the physical assets that were transferred to Dr. Zada were worth around $11,900, in

Perfect 10's estimation. In other words, Dr. Zada paid approximately $58,100 more than the physical assets were worth.

Because Perfect 10 photographed close to 1,000 models at a cost of approximately $9,000 per photoshoot, including model fee, photographer fee, location fee, hair and makeup, assistant fees, referral fees, travel fees, etc. and purchased third party film for more than $2.5 million, the cost of replicating Perfect 10's film library is at least $11.5 million. [*Perfect 10 is not aware of any valuation of the value of its loan to Sean Chumura.*]

**Zada's Response to Interrogatory No. 5**

Dr. Zada objects to this interrogatory on the grounds that it is burdensome, oppressive, compound and overbroad. Dr. Zada further objects to this interrogatory on the grounds that it seeks information not relevant to the subject matter of the action, and not reasonably calculated to lead to the discovery of admissible evidence. [*Dr. Zada further objects to this interrogatory on the ground that it invades his privacy and is prohibited by California Civil Code section 3295.*]

Subject to the above specific objections and Dr. Zada's general objections, Dr. Zada responds as follows:

Because Perfect 10 previously sold magazines in bulk for around 10 cents per magazine, the 4000 magazines were worth approximately $400 in total. Because the cost of selling the T-shirts, hats, DVDs and other physical items offered by Perfect 10 exceeded sales, those were worth nothing. The bed sets were purchased for around $2,000 each in the year 2000. Based on prices shown on ebay, they were likely worth at most $500 each. Dr. Zada's desk cost about $10,000 in the year 2000. Based on prices shown on ebay, Dr. Zada estimates that it was probably worth around $3,000. The other office furniture was apparently worth nothing, because the receiver elected not to take it. Based on prices for used computers on Ebay, the six smaller computer and one larger computer were probably worth in

total, at most $3,000. The scanner was purchased in or around 2004 for around $8,000, to the best of Dr. Zada's recollection. It would probably be worth at most $2,000 today. Assuming that the printers and office supplies were worth $2,000, the physical assets that were transferred to Dr. Zada were worth around $11,900, in Perfect 10's estimation. In other words, Dr. Zada paid approximately $58,100 more than the physical assets were worth.

Because Perfect 10 photographed close to 1,000 models at a cost of approximately $9,000 per photoshoot, including model fee, photographer fee, location fee, hair and makeup, assistant fees, referral fees, travel fees, etc. and purchased third party film for more than $2.5 million, the cost of replicating Perfect 10's film library is at least $11.5 million.

**Giganews's and Livewire's Position**

Interrogatory No. 5 seeks facts surrounding current and past valuations of Perfect 10's assets.  A key element of Plaintiffs' claim for constructive fraudulent transfer is whether Perfect 10 received reasonably equivalent value for the property it purportedly sold to Mr. Zada.  To prove their claim, Plaintiffs require a complete identification of the assets Defendants transferred and the available information about their value in Defendants' possession, including original purchase prices (not just Mr. Zada's conjecture without investigation).

Without complete, verified responses to interrogatory Nos. 3 and 4, any response to interrogatory No. 5 is necessarily incomplete.  Defendants' responses vaguely referenced some assets, for example "office furniture," "bed sets," and "used computers."  Because of Defendants' defective responses, it is impossible to identify the specific asset or determine whether the valuations are accurate.

A complete response to interrogatory No. 5 should identify each asset along with all reasonably available facts about its value and any past valuations.

**Defendants' Position**

Plaintiffs are once again attempting to manufacture a dispute when there is none.  Defendants believe that if the Court grants any meaningful portion of Plaintiff's motion, Plaintiffs' plan is to subsequently file a motion for sanctions claiming that Defendants failed to comply with the Court's order, regardless of how complete the compliance actually was.  Plaintiffs were enormously successful in the Related Case using exactly those tactics, obtaining a ruling that bankrupted a company that had been creating copyrighted works for eighteen years.  Plaintiffs are trying to do the same thing here, by systematically mischaracterizing Defendant's production.  It is not correct that "Defendant's responses vaguely reference some assets, for example, 'office furniture,' 'bed sets,' and 'used computers.'"  Defendants' discovery responses specifically listed the items of personal property and stated how much had been paid for them.  They also made estimates based on a commonsensical lay knowledge of the current value of such items.  No other information regarding the items' value is known or available to Defendants.  Moreover, at his deposition, Dr. Zada was repeatedly questioned about these assets.  He asserted they were "three bed sets purchased in 2000 for around 2,000 each, a desk purchased in 2000 for around 10,000, a couch purchased in 2000 for around 8,000, a scanner purchased in 2004 for around 8,000… Some small computers that were purchased - - I don't know when exactly, but they were not new, somewhere I'm saying between 2006 and 2010.  One larger computer that was purchased I think for around seven thousand, and I don't remember exactly the day. It was somewhere between 2006 or 2009 or '10, and did I mention the scanner. 2004.  And then some --- a couple of small printers, some pens and paper, you know, that kind of stuff.  There was not really much there." Zada Decl. ¶ 8, Ex. 3. Dr. Zada estimated the value of the items to be around $11,900 until the receiver recently refused to take the scanner for free (Zada Decl.¶ 4, Ex. 2), indicating that it

was actually worth nothing.   What more can he do?  He doesn't have the receipts for the items from 2000 nor does he even know if Perfect 10 owned them.

However, Melanie Poblete, who was familiar with the items, has testified that she thinks one would have to pay to have someone take them away – in other words, they were worth nothing.  Zada Decl. ¶ 8, Ex. 3.  She appears to be correct because Dr. Zada offered the scanner to the receiver on August 10, 2018 for nothing and the receiver turned that offer down.  Zada Decl. ¶ 4, Ex. 2.  The simple fact is that Plaintiffs made an outrageous and unsupported allegation that the physical assets were worth more than $70,000, and now they are stuck with the fact that they were worth at most $11,900.   Dr. Zada has answered the interrogatory to the best of his ability and there is nothing more to add.

### 3.    Interrogatory Nos. 6 & 7

**Interrogatory No. 6**

Identify all transfers of assets (including money) between Perfect 10 and Norman Zada, including the date of transfer and the nature and amount of any consideration in exchange for the transfer.

**Perfect 10's Response to Interrogatory No. 6**

Perfect 10 objects to this interrogatory on the grounds that it is burdensome, oppressive, compound and overbroad. Perfect 10 further objects to this interrogatory on the grounds that it seeks information not relevant to the subject matter of the action, and not reasonably calculated to lead to the discovery of admissible evidence. Perfect 10 also objects to this interrogatory because it requires Perfect 10 to create a document not in its possession. Finally, Perfect 10 objects to this interrogatory as the underlying documents are just as available to Plaintiffs as they are to Perfect 10.

Subject to the above specific objections and Perfect 10's general objections, Perfect 10 responds as follows: Perfect 10 has already described the physical

transfers which occurred in March-April of 2015. Based on Perfect 10's calculations, Dr. Zada paid approximately $58,000 more for the Perfect 10 physical assets than they were worth. Dr. Zada did not transfer to himself Perfect 10's copyrights and trademarks, which Perfect 10 estimates would cost at least $11.5 million to recreate. With respect to most of the monetary transfers, Perfect 10 refers Plaintiffs to Perfect 10's financial statements, which are in their possession. Perfect 10 will provide Plaintiffs with its 2015 and 2016 tax returns, and any bank of America statements it does not already have through April 2018. [*Those financial statements*] show that as of March 31, 2014, Dr. Zada had transferred at least a net $51 million from his bank accounts to Perfect 10's bank accounts. Perfect 10 will also provide Plaintiffs with demand notes and documents acknowledging Perfect 10's repayments of some of Dr. Zada's loans.

With respect to the monetary transfers that took place during the pendency of the related case, Plaintiffs are already in possession of the financial statements and bank records which show all monetary transfers between Perfect 10 and Dr. Zada. When Dr. Zada transferred money to Perfect 10, he was under the impression that he was lending Perfect 10 that money, which was his to remove at any time at his discretion. When Perfect 10 transferred money to Dr. Zada, Dr. Zada believed that money was to pay off some of the debt it owed him. If the money is categorized as an investment rather than a loan, then the transfers from Perfect 10 to Dr. Zada could also be considered a legitimate receipt of any profits made by Perfect 10. Moreover, the transferred money was also being used to compensate Dr. Zada for his efforts in running and managing Perfect 10 and for his efforts in bringing in revenue via legal settlements.  Those efforts included doing a substantial part of Perfect 10's legal work to minimize its overall legal expenditures.  The spreadsheet shows that since the pendency of the case, Perfect 10 transferred approximately a net $220,000 to Dr. Zada, not $1,750,000 as Plaintiffs claim; that Perfect 10

1  received approximately $5,389,950 in settlements, and that transfers were made to

2  Dr. Zada when the Perfect 10 bank account balance was much larger than normal

3  due to those recent settlements.  Finally, the transfers were made to Dr. Zada when

4  Perfect 10 had an abnormally high balance while Dr. Zada typically had less than

5  $100,000 in his personal bank account.

6       Other than these transfers, Dr. Zada is not aware of any other transfers that

7  were made after January 1, 2011.

8  **Zada's Response to Interrogatory No. 6**

9       Dr. Zada objects to this interrogatory on the grounds that it is burdensome,

10  oppressive, compound and overbroad. Dr. Zada further objects to this interrogatory

11  on the grounds that it seeks information not relevant to the subject matter of the

12  action, and not reasonably calculated to lead to the discovery of admissible

13  evidence. Dr. Zada also objects to this interrogatory because it requires Perfect 10

14  to create a document not in its possession. Finally, Dr. Zada objects to this

15  interrogatory as the underlying documents are just as available to Plaintiffs as they

16  are to him.

17       Subject to the above specific objections and Dr. Zada's general objections,

18  Dr. Zada responds as follows: [*Dr. Zada* and] Perfect 10 [*have*] already described

19  the physical transfers which occurred in March-April of 2015. Based on Perfect

20  10's calculations, Dr. Zada paid approximately $58,000 more for the Perfect 10

21  physical assets than they were worth. Dr. Zada did not transfer to himself Perfect

22  10's copyrights and trademarks, which Perfect 10 estimates would cost at least

23  $11.5 million to recreate. With respect to most of the monetary transfers, Dr. Zada

24  refers Plaintiffs to Perfect 10's financial statements, which are in their possession.

25  Perfect 10 will provide Plaintiffs with its 2015 and 2016 tax returns, and any bank

26  of America statements it does not already have through April 2018[*, along with*

27  *cancelled checks that it has not already produced that it can locate upon a*

28

JOINT STIPULATION RE PLAINTIFFS' MOTION TO COMPEL        **26**       Case No.: 2:17-cv-05075-AB (JPR)

*reasonable search.  The financial statements that have already been produced,*] show that as of March 31, 2014, Dr. Zada had transferred at least a net $51 million from his bank accounts to Perfect 10's bank accounts. [*Dr. Zada* and] Perfect 10 will also provide Plaintiffs with demand notes and documents acknowledging Perfect 10's repayments of some of Dr. Zada's loans.

With respect to the monetary transfers that took place during the pendency of the related case, Plaintiffs are already in possession of the financial statements and bank records which show all monetary transfers between Perfect 10 and Dr. Zada. When Dr. Zada transferred money to Perfect 10, he was under the impression that he was lending Perfect 10 that money, which was his to remove at any time at his discretion. When Perfect 10 transferred money to Dr. Zada, Dr. Zada believed that money was to pay off some of the debt it owed him. If the money is categorized as an investment rather than a loan, then the transfers from Perfect 10 to Dr. Zada could also be considered a legitimate receipt of any profits made by Perfect 10. Moreover, the transferred money was also being used to compensate Dr. Zada for his efforts in running and managing Perfect 10 and for his efforts in bringing in revenue via legal settlements.  Those efforts included doing a substantial part of Perfect 10's legal work to minimize its overall legal expenditures.  The spreadsheet shows that since the pendency of the case, Perfect 10 transferred approximately a net $220,000 to Dr. Zada, not $1,750,000 as Plaintiffs claim; that Perfect 10 received approximately $5,389,950 in settlements, and that transfers were made to Dr. Zada when the Perfect 10 bank account balance was much larger than normal due to those recent settlements.  Finally, the transfers were made to Dr. Zada when Perfect 10 had an abnormally high balance while Dr. Zada typically had less than $100,000 in his personal bank account.

Other than these transfers, Dr. Zada is not aware of any other transfers that were made after January 1, 2011.

**Interrogatory No. 7**

For each transfer that Interrogatory No. 6 calls to be identified, identify all facts concerning the value of the exchanged assets and consideration.

**Perfect 10's Response to Interrogatory No. 7**

Perfect 10 objects to this interrogatory on the grounds that it is burdensome, oppressive and overbroad.

Subject to the above specific objections and Perfect 10's general objections, Perfect 10 responds as follows: Perfect 10 incorporates here its response to Interrogatory No. 6, which Perfect 10 believes suitably answers this interrogatory.

**Zada's Response to Interrogatory No. 7**

Dr. Zada objects to this interrogatory on the grounds that it is burdensome, oppressive and overbroad.

Subject to the above specific objections and Dr. Zada's general objections, Dr. Zada responds as follows: [*Dr. Zada*] incorporates here [*his*] response to Interrogatory No. 6, which [*he*] believes suitably answers this interrogatory.

**Giganews's and Livewire's Position**

Interrogatories 6 and 7 asked Defendants to identify transfers of assets between Perfect 10 and Mr. Zada, the value of each asset involved, and any consideration Perfect 10 received in exchange. At the parties' conference, Defendants' counsel stated that Mr. Zada planned to produce a spreadsheet that would provide the requested information. Instead, Defendants produced a spreadsheet showing transfers of money (not assets) between Perfect 10 and Mr. Zada. Gregorian Decl. ¶ 7, Ex. E at 2 & Ex. F. It contains no information regarding consideration or asset values, and it contains at least one inconsistency on its face. Gregorian Decl. ¶¶ 7–9, Exs. F, G. Furthermore, despite Plaintiffs' request, Defendants never provided a verified response stating that their spreadsheet purports to reflect all responsive transfers of which they are aware.

1    The Court should compel complete and verified answers to these

2    interrogatories that identify each transfer individually, describe the nature and

3    amount of any consideration in exchange, and describe the facts concerning the

4    value of the exchanged asset.

5    Defendants' responses also commit to producing "demand notes and

6    documents acknowledging Perfect 10's repayments of some of Dr. Zada's loans."

7    (These documents are also responsive to RFP Nos. 7, 18, 22, 41 and 42, among

8    others.)  Since approximately 2009, Mr. Zada has had an equity investment in

9    Perfect 10, and Perfect 10's financial statements and tax filings consistently

10   characterized it as such.  Once Plaintiffs filed this action, however, Mr. Zada sought

11   to re-characterize his investment as a "loan."  He produced non-native versions of

12   purported "demand" and "repayment" notes purporting to show loans to Perfect 10,

13   including in the amounts of his fraudulent transfers, with no information about who

14   authored the notes or when.  At deposition, he claimed that he did not know that

15   information.  Gregorian Decl. Ex. K ("Zada Depo") at 162:23–164:9.  This raises a

16   serious question as to whether these are doctored or back-dated documents

17   Defendants created for the purpose of defending this litigation.  Plaintiffs requested

18   that Defendants produce native versions of the demand and repayment note files;

19   Defendants have not done so.  Gregorian Decl. ¶ 13, Zada Depo at 167:3–15.

20   Accordingly, Plaintiffs request the Court order Defendants to produce these

21   documents in native format with metadata intact, and provide any other available

22   information regarding the author of each document, its date of creation, the identity

23   of any other individuals that edited it, and the date it was last edited.

24   **Defendants' Position**

25   Plaintiffs have failed to include either Defendants first or second amended

26   responses to Interrogatory Number 6.  Mickelson Decl. ¶ 3, 4, Ex. 1-5.  This request

27

28

1  should accordingly be denied on the ground that it is moot and unrelated to the

2  actual active responses.

3     Plaintiffs are simply incorrect about the discovery responses. Those make

4  clear that the only physical assets owned by Perfect 10 during the relevant period

5  were those transferred to Dr. Zada in 2014; those specific physical items were

6  exhaustively and fully detailed in previous discovery responses and in Dr. Zada's

7  deposition.   The receiver has recently admitted that the scanner Dr. Zada paid

8  Perfect 10 for in 2014 was worth next to nothing as receiver was asked to pick it up

9  for free on August 10, 2018 and chose not to take it.  Zada Decl. ¶ 4, Ex. 2.

10 Defendants also produced a spreadsheet showing transfers of funds between Perfect

11 10 and Dr. Zada; those transfers are substantiated by the produced bank

12 statements.[8]  Other than the transfers of the monies and the physical items, no other

13 assets have been transferred between Perfect 10 and Dr. Zada from 2013 on.

14    Plaintiffs never mentioned the issue about native versions of the demand

15 notes in any meet and confer session.  This is one of the reasons why parties are

16 supposed to properly meet and confer and try to resolve issues before making

17 motions which unnecessarily waste the Court's time.  Plaintiffs are again making

18 allegations that are flagrantly false, in an effort to poison the Court against Dr.

19 Zada.   For example, they contend that "Once Plaintiffs filed this action, however,

20 Mr. Zada sought to re-characterize his investment as a "loan."  Dr. Zada hasn't

21 sought to re-characterize anything.  In fact, when Plaintiffs asked Perfect 10's

22 accountant, Bruce Hersh in deposition, Q. "Did he [Zada] ever request that you

23 recharacterize the equity investment as a loan to Perfect 10?" Mr. Hersh replied,

24 "He did not."  When Mr. Hersh was then asked, Q. "Okay, Since this lawsuit

25 began, has he instructed you to recharacterize his investment as a loan?" Mr. Hersh

26 responded, "No."  Mickelson Decl. ¶ 5, Ex. 6.

27

28 [8] Any mistakes on the spreadsheet were inadvertent and will be corrected by Defendants.

The notes to which Plaintiffs refer, which they claim is evidence of some type of sinister act on the part of Dr. Zada, will not be used in this case for multiple reasons, including because they aren't signed.   The "demand notes" simply correspond to transfers from Dr. Zada to Perfect 10 which appear on both Perfect 10's and Dr. Zada's bank statements.  Dr. Zada simply found them in his computer and produced them per his discovery obligations.  Zada Decl. ¶ 7.

The simple fact is that there is no dispute that Dr. Zada lent Perfect 10 approximately $53 million, and that until approximately 2009, those monies were classified by Perfect 10's accountant, Bruce Hersh, as loans.  However, in 2009, Mr. Hersh, on his own, with no consultation with Dr. Zada, reclassified them as capital investments.  It is Defendants position that regardless of whether the monies invested by Dr. Zada were classified as loans or investments, he was entitled to pay himself a small portion of the monies he had loaned or invested, without concern about being accused of fraud, particularly when Plaintiffs were not creditors at that time, and particularly when he never expected them to become creditors.

### 4.    Interrogatory No. 8

**Interrogatory No. 8**

Identify all accounts (including but not limited to bank accounts, credit card accounts, brokerage accounts, investment account, retirement accounts, pension accounts, lease accounts, internet or other online service account, utility accounts, alarm or security service accounts, cable or satellite television accounts, domain name accounts, mortgages, lines of credit, real property, physical assets, cash assets, crypto currency or crypto assets) associated with Perfect 10 or Norman Zada.

**Perfect 10's Response to Interrogatory No. 8**

Perfect 10 objects to this interrogatory on the grounds that it is burdensome, oppressive, compound and overbroad. Perfect 10 further objects to this

interrogatory on the grounds that it is vague and ambiguous. Perfect 10 objects to this interrogatory that it is indefinite as to time and unnecessarily burdensome for that reason alone. Perfect 10 further objects to this interrogatory because it invades the privacy of Dr. Zada. Perfect 10 further objects to this interrogatory on the grounds that it seeks information not relevant to the subject matter of the action, and not reasonably calculated to lead to the discovery of admissible evidence. The information sought is also not discoverable pursuant to California Civil Code section 3295.

Subject to the above specific objections and Perfect 10's general objections, Perfect 10 responds as follows:

The interrogatory is confusing. To the extent that Perfect 10 understands it, Perfect 10 has no brokerage accounts, investment accounts, or lines of credit, or crypto accounts nor has it ever had such accounts. The statements for the various bank accounts that it has had have been produced to the extent that they could be located. Any additional statements that have not been produced that can be located upon a reasonable search will be produced. Perfect 10 currently has a single bank account. Dr. Zada deposits checks he received from epoch into that bank account, and then plaintiffs or the receiver removes those funds. Perfect 10's trademarks and copyrights and some tangible assets including film and DVDs, which would cost at least $11.5 million to recreate, are in the custody of the receiver. The receiver did not want a number of Perfect 10's pieces of office furniture. So Perfect 10 still has those. Whether or not any cable or security accounts at 11803 Norfield Court are in the name of Perfect 10 or Dr. Zada is irrelevant, as Dr. Zada is paying for those accounts. Perfect 10's employees have in the past had retirement accounts.

Dr. Zada will provide copies of his 2014, 2015, and 2016 tax returns. He has already produced the first page of his 2007, 2008, 2009, 2010, 2011, 2012, and 2013 tax returns. Dr. Zada will also provide his Amex statements from January

1   2014 through January of 1017, and certain other credit card statements in response

2   to RFP 6. Dr. Zada will provide information regarding his assets sufficient to

3   establish that at the time the $5.63 million fee award was entered, he only had

4   approximately $4 million in cash and securities outside of his home and retirement

5   account, i.e., not enough to pay the $5.63 million award in cash, which is why he

6   was forced to offer to pay part via a first trust deed on his home. Dr. Zada will not

7   provide any documents or information regarding his current assets.

8   **Zada's Response to Interrogatory No. 8**

9        Dr. Zada objects to this interrogatory on the grounds that it is burdensome,

10  oppressive, compound and overbroad. Dr. Zada further objects to this interrogatory

11  on the grounds that it is vague and ambiguous. Dr. Zada objects to this

12  interrogatory that it is indefinite as to time and unnecessarily burdensome for that

13  reason alone. Dr. Zada further objects to this interrogatory because it invades the

14  privacy of Dr. Zada. Dr. Zada further objects to this interrogatory on the grounds

15  that it seeks information not relevant to the subject matter of the action, and not

16  reasonably calculated to lead to the discovery of admissible evidence. The

17  information sought is also not discoverable pursuant to California Civil Code

18  section 3295.

19       Subject to the above specific objections and Dr. Zada's general objections,

20  Dr. Zada responds as follows:

21       The interrogatory is confusing. To the extent that [*Dr. Zada*] understands it,

22  Perfect 10 has no brokerage accounts, investment accounts, or lines of credit, or

23  crypto accounts nor has it ever had such accounts. The statements for the various

24  bank accounts that it has had have been produced to the extent that they could be

25  located. Any additional statements that have not been produced that can be located

26  upon a reasonable search will be produced. Perfect 10 currently has a single bank

27  account. Dr. Zada deposits checks he received from epoch into that bank account,

28

and then plaintiffs or the receiver removes those funds. Perfect 10's trademarks and copyrights and some tangible assets including film and DVDs, which would cost at least $11.5 million to recreate, are in the custody of the receiver. The receiver did not want a number of Perfect 10's pieces of office furniture. So Perfect 10 still has those. Whether or not any cable or security accounts at 11803 Norfield Court are in the name of Perfect 10 or Dr. Zada is irrelevant, as Dr. Zada is paying for those accounts. Perfect 10's employees have in the past had retirement accounts.

Dr. Zada will provide copies of his 2014, 2015, and 2016 tax returns. He has already produced the first page of his 2007, 2008, 2009, 2010, 2011, 2012, and 2013 tax returns. Dr. Zada will also provide his Amex statements from January 2014 through January of 1017, and certain other credit card statements in response to RFP 6. Dr. Zada will provide information regarding his assets sufficient to establish that at the time the $5.63 million fee award was entered, he only had approximately $4 million in cash and securities outside of his home and retirement account, i.e., not enough to pay the $5.63 million award in cash, which is why he was forced to offer to pay part via a first trust deed on his home. Dr. Zada will not provide any documents or information regarding his current assets.

### Giganews's and Livewire's Position

This interrogatory asks Defendants to identify—by username, associated payment account, and account holder name—all accounts Perfect 10 and Mr. Zada have controlled.  The locations and identities of Defendants' accounts are relevant to trace funds flowing between them and to establish a complete picture of Defendants' assets and liabilities.  Defendants refer to "a single bank account" of Perfect 10 and incompletely identify a handful of others in general terms (e.g., "retirement accounts," "home" account, "retirement account") without providing the specific identifying information Plaintiffs requested.  They also rely on cherry-

1    picked documents that bear no Bates number or other reasonable means of

2    document control.

3        Defendants' responses are inadequate for the reasons Plaintiffs already

4    discussed above.  Defendants do not attest that they have identified all responsive

5    accounts instead of a partial selection.  The reference to documents does not satisfy

6    Rule 33(d) because the responses do not identify documents with specificity, and

7    Plaintiffs cannot derive a complete response from the responses.  Defendants also

8    attempt to rely on a privacy objection to information regarding Zada's accounts that

9    the Court has overruled and the protective order has rendered moot.  Although the

10   Court ordered Defendants to produce documents showing their liabilities, Plaintiffs

11   have no way to know whether Defendants have disclosed and produced from all of

12   their associated accounts without this identification.

13       The Court should grant Plaintiffs' motion and compel complete responses,

14   including a verification that they have identified all responsive accounts and that no

15   other responsive information exists.

16       **Defendants' Position**

17       Once again, Plaintiffs have failed to include Defendants amended discovery

18   responses, and ignored Dr. Zada's extensive production of virtually all of his

19   personal financial documents from 2013 through 2018, which they received on

20   August 1, 2018, a week before filing their joint stip.   When Plaintiffs finally

21   identified some documents they felt were missing on August 15, 2018, Defendants

22   immediately produced those documents in response.  Zada Decl. ¶ 2, Ex. 1.   As

23   discussed above, Plaintiffs complaints here are moot, as all available asset

24   information for both Perfect 10 and Dr. Zada from 2013 until the present have been

25   produced.  The only documents left to produce are a few credit card statements for

26   inactive cancelled cards that Dr. Zada has ordered.   They will be produced when

27   they are received Plaintiffs are again asking for an accounting of every single cent

28

of Perfect 10 and Dr. Zada money in all of their accounts from 2013 to the present. This was a monumental invasion of Dr. Zada's privacy for mostly irrelevant reasons. Nonetheless, in an attempt to avoid further motion practice, Dr. Zada has offered a complete set of all his accounts from 2013 to the present which shows exactly how much money he has over that period up and until today (with the exception of irrelevant and trade secret information regarding stock purchases, as discussed above.) And, again, because Plaintiffs have sought all such information, they cannot now complain that the production of the relevant documents which categorize and list the information sought is somehow too difficult to review or analyze by themselves.  It is important for the Court to understand that all interest bearing and dividend bearing accounts owned by Dr. Zada will appear on his tax returns.  Those have been produced.   Zada Decl. ¶ 2, Ex. 1.

### 5.    Interrogatory No. 9

**Interrogatory No. 9**

Identify each Perfect 10 asset transferred to any Person from January 1, 2011 to the present (including but not limited to bank accounts, credit card accounts, brokerage accounts, investment accounts, retirement accounts, pension accounts, lease accounts, internet or other online service accounts, utility accounts, alarm or security service accounts, cable or satellite television accounts, domain name accounts, mortgages, lines of credit, real property, physical assets, cash assets, crypto assets, or other assets owned or otherwise controlled by Perfect 10), and all facts concerning the value of each asset at the time of transfer.

**Perfect 10's Response to Interrogatory No. 9**

Perfect 10 objects to this interrogatory on the grounds that it is burdensome, oppressive and overbroad. Perfect 10 further objects to this interrogatory on the grounds that it is vague and ambiguous as to the term "Perfect 10 asset." Perfect 10 further objects to this interrogatory on the grounds that it seeks information not

1  relevant to the subject matter of the action, and not reasonably calculated to lead to

2  the discovery of admissible evidence.

3      Subject to the above specific objections and Perfect 10's general objections,

4  Perfect 10 responds as follows:

5      Perfect 10 is not aware of any transfers which are not reflected by Perfect

6  10's bank statements and other financial records, which are already in possession of

7  the Plaintiffs. In other words, there were no transfers of brokerage accounts,

8  investment accounts, etc. To the extent that bank statements have not already been

9  produced, they will be produced back to May of 2011, which is essentially when

10  this case began and which is the earliest date of statements in Defendants' custody,

11  possession or control. The only physical assets that were transferred in exchange for

12  a payment of $70,000 in March of 2015, have already been discussed. The response

13  to interrogatories three and four are incorporated herein.

14  **Zada's Response to Interrogatory No. 9**

15      Dr. Zada objects to this interrogatory on the grounds that it is burdensome,

16  oppressive and overbroad. Perfect 10 further objects to this interrogatory on the

17  grounds that it is vague and ambiguous as to the term "Perfect 10 asset." Dr. Zada

18  further objects to this interrogatory on the grounds that it seeks information not

19  relevant to the subject matter of the action, and not reasonably calculated to lead to

20  the discovery of admissible evidence.

21      Subject to the above specific objections and Dr. Zada's general objections,

22  Dr. Zada responds as follows:

23      [*Dr. Zada*] is not aware of any transfers which are not reflected by Perfect

24  10's bank statements and other financial records, which are already in possession of

25  the Plaintiffs. In other words, there were no transfers of brokerage accounts,

26  investment accounts, etc. To the extent that bank statements have not already been

27  produced, they will be produced back to May of 2011, which is essentially when

28

JOINT STIPULATION RE PLAINTIFFS'
MOTION TO COMPEL

37

CASE NO.: 2:17-cv-05075-AB (JPR)

1   this case began and which is the earliest date of statements in Defendants' custody,

2   possession or control. The only physical assets that were transferred in exchange for

3   a payment of $70,000 in March of 2015, have already been discussed. The response

4   to interrogatories three and four are incorporated herein.

5       **Giganews's and Livewire's Position**

6       Interrogatory No. 9 asked Defendants to identify each asset Perfect 10

7   transferred to any person since January 1, 2011.  Plaintiffs agree to limit this

8   request to January 1, 2013 to present, consistent with the Court's Order.  Specific

9   information identifying Perfect 10's transfers to others is relevant to identify

10  additional fraudulent transfers and to analyze Perfect 10's solvency, which is a

11  crucial element of a constructive fraudulent transfer claim.

12      Defendants claim that the bank and financial records already in Plaintiffs'

13  possession reflect all transfers of funds, and they value the transferred physical

14  assets at $70,000.  If Defendants intended to rely on records, they needed to say so

15  and identify specific records that supply a complete answer.  They did not do so.

16  Moreover, Mr. Zada's answer refers to transfers of "accounts" rather than "assets,"

17  suggesting that he arbitrarily limited his answer.  The conference of counsel

18  effectively confirmed this, as Defendants argued that they had answered this

19  interrogatory by producing Mr. Zada's spreadsheet of bank transfers, which omits

20  asset transfers.  The Court should compel a complete verified response that

21  identifies all responsive transfers.

22      **Defendants' Position**

23      The only transfers of any sort of assets from Perfect 10 to any person were

24  monetary transfers, which are reflected in the bank statements, and the transfer of

25  assets to Dr. Zada.  The responses make this clear.

26      The only easy way to identify all transfers to third parties, such as payments

27  to employees and attorneys etc., is to provide copies of Perfect 10's financial

28

JOINT STIPULATION RE PLAINTIFFS'
MOTION TO COMPEL                    38    CASE NO.: 2:17-cv-05075-AB (JPR)

statements, which go up through 2014, and to provide copies of Perfect 10's bank statements, which go through 2018.  Dr. Zada has done that, and also provided a spreadsheet that he created.  Plaintiffs, who have produced no documents whatsoever, and pretty much stiffed Defendants on almost all of Defendants discovery requests, are now complaining that Dr. Zada did not include the furniture on his spreadsheet.  This is ridiculous.  Dr. Zada has in a separate interrogatory described all the physical assets that were transferred, what they cost originally to the best of his ability, and what he thought they were worth.  The payments of $20,000 and $50,000 for the physical assets do appear on Dr. Zada's spreadsheet. Zada Decl. ¶ 8, Ex. 3.

### 6.     Interrogatory No. 10

**Interrogatory No. 10**

Identify all facts concerning the statement(s) of Perfect 10 or Zada referred to in paragraph 28 of the FAC, including the statements that "Dr. Zada and Perfect 10 did not have the funds to pay the full amount [of the judgment] in case," and/or "Dr. Zada and Perfect 10 did the best they could given the limited amount of cash they had available."

**Perfect 10's Response to Interrogatory No. 10**

Perfect 10 objects to this interrogatory on the grounds that it is burdensome, oppressive and overbroad. Perfect 10 further objects to this interrogatory on the grounds that it seeks information not relevant to the subject matter of the action, and not reasonably calculated to lead to the discovery of admissible evidence. Dr. Zada further objects to this interrogatory on the ground that it invades his privacy and is prohibited by California Civil Code section 3295.

Subject to the above specific objections and Perfect 10's general objections, Perfect 10 responds as follows:

1   Dr. Zada will produce documents sufficient to show that he did not have

2   sufficient cash to pay $5.63 million when the award was entered in March of 2015.

3   Those documents will include his personal 2014, 2015, and 2016 tax returns. His

4   2014 tax return lists total taxable interest of $1,534 and dividends of $4,778, from

5   four accounts: Bank of America, Chase, Wells Fargo Advisors, and Morgan

6   Stanley. Dr. Zada also had approximately $20,000 in a Putnam account. Dr. Zada

7   will also provide copies of those accounts for the month of December, 2014.

8   Together, those statements show that at the end of December 2014, Dr. Zada had

9   approximately $1,507,000 at Chase, approximately $1,057,000 at Morgan Stanley,

10  approximately $525,000 at Wells Fargo Advisors, and approximately 1,153,000 at

11  bank of America, while Perfect 10 had approximately $263,734 at Bank of

12  America. In other words, between Perfect 10 and Dr. Zada, they had about $4.5

13  million in cash and cash equivalents, not enough to pay $5.891 million.

14  **Zada's Response to Interrogatory No. 10**

15  Dr. Zada objects to this interrogatory on the grounds that it is burdensome,

16  oppressive and overbroad. Dr. Zada further objects to this interrogatory on the

17  grounds that it seeks information not relevant to the subject matter of the action,

18  and not reasonably calculated to lead to the discovery of admissible evidence. Dr.

19  Zada further objects to this interrogatory on the ground that it invades his privacy

20  and is prohibited by California Civil Code section 3295.

21  Subject to the above specific objections and Dr. Zada's general objections,

22  Dr. Zada responds as follows:

23  Dr. Zada will produce documents sufficient to show that he did not have

24  sufficient cash to pay $5.63 million when the award was entered in March of 2015.

25  Those documents will include his personal 2014, 2015, and 2016 tax returns. His

26  2014 tax return lists total taxable interest of $1,534 and dividends of $4,778, from

27  four accounts: Bank of America, Chase, Wells Fargo Advisors, and Morgan

28

JOINT STIPULATION RE PLAINTIFFS'
MOTION TO COMPEL                          40          CASE NO.: 2:17-cv-05075-AB (JPR)

Stanley. Dr. Zada also had approximately $20,000 in a Putnam account. Dr. Zada will also provide copies of those accounts for the month of December, 2014. Together, those statements show that at the end of December 2014, Dr. Zada had approximately $1,507,000 at Chase, approximately $1,057,000 at Morgan Stanley, approximately $525,000 at Wells Fargo Advisors, and approximately 1,153,000 at bank of America, while Perfect 10 had approximately $263,734 at Bank of America. In other words, between Perfect 10 and Dr. Zada, they had about $4.5 million in cash and cash equivalents, not enough to pay $5.891 million.

**Giganews's and Livewire's Position**

This interrogatory asked for facts concerning Defendants' contention that they did not possess sufficient funds to pay the judgment against Perfect 10. *See* Dkt. 12 at 9. Zada claims that his settlement offer of $2 million plus additional contingent rights proves that he did not take Perfect 10's cash to hinder creditors.[9] As part of his explanation for why this partial payment proves his good faith, he has represented to the Court that he lacks the ability to pay the full amount of the judgment. *See* Dkt. 19 at 6; Dkt. 37 at 1. Plaintiffs are entitled to discovery to test the truth or falsity of this claim and to show that Zada actually had sufficient cash and assets to pay the judgment in full. Again, Zada proposes to cherry-pick some records to show a partial picture that favors him. He still has made no representation to the Court that these records disclose all of his cash and assets.

Defendants also declined to provide this information on the grounds that it is purportedly "personal" to Mr. Zada, the same objection that the Court has already rejected. The Court should compel amended and verified responses that set forth all facts related to Defendants' representations about their ability to pay the judgment.

---

[9] It does not: by transferring Perfect 10's cash and assets to himself, Zada could offer to pay less than the full judgment and impose additional settlement conditions. If it were not for Zada's fraud, Plaintiffs could have simply enforced the judgment.

1   **Defendants' Position**

2       Virtually all documents showing Dr. Zada's assets from 2013 to 2018 --

3   which of course includes his assets during the period in which the offer to settle

4   was made – were produced by August 1.  Any missing gaps have been filled since.

5   Zada Decl. ¶ 2, Ex. 1.

6       Plaintiffs know this.  Why, then, do they once again make a false claim, that

7   "Zada proposes to cherry-pick some records to show a partial picture that favors

8   him."  What documents have been cherry-picked?  Dr. Zada has provided all of his

9   brokerage and bank account statements from 2013 to 2018 and his tax returns from

10  2013 to 2016, the ones he has from 2013 onward.  Zada Decl. ¶ 2, Ex. 1.  Any

11  substantial account that Dr. Zada was "hiding" would show up in those tax returns.

12  There are none.  The money that was transferred from Perfect 10 to Dr. Zada's bank

13  of America account appears in Dr. Zada's bank of America account.  Between

14  Perfect 10 and Dr. Zada, they had about $4.5 million in cash outside of Dr. Zada's

15  retirement account, which had about $1.5 million – not enough to spare to pay the

16  legal bills for the appeal or live.   See Mickelson Decl. ¶ 4, Ex. 2 [Dr. Zada's

17  Amended response to Interrogatory No. 10.]  Particularly incredible is Plaintiffs'

18  claim in footnote 3 that, "If it were not for Zada's fraud, Plaintiffs could have

19  simply enforced the judgment."  If Dr. Zada had not removed any of the $1.75

20  million, Perfect 10 would have had less than $2 million in cash when the fee award

21  was entered, not more than $5.63 million as Plaintiffs claim.

22

23

24

25

26

27  ///

28

**B.    Giganews's Second Set of Requests for Production to Perfect 10 and Norman Zada.**[10]

1.    **Responses relying on a privacy objection (RFP Nos. 13, 15–18, 20, 22, 24–27, 29–34, 38, 39, 41, 42, 44, 45, 47, 49–53, 55, 57–59, 60–65, 67–70, and 74)**

**Request for Production No. 13**

All documents regarding direct or indirect transfers of funds or other assets between Norman Zada or Perfect 10, on the one hand, and Bruce Hersh, Eric Benink, David Schultz, Lynell Davis, Natalie Locke, Melanie Poblete, Snow McCall, Gwendalyn Augustine a.k.a. Wendy Augustine, Szabolcs Apai, CW International LLC, or Sean Chumura, on the other, since January 1, 2011.

**Response to Request for Production No. 13**

Perfect 10 incorporates the General Objections as set forth above and notes that it has already produced most if not all of the discovery requested (see paragraph 18) herein.

Perfect 10 objects to this request on the grounds that it is compound, and also vague and ambiguous. Perfect 10 objects to this request on the grounds that it is burdensome, oppressive and vastly overbroad. Perfect 10 further objects to this request as it seeks the disclosure of information protected from discovery by the attorney-client privilege and the attorney work product doctrine. Perfect 10 further objects to this request on the grounds that it seeks information not relevant to the subject matter of the action, and not reasonably calculated to lead to the discovery of admissible evidence. Perfect 10 objects to this request on the grounds that it violates Dr. Zada's right of privacy and is prohibited by California Civil Code section 3295.

Perfect 10 will produce responsive non-privileged documents that it can locate upon a reasonable search, that have not already been produced. Dr. Zada will

---

[10] Perfect 10 and Zada served substantively identical responses.  Gregorian Decl. Exs. M and N.  Plaintiffs reproduce only Perfect 10's responses here to avoid duplication and waste of space.

1  produce responsive non-privileged documents sufficient to identify such payments

2  made directly by him, from January 1 2014, through March 30, 2015.

3         **Request for Production No. 15**

4         All documents concerning assets in which Norman Zada has had any actual

5  or contingent legal, beneficial, or equitable interest at any time since January 1,

6  2011.

7         **Response to Request for Production No. 15**

8         Perfect 10 incorporates the General Objections as set forth above and notes

9  that it has already produced most if not all of the discovery requested (see

10  paragraph 18) herein.

11        Perfect 10 objects to this request on the grounds that it is compound, and also

12  vague and ambiguous. Perfect 10 objects to this request on the grounds that it is

13  burdensome, oppressive and vastly overbroad. Perfect 10 further objects to this

14  request as it seeks the disclosure of information protected from discovery by the

15  attorney-client privilege and the attorney work product doctrine. Perfect 10 further

16  objects to this request on the grounds that it seeks information not relevant to the

17  subject matter of the action, and not reasonably calculated to lead to the discovery

18  of admissible evidence. Perfect 10 objects to this request on the grounds that it

19  violates Dr. Zada's right of privacy and is prohibited by California Civil Code

20  section 3295.

21        Subject to the above specific objections and Perfect 10's general objections,

22  Perfect 10 responds as follows: Dr. Zada will produce his 2014, 2015, and 2016 tax

23  returns, as well as statements from the brokerage and bank accounts listed in the

24  2014 tax return, which show the approximate amount of cash and cash equivalents

25  he had at that time. Plaintiffs are already in possession of the first pages of Dr.

26  Zada's 2007, 2008, 2009, 2010, 2011, 2012, and 2013 tax returns, which show that

27  he had very little interest or dividend income over that period, along with a tax loss

28

JOINT STIPULATION RE PLAINTIFFS'
MOTION TO COMPEL                          44          CASE NO.: 2:17-cv-05075-AB (JPR)

carry-forward of -$8.581 million. He will also produce copies of his personal bank statements from December of 2012 to March of 2015.  He will supplement the production of credit card statements that have already been produced, through January of 2017. He will not produce other documents, which violate his privacy and are not relevant to this case.

**Request for Production No. 16**

All documents identifying all assets held in bailment by or for, held or maintained for, or owned or possessed by Norman Zada or on Norman Zada's behalf at any time since January 1, 2011.

**Response to Request for Production No. 16**

Perfect 10 incorporates the General Objections as set forth above and notes that it has already produced most if not all of the discovery requested (see paragraph 18) herein.

Perfect 10 objects to this request on the grounds that it is compound, and also vague and ambiguous. Perfect 10 objects to this request on the grounds that it is burdensome, oppressive and vastly overbroad. Perfect 10 further objects to this request as it seeks the disclosure of information protected from discovery by the attorney-client privilege and the attorney work product doctrine. Perfect 10 further objects to this request on the grounds that it seeks information not relevant to the subject matter of the action, and not reasonably calculated to lead to the discovery of admissible evidence. Perfect 10 objects to this request on the grounds that it violates Dr. Zada's right of privacy and is prohibited by California Civil Code section 3295.

Subject to the above specific objections and Perfect 10's general objections, Perfect 10 responds as follows: Dr. Zada will produce his 2014, 2015, and 2016 tax returns, as well as statements from the brokerage and bank accounts listed in the 2014 tax return, which show the approximate amount of cash and cash equivalents

he had at that time. Plaintiffs are already in possession of the first pages of Dr. Zada's 2007, 2008, 2009, 2010, 2011, 2012, and 2013 tax returns, which show that he had very little interest or dividend income over that period, along with a tax loss carry-forward of -$8.581 million. He will also produce copies of his personal bank statements from December of 2012 to March of 2015.  He will supplement the production of credit card statements that have already been produced, through January of 2017.  He will not produce other documents, which violate his privacy and are not relevant to this case.

**Request for Production No. 17**

All documents from January 1, 2011 to present concerning the direct or indirect transfer of legal title or possession of any asset from Perfect 10 or Norman Zada.

**Response to Request for Production No. 17**

Perfect 10 incorporates the General Objections as set forth above and notes that it has already produced most if not all of the discovery requested (see paragraph 18) herein.

Perfect 10 objects to this request on the grounds that it is compound, as well as incomprehensible. Perfect 10 objects to this request on the grounds that it is burdensome, oppressive and vastly overbroad. Perfect 10 further objects to this request as it seeks the disclosure of information protected from discovery by the attorney-client privilege and the attorney work product doctrine. Perfect 10 further objects to this request on the grounds that it seeks information not relevant to the subject matter of the action, and not reasonably calculated to lead to the discovery of admissible evidence. Perfect 10 objects to this request on the grounds that it violates Dr. Zada's right of privacy and is prohibited by California Civil Code section 3295.

Subject to the above specific objections and Perfect 10's general objections, Perfect 10 responds as follows: To the extent that Plaintiffs meant "indirect transfer of legal title or possession of any asset from Perfect 10 to Norman Zada," Perfect 10 has already produced documents sufficient to identify such transfers, which were, the 2009 Lexus, which was already owned by Dr. Zada, as well as some furniture, magazines, and computers.

**Request for Production No. 18**

Documents sufficient to identify all funds owned or possessed by Norman Zada or held on Norman Zada's behalf at any time between January 1, 2011 and the present.

**Response to Request for Production No. 18**

Perfect 10 incorporates the General Objections as set forth above and notes that it has already produced most if not all of the discovery requested (see paragraph 18) herein.

Perfect 10 objects to this request on the grounds that it is compound, and also vague and ambiguous. Perfect 10 objects to this request on the grounds that it is burdensome, oppressive and vastly overbroad. Perfect 10 further objects to this request as it seeks the disclosure of information protected from discovery by the attorney-client privilege and the attorney work product doctrine. Perfect 10 further objects to this request on the grounds that it seeks information not relevant to the subject matter of the action, and not reasonably calculated to lead to the discovery of admissible evidence. Perfect 10 objects to this request on the grounds that it violates Dr. Zada's right of privacy and is prohibited by California Civil Code section 3295.

Subject to the above specific objections and Perfect 10's general objections, Perfect 10 responds as follows: Dr. Zada will produce his 2014, 2015, and 2016 tax returns, as well as statements from the brokerage and bank accounts listed in the

2014 tax return, which show the approximate amount of cash and cash equivalents he had at that time. Plaintiffs are already in possession of the first pages of Dr. Zada's 2007, 2008, 2009, 2010, 2011, 2012, and 2013 tax returns, which show that he had very little interest or dividend income over that period, along with a tax loss carry-forward of -$8.581 million. He will also produce copies of his personal bank statements from December of 2012 to March of 2015.  He will supplement the production of credit card statements that have already been produced, through January of 2017. He will not produce other documents, which violate his privacy and are not relevant to this case.

**Request for Production No. 20**

All documents concerning accounts of, or for the benefit of, Norman Zada.

**Response to Request for Production No. 20**

Perfect 10 incorporates the General Objections as set forth above and notes that it has already produced most if not all of the discovery requested (see paragraph 18) herein.

Perfect 10 objects to this request on the grounds that it is compound, and also vague and ambiguous. Perfect 10 objects to this request on the grounds that it is burdensome, wildly oppressive and vastly overbroad, as it is indefinite as to time. Perfect 10 further objects to this request as it seeks the disclosure of information protected from discovery by the attorney-client privilege and the attorney work product doctrine. Perfect 10 further objects to this request on the grounds that it seeks information not relevant to the subject matter of the action, and not reasonably calculated to lead to the discovery of admissible evidence. Perfect 10 objects to this request on the grounds that it violates Dr. Zada's right of privacy and is prohibited by California Civil Code section 3295.

Subject to the above specific objections and Perfect 10's general objections, Perfect 10 responds as follows: Dr. Zada will produce his 2014, 2015, and 2016 tax

returns, as well as statements from the brokerage and bank accounts listed in the 2014 tax return, which show the approximate amount of cash and cash equivalents he had at that time. Plaintiffs are already in possession of the first pages of Dr. Zada's 2007, 2008, 2009, 2010, 2011, 2012, and 2013 tax returns, which show that he had very little interest or dividend income over that period, along with a tax loss carry-forward of -$8.581 million. He will also produce copies of his personal bank statements from December of 2012 to March of 2015.  He will supplement the production of credit card statements that have already been produced, through January of 2017. He will not produce other documents, which violate his privacy and are not relevant to this case.

### Request for Production No. 22

All documents concerning the finances and financial statements of any entity, business, investment, or activities in which Norman Zada has a direct or indirect, actual or contingent, legal, beneficial, or equitable interest (including but not limited to ledgers, accounting records or bookkeeping records, balance sheets, profit and loss statements, earnings statements, reconciliation reports and operating statements in any format, including computerized, digitized, other media, or paper).

### Response to Request for Production No. 22

Perfect 10 incorporates the General Objections as set forth above and notes that it has already produced most if not all of the discovery requested (see paragraph 18) herein.

Perfect 10 objects to this request on the grounds that it is compound, and also vague and ambiguous. Perfect 10 objects to this request on the grounds that it is burdensome, oppressive and vastly overbroad. Perfect 10 further objects to this request as it seeks the disclosure of information protected from discovery by the attorney-client privilege and the attorney work product doctrine. Perfect 10 further objects to this request on the grounds that it seeks information not relevant to the

subject matter of the action, and not reasonably calculated to lead to the discovery of admissible evidence. Perfect 10 objects to this request on the grounds that it violates Dr. Zada's right of privacy and is prohibited by California Civil Code section 3295.

Subject to the above specific objections and Perfect 10's general objections, Perfect 10 responds as follows: Dr. Zada will produce his 2014, 2015, and 2016 tax returns, as well as statements from the brokerage and bank accounts listed in the 2014 tax return, which show the approximate amount of cash and cash equivalents he had at that time. Plaintiffs are already in possession of the first pages of Dr. Zada's 2007, 2008, 2009, 2010, 2011, 2012, and 2013 tax returns, which show that he had very little interest or dividend income over that period, along with a tax loss carry-forward of -$8.581 million. He will also produce copies of his personal bank statements from December of 2012 to March of 2015.  He will supplement the production of credit card statements that have already been produced, through January of 2017. He will not produce other documents, which violate his privacy and are not relevant to this case.

**Request for Production No. 24**

All documents concerning all contracts or agreements for the benefit of Norman Zada, in the possession of Norman Zada, or to which Norman Zada is or ever has been a party, a beneficiary, a successor in interest, or a predecessor in interest.

**Response to Request for Production No. 24**

Perfect 10 incorporates the General Objections as set forth above and notes that it has already produced most if not all of the discovery requested (see paragraph 18) herein.

Perfect 10 objects to this request on the grounds that it is compound, and also vague and ambiguous. Perfect 10 objects to this request on the grounds that it is

burdensome, wildly oppressive and vastly overbroad as there is no time limitation.
Perfect 10 further objects to this request as it seeks the disclosure of information
protected from discovery by the attorney-client privilege and the attorney work
product doctrine. Perfect 10 further objects to this request on the grounds that it
seeks information not relevant to the subject matter of the action, and not
reasonably calculated to lead to the discovery of admissible evidence. Perfect 10
objects to this request on the grounds that it violates Dr. Zada's right of privacy and
is prohibited by California Civil Code section 3295.

Subject to the above specific objections and Perfect 10's general objections,
Perfect 10 responds as follows: Perfect 10 has already produced contracts between
Perfect 10 and Dr. Zada and relevant corporate minutes. It will not produce
documents involving agreements between Dr. Zada and third parties that have no
relevance to this case.

**Request for Production No. 25**

All documents concerning communications since January 1, 2011, between
Norman Zada and Sean Chumura.

**Response to Request for Production No. 25**

Perfect 10 incorporates the General Objections as set forth above and notes
that it has already produced most if not all of the discovery requested (see
paragraph 18) herein.

Perfect 10 objects to this request on the grounds that it is compound, and also
vague and ambiguous. Perfect 10 objects to this request on the grounds that it is
burdensome, wildly oppressive and vastly overbroad. Perfect 10 further objects to
this request as it seeks the disclosure of information protected from discovery by
the attorney-client privilege and the attorney work product doctrine. Perfect 10
further objects to this request on the grounds that it seeks information not relevant

1  to the subject matter of the action, and not reasonably calculated to lead to the

2  discovery of admissible evidence.

3      Perfect 10 objects to this request on the grounds that violates Dr. Zada's

4  privacy.

5      **Request for Production No. 26**

6      All documents concerning communications since January 1, 2011, between

7  Norman Zada and Bruce Hersh.

8      **Response to Request for Production No. 26**

9      Perfect 10 incorporates the General Objections as set forth above and notes

10  that it has already produced most if not all of the discovery requested (see

11  paragraph 18) herein.

12      Perfect 10 objects to this request on the grounds that it is compound, and also

13  vague and ambiguous. Perfect 10 objects to this request on the grounds that it is

14  burdensome, wildly oppressive and vastly overbroad. Perfect 10 further objects to

15  this request as it seeks the disclosure of information protected from discovery by

16  the attorney-client privilege and the attorney work product doctrine. Perfect 10

17  further objects to this request on the grounds that it seeks information not relevant

18  to the subject matter of the action, and not reasonably calculated to lead to the

19  discovery of admissible evidence. Perfect 10 objects to this request on the grounds

20  that violates Dr. Zada's privacy, as Bruce Hersh prepares Dr. Zada's taxes.

21      **Request for Production No. 27**

22      All documents concerning communications since January 1, 2011, between

23  Norman Zada and Victor Weber.

24      **Response to Request for Production No. 27**

25      Perfect 10 incorporates the General Objections as set forth above and notes

26  that it has already produced most if not all of the discovery requested (see

27  paragraph 18) herein.

28

JOINT STIPULATION RE PLAINTIFFS'
MOTION TO COMPEL                        52            CASE NO.: 2:17-cv-05075-AB (JPR)

1   Perfect 10 objects to this request on the grounds that it is compound, and also
2   vague and ambiguous. Perfect 10 objects to this request on the grounds that it is
3   burdensome, wildly oppressive and vastly overbroad. Perfect 10 further objects to
4   this request as it seeks the disclosure of information protected from discovery by
5   the attorney-client privilege and the attorney work product doctrine. Perfect 10
6   further objects to this request on the grounds that it seeks information not relevant
7   to the subject matter of the action, and not reasonably calculated to lead to the
8   discovery of admissible evidence. Perfect 10 objects to this request on the grounds
9   that violates Dr. Zada's privacy.

10   **Request for Production No. 29**

11   All documents concerning employment by Perfect 10 of any person since
12   January 1, 2011.

13   **Response to Request for Production No. 29**

14   Perfect 10 incorporates the General Objections as set forth above and notes
15   that it has already produced most if not all of the discovery requested (see
16   paragraph 18) herein.

17   Perfect 10 objects to this request on the grounds that it is compound, and also
18   vague and ambiguous. Perfect 10 objects to this request on the grounds that it is
19   burdensome, wildly oppressive and vastly overbroad. Perfect 10 further objects to
20   this request as it seeks the disclosure of information protected from discovery by
21   the attorney-client privilege and the attorney work product doctrine. Perfect 10
22   further objects to this request on the grounds that it seeks information not relevant
23   to the subject matter of the action, and not reasonably calculated to lead to the
24   discovery of admissible evidence.

25   **Request for Production No. 30**

26   All documents concerning employment by Norman Zada of any person since
27   January 1, 2011.

28

JOINT STIPULATION RE PLAINTIFFS'
MOTION TO COMPEL

53

CASE NO.: 2:17-cv-05075-AB (JPR)

**Response to Request for Production No. 30**

Perfect 10 incorporates the General Objections as set forth above and notes that it has already produced most if not all of the discovery requested (see paragraph 18) herein.

Perfect 10 objects to this request on the grounds that it is compound, and also vague and ambiguous. Perfect 10 objects to this request on the grounds that it is burdensome, wildly oppressive and vastly overbroad. Perfect 10 further objects to this request as it seeks the disclosure of information protected from discovery by the attorney-client privilege and the attorney work product doctrine. Perfect 10 further objects to this request on the grounds that it seeks information not relevant to the subject matter of the action, and not reasonably calculated to lead to the discovery of admissible evidence. Perfect 10 further objects to this request because it violates Dr. Zada's privacy.

**Request for Production No. 31**

All documents concerning guarantees by, for, or arranged by Perfect 10 since January 1, 2011.

**Response to Request for Production No. 31**

Perfect 10 incorporates the General Objections as set forth above and notes that it has already produced most if not all of the discovery requested (see paragraph 18) herein.

Perfect 10 objects to this request on the grounds that it is compound, and also vague and ambiguous. Perfect 10 objects to this request on the grounds that it is burdensome, oppressive and vastly overbroad. Perfect 10 further objects to this request as it seeks the disclosure of information protected from discovery by the attorney-client privilege and the attorney work product doctrine. Perfect 10 further objects to this request on the grounds that it seeks information not relevant to the

1   subject matter of the action, and not reasonably calculated to lead to the discovery

2   of admissible evidence.

3       Subject to the above specific objections and Perfect 10's general objections,

4   Perfect 10 responds as follows: Perfect 10 is not aware of any non-privileged,

5   responsive documents.

6   **Request for Production No. 32**

7       All documents concerning guarantees by, for, or arranged by Norman Zada

8   since January 1, 2011.

9   **Response to Request for Production No. 32**

10      Perfect 10 incorporates the General Objections as set forth above and notes

11  that it has already produced most if not all of the discovery requested (see

12  paragraph 18) herein.

13      Perfect 10 objects to this request on the grounds that it is compound, and also

14  vague and ambiguous. Perfect 10 objects to this request on the grounds that it is

15  burdensome, oppressive and vastly overbroad. Perfect 10 further objects to this

16  request as it seeks the disclosure of information protected from discovery by the

17  attorney-client privilege and the attorney work product doctrine. Perfect 10 further

18  objects to this request on the grounds that it seeks information not relevant to the

19  subject matter of the action, and not reasonably calculated to lead to the discovery

20  of admissible evidence. Perfect 10 further objects to this request because it violates

21  Dr. Zada's privacy.

22      Subject to the above specific objections and Perfect 10's general objections,

23  Perfect 10 responds as follows: Perfect 10 is not aware of any non-privileged,

24  responsive documents.

25

26

27

28

**Request for Production No. 33**

All documents concerning partnerships, limited liability companies, trusts, joint ventures, or other Persons in which Perfect 10 has ever had an interest or has participated.

**Response to Request for Production No. 33**

Perfect 10 incorporates the General Objections as set forth above and notes that it has already produced most if not all of the discovery requested (see paragraph 18) herein.

Perfect 10 objects to this request on the grounds that it is compound, and also vague and ambiguous. Perfect 10 objects to this request on the grounds that it is burdensome, oppressive and vastly overbroad. Perfect 10 further objects to this request as it seeks the disclosure of information protected from discovery by the attorney-client privilege and the attorney work product doctrine. Perfect 10 further objects to this request on the grounds that it seeks information not relevant to the subject matter of the action, and not reasonably calculated to lead to the discovery of admissible evidence. Perfect 10 further objects to this request because it violates Dr. Zada's privacy.

Subject to the above specific objections and Perfect 10's general objections, Perfect 10 responds as follows: Perfect 10 is not aware of any non-privileged, responsive documents.

**Request for Production No. 34**

All documents concerning partnerships, limited liability companies, trusts, joint ventures, or other Persons in which Norman Zada has ever had an interest or has participated.

**Response to Request for Production No. 34**

Perfect 10 incorporates the General Objections as set forth above and notes that it has already produced most if not all of the discovery requested (see paragraph 18) herein.

Perfect 10 objects to this request on the grounds that it is compound, and also vague and ambiguous. Perfect 10 objects to this request on the grounds that it is burdensome, wildly oppressive and vastly overbroad as it is unlimited as to time. Perfect 10 further objects to this request as it seeks the disclosure of information protected from discovery by the attorney-client privilege and the attorney work product doctrine. Perfect 10 further objects to this request on the grounds that it seeks information not relevant to the subject matter of the action, and not reasonably calculated to lead to the discovery of admissible evidence. Perfect 10 objects to this request on the grounds that it violates Dr. Zada's right of privacy and is prohibited by California Civil Code section 3295.

**Request for Production No. 38**

All documents concerning Perfect 10's parent companies, subsidiary companies, affiliated companies, companies under common ownership, predecessors in interest, and successors in interest.

**Response to Request for Production No. 38**

Perfect 10 incorporates the General Objections as set forth above and notes that it has already produced most if not all of the discovery requested (see paragraph 18) herein.

Perfect 10 objects to this request on the grounds that it is compound, and also vague and ambiguous. Perfect 10 objects to this request on the grounds that it is burdensome, oppressive and vastly overbroad. Perfect 10 further objects to this request on the grounds that it seeks information not relevant to the subject matter of

1  the action, and not reasonably calculated to lead to the discovery of admissible

2  evidence.

3      Subject to the above specific objections and Perfect 10's general objections,

4  Perfect 10 responds as follows: Perfect 10 is not aware of any responsive

5  documents.

6  **Request for Production No. 39**

7      All documents concerning insurance policies or coverage (including but not

8  limited to homeowners insurance, commercial (or comprehensive) general liability

9  insurance, media perils insurance, cyberliability insurance, network risk insurance,

10  umbrella or excess insurance, car insurance, renters insurance, life insurance, health

11  (including dental and vision) insurance, disability insurance, unemployment

12  insurance, long-term care insurance), in which Perfect 10 or Norman Zada is an

13  insured (including as a named or additional insured), for which Perfect 10 or

14  Norman Zada has paid any premiums, or in which Perfect 10 or Norman Zada is a

15  beneficiary.

16  **Response to Request for Production No. 39**

17      Perfect 10 incorporates the General Objections as set forth above and notes

18  that it has already produced most if not all of the discovery requested (see

19  paragraph 18) herein.

20      Perfect 10 objects to this request on the grounds that it is compound, and also

21  vague and ambiguous. Perfect 10 objects to this request on the grounds that it is

22  burdensome, wildly oppressive and vastly overbroad, as it is not limited as to time.

23  Perfect 10 further objects to this request on the grounds that it seeks information not

24  relevant to the subject matter of the action, and not reasonably calculated to lead to

25  the discovery of admissible evidence. Perfect 10 further objects to this request

26  because it violates Dr. Zada's privacy.

27

28

1    Subject to the above specific objections and Perfect 10's general objections,

2    Perfect 10 responds as follows: Perfect 10 and Dr. Zada have already contacted

3    their insurance companies and determined that the policies did not cover Plaintiff's

4    claims in this or the related case. However, Perfect 10 will produce copies of

5    insurance policies that it can locate upon a reasonable search.

6    **Request for Production No. 41**

7    All documents evidencing Norman Zada's income, revenues, disbursements,

8    expenses, profits, and losses from January 1, 2011 to present.

9    **Response to Request for Production No. 41**

10   Perfect 10 incorporates the General Objections as set forth above and notes

11   that it has already produced most if not all of the discovery requested (see

12   paragraph 18) herein.

13   Perfect 10 objects to this request on the grounds that it is compound, and also

14   vague and ambiguous. Perfect 10 objects to this request on the grounds that it is

15   burdensome, oppressive and vastly overbroad. Perfect 10 further objects to this

16   request as it seeks the disclosure of information protected from discovery by the

17   attorney-client privilege and the attorney work product doctrine. Perfect 10 further

18   objects to this request on the grounds that it seeks information not relevant to the

19   subject matter of the action, and not reasonably calculated to lead to the discovery

20   of admissible evidence. Perfect 10 objects to this request on the grounds that it

21   violates Dr. Zada's right of privacy and is prohibited by California Civil Code

22   section 3295.

23   Subject to the above specific objections and Perfect 10's general objections,

24   Perfect 10 responds as follows: Dr. Zada will produce his 2014, 2015, and 2016 tax

25   returns, as well as statements from the brokerage and bank accounts listed in the

26   2014 tax return, which show the approximate amount of cash and cash equivalents

27   he had at that time. Plaintiffs are already in possession of the first pages of Dr.

28

JOINT STIPULATION RE PLAINTIFFS'    59    CASE NO.: 2:17-cv-05075-AB (JPR)
MOTION TO COMPEL

Zada's 2007, 2008, 2009, 2010, 2011, 2012, and 2013 tax returns, which show that
he had very little interest or dividend income over that period, along with a tax loss
carry-forward of -$8.581 million. He will also produce copies of his personal bank
statements from December of 2012 to March of 2015. He will supplement the
production of credit card statements that have already been produced, through
January of 2017. He will not produce other documents, which violate his privacy
and are not relevant to this case.

**Request for Production No. 42**

All documents evidencing income, revenues, disbursements, expenses,
profits, and losses of any entity or business in which Norman Zada had a direct,
indirect, or beneficial interest at any time from January 1, 2011 to present.

**Response to Request for Production No. 42**

Perfect 10 incorporates the General Objections as set forth above and notes
that it has already produced most if not all of the discovery requested (see
paragraph 18) herein.

Perfect 10 objects to this request on the grounds that it is compound, and also
vague and ambiguous. Perfect 10 objects to this request on the grounds that it is
burdensome, oppressive and vastly overbroad. Perfect 10 further objects to this
request as it seeks the disclosure of information protected from discovery by the
attorney-client privilege and the attorney work product doctrine. Perfect 10 further
objects to this request on the grounds that it seeks information not relevant to the
subject matter of the action, and not reasonably calculated to lead to the discovery
of admissible evidence. Perfect 10 objects to this request on the grounds that it
violates Dr. Zada's right of privacy and is prohibited by California Civil Code
section 3295.

Subject to the above specific objections and Perfect 10's general objections,
Perfect 10 responds as follows:  Dr. Zada will produce his 2014, 2015, and 2016 tax

returns, as  well as statements from the brokerage and bank accounts listed in the

2014 tax return, which show the approximate amount of cash and cash equivalents

he had at that time. Plaintiffs are already in  possession of the first pages of Dr.

Zada's 2007, 2008, 2009, 2010, 2011, 2012, and 2013 tax  returns, which show that

he had very little interest or dividend income over that period, along  with a tax loss

carry-forward of -$8.581 million.  He will also produce copies of his personal bank

statements from December of 2012 to March of 2015. He will supplement the

production of credit card  statements that have already been produced, through

January of 2017.  He will not produce other  documents, which violate his privacy

and are not relevant to this case.

**Request for Production No. 44**

All documents concerning assets acquired by any Person with proceeds from
Perfect 10.

**Response to Request for Production No. 44**

Perfect 10 incorporates the General Objections as set forth above and notes

that it has already produced most if not all of the discovery requested (see

paragraph 18) herein.

Perfect 10 objects to this request on the grounds that it is compound, and also

vague and ambiguous. Perfect 10 objects to this request on the grounds that it is

burdensome, wildly oppressive and vastly overbroad, as it is unlimited as to time.

Perfect 10 objects to this request on the basis that it does not specify the documents

sought with particularity. Perfect 10 further objects to this request on the grounds

that it seeks information not relevant to the subject matter of the action, and not

reasonably calculated to lead to the discovery of admissible evidence. Perfect 10

further objects to this request because it is duplicative of other previous requests

and current requests. Perfect 10 objects to this request on the grounds that it

1  violates Dr. Zada's right of privacy and is prohibited by California Civil Code

2  section 3295.

3      Subject to the above specific objections and Perfect 10's general objections,

4  Perfect 10 responds as follows:

5  To the extent that Perfect 10 understands this confusing request, it is not aware of

6  any responsive documents.

7      **Request for Production No. 45**

8      All documents concerning contracts, agreements, receipts, payments, sales,

9  purchases, distributions, transfers, loans, leases, pledges, hypothecations, bailments,

10  rentals, leases, loans, mortgages, securities, investments, collateral, and other

11  transactions involving, to, by, for, for the benefit of, or on behalf of Perfect 10 or

12  Norman Zada, regarding anything of value (including but not limited to drafts,

13  execution documents, transmittals, communications, records, receipts, bills of sale,

14  purchase orders, invoices, letters of credit, loan documents, bank statements, credit

15  card statements, bank reconciliation reports, check registers, deposit slips,

16  duplicates, facsimiles, photocopies, and cancelled checks) from January 1, 2011 to

17  present.

18      **Response to Request for Production No. 45**

19      Perfect 10 incorporates the General Objections as set forth above and notes

20  that it has already produced most if not all of the discovery requested (see

21  paragraph 18) herein.

22      Perfect 10 objects to this request on the grounds that it is compound, and also

23  vague and ambiguous. Perfect 10 objects to this request on the grounds that it is

24  burdensome, wildly oppressive and vastly overbroad. Perfect 10 further objects to

25  this request as it seeks the disclosure of information protected from discovery by

26  the attorney-client privilege and the attorney work product doctrine. Perfect 10

27  further objects to this request on the grounds that it seeks information not relevant

28

to the subject matter of the action, and not reasonably calculated to lead to the

discovery of admissible evidence. Perfect 10 objects to this request on the grounds

that it violates Dr. Zada's right of privacy and is prohibited by California Civil

Code section 3295.

Subject to the above specific objections and Perfect 10's general objections,

Perfect 10 responds as follows: Perfect 10 has already provided its tax returns,

detailed financial statements showing every transaction, and bank accounts going

back from at least 2014 to 1996, which is far more than Plaintiffs ever did, as they

have consistently refused to provide similar discovery. To the extent that there are

additional bank statements, tax returns, etc. that have not already been produced,

they will be produced. Dr. Zada will also supplement the production of his personal

credit card statements so that they extend to January of 2017. Perfect 10 will also

attempt to supplement its production of cancelled checks. However, the rest of this

request was clearly done to vex and harass, asks for materials that are irrelevant

and/or violate Dr. Zada's privacy, and will not be provided.

**Request for Production No. 47**

All documents concerning receipts by Norman Zada of anything of value or

tokens of anything of value for the benefit of any other person or entity.

**Response to Request for Production No. 47**

Perfect 10 incorporates the General Objections as set forth above and notes

that it has already produced most if not all of the discovery requested (see

paragraph 18) herein.

Perfect 10 objects to this request on the grounds that it is compound, and also

vague and ambiguous. Perfect 10 objects to this request on the grounds that it is

burdensome, wildly oppressive and vastly overbroad, as there is no limitation on

time. Perfect 10 further objects to this request as it seeks the disclosure of

information protected from discovery by the attorney-client privilege and the

attorney work product doctrine. Perfect 10 further objects to this request on the grounds that it seeks information not relevant to the subject matter of the action, and not reasonably calculated to lead to the discovery of admissible evidence. Perfect 10 objects to this request on the grounds that it violates Dr. Zada's right of privacy and is prohibited by California Civil Code section 3295.

Subject to the above specific objections and Perfect 10's general objections, Perfect 10 responds as follows: Dr. Zada will produce his 2014, 2015, and 2016 tax returns, as well as statements from the brokerage and bank accounts listed in the 2014 tax return, which show the approximate amount of cash and cash equivalents he had at that time. Plaintiffs are already in possession of the first pages of Dr. Zada's 2007, 2008, 2009, 2010, 2011, 2012, and 2013 tax returns, which show that he had very little interest or dividend income over that period, along with a tax loss carry-forward of -$8.581 million. He will also produce copies of his personal bank statements from December of 2012 to March of 2015. He will supplement the production of credit card statements that have already been produced, through January of 2017. He will not produce other documents, which violate his privacy and are not relevant to this case.

### Request for Production No. 49

All documents concerning values of any entity or business, or any segment, asset or liability thereof (including but not limited to documents concerning formal or informal appraisals, valuations, estimates of value, suggested prices or values, market prices, offers or demands, proposals, invitations, or pro forma indications or characterizations of value), directly or beneficially owned by Norman Zada.

### Response to Request for Production No. 49

Perfect 10 incorporates the General Objections as set forth above and notes that it has already produced most if not all of the discovery requested (see paragraph 18) herein.

Perfect 10 objects to this request on the grounds that it is compound, and also vague and ambiguous. Perfect 10 objects to this request on the grounds that it is burdensome, wildly oppressive and vastly overbroad, as it is not limited as to time. Perfect 10 further objects to this request on the grounds that it seeks information not relevant to the subject matter of the action, and not reasonably calculated to lead to the discovery of admissible evidence. Perfect 10 objects to this request on the grounds that it violates Dr. Zada's right of privacy and is prohibited by California Civil Code section 3295.

**Request for Production No. 50**

All documents concerning any credit of Perfect 10 or Norman Zada (including but not limited to credit lines, credit limits, retainers, deposits, prepayments, and security for payment).

**Response to Request for Production No. 50**

Perfect 10 incorporates the General Objections as set forth above and notes that it has already produced most if not all of the discovery requested (see paragraph 18) herein.

Perfect 10 objects to this request on the grounds that it is compound, and also vague and ambiguous. Perfect 10 objects to this request on the grounds that it is burdensome, wildly oppressive and vastly overbroad, as it is indefinite as to time. Perfect 10 further objects to this request as it seeks the disclosure of information protected from discovery by the attorney-client privilege and the attorney work product doctrine. Perfect 10 further objects to this request on the grounds that it seeks information not relevant to the subject matter of the action, and not reasonably calculated to lead to the discovery of admissible evidence. Perfect 10 objects to this request on the grounds that it violates Dr. Zada's right of privacy and is prohibited by California Civil Code section 3295.

Subject to the above specific objections and Perfect 10's general objections, Perfect 10 responds as follows: Perfect 10 has already provided its tax returns, detailed financial statements showing every transaction, and bank accounts going back from at least 2014 to 1996, which is far more than Plaintiffs ever did, as they have consistently refused to provide similar discovery. Dr. Zada will be producing his 2014, 2015, and 2016 tax returns, as well as brokerage and bank statements at the end of 2014. He will also produce copies of his personal bank statements from December of 2012 to March of 2015. He will supplement the production of credit card statements that have already been produced, through January of 2017.To the extent that there are additional Perfect 10 bank statements, tax returns, etc. that have not already been produced, they will be produced. Perfect 10 will also attempt to supplement its production of cancelled checks. However, the rest of this request was clearly done to vex and harass, asks for materials that are irrelevant and/or violate Dr. Zada's privacy going back years, and will not be provided.

**Request for Production No. 51**

All documents concerning all credit cards and credit card accounts used by any Person for the benefit of Perfect 10 or Norman Zada.

**Response to Request for Production No. 51**

Perfect 10 incorporates the General Objections as set forth above and notes that it has already produced most if not all of the discovery requested (see paragraph 18) herein.

Perfect 10 objects to this request on the grounds that it is compound, and also vague and ambiguous. Perfect 10 objects to this request on the grounds that it is burdensome, wildly oppressive and vastly overbroad, as it is not limited as to time. Perfect 10 further objects to this request on the grounds that it seeks information not relevant to the subject matter of the action, and not reasonably calculated to lead to

the discovery of admissible evidence. Perfect 10 further objects to this request

because it violates Dr. Zada's privacy.

Perfect 10 incorporates the General Objections as set forth above and notes

that it has already produced most if not all of the discovery requested (see

paragraph 18) herein.

Subject to the above specific objections and Perfect 10's general objections,

Perfect 10 responds as follows: Perfect 10 has already provided its tax returns,

detailed financial statements showing every transaction, and bank accounts going

back from at least 2014 to 1996, which is far more than Plaintiffs ever did, as they

have consistently refused to provide similar discovery. Dr. Zada will be producing

his 2014, 2015, and 2016 tax returns, as well as brokerage and bank statements at

the end of 2014. He will also produce copies of his personal bank statements from

December of 2012 to March of 2015. He will supplement the production of credit

card statements that have already been produced, through January of 2017. To the

extent that there are additional Perfect 10 bank statements, tax returns, etc. that

have not already been produced, they will be produced. However, the rest of this

request was clearly done to vex and harass, asks for materials that are irrelevant

and/or violate Dr. Zada's privacy going back years, and will not be provided.

**Request for Production No. 52**

All documents concerning any debts of, or debt collection efforts against or

by, Perfect 10 or Norman Zada.

**Response to Request for Production No. 52**

Perfect 10 incorporates the General Objections as set forth above and notes

that it has already produced most if not all of the discovery requested (see

paragraph 18) herein.

Perfect 10 objects to this request on the grounds that it is compound, and also

vague and ambiguous. Perfect 10 objects to this request on the grounds that it is

JOINT STIPULATION RE PLAINTIFFS'
MOTION TO COMPEL                    67          CASE NO.: 2:17-cv-05075-AB (JPR)

burdensome, wildly oppressive and vastly overbroad, as it is not limited as to time. Perfect 10 further objects to this request on the grounds that it seeks information not relevant to the subject matter of the action, and not reasonably calculated to lead to the discovery of admissible evidence. Perfect 10 further objects to this request because it violates Dr. Zada's privacy.

Subject to the above specific objections and Perfect 10's general objections, Perfect 10 responds as follows: Perfect 10 has only two creditors, Plaintiffs and Dr. Zada. Dr. Zada does not have any debts, other than routine credit card bills and other routine expenses.

**Request for Production No. 53**

All documents concerning any expenses of Perfect 10 or Norman Zada, including prepaid expenses and accrued expenses.

**Response to Request for Production No. 53**

Perfect 10 incorporates the General Objections as set forth above and notes that it has already produced most if not all of the discovery requested (see paragraph 18) herein.

Perfect 10 objects to this request on the grounds that it is compound, and also vague and ambiguous. Perfect 10 objects to this request on the grounds that it is burdensome, wildly oppressive and vastly overbroad, as it is not limited as to time. Perfect 10 further objects to this request on the grounds that it seeks information not relevant to the subject matter of the action, and not reasonably calculated to lead to the discovery of admissible evidence. Perfect 10 further objects to this request because it violates Dr. Zada's privacy.

Perfect 10 incorporates the General Objections as set forth above and notes that it has already produced most if not all of the discovery requested (see paragraph 18) herein.

Perfect 10 objects to this request on the grounds that it is compound, and also vague and ambiguous. Perfect 10 objects to this request on the grounds that it is burdensome, wildly oppressive and vastly overbroad, as it is indefinite as to time. Perfect 10 further objects to this request as it seeks the disclosure of information protected from discovery by the attorney-client privilege and the attorney work product doctrine. Perfect 10 further objects to this request on the grounds that it seeks information not relevant to the subject matter of the action, and not reasonably calculated to lead to the discovery of admissible evidence. Perfect 10 objects to this request on the grounds that it violates Dr. Zada's right of privacy and is prohibited by California Civil Code section 3295.

Subject to the above specific objections and Perfect 10's general objections, Perfect 10 responds as follows: Perfect 10 has already provided its tax returns, detailed financial statements showing every transaction, and bank accounts going back from at least 2014 to 1996, which is far more than Plaintiffs ever did, as they have consistently refused to provide similar discovery. Dr. Zada will be producing his 2014, 2015, and 2016 tax returns, as well as brokerage and bank statements at the end of 2014. He will also produce copies of his personal bank statements from December of 2012 to March of 2015. He will supplement the production of credit card statements that have already been produced, through January of 2017. To the extent that there are additional Perfect 10 bank statements, tax returns, etc. that have not already been produced, they will be produced. However, the rest of this request was clearly done to vex and harass, asks for materials that are irrelevant and/or violate Dr. Zada's privacy going back years, and will not be provided.

**Request for Production No. 55**

All documents concerning all credit cards and credit card accounts in the name of Perfect 10 or Norman Zada and used for the benefit of any Person.

**Response to Request for Production No. 55**

Perfect 10 incorporates the General Objections as set forth above and notes that it has already produced most if not all of the discovery requested (see paragraph 18) herein.

Perfect 10 objects to this request on the grounds that it is compound, and also vague and ambiguous. Perfect 10 objects to this request on the grounds that it is burdensome, wildly oppressive and vastly overbroad, as it is indefinite as to time. Perfect 10 further objects to this request as it seeks the disclosure of information protected from discovery by the attorney-client privilege and the attorney work product doctrine. Perfect 10 further objects to this request on the grounds that it seeks information not relevant to the subject matter of the action, and not reasonably calculated to lead to the discovery of admissible evidence. Perfect 10 objects to this request on the grounds that it violates Dr. Zada's right of privacy and is prohibited by California Civil Code section 3295.

Subject to the above specific objections and Perfect 10's general objections, Perfect 10 responds as follows: Perfect 10 has already provided its tax returns, detailed financial statements showing every transaction, and bank accounts going back from at least 2014 to 1996, which is far more than Plaintiffs ever did, as they have consistently refused to provide similar discovery. Dr. Zada will be producing his 2014, 2015, and 2016 tax returns, as well as brokerage and bank statements at the end of 2014. He will also produce copies of his personal bank statements from December of 2012 to March of 2015. He will supplement the production of credit card statements that have already been produced, through January of 2017. To the extent that there are additional Perfect 10 bank statements, tax returns, etc. that have not already been produced, they will be produced. However, the rest of this request was clearly done to vex and harass, asks for materials that are irrelevant and/or violate Dr. Zada's privacy going back years, and will not be provided.

**Request for Production No. 57**

All documents concerning real property owned, occupied, possessed, controlled, leased, rented, or used by Perfect 10 or Norman Zada (including persons acting as their employees, contractors, or agents) since January 1, 2011.

**Response to Request for Production No. 57**

Perfect 10 incorporates the General Objections as set forth above and notes that it has already produced most if not all of the discovery requested (see paragraph 18) herein.

Perfect 10 objects to this request on the grounds that it is compound, and also vague and ambiguous. Perfect 10 objects to this request on the grounds that it is burdensome, oppressive and vastly overbroad. Perfect 10 further objects to this request as it seeks the disclosure of information protected from discovery by the attorney-client privilege and the attorney work product doctrine. Perfect 10 further objects to this request on the grounds that it seeks information not relevant to the subject matter of the action, and not reasonably calculated to lead to the discovery of admissible evidence. Perfect 10 objects to this request on the grounds that it violates Dr. Zada's right of privacy and is prohibited by California Civil Code section 3295.

Subject to the above specific objections and Perfect 10's general objections, Perfect 10 responds as follows: Perfect 10 has already agreed to produce documents regarding its furniture and computers, and Dr. Zada desk, to the extent they have not already been produced. Dr. Zada owns two properties. One at 11803 Norfield Court, and one at 4572 Martson Dr. in Encino, which he purchased in June of 2015. The rest of this request will not be answered as it is irrelevant to issue of unlawful reconveyance and violates Dr. Zada's privacy.

**Request for Production No. 58**

All documents concerning personal property owned, possessed, controlled, leased, rented, lent, borrowed, or used by Perfect 10 or Norman Zada (including by persons acting as employees, contractors, or agents of Perfect 10 or Norman Zada) since January 1, 2011 (including but not limited to documents concerning transactions concerning personal property and locations of personal property).

**Response to Request for Production No. 58**

Perfect 10 incorporates the General Objections as set forth above and notes that it has already produced most if not all of the discovery requested (see paragraph 18) herein.

Perfect 10 objects to this request on the grounds that it is compound, and also vague and ambiguous. Perfect 10 objects to this request on the grounds that it is burdensome, oppressive and vastly overbroad. Perfect 10 further objects to this request as it seeks the disclosure of information protected from discovery by the attorney-client privilege and the attorney work product doctrine. Perfect 10 further objects to this request on the grounds that it seeks information not relevant to the subject matter of the action, and not reasonably calculated to lead to the discovery of admissible evidence. Perfect 10 objects to this request on the grounds that it violates Dr. Zada's right of privacy and is prohibited by California Civil Code section 3295.

Subject to the above specific objections and Perfect 10's general objections, Perfect 10 responds as follows: Perfect 10 has already agreed to produce documents regarding its furniture and computers, and Dr. Zada desk, to the extent they have not already been produced. Dr. Zada owns two properties. One at 11803 Norfield Court, and one at 4572 Martson Dr. in Encino, which he purchased in June of 2015. The rest of this request will not be answered as it is irrelevant to issue of unlawful reconveyance and violates Dr. Zada's privacy.

**Request for Production No. 59**

All documents concerning any interests of Perfect 10 or Norman Zada in any things of value.

**Response to Request for Production No. 59**

Perfect 10 incorporates the General Objections as set forth above and notes that it has already produced most if not all of the discovery requested (see paragraph 18) herein.

Perfect 10 objects to this request on the grounds that it is compound, and also vague and ambiguous. Perfect 10 objects to this request on the grounds that it is burdensome, wildly oppressive and vastly overbroad, as it is indefinite as to time. Perfect 10 further objects to this request as it seeks the disclosure of information protected from discovery by the attorney-client privilege and the attorney work product doctrine. Perfect 10 further objects to this request on the grounds that it seeks information not relevant to the subject matter of the action, and not reasonably calculated to lead to the discovery of admissible evidence. Perfect 10 objects to this request on the grounds that it violates Dr. Zada's right of privacy and is prohibited by California Civil Code section 3295.

Subject to the above specific objections and Perfect 10's general objections, Perfect 10 responds as follows: Perfect 10 has already provided its tax returns, detailed financial statements showing every transaction, and bank accounts going back from at least 2013 to 1996, which is far more than Plaintiffs ever did, as they have consistently refused to provide similar discovery. Dr. Zada will be producing his 2014, 2015, and 2016 tax returns, as well as brokerage and bank statements at the end of 2014. To the extent that there are additional Perfect 10 bank statements, tax returns, etc. that have not already been produced, they will be produced. However, the rest of this request was clearly done to vex and harass, asks for

1  materials that are irrelevant and/or violate Dr. Zada's privacy going back years, and

2  will not be provided.

3        **Request for Production No. 60**

4        All documents concerning any safe or strongbox, storage facility, or their

5  contents, located at 11803 Norwood Court, Los Angeles, CA; 72 Beverly Park

6  Drive, Beverly Hills, CA; or at any other location or premises occupied, used,

7  controlled, or available to Perfect 10 or any Perfect 10 employee or contractor.

8        **Response to Request for Production No. 60**

9        Perfect 10 incorporates the General Objections as set forth above and notes

10  that it has already produced most if not all of the discovery requested (see

11  paragraph 18) herein.

12        Perfect 10 objects to this request on the grounds that it is compound. Perfect

13  10 objects to this request on the grounds that it is wildly burdensome, oppressive

14  and vastly overbroad, as it is unlimited as to time. Perfect 10 further objects to this

15  request on the grounds that it seeks information not relevant to the subject matter of

16  the action, and not reasonably calculated to lead to the discovery of admissible

17  evidence. Perfect 10's bank statements show that no cash was ever removed from

18  the Perfect 10 bank account, meaning that any cash in Dr. Zada's safe is Dr. Zada's.

19  Perfect 10 objects to this request on the grounds that it violates Dr. Zada's right of

20  privacy and is prohibited by California Civil Code section 3295.

21        **Request for Production No. 61**

22        All documents concerning any safe deposit box, storage facility, or their

23  contents, controlled by Perfect 10 or Norman Zada, used for their property or

24  benefit, or accessible to any of their employees or contractors.

25

26

27

28

**Response to Request for Production No. 61**

Perfect 10 incorporates the General Objections as set forth above and notes that it has already produced most if not all of the discovery requested (see paragraph 18) herein.

Perfect 10 objects to this request on the grounds that it is compound. Perfect 10 objects to this request on the grounds that it is wildly burdensome, oppressive and vastly overbroad, as it is unlimited as to time. Perfect 10 further objects to this request on the grounds that it seeks information not relevant to the subject matter of the action, and not reasonably calculated to lead to the discovery of admissible evidence. Perfect 10's bank statements show that no cash was ever removed from the Perfect 10 bank account, meaning that any cash in Dr. Zada's safe is Dr. Zada's. Perfect 10 objects to this request on the grounds that it violates Dr. Zada's right of privacy and is prohibited by California Civil Code section 3295.

**Request for Production No. 62**

All documents concerning personal property of any Person at any address of property occupied or used by Perfect 10 at any time, including but not limited to currency; specie; bullion; commodities; gold, silver, or other precious metals; jewelry (including watches) and gemstones; securities (including but not limited to bearer securities); certificates (including certificates of deposit); firearms and other weapons; gaming tokens and casino chips; or evidence of indebtedness.

**Response to Request for Production No. 62**

Perfect 10 incorporates the General Objections as set forth above and notes that it has already produced most if not all of the discovery requested (see paragraph 18) herein.

Perfect 10 objects to this request on the grounds that it is compound. Perfect10 objects to this request on the grounds that it is wildly burdensome, oppressive and vastly overbroad, as it is unlimited as to time. Perfect 10 further

objects to this request on the grounds that it seeks information not relevant to the subject matter of the action, and not reasonably calculated to lead to the discovery of admissible evidence. Perfect 10's bank statements show that no cash was ever removed from the Perfect 10 bank account, and no monies were ever spent to purchase gold, meaning that any cash or gold in Dr. Zada's safe is Dr. Zada's. Perfect 10 objects to this request on the grounds that it violates Dr. Zada's right of privacy and is prohibited by California Civil Code section 3295.

**Request for Production No. 63**

All documents concerning Bitcoin or other cryptocurrency and either Perfect 10 or Norman Zada.

**Response to Request for Production No. 63**

Perfect 10 is not aware of any responsive documents.

**Request for Production No. 64**

All documents not previously produced to Giganews or Livewire, concerning copyrights, patents, trademarks, domain names, publicity rights, trade secrets, domain names, or other intangible rights or interests owned, controlled, administered, managed, possessed, used, commercialized, monetized, exploited, transferred, licensed, hypothecated, pledged, or otherwise acted upon by Perfect 10 or Norman Zada.

**Response to Request for Production No. 64**

Perfect 10 incorporates the General Objections as set forth above and notes that it has already produced most if not all of the discovery requested (see paragraph 18) herein.

Perfect 10 objects to this request on the grounds that it is compound. Perfect 10 objects to this request on the grounds that it is burdensome, oppressive and vastly overbroad. Perfect 10 further objects to this request on the grounds that it seeks information not relevant to the subject matter of the action, and not

reasonably calculated to lead to the discovery of admissible evidence. Perfect 10 objects to this request on the grounds that it violates Dr. Zada's right of privacy and is prohibited by California Civil Code section 3295.

Subject to the above specific objections and Perfect 10's general objections, Perfect 10 responds as follows: Perfect 10 is not aware of any response, nonprivileged documents that have not already been produced.

**Request for Production No. 65**

All documents concerning communications with any accountant, auditor, tax professional, asset protection advisor, financial institution, creditor, or debt collector of Perfect 10 or Norman Zada.

**Response to Request for Production No. 65**

Perfect 10 incorporates the General Objections as set forth above and notes that it has already produced most if not all of the discovery requested (see paragraph 18) herein.

Perfect 10 objects to this request on the grounds that it is compound. Perfect 10 objects to this request on the grounds that it is burdensome, wildly oppressive and vastly overbroad as it is unlimited as to time. Perfect 10 further objects to this request on the grounds that it seeks information not relevant to the subject matter of the action, and not reasonably calculated to lead to the discovery of admissible evidence. Perfect 10 objects to this request on the grounds that it violates Dr. Zada's right of privacy and is prohibited by California Civil Code section 3295. Subject to the above specific objections and Perfect 10's general objections, Perfect 10 responds as follows: Perfect 10 has already provided most of its tax returns and will supplement that production. Perfect 10 is not aware of any creditors of Perfect 10 other than plaintiffs. Dr. Zada does not currently owe anyone money to his knowledge.

**Request for Production No. 67**

All documents concerning the tax filings in any jurisdiction of Norman Zada or any Person in which Norman Zada has had a direct or beneficial interest, from tax year 2011 to present.

**Response to Request for Production No. 67**

Perfect 10 incorporates the General Objections as set forth above and notes that it has already produced most if not all of the discovery requested (see paragraph 18) herein.

Perfect 10 objects to this request on the grounds that it is compound, and also vague and ambiguous. Perfect 10 objects to this request on the grounds that it is burdensome, oppressive and vastly overbroad. Perfect 10 further objects to this request as it seeks the disclosure of information protected from discovery by the attorney-client privilege and the attorney work product doctrine. Perfect 10 further objects to this request on the grounds that it seeks information not relevant to the subject matter of the action, and not reasonably calculated to lead to the discovery of admissible evidence. Perfect 10 objects to this request on the grounds that it violates Dr. Zada's right of privacy and is prohibited by California Civil Code section 3295.

Subject to the above specific objections and Perfect 10's general objections, Perfect 10 responds as follows: Dr. Zada will produce his 2014, 2015, and 2016 tax returns, as well as statements from the brokerage and bank accounts listed in the 2014 tax return, which show the approximate amount of cash and cash equivalents he had at that time. Plaintiffs are already in possession of the first pages of Dr. Zada's 2007, 2008, 2009, 2010, 2011, 2012, and 2013 tax returns, which show that he had very little interest or dividend income over that period, along with a tax loss carry-forward of -$8.581 million. He will not produce other documents, which violate his privacy and are not relevant to this case.

**Request for Production No. 68**

All documents concerning the accounting of debts of Perfect 10 or Norman Zada for purposes of determining federal or state tax liability of any Person, including communications with any accountant, auditor, tax professional, asset protection advisor, financial institution, creditor, or debt collector.

**Response to Request for Production No. 68**

Perfect 10 incorporates the General Objections as set forth above and notes that it has already produced most if not all of the discovery requested (see paragraph 18) herein.

Perfect 10 objects to this request on the grounds that it is compound, and also vague and ambiguous. Perfect 10 objects to this request on the grounds that it is burdensome, oppressive and vastly overbroad. Perfect 10 further objects to this request as it seeks the disclosure of information protected from discovery by the attorney-client privilege and the attorney work product doctrine. Perfect 10 further objects to this request on the grounds that it seeks information not relevant to the subject matter of the action, and not reasonably calculated to lead to the discovery of admissible evidence. Perfect 10 objects to this request on the grounds that it violates Dr. Zada's right of privacy and is prohibited by California Civil Code section 3295.

Subject to the above specific objections and Perfect 10's general objections, Perfect 10 responds as follows: Dr. Zada will produce his 2014, 2015, and 2016 tax returns, as well as statements from the brokerage and bank accounts listed in the 2014 tax return, which show the approximate amount of cash and cash equivalents he had at that time. Plaintiffs are already in possession of the first pages of Dr. Zada's 2007, 2008, 2009, 2010, 2011, 2012, and 2013 tax returns, which show that he had very little interest or dividend income over that period, along with a tax loss carry-forward of -$8.581 million. He will also produce copies of his personal bank

statements from December of 2012 to March of 2015. He will supplement the production of credit card statements that have already been produced, through January of 2017.To the extent that there are additional Perfect 10 bank statements, tax returns, etc. that have not already been produced, they will be produced. Dr. Zada will not produce other documents, which violate his privacy and are not relevant to this case.

**Request for Production No. 69**

All documents concerning the accounting of equity in Perfect 10 for purposes of determining federal or state tax liability of any Person, including communications with any accountant, auditor, tax professional, asset protection advisor, financial institution, creditor, or debt collector.

**Response to Request for Production No. 69**

Perfect 10 incorporates the General Objections as set forth above and notes that it has already produced most if not all of the discovery requested (see paragraph 18) herein.

Perfect 10 objects to this request on the grounds that it is compound, and also vague and ambiguous. Perfect 10 objects to this request on the grounds that it is burdensome, oppressive and vastly overbroad. Perfect 10 further objects to this request as it seeks the disclosure of information protected from discovery by the attorney-client privilege and the attorney work product doctrine. Perfect 10 further objects to this request on the grounds that it seeks information not relevant to the subject matter of the action, and not reasonably calculated to lead to the discovery of admissible evidence. Perfect 10 objects to this request on the grounds that it violates Dr. Zada's right of privacy and is prohibited by California Civil Code section 3295.

Subject to the above specific objections and Perfect 10's general objections, Perfect 10 responds as follows: Dr. Zada will produce his 2014, 2015, and 2016 tax

returns, as well as statements from the brokerage and bank accounts listed in the 2014 tax return, which show the approximate amount of cash and cash equivalents he had at that time. Plaintiffs are already in possession of the first pages of Dr. Zada's 2007, 2008, 2009, 2010, 2011, 2012, and 2013 tax returns, which show that he had very little interest or dividend income over that period, along with a tax loss carry-forward of -$8.581 million. He will also produce copies of his personal bank statements from December of 2012 to March of 2015. He will supplement the production of credit card statements that have already been produced, through January of 2017. To the extent that there are additional Perfect 10 bank statements, tax returns, etc. that have not already been produced, they will be produced. Dr. Zada will not produce other documents, which violate his privacy and are not relevant to this case.

**Request for Production No. 70**

All documents concerning travel by or on behalf of Perfect 10 or Norman Zada outside the United States.

**Response to Request for Production No. 70**

Perfect 10 incorporates the General Objections as set forth above and notes that it has already produced most if not all of the discovery requested (see paragraph 18) herein.

Perfect 10 objects to this request on the grounds that it is compound. Perfect 10 objects to this request on the grounds that it is wildly burdensome, oppressive and vastly overbroad, as it is unlimited as to time. Perfect 10 further objects to this request on the grounds that it seeks information not relevant to the subject matter of the action, and not reasonably calculated to lead to the discovery of admissible evidence. Perfect 10 objects to this request on the grounds that it violates Dr. Zada's right of privacy and is prohibited by California Civil Code section 3295.

**Request for Production No. 74**

All documents concerning any automobiles owned, operated, maintained, insured, or otherwise controlled by Perfect 10 or Norman Zada, including but not limited to communications with any accountant, auditor, tax professional, asset protection advisor, financial institution, creditor, or debt collector.

**Response to Request for Production No. 74**

Perfect 10 incorporates the General Objections as set forth above and notes that it has already produced most if not all of the discovery requested (see paragraph 18) herein.

Perfect 10 objects to this request on the grounds that it is compound. Perfect 10 objects to this request on the grounds that it is wildly burdensome, oppressive and vastly overbroad, as it is unlimited as to time. Perfect 10 further objects to this request on the grounds that it seeks information not relevant to the subject matter of the action, and not reasonably calculated to lead to the discovery of admissible evidence. Perfect 10 objects to this request on the grounds that it violates Dr. Zada's right of privacy and is prohibited by California Civil Code section 3295.

Subject to the above specific objections and Perfect 10's general objections, Perfect 10 responds as follows:

Perfect 10 will produce the pink slip for the 2009 Lexus, which shows that Dr. Zada owned that car as of April 2012.

**Giganews and Livewire's Position**

These requests seek information about Defendants' assets and liabilities; some also seek communications about those topics, such as communications with Perfect 10's and Zada's accountant Bruce Hersh or debtors of Perfect 10 like Sean Chumura. Defendants' responses all purport to withhold responsive documents based on concerns regarding Mr. Zada's privacy. But the Court made clear at the July 19 hearing that Plaintiffs are entitled to discover information from both Perfect

82

10 and Zada and that it will not exclude otherwise discoverable material based on a privacy objection. *See* Hearing Transcript at 9:15–25; 18:4–16; 20:12–21:2; 24:14–22; 25:12–20; 26:4–7; 28:13–17; 30:20–22; 33:17–18. Zada agreed to produce only a selection of his tax returns, bank statements, and credit card statements, none of which reflect the full extent of his assets and liabilities, including those he held for the benefit of Perfect 10. The responses indicate that both he and Perfect 10 have withheld additional documents based on the privacy objection.

### Defendants' other objections are boilerplate and invalid.

Defendants assert other boilerplate objections that merit little consideration. Defendants object to every request on the grounds that it is "compound, and also vague and ambiguous." But they provide no terms or phrases they claim to find confusing, nor do they explain what makes each request compound so that Giganews and Livewire might respond.

### Defendants' Position

Once again, Plaintiffs have failed to include Defendants' Amended responses or acknowledge Dr. Zada's extensive document production which they received on August 1, 2018, a week before filing this joint stipulation. Mickelson Decl. ¶ 3, 4, Ex. 1-5; Zada Decl. ¶ 2, Ex. 1. Instead, *Plaintiffs' falsely claim* that "Zada agreed to produce only a selection of his tax returns, bank statements, and credit card statements, none of which reflect the full extent of his assets and liabilities, including those he held for the benefit of Perfect 10. The responses indicate that both he and Perfect 10 have withheld additional documents based on the privacy objection." This is patently false. Dr. Zada has produced all tax returns in his possession from 2013 onward, all bank statements and bank reconciliations from 2013 onward. Zada Decl. ¶ 2, Ex. 1. The only documents left to produce are a few statements for inactive cancelled credit cards which Dr. Zada has ordered. Zada Decl. ¶ 2, Ex. 1. Once again, Defendants' request that the Court review Defendants

discovery responses, and if it determines that Plaintiffs have made repeated false statements, make such a finding in its order, and sanction Plaintiffs if warranted.

Furthermore, as is apparent from Exhibit D to the Gregorian declaration, Plaintiffs never met and conferred on any document request, in complete violation of the local rules, and complete disrespect of this Court's limited resources.  They just filed this massive motion without making any attempt to reduce the Court's burden.  It appears that Plaintiffs have just listed in their motion, every request that they propounded, that Defendants objected to on privacy grounds, without even checking if it was already answered.  This is completely improper and sanctionable.  Furthermore, as noted above, it is simply not correct that the Court found that all of Dr. Zada's privacy objections should be overruled.  The Court simply stated that its current view without further briefing, was that Dr. Zada needed to provide asset information as well.  It did not find that all RFPs that were objected to on the basis of privacy must now be answered.  What Plaintiffs should have done, besides meeting and conferring, which they did not do, is dramatically narrow their requests, and explain why each should be answered.  They have not done that for even one request.  For that reason alone, all of their requests should be denied.  The Court should not be required to waste its time attempting to determine if each request should be answered, without Plaintiffs doing any of the work in providing such a justification.

Dr. Zada, who has a heart condition, went out of his way to go far beyond the Court's July 19 order, by producing virtually all information regarding his assets by August 1.  He did so to minimize motion practice – in vain.  He produced all related documents for Perfect 10 through 2018 as well.  The only documents left to produce are a few credit card statements for inactive cancelled cards that Dr. Zada has ordered.  Zada Decl. ¶ 2, Ex. 1.

Plaintiffs have yet to explain why any further investigation into Dr. Zada's personal finances and life is necessary, when they have all of Dr. Zada's tax returns, bank statements, brokerage statements, all his primary credit card statements, and will soon all statements that he could reasonably obtain for inactive cancelled cards from 2013 on.  For example, all transfers to the parties listed in RFP 13 are identified in Perfect 10 and Dr. Zada's bank statements.  Why do they need anything else?

Plaintiffs must do more than simply contend that because Defendants raised a privacy objection to a particular RFP, the RFP must now be answered.  They need to show that the RFP has not already been answered, and explain why it is relevant to their case.  For example, RFP 63, all documents concerning Bitcoin or other cryptocurrency and either Perfect 10 or Norman Zada?  Defendants have already stated that they are unaware of any responsive documents.  Why are Plaintiffs wasting everyone's time by adding this already-answered request to their motion?  Is it because they want this Court to rule in their favor on all these already answered requests and then use that ruling to bias Judge Birotte against Defendants?  That's what happened last time.  Or RFP 38, "All documents concerning Perfect 10's parent companies, subsidiary companies, affiliated companies, companies under common ownership, predecessors in interest, and successors in interest.  Defendants have already stated they are unaware of any responsive documents.  It is evident that Plaintiffs have not even bothered to determine if the requests have already been answered.  The court should deny all such RFPs and award sanctions to Defendants.

The bottom line is this:

The documents that Dr. Zada has already produced completely answer RFP 13, 15, 16, 17, 18, 20, 22, 39, 41, 42, 45, 47, 49, 50, 52, 53, 57, 58, 59, 67, 69 and

74.  When the ordered credit card statements arrive and are produced, RFP 51 and 55 will be answered to the best of Dr. Zada's ability.

Plaintiffs also improperly ask for documents that Defendants have already asserted simply do not exist.  Those requests are RFP 31, 32, 33, 38, 44, 63, and 64.

RFP 26, 65, and 68 improperly request communications between Dr. Zada and his tax preparer.  If the request was limited to communications related to transferred monies that would be fine, but there are no such communications.

RFP 29 and 30 are way too broad and vague.  If they were restricted to employment contracts, that would be fine, but there are no such contracts.

If RFP 34 were restricted to 2013 and onward, there would be no responsive documents.

RFP 60 and 61 are incomprehensible.  Dr. Zada has already testified that everything within the safe is his personal property, and has even testified as to the approximate value of those items at his deposition.  It is completely unclear as to what Plaintiffs are looking for.

RFP 70.   Payments made for travel appear on Dr. Zada's credit card statements.   He may have some documents regarding the actual trip but of what possible relevance could they be?

Based on recent communications between attorneys for Plaintiffs and Defendants, it appears that Plaintiffs intend to take the position that a proper meet and confer on the RFPs took place on June 26.  Mickelson Decl. ¶ 2, Ex. 1.  We do not see how a brief conservation which happened prior to the production of any documents, let alone *two* productions which included all of Dr. Zada's personal financial documents, could possibly be considered a proper meet and confer, particularly with respect to RFPs that were never mentioned, and have been virtually all answered.  Plaintiffs could have drastically reduced the burden on the Court by properly meeting and conferring but chose not to do so.  The entirely of

their motion with respect to their listed RFPs, which were neither identified nor discussed, should be denied for that reason alone.

## 2.   Responses that are incomplete and improperly limit the scope of Giganews's requests (RFP Nos. 14, 19, 23)

### Request for Production No. 14

All documents concerning assets in which Perfect 10 has had any actual or contingent legal, beneficial, or equitable interest at any time since January 1, 2011.

### Response to Request for Production No. 14

Perfect 10 incorporates the General Objections as set forth above and notes that it has already produced most if not all of the discovery requested (see paragraph 18) herein.

Perfect 10 objects to this request on the grounds that it is compound, and also vague and ambiguous. Perfect 10 objects to this request on the grounds that it is burdensome, oppressive and vastly overbroad. Perfect 10 further objects to this request as it seeks the disclosure of information protected from discovery by the attorney-client privilege and the attorney work product doctrine. Perfect 10 further objects to this request on the grounds that it seeks information not relevant to the subject matter of the action, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to the above specific objections and Perfect 10's general objections, Perfect 10 responds as follows:

Perfect 10 has already produced documents sufficient to identify all such assets, which consist of Perfect 10's bank statements, financial statements, and tax returns, its film library, trademarks, domain names, and model releases.  To ask Perfect 10 to search for more related documents (such as emails detailing film purchases, or communications with models) that will not add anything is completely unreasonable and onerous.

**Request for Production No. 19**

All documents concerning accounts of, or for the benefit of, Perfect 10.

**Response to Request for Production No. 19**

Perfect 10 incorporates the General Objections as set forth above and notes that it has already produced most if not all of the discovery requested (see paragraph 18) herein.

Perfect 10 objects to this request on the grounds that it is compound, and also vague and ambiguous. Perfect 10 objects to this request on the grounds that it is burdensome, wildly oppressive and vastly overbroad, as it is unlimited as to time. Perfect 10 further objects to this request as it seeks the disclosure of information protected from discovery by the attorney-client privilege and the attorney work product doctrine. Perfect 10 further objects to this request on the grounds that it seeks information not relevant to the subject matter of the action, and not reasonably calculated to lead to the discovery of admissible evidence. Perfect 10 objects to this request on the grounds that it is indefinite as to time, and covers documents from years ago that are irrelevant.

Subject to the above specific objections and Perfect 10's general objections, Perfect 10 responds as follows: Plaintiffs are already in possession of Perfect 10's bank statements, financial statements, and tax returns, from at least 2014 going back to inception in 1996. Perfect 10 will produce tax returns and bank statements that may not be in Plaintiffs possession. Perfect 10 is not aware of any other documents that would shed additional light on Perfect 10's holdings.

**Request for Production No. 23**

All documents concerning all contracts or agreements for the benefit of Perfect 10, in the possession of Perfect 10, or to which Perfect 10 is or ever has been a party, a beneficiary, a successor in interest, or a predecessor in interest.

1   **Response to Request for Production No. 23**

2   Perfect 10 incorporates the General Objections as set forth above and notes

3   that it has already produced most if not all of the discovery requested (see

4   paragraph 18) herein.

5   Perfect 10 objects to this request on the grounds that it is compound, and also

6   vague and ambiguous. Perfect 10 objects to this request on the grounds that it is

7   burdensome, oppressive and vastly overbroad. Perfect 10 further objects to this

8   request as it seeks the disclosure of information protected from discovery by the

9   attorney-client privilege and the attorney work product doctrine.  Perfect 10 further

10  objects to this request on the grounds that it seeks information not relevant to the

11  subject matter of the action, and not reasonably calculated to lead to the discovery

12  of admissible evidence. Perfect 10 objects to this request on the grounds that it is

13  indefinite as to time, and covers documents from years ago that are irrelevant.

14  Subject to the above specific objections and Perfect 10's general objections,

15  Perfect 10 responds as follows: Plaintiffs are already in possession of Perfect 10's

16  bank statements, financial statements, and tax returns, from at least 2014 going

17  back to inception in 1996, as well as contracts with third parties. Perfect 10 will

18  produce tax returns and bank statements that may not be in Plaintiffs possession.

19  Perfect 10 is not aware of any other documents that would shed additional light on

20  Perfect 10's agreements that have not already been produced.

21  **Giganews and Livewire's Position**

22  The responses in this group improperly limit the scope of Giganews's

23  requests.  Defendants claim that certain unspecified documents (bank statements,

24  financial statements, and tax returns from "at least" 1996 to 2014) are already in

25  Plaintiffs' possession and that Defendants are "not aware of any other documents

26  that would shed additional light on Perfect 10's [holdings or agreements]."  But the

27  characterization of what provides "additional light" leaves too much to Defendants'

28

self-serving whims.  The requests seek *all documents* concerning "accounts of, or for the benefit of Perfect 10," "Perfect 10's finances and financial statements" generally, and "contracts" concerning Perfect 10.  Each is plainly relevant to Perfect 10's financial position during the time of the transfers through the present (*see* Order at 1), and Plaintiffs are entitled to all responsive documents.

In addition, certain summaries Defendants have already produced in this case display troubling inaccuracies and discrepancies.  For example, Exhibit E to the Gregorian Declaration is a spreadsheet list of transfers between Zada and Perfect 10 that Zada prepared.  The spreadsheet reflects a transfer of $50,000 to Perfect 10, while Perfect 10's bank records for that date reflect an incoming debit of only $40,000.  Gregorian Decl. ¶¶ 8–9, Exs. F, G.  To avoid these kinds of inconsistencies, it is necessary to review the underlying documents, not those Zada believes "shed light" on relevant information.  *See* Hearing Transcript at 25:12–20.

**Defendants' Position**

As noted above, all documents concerning all of Perfect 10's assets have been produced.  As the response notes, there are no documents (other than those already produced previously to Plaintiffs) regarding Perfect 10's contractual relationships.  Defendants did not amend their response to RFP 23 because there is nothing to add.  Mickelson Decl. ¶ 3, Exs. 4-5.

Perfect 10's tax returns and Defendants interrogatory responses, have made very clear what Perfect 10's assets have been.  There is nothing else to add.  Plaintiffs are correct that Defendants made a $10,000 mistake in one its spreadsheets.  They were able to spot this error because they already have the underlying documents.  We don't have anything else responsive to produce, nor have Plaintiffs provided any evidence that anything is missing.

### 3. Defendants must provide a privilege log for any documents they withhold on the basis of any privilege (All RFPs)

**Giganews's and Livewire's Position**

Defendants have interposed privilege objections to most of the requests for production, including objections based on the attorney-client privilege and attorney work-product doctrine. If Defendants are withholding or expect to withhold any responsive documents on privilege or protection grounds, the Federal Rules require them to "describe the nature of the documents, communications or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). Giganews and Livewire therefore also move the Court to compel Defendants' production of a privilege log within 14 days of the hearing on this motion if they claim to stand on any objection related to a privilege or protection.

**Defendants' Position**

Defendants interposed the attorney-client privilege and attorney work product privilege objections purely as a prophylactic, in case the term "documents" could be interpreted to mean written communications between Defendants and their current counsel of record (Matthew Mickelson) and consulting attorney (Eric Benick) which discusses the particular issues, materials or documents mentioned in the request for production. All such communications to which the privilege would be invoked (to the extent any such exist) would solely be amongst those individuals; would not have been shared or disclosed to any other individuals; and would be limited in time from November 2015 onward, the date Mr. Mickelson first began representing Defendants.

The privilege is not being invoked to protect any other possible documents.

A privilege log exists only to enable an opposing party to gauge whether or not a particular document is or is not privileged. In a situation where the only

1  documents being withheld are communications between attorneys representing a

2  party commenting on or discussing non-privileged documents – and shared with no

3  others – than the attorney-client privilege or work product privilege undisputedly

4  obtains.  The information provided above is sufficient to establish on a prima facie

5  basis the existence of the attorney-client privilege.  Given that a prototypical

6  privilege log is not required in every case (*see In re Grand Jury Investigation* (9th

7  Cir. 1992) 974 F.2d 1068, 1071), requiring a current attorney of record to log

8  several years of e-mail correspondence with a client (hundreds if not thousands of

9  e-mails) – which was not shared with any other non-lawyers not working for

10  Defendants and concerns the day-to-day work on a pending case -- would be highly

11  inappropriate, harassing, and burdensome in the extreme.

12       Moreover, there was also no meet and confer on this issue, and there was an

13  agreement in the Related Case not to require privilege logs, to the best of Dr.

14  Zada's recollection.  Zada Decl. ¶ 6.

15       We believe that Plaintiffs are seeking a privilege log solely to place an

16  enormous burden on Defendants for no good reason, in the hopes of once again

17  generating a discovery dispute to use to further poison Judge Birotte against

18  Defendants.  It is very easy for Plaintiffs to suggest that Defendants provide a

19  privilege log when Defendants are the only ones who have produced documents.

20  Plaintiffs have produced none.  Defendants respectfully request that if the Court

21  orders a substantive privilege log, that it be precisely described, so that there can be

22  no uncertainty as to what documents it covers, and that it not cover emails between

23  Perfect 10 and its attorneys, or attorney-client work product, and that if the Court

24  orders that such a substantive log be created, that Plaintiffs pay for it.

25

26

27  ///

28

JOINT STIPULATION RE PLAINTIFFS'
MOTION TO COMPEL                    92          CASE NO.: 2:17-cv-05075-AB (JPR)

### III. PLAINTIFFS' MOTION TO COMPEL FURTHER DEPOSITION TESTIMONY OF NORMAN ZADA AND PERFECT 10.

### Giganews and Livewire's Position

Plaintiffs also request an order compelling Norman Zada to appear for a further questioning both in his individual capacity and as corporate representative of Perfect 10. Mr. Zada sat for a deposition on July 11, 2018, during which he gave testimony in both capacities. Gregorian Decl. ¶¶ 10–13, Exs. H–K. Plaintiffs agreed to have the depositions run concurrently on the condition that Perfect 10 designate Zada on all topics in the 30(b)(6) notice, and Plaintiffs reserved the right to seek additional time, up to the full allotment for the two depositions, if necessary. Gregorian Decl. ¶ 10, Ex. H.

Mr. Zada refused to answer questions he considered "private," particularly questions that sought information about his assets and liabilities. Zada Depo at 33:25–34:11, 50:21–53:7, 77:11–81:2, 82:20–112:21, 186:24–188:24, 261:4–8. The Court has since overruled this privacy objection. *See*, Order at 1; Hearing Transcript at 7:7–13, 18:2–16, 19:15–20, 20:12–21:2, 25:12–20, 28:13–17. Courts properly grant additional deposition time where a deponent "had no privilege protecting the information sought, and thus must have answered the questions posed." *Amy v. Kennedy*, Nos. C13-17 RAJ, C13-762 RAJ, 2014 WL 4717800, at *5 (W.D. Wash. Sept. 22, 2014) (overruling privacy and relevance objections and ordering testimony on assets and other topics). For this reason alone, the Court should grant leave to depose Mr. Zada on those topics.

Mr. Zada also wasted significant time on the record. He was nearly an hour late for his deposition. Gregorian Decl. ¶ 13, Exs. I, J; Zada Depo at 2:16–22. He also provided non-responsive answers to a host of questions. Instead, he complained about Perfect 10's loss in the copyright case, insulted and accused Plaintiffs and their counsel of misconduct, and insisted that counsel answer *his* questions. For example:

| | | |
|---|---|---|
| 1 | Q | Were you taking out a mortgage—well, let's stick with home |
| 2 | | improvements.  Were there any home improvements that you |
| 3 | | were contemplating in January— |
| 4 | A | Look, as I told you before, the probability that I wrote this thing |
| 5 | | is virtually zero because I would not put home improvements |
| 6 | | on there. |
| 7 | Q | I didn't ask you whether you wrote it.  I asked you whether |
| 8 | | there were home improvements or upgrades you were |
| 9 | | contemplating— |
| 10 | A | I was taking out the money to have flexibility because I was not |
| 11 | | sure what was going to happen, and I realized I might need to |
| 12 | | have a bunch of money either to invest or for some other |
| 13 | | reasons. |
| 14 | Q | Sure. And— |
| 15 | A | And I object to your trying to paint me as some sort of criminal. |
| 16 | | Your clients are the criminals.  Okay.  I have done nothing |
| 17 | | wrong except unfortunately rely on a justice system which is |
| 18 | | completely manipulated by your buddy over here, Mr. Bridges, |
| 19 | | and you.  And you have been systematically filing false and |
| 20 | | misleading statements in front of the Court, and I'm tired of it. |
| 21 | | Okay.  So you want to keep asking these questions.  I'll keep |
| 22 | | responding by saying, I am way more honest than you and your |
| 23 | | buddy over there, and I didn't do anything wrong here, and I |
| 24 | | know where this home improvements came from, but the |
| 25 | | investment purposes certainly was legitimate. |
| 26 | Zada Depo at 184:25–186:2. | |
| 27 | Q | Outside the context of this case— |
| 28 | | |

JOINT STIPULATION RE PLAINTIFFS'
MOTION TO COMPEL

94

CASE NO.: 2:17-cv-05075-AB (JPR)

A     There was no sanctionable conduct.  There was no finding of sanctionable conduct on my part.  You guys perpetrated a fraud on the Court.  I can prove it.  You guys are—even now when you make statements like Zada has been involved in discovery misconduct for ten years, that's sanctionable conduct.  You're an officer of the court.  I'd like to know what evidence you have that I've been involved in legal misconduct for ten years.  I'm serious about this.

MR. MICKELSON:        You've said that already.

THE WITNESS:        Yeah, I know that.  But I'm tired of this guy.  This guy is a professional criminal.  This guy is lying, and he consistently lies and he's been trained to put lies into his pleadings because somehow that helps him in his cases.

I'm asking you: Where is the evidence that I've been involved—you published—this is a defamatory statement about me.  And you're publishing in a public record.  I am challenging you.  What is your evidence that I have been involved in legal misconduct for ten years?

*Id.* at 265:22–266:19.  Excerpts showing numerous other similar responses are attached to the Gregorian Declaration.  *See* Zada Depo at 99:7–100:4, 180:17–20, 184:25–186:2, 264:8–267:17.

The videographer's time markers indicate that Mr. Zada sat for approximately six hours on the record.  Gregorian Decl. ¶¶ 15–16.  Plaintiffs estimate that Mr. Zada and his counsel wasted an hour on the record with the conduct described above.  *Id.* ¶ 15; Zada Depo generally.  For these reasons, Plaintiffs ask that the Court grant leave to take four additional hours of testimony (two for Zada, two for Perfect 10) and that the Court order Defendants to pay the

JOINT STIPULATION RE PLAINTIFFS' MOTION TO COMPEL     95     CASE NO.: 2:17-cv-05075-AB (JPR)

1    expenses (court reporter, videographer, and location fee) for the additional

2    testimony directly to the vendors.

3        **Defendants' Position**

4        Plaintiffs request to yet again drag Dr. Zada into a deposition would be silly

5    if it wasn't so abusive.  Plaintiffs have already deposed Dr. Zada multiple times, for

6    at least three days in the related case, and one more time for his debtor examination,

7    and now they are trying to depose him twice more.  Zada Decl. ¶ 6.

8        The seven hour limit for depositions is not to be tossed aside lightly.

9    (*Roberson v. Bair* (D DC 2007) 242 FRD 130, 138 [extensions of 7-hour limit

10   should be exception, not rule].)  Indeed, some courts refuse to consider a request for

11   additional time until the first seven hours have been exhausted. (See *Malec v.*

12   *Trustees of Boston College* (D MA 2002) 208 FRD 23, 24.)

13       Plaintiffs here are asking for additional time to conduct the deposition when

14   they admit they didn't even use up the entire seven hours of allotted time, ending

15   their examination after only six hours. The fact that Dr. Zada arrived forty-five

16   minutes late is of no moment; Defendants never asked to cut the time short because

17   of the later time, and would have sat for the entire 7 hours if asked to.  Moreover,

18   Plaintiffs ignore the fact that they wasted a minimum of 45 minutes of time in

19   breaks and conferences among the three lawyers who attended the deposition for

20   the Plaintiffs, which Dr. Zada noted on the record during the deposition.

21       Plaintiffs contend that Dr. Zada refused to answer questions regarding his

22   assets at 33:25–34:11, 50:21–53:7, 77:11–81:2, 82:20–112:21, 186:24–188:24,

23   261:4–8.  In fact, he did answer most questions.  At 33:25-34:11, Plaintiffs ask Dr.

24   Zada how he spends his day.  At 50-21-53:7, Plaintiffs ask about communications

25   Dr. Zada had with his tax preparer.  At 77:11-81:2, Dr. Zada did identify where he

26   kept his personal money.

27

28

JOINT STIPULATION RE PLAINTIFFS'
MOTION TO COMPEL                          96               CASE NO.: 2:17-cv-05075-AB (JPR)

1   Plaintiffs have omitted from the 61 pages that they complain about, all the

2   pages where Dr. Zada discussed the physical assets they complain about.  Zada

3   Decl.  ¶ 3.

4   More importantly, as discussed above, Dr. Zada has provided all statements

5   for all of his accounts from 2013 to 2018.  Zada Decl. ¶ 2, Ex. 1.  All of Plaintiffs'

6   questions regarding Dr. Zada's personal financial assets have thus been answered

7   completely and in full.  So Plaintiffs are citing to a portion of his deposition where

8   he occasionally refused to answer questions or provide documents on the basis of a

9   privacy objection but has since provided those documents.

10   Finally, Plaintiffs request that Dr. Zada, pay for the additional hours, is

11   ridiculous, particularly when Plaintiffs have made hundreds of millions by not

12   paying copyright holders for the use of their works, while Dr. Zada lost most of the

13   money he had in the world in the related case.

14   **IV.   CONCLUSIONS**

15   **Giganews and Livewire's Conclusion**

16   Even after the Court's guidance, Perfect 10 and Norman Zada still hide

17   relevant information from discovery.  Mr. Zada also disrupted his deposition and

18   improperly refused to answer questions.  For the reasons set forth above, Giganews

19   and Livewire respectfully request that the Court grant the motion and enter an order

20   in the form they have submitted.

21   **Perfect 10's, Zada's Conclusion**

22   It is Defendants' belief that Plaintiffs have filed this joint stipulation, not

23   because they need any additional discovery, but as part of a plan to so poison Judge

24   Birotte's mind that they win the case that way.  That is why they filed this motion

25   without meeting and conferring, and even though they have every imaginable

26   personal financial document of Dr. Zada's, from 2013 through 2018.  We predict

27   that if the Court grants any meaningful portion of Plaintiffs' proposed order, that

28

JOINT STIPULATION RE PLAINTIFFS'
MOTION TO COMPEL                               97              CASE NO.: 2:17-cv-05075-AB (JPR)

1    Plaintiffs will come back and claim that Defendants failed to comply, and seek

2    sanctions, regardless of how complete Defendants production is.  They did the same

3    thing last time, with incredible success.   As a result, a company that had been

4    creating copyrighted works for 18 years, was bankrupted.

5         Plaintiffs' clearly have no respect for the Court's limited resources, the rules,

6    or the truth.  They have failed to properly meet and confer.  They ignored

7    Defendants vast production and amended responses which make their motion moot.

8    In addition, Plaintiffs have made multiple demonstrably false statements.  For

9    example, in their introduction, they have claimed that "Defendants largely ignored

10   the Court's guidance and made a minimal production in response to its order," and

11   "Defendants have persistently refused to provide all documents regarding funds and

12   assets that are nominally Zada's despite the Court's clear instructions."  In their

13   next section, they falsely state that "Mr. Zada's responses specifically acknowledge

14   the existence of assets that he has not identified, and he commits to produce only

15   documents 'sufficient to show' information for specific accounts in 2015."

16   Plaintiffs also falsely contend that "Perfect 10 and Norman Zada still hide relevant

17   information from discovery."  However, they provide no examples.  This is an

18   improper smear campaign that needs to stop.   Plaintiffs are taking advantage of the

19   fact that judges have to assume that attorneys are telling them the truth to avoid

20   complete chaos.  Plaintiffs' attorneys are not.

21        Dr. Zada went out his way to more than comply with the Court's July 19

22   order, which only required him to produce documents relating to his and Perfect

23   10's liabilities.  Instead, by August 1, he produced virtually everything from 2013

24   onward, all bank and brokerage statements through 2018, all banking reconciliation

25   documents that he could locate, all quick books files that he could locate, all tax

26   returns and most credit card statements.  He is awaiting the final batch of credit

27   card statements which will be produced when they arrive.  Perfect 10 had already

28

JOINT STIPULATION RE PLAINTIFFS'
MOTION TO COMPEL                           98          CASE NO.: 2:17-cv-05075-AB (JPR)

produced all tax returns, financial reports, quick books files and banking statements since inception.

Plaintiffs have clearly not met and conferred with respect to any requests for production, a privilege log, or a further deposition of Dr. Zada.  Furthermore, they have failed to give any explanation as to why any additional documents should be produced, or what does documents are.   There is no legal precedent for an order that requires that documents be produced simply because a privacy objection was made.  There must be a legitimate basis for the request and Plaintiffs have provided any.

Finally, Plaintiffs have no basis to seek a second deposition of Dr. Zada when they were the ones who ended the deposition early.  Asking Dr. Zada to pay for such a deposition is preposterous, particularly when Defendants were denied the opportunity to depose the one person they needed to depose, the CEO of Giganews.

Defendants respectfully request that the Court deny all of Plaintiffs motion and even award sanctions for making untruthful statements to the Court if it believes they are warranted.  Whatever the Court does, Defendants respectfully request that at the minimum the Court not issue an order which makes it appear that Defendants were remiss in their discovery obligations, which Plaintiffs can then use to further poison Judge Birotte against Defendants.  We would respectfully ask the Court to make clear in any order favoring Plaintiffs, that Dr. Zada more than complied with this Court's July 19 order.

Dated:  August 20, 2018          FENWICK & WEST LLP


By:  _/s/Todd R. Gregorian_____
         Todd R. Gregorian

Attorneys for Plaintiffs,
GIGANEWS, INC. and LIVEWIRE, INC.

1    Dated:  August 20, 2018          LAW OFFICES OF MATTHEW C. MICKELSON

2
                                      By:   */s/Matthew C. Mickelson*
3                                           Matthew C. Mickelson

4                                     Attorneys for Defendants,
                                      PERFECT 10, INC. and NORMAN ZADA
5

6

7

8

9                             **ATTESTATION OF SIGNATURES**

10         I hereby attest that the concurrence in the filing of this document has been

11   obtained from the signatory indicated by a "conformed" signature (/s/) within this

12   e-filed document.

13
                                      By:   */s/Todd R. Gregorian*
14                                          Todd R. Gregorian

15

16

17

18

19

20

21

22

23

24

25

26

27

28