Matthew C. Mickelson (S.B.N. 203867)
**LAW OFFICES OF MATTHEW C. MICKELSON**
16055 Ventura Boulevard, Ste. 1230
Encino, CA 91436
818-382-3360

Attorney for Defendants PERFECT 10, INC.
and NORMAN ZADA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIGANEWS, INC., a Texas corporation; LIVEWIRE SERVICES, INC., a Nevada corporation,<br><br>Plaintiffs,<br><br>v.<br><br>PERFECT 10, INC., a California corporation, NORMAN ZADA, an individual, and DOES 1-50, inclusive<br><br>Defendants. | Case No.: 2:17-cv-05075-AB (JPR)<br><br>**DISCOVERY MATTER**<br>*Before Hon. Jean P. Rosenbluth*<br><br>**SUPPLEMENTAL DECLARATION OF DR. NORMAN ZADA IN OPPOSITION TO MOTION TO COMPEL INTERROGATORY RESPONSES, PRODUCTION OF DOCUMENTS, AND CONTINUED DEPOSITION OF NORMAN ZADA**<br><br>Date:       September 10, 2018<br>Time:       10:00 a.m.<br>Courtroom: 690, 255 E. Temple St.<br>                     Los Angeles, CA  90012 |

# SUPPLEMENTAL DECLARATION OF DR. NORMAN ZADA

I, Norman Zada, declare as follows:

1.  I am President of Plaintiff Perfect 10, Inc. ("Perfect 10"). After receiving a Ph.D. in Operations Research from the University of California at Berkeley, I worked as a research staff member in the main computer science department at IBM, and subsequently taught as a visiting professor in the area of applied mathematics at Stanford University, UCLA, Columbia University, and UC Irvine.

2.  Plaintiffs are once again demonstrating why parties are supposed to properly meet and confer before filing unnecessary motions and wasting the Court's time. I contend that Plaintiffs intentionally did not meet and confer because they knew that if they did, we would make every effort to provide whatever they asked for, which we have tried to do. Instead, they are trying to make it appear that we were not cooperative in our discovery responses, when in fact, we have gone to extraordinary lengths to produce everything we could find, regardless of how irrelevant those documents may be. In contrast, Plaintiffs have **produced no documents whatsoever,** refused to answer any RFAs not of their choosing, and successfully prevented us from taking the one deposition we wanted to take. As their justification for filing this motion, Plaintiffs falsely claimed that I had only produced documents through 2015 when I had actually produced documents through 2018. Now Plaintiffs are demanding the production of documents and information not ordered or even requested, all the while insinuating that somehow court orders have been violated for failure to comply with the nonexistent orders or requests!

3.  With respect to their first "complaint," which suggests that they don't know what was transferred, Plaintiffs know exactly what amounts were transferred from Perfect 10 to myself, in at least five different ways. First they have all the Perfect 10 bank statements, which show the monies being transferred out. Then they have all of my personal bank statements, which show those same monies coming in. They also have the financial reports created by Perfect 10's accountant, Bruce Hersh, which

1  show those same transfers.  They also have both my tax return and Perfect 10's tax
2  return.  Finally, they have the banking reconcilliations and the quick books reports.
3  They have every imaginable piece of information there is with respect to the monetary
4  transfers.
5       4.     Plaintiffs' are completely wasting the Court's time with the physical
6  items.  They already know that Melanie Poblete testified in her recent deposition that
7  the items I paid $70,000 for were worth next to nothing.  She testified that she thought
8  we would have to pay someone to take the couch away.  She told me in the past she
9  thought the scanner was worthless and she was correct.  The receiver didn't even want
10 it.  I knowingly overpaid for those items because I was afraid of exactly what
11 Plaintiff's are doing now, trying to manufacture a discovery dispute to make me look
12 bad and for no other reason.  Ironically, when I knowingly overpaid Perfect 10 $70,000
13 for those items around April 1, 2015, I assumed the 2009 Lexus belonged to Perfect
14 10.  It actually belonged to me!  Plaintiffs know that because I produced a document
15 showing that I paid $32,665 for that car in April of 2012 with my personal funds.  So
16 the overpayment was enormous.  I thought I was overpaying by about $25,000.  I
17 actually paid $70,000 for items worth around $12,000!
18      5.     Reading Plaintiff's reply is the first time I heard that Plaintiffs were
19 seeking the serial numbers or other identifying marking for the physical items that I
20 purchased from Perfect 10 on or about April 1, 2015.   Had they asked for that
21 information in any meet and confer (which did not happen) I would have happily
22 answered it to avoid further motion practice.  I respond as follows.  First, with respect
23 to the couch and desk that were purchased in 2000 for around $8,000 and $10,000
24 respectively, they were custom made and have no identifying numbers.  I offered the
25 scanner to the receiver and gave him its serial number.  He did not want it and said it
26 wasn't worth anything.  The computers upstairs don't have serial numbers because
27 they were built by our technician, who charged us around $2,000 each for the
28 machines.  What I do know is they have Intel i7 processors in them.  Downstairs, we

- 2 -                                2:17-cv-05075-AB (JPR)
Supplemental Declaration of Dr. Norman Zada in Opposition to Motion to Compel Production of
Documents and for Protective Order

1  have similar machines with i5 processors in them.

2        6.    I purchased the current workstation which is downstairs with my own
3  funds.  For that reason, I don't know what the serial numbers were for the prior
4  workstation, except that it was quite old.  One of the machines currently down there is
5  a Dell Poweredge 2950, which appears to sell new for only $330.  That means that the
6  prior machine was many years older and probably worth nothing used in 2015.

7        7.    The six computers that I describe in my response to Interrogatory 3, have
8  either Intel i7 processors in them, or Intel i5 processors in them.  I would estimate that
9  in 2015, they were between 3 and 7 years old.  Based on today's prices new, they were
10 worth very little used in 2015.

11       8.    When I estimated the value of the workstation downstairs, I included all
12 of the supporting devices.  However, I am not sure that any of them were owned by
13 Perfect 10 when I paid for them in 2015 with my own funds.  But for whatever its
14 worth, there are 2 Netgear GS724T, which appear to list for around $250 each new; 1
15 Cisco RV042G, which appears to list for around $120 new; 1 Buffalo TS-h0.0tgl/r5,
16 which appears to list for around $300 new, 1 Synology diskstation, which appears to
17 list for around $1,000 new, 1 Barracuda spam firewall 200, which appears to list for
18 around $1,600 new, and 1Trendnet TK-803R which appears to list for around $120
19 new.  There is also an APC 1000 XL, which appears to have been discontinued.  I am
20 not really sure about these prices and am simply relying on the results of google
21 searches.  The simple fact is that Plaintiffs know that Perfect 10 did not require much
22 computing power, and that whatever used computer equipment we had, could not have
23 been worth more than several thousand dollars at the most.

24       9.    Plaintiffs' claims that I need to identify what stocks I own and give away
25 trade secret information is outrageous.  They know what my trading accounts are
26 worth which is more information than they need to know to begin with.  This case is
27 not about stealing trading ideas.  We will appeal any order that requires me to identify
28 my trading secrets.

10. With respect to Plaintiffs' complaint that they have no sworn representation that Defendants have identified all of Perfect 10's and Zada's accounts, I offered to testify that the accounts produced were the ones I was aware of. Plaintiffs did not accept that invitation to generate further unnecessary conflict. I am so testifying now.

11. With respect to Plaintiff's claims that we have not conducted a reasonable search of our communications, we already provided all non-privileged communications regarding the likelyhood of a win or a loss in the case. There were no communications discussing a loss because we expected to win. When we asked Plaintiffs to provide communications regarding the likelihood of a win or a loss in the case, they refused to answer the request. There are simply no communications regarding my monetary transfers between myself and Perfect 10, because those were just routine transfers that I never emailed anyone about.

12. Plaintiffs are once again intentionally twisting words to make me look bad. For example, they claim that I failed to produce communications with my bookkeeper, Melanie Poblete. **There is no request that asks for all such communications.** The only request that contains the word "Poblete," is RFP 13, which Plaintiffs failed to meet and confer on. That request, as it relates to Melanie, asks for all documents regarding direct or indirect transfers of funds between Norman Zada or Perfect 10, on the one hand, and Melanie. Plaintiffs have a complete record of the payments that were made to Melanie Poblete because they have all of Perfect 10's and Dr. Zada's bank statements. Emails that describe such routine payments simply don't exist. So that request has been completely answered for Melanie, and it has been completely answered for the other persons listed as well. Plaintiffs know exactly what transfers were made between Norman Zada and Perfect 10 and each of the persons listed since 2013. It's my understanding that Plaitniffs served a subpoena requesting documents on Ms. Poblete, so they must explain what they received in that subpoena as well...

1    13.    With regard to paragraphs 4 and 5 of the supplemental Gregorian
2  declaration, there simply was no meet and confer with respect to RFPs 25, 26, 65, 68,
3  and 69.  **RFP 28 was not even in the joint stip.**  The problem with these RFPs is they
4  are too broad.   Plaintiffs have not provided any basis why they should be allowed to
5  see all personal communications between me and Sean Chumura since 2011. All
6  communications between Dr. Zada and Mr. Chumura regarding the Related Case were
7  produced in 2014, and there are no communications between him and myself having
8  anything to do with any of the transfers at issue in the Plaintiffs' First Amended
9  Complaint.  Moreover, all non-attorney-client privileged communications with anyone
10  regarding Perfect 10's prospects of success in the Related Case were already produced.
11    14.    With respect to paragraph 6 of the Gregorian declaration,  I went out of
12  my way to produce all the documents I could find relating to my accounts, even though
13  I was not required by the Court to do so, and even thought all of these documents are
14  intimately private and completely irrelevant to Plaintiffs' case.  I can't even understand
15  what Mr Gregorian is complaining about.  Is he complaining that my document
16  responses provided statements for Tradestation and etrade for July 2018 but the
17  interrogatory responses left them out?  What difference does that make?  He appears to
18  be complaining now that I produced my parents accounts statements as well.  None of
19  this has anything to do with whether I unlawfully transferred monies from Perfect 10 to
20  my personal account in 2014 which I happened to have advanced to Perfect 10 to begin
21  with.
22    15.    With respect to Gregorian Decl. ¶ 8.  We produced what we had,
23  including all known passwords, and told Plaintiffs the version of Quicbooks used to
24  generate and open up th efiles.  I have been told that the provided passwords have
25  worked on our end.  Mr. Gregorian has not indicated what he has done to try and open
26  the files. Has he secured the correct Quickbooks version?  I have done everything I can
27  to provide everything I have.  The problem must be on their end.
28    16.    Finally, Gregorain Decl. ¶ 10  implies that I have held back various

- 5 -    2:17-cv-05075-AB (JPR)
Supplemental Declaration of Dr. Norman Zada in Opposition to Motion to Compel Production of
Documents and for Protective Order

1  statements purposely.  I have not.  What Plaintiffs have asked for, and which I have
2  agreed to provide (even though its totally irrelevant to this case), are records of my
3  entire financial life from 2013 until the present.  All bank and brokerage statements.
4  All credit cards statements.  All tax returns.  (They never provided any similar
5  information in either case.)  All documents concerning every nook and cranny of my
6  finances.  Including my deceased parents' bank account records (Plaintiffs have not
7  and could never even try to explain the relevance of those accounts to a single issue
8  raised in this lawsuit; nonetheless I proved records once I was informed Plaintiffs were
9  seeking accounts under my "control.")   Gathering all of this material together has been
10 an enormous undertaking.  When something fell through the cracks and Plaintiffs
11 brought that to my attention, it was produced.  That is why there have been multiple
12 productions, including because some of the institutions have taken time to find the
13 documents I requested.   At this stage, as discussed above, all documents that I could
14 obtain for each account have been produced.  Plaintiffs' demand for neatness is ironic,
15 given that in the related case, they simply produced hundreds of thousands of
16 unreadable files without any organization whatsoever.  From our production, one can
17 clearly see the Amex files, Bank of America Files, Wells Fargo files, tax returns, etc.
18 In the related case, we produced a six page multi-colored production log.  They
19 produced nothing even remotely similar.

20      I declare under penalty of perjury under the laws of the United States of
21 America that the foregoing is true and correct to the best of my knowledge.  Executed
22 this 3rd day of September, 2018 in Los Angeles County, California.

_____
NORMAN ZADA