1  ANDREW P. BRIDGES (CSB No. 122761)
   abridges@fenwick.com
2  JEDEDIAH WAKEFIELD (CSB No. 178058)
   jwakefield@fenwick.com
3  TODD R. GREGORIAN (CSB No. 236096)
   tgregorian@fenwick.com
4  ERIC B. YOUNG (CSB No. 318754)
   eyoung@fenwick.com
5  FENWICK & WEST LLP
   555 California Street, 12th Floor
6  San Francisco, CA  94104
   Telephone:  415.875.2300
7  Facsimile:   415.281.1350

8  RONALD P. SLATES, SBN: 43712
   rslates2@rslateslaw.com
9  RONALD P. SLATES, P.C.
   500 South Grand Avenue, Suite 2010
10 Los Angeles, CA 90071
   Telephone:  213.624.1515
11 Facsimile:   213.624.7536

12 Attorneys for Plaintiffs/Judgment Creditors,
   GIGANEWS, INC. and LIVEWIRE SERVICES, INC
13

14            UNITED STATES DISTRICT COURT

15           CENTRAL DISTRICT OF CALIFORNIA

16

17 GIGANEWS, INC., a Texas corporation;      Case No.: 2:17-cv-05075-AB (JPR)
   and LIVEWIRE SERVICES, INC., a
18 Nevada corporation,                        **PLAINTIFFS' OPPOSITION TO
                                              DEFENDANT PERFECT 10, INC.
19              Plaintiffs,                    AND NORMAN ZADA'S MOTION
                                              FOR SUMMARY JUDGMENT OR,
20        v.                                   IN THE ALTERNATIVE,
                                              PARTIAL SUMMARY
21 PERFECT 10, INC., a California             JUDGMENT**
   corporation; NORMAN ZADA, an
22 individual; and DOES 1-50, inclusive,      Date:      December 14, 2018
                                              Time:      10:00 a.m.
23              Defendants.                    Courtroom: 7B, 350 West First Street,
                                                         Los Angeles, CA 90012
24

25                        [REDACTED]

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................. 1

II.     FACTUAL BACKGROUND ................................................................ 2

    A.   Perfect 10 and Norman Zada Have a Bad-Faith Litigation
        History. ........................................................................................ 2

    B.   Defendants Concealed Perfect 10 Assets from Its Creditors,
        Including Plaintiffs. .................................................................... 4

III.    LEGAL STANDARDS ........................................................................ 8

IV.     ARGUMENT ....................................................................................... 9

    A.   The Court should deny summary judgment as to Plaintiffs'
        claims for actual fraudulent transfer, as ample evidence
        would allow a reasonable jury to conclude that Zada and
        Perfect 10 transferred cash and assets to hinder, delay, or
        defraud creditors. ....................................................................... 9

        1.   Granting summary judgment as to a fraudulent transfer
            defendant's mental state is typically reversible error. ............... 9

        2.   Plaintiffs have substantial evidence that Defendants
            made the transfers with intent to hinder, delay, or
            defraud creditors. ...................................................................... 10

        3.   The "badges of fraud" analysis does not control on
            summary judgment, but the presence of badges here
            indicates that the jury will find the transfers were
            fraudulent. ................................................................................. 12

        4.   None of Defendants' arguments or evidence
            establishes an honest intent as a matter of law. ....................... 15

         5.   Plaintiffs have evidence of harm sufficient to preclude
            summary judgment. ................................................................... 19

    B.   The Court should deny summary judgment as to Plaintiffs'
        alternative claims for constructive fraudulent transfer and
        grant summary judgment for Plaintiffs as non-moving
        parties. ....................................................................................... 21

        1.   A reasonable jury will conclude that Perfect 10 did not
            receive reasonably equivalent value for the transfers. ............. 21

        2.   A reasonable jury will conclude the transfers left
            Perfect 10 with insufficient assets to carry on its
            business. ..................................................................................... 23

V.      CONCLUSION .................................................................................. 25

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986) ............................................................................... 8

*Annod Corp. v. Hamilton & Samuels*,
 100 Cal. App. 4th 1286 (2002) ...................................................... 14, 15

*Attebury Grain LLC v. Grayn Co.*,
 721 F. App'x 669 (9th Cir. 2018) .................................................. 23, 25

*Bostick v. Flex Equip. Co.*,
 147 Cal. App. 4th 80 (2007) .......................................................... 16, 17

*Browning Interests v. Allison (In re Holloway)*,
 955 F.2d 1008 (5th Cir. 1992) ............................................................ 12

*Choice Hotels Int'l, Inc. v. Wright*,
 No. CV 03-3785-RGK, 2005 WL 8156289 (C.D. Cal. Mar. 24, 2005) .............. 21

*City of Pomona v. SQM N. Am. Corp.*,
 750 F.3d 1036 (9th Cir. 2014) .............................................................. 8

*Davidson v. Barnhardt*,
 No. CV 11-7298 FMO, 2013 WL 6388354 (C.D. Cal. Dec. 6, 2013) ............. 24

*Donell v. Kowell*,
 533 F.3d 762 (9th Cir. 2008) ......................................................... 9, 20

*Filip v. Bucurenciu*,
 129 Cal. App. 4th 825 (2005) .............................................................. 12

*Heller Ehrman LLP v. Jones Day (In re Heller Ehrman LLP)*,
 No. 08-32514DM, 2013 WL 951706 (Bankr. N.D. Cal. Mar. 11, 2013) ....... 9, 24

*In re 3dfx Interactive, Inc.*,
 389 B.R. 842 (Bankr. N.D. Cal. 2008), *aff'd*, 585 F. App'x 626
 (9th Cir. 2014) ................................................................................... 22

*In re AWTR Liquidation Inc.*,
 548 B.R. 300 (Bankr. C.D. Cal. 2016) ................................................ 24

*In re Brobeck, Phleger & Harrison LLP*,
 408 B.R. 318 (Bankr. N.D. Cal. 2009) ................................................ 22

*In re Cansorb Indus. Corp.*,
 No. 07-50041, 2009 WL 4062220 (Bankr. M.D.N.C. Nov. 20, 2009) ............. 14

*In re Dawley*, No. 01-32215DWS, 2005 WL 2077074
 (Bankr. E.D. Pa. Aug. 10, 2005) ........................................................ 14

FENWICK & WEST LLP
ATTORNEYS AT LAW

1

2

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

3

4

*In re Empire Land, LLC,*
 2016 WL 1371278 (Bankr. C.D. Cal. Apr. 4, 2016) .......................................... 14

5

*In re EPD Inv. Co.,* No. 2:10-BK-62208-ER, 2018 WL 947636
 (Bankr. C.D. Cal. Feb. 17, 2018) ...................................................................... 23

6

7

*In re Ezra,*
 537 B.R. 924 (B.A.P. 9th Cir. 2015) .................................................................. 12

8

*In re First Alliance Mortg. Co.,*
 298 B.R. 652 (C.D. Cal. 2003) ........................................................................... 18

9

10

*In re Indep. Clearing House Co.,*
 77 B.R. 843 (D. Utah 1987) ................................................................................ 15

11

*In re Leneve,*
 341 B.R. 53 (Bankr. S.D. Fla. 2006) .................................................................. 14

12

13

*In re Martirosian,* No. 1:15-BK-11139-MB, 2017 WL 1041107
 (Bankr. C.D. Cal. Mar. 14, 2017)....................................................................... 24

14

*In re Singh,*
 No. AP 12-02370, 2015 WL 1887939 (Bankr. E.D. Cal. Apr. 22, 2015)........... 15

15

16

*In re Tenorio,*
 2018 WL 989691 (B.A.P. 9th Cir. Feb 8, 2018) ................................................ 10

17

*Intervest Mortg. Inv. Co. v. Skidmore,*
 655 F. Supp. 2d 1100 (E.D. Cal. 2009) ........................................................ 14, 24

18

19

*Kerner v. Super. Ct.,*
 206 Cal. App. 4th 84 (2012) ............................................................................... 17

20

*Kirkeby v. Super. Ct.,*
 33 Cal. 4th 642 (2004)........................................................................................... 9

21

22

*Kirkland v. Risso,*
 98 Cal. App. 3d 971 (1979) ................................................................................ 23

23

*Lake Nacimiento Ranch Co. v. San Luis Obispo Cnty.,*
 841 F.2d 872 (9th Cir. 1987) ................................................................................ 8

24

25

*Locke v. Warner Bros., Inc.,*
 57 Cal. App. 4th 354 (1997)................................................................................. 9

26

*Lyons v. Sec. Pac. Nat. Bank,*
 40 Cal. App. 4th 1001 (1995), *as modified on denial of reh'g*
 (Nov. 30, 1995)................................................................................................... 15

27

28

*Mehrtash v. Mehrtash,*
 93 Cal. App. 4th 75 (2001) ................................................................................. 19

FENWICK & WEST LLP
ATTORNEYS AT LAW

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*Nautilus, Inc. v. Yang*,
  11 Cal. App. 5th 33, 46 (Ct. App. 2017), *reh'g denied* (May 8, 2017),
  *review denied* (Aug. 9, 2017) ............................................................................. 18

*Nikko Materials USA, Inc. v. Navcom Def. Elecs., Inc.*,
  No. CV 05-4158-JFW, 2014 WL 12700714 (C.D. Cal. Jan. 22, 2014) .............. 19

*Opperman v. Path*,
  87 F. Supp. 3d 1018 (N.D. Cal. 2014) ................................................................... 9

*Oyeniran v. Holder*,
  672 F.3d 800 (9th Cir. 2012) ............................................................................... 16

*Pardo v. Olson & Sons, Inc.*,
  40 F.3d 1063 (9th Cir. 1994) ............................................................................... 16

*Perfect 10, Inc. v. Giganews, Inc.*,
  847 F.3d 657 (9th. Cir. 2017), *cert. denied*, 138 S. Ct. 504 (2017) ............... 9, 17

*Perfect 10, Inc. v. Giganews, Inc.*,
  C.D. Cal. No CV 11-7098 .............................................................................. 17, 24

*Plise v. Krohn (In re Plise)*,
  719 F. App'x 622 (9th Cir. 2018) ........................................................................ 10

*Reddy v. Gonzalez*,
  8 Cal. App. 4th 118 (1992) .................................................................................. 21

*Soza v. Hill (In re Soza)*,
  542 F.3d 1060 (5th Cir. 2008) ............................................................................. 14

*Sutton v. Golden Gate Bridge, Highway & Transp. Dist.*,
  68 Cal. App. 4th 1149 (1998) .............................................................................. 16

*Tatung Co. v. Hsu*,
  217 F. Supp. 3d 1138 (C.D. Cal. 2016) ................................................................. 9

*United Educators of S.F. AFT/CFT v. Cal. Unemployment Ins. Appeals Bd.*,
  247 Cal. App. 4th 1235 (2016) ............................................................................ 16

*United States v. Diebold, Inc.*,
  369 U.S. 654 (1962) .............................................................................................. 8

*United States v. Whitman*,
  No. 2:12-CV-2316-MCE-EFB, 2013 WL 3968083(E.D. Cal. July 31,
  2013), *report and recommendation adopted*, No. 2:12-CV-2316-MCE-
  EFB, 2013 WL 4516009 (E.D. Cal. Aug. 26, 2013) ........................................... 21

*Vandenberg v. Super. Ct.*,
  21 Cal. 4th 815 (1999) ......................................................................................... 16

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Vill. of San Jose v. McWilliams*,
    284 F.3d 785 (7th Cir. 2002) ............................................................... 14

*Wolkowitz v. Beverly (In re Beverly)*, 374 B.R. 221 (B.A.P. 9th Cir. 2007),
    *aff'd in part, dismissed in part*, 551 F.3d 1092 (9th Cir. 2008) .............11, 12, 18

*Wyzard v. Goller*,
    23 Cal. App. 4th 1183 (1993) ......................................................... 14, 20

**Statutes and Rules**

11 USCA § 548 *et seq.*
    (Uniform Fraudulent Transfer Act of 1984 ("UFTA")) ...................12, 14, 19, 20

Cal. Civ. Code § 3439.03 .................................................................13, 21, 22

Cal. Civ. Code § 3439.04(a)(1) ............................................................ 9, 10

Cal. Civ. Code § 3439.04(a)(2) ................................................................ 21

Cal. Civ. Code § 3439.04(b) .................................................................... 12

Cal. Civ. Code § 3439.04(b)(4) ................................................................ 13

Cal. Civ. Code § 3439.05 ..................................................................... 9, 21

Cal. Civ. Code § 3439.07 ........................................................................ 19

Cal. Civ. Code § 3439.08(a) ............................................................... 18, 20

Cal. Civ.Code § 3443 ............................................................................... 2

Fed. R. Civ. P. 56(a) ................................................................................. 8

Fed. R. Civ. P. 56(c)(2) ............................................................................. 8

Fed. R. Civ. P. 56(f) ............................................................................... 21

**Other Authorities**

Legis. Comm. Comments,
    12A West's Ann. Civ. Code (1997 ed.) foll. § 3439.04 ..................................... 12

FENWICK & WEST LLP
ATTORNEYS AT LAW

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

The Court should deny Defendants' motion: there is ample evidence to support the causes of action that Defendants challenge, and their attack on the claims is little more than a rant resting on numerous irrelevant and unsupportable assertions.

The Court is already familiar with much of the evidence in this case. In the year leading up to the fee award[1] in *Perfect 10, Inc. v. Giganews, Inc.*, C.D. Cal. No CV 11-7098 ("Related Case"), Zada took $1.75 million out of Perfect 10's bank account, $850,000 of which Zada admits he removed because saof Perfect 10's loss on summary judgment. He then claims to have "bought" all of Perfect 10's physical assets, with no certain knowledge of what assets he purchased or any concern over their value. Zada admitted that he made the transfers to avoid enforcement of the Court's judgment and the resulting "interference" with Perfect 10's business. He also removed an additional $454,002.05 from Perfect 10's account with the judgment unpaid. These were all classic fraudulent transfers to hinder a creditor's collection against Perfect 10.

Discovery has revealed further evidence of fraud that would enable the jury to rule for Plaintiffs at trial:

- While awaiting final discovery sanctions and a briefing schedule for the fee motion, Melanie Poblete, Zada's bookkeeper, close assistant, and rent-free housemate, created documents to mischaracterize amounts Zada removed from the company as repayments of loans, contrary to Perfect 10's tax reporting for *years* to the federal government.

- Just *hours* after the Court's fee award on March 24, 2015, ████████████ ████████████████████████████████████████████████

---

[1] The District Court awarded about $5.6 million; with an award of appellate fees by the Ninth Circuit and interest, the award has climbed to about $6.5 million.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1 ████████████

2 • The asset transfer was a sham as well: ████████████████████

3 ████████████████████; they never changed location; and

4 Perfect 10's books ████████████████████████

5 ████████████████████████████████

6   Plaintiffs can establish fraud under both "actual" and "constructive" fraud

7 theories as to all transfers, as Plaintiffs set forth below.  The Court should deny

8 Defendants' motion for summary judgment completely.[2]

9 **II.  FACTUAL BACKGROUND**

10   **A.  Perfect 10 and Norman Zada Have a Bad-Faith Litigation History.**

11   This case is about a series of fraudulent transfers from Perfect 10, Inc. to its

12 principal, Norman Zada, to avoid paying a fee award to Giganews and Livewire.

13 Mr. Zada is the president of Perfect 10.  SUF175.  Perfect 10 and Norman Zada

14 purchase copyrights and filed dozens of lawsuits for copyright infringement,

15 including suits against Visa, MasterCard, Google, Amazon.com, Microsoft,

16 Tumblr, and others.  SUF176.  As part of their business model, they sought to

17 extract settlements from businesses that otherwise would incur staggering

18 attorneys' bills to defend Perfect 10's unmeritorious suits, and they further

19 multiplied litigation costs with abusive discovery conduct and motion practice.

20 SUF177.  Perfect 10's statutory damages claims were typically in the billions of

21 dollars owing to the number of images that Perfect 10 claimed to be infringed.

22 SUF178.  Perfect 10 never obtained a final victory in a case.  It lost the only cases it

23 pursued to a non-settled conclusion.  SUF179.  The Related Case was one of them.

24   Perfect 10 filed its original copyright lawsuit against Plaintiffs Giganews and

25 Livewire in 2011, alleging direct and indirect copyright infringement of Perfect

26 10's adult images on Plaintiffs' Usenet services as well as direct and indirect

FENWICK & WEST LLP
ATTORNEYS AT LAW

---

27

28 [2] Though styled as a motion for summary judgment, and not for summary adjudication, Defendants did not move as to Plaintiffs' third claim, for violating California Civil Code Section 3443.  That claim should proceed to a jury trial.

trademark infringement and violations of publicity rights Perfect 10 claimed to have obtained from its nude models.  SUF180 Over the course of that litigation, Perfect 10 largely lost two motions to dismiss (SUF181-82); brought and lost an early motion for partial summary judgment to deny Giganews the safe harbor for online service providers under the Copyright Act (SUF185); failed to uncover any evidence of infringement in discovery (RJN Ex. 20); lost several motions to compel (SUF187, 189, 193-4); had the testimony of three putative expert witnesses, including Zada, excluded (SUF200); and was the subject of extensive findings of wrongdoing in a sanctions order that awaited implementation at the time Plaintiffs in this case won summary judgment.  (SUF221.)

Throughout the lawsuit, Perfect 10 persistently reargued and lost arguments that the Court had repeatedly rejected.  *See e.g.*, RJN Ex. 20 at 12 ("Perfect 10 repeats the arguments Judge Matz and Judge Collins already rejected. . . .").  Upon discovering that the software application that Perfect 10 used to locate instances of alleged infringement on Usenet could easily extract the information that Plaintiffs here needed to process Perfect 10's complaints, Perfect 10—rather than supplying this information for processing—instead moved for sanctions against Plaintiffs. The Court denied Perfect 10's motion as "meritless", "entirely unpersuasive", "ill-considered and overreaching."  SUF196.

On November 14, 2014, the Court granted Giganews and Livewire's motions for partial summary judgment, driving the final nail in to the coffin of all Perfect 10's claims.  SUF201.  In one of its orders, the Court observed that Perfect 10's "refus[al] to do what was well within its power" was the actual cause of its claimed harm, as opposed to the conduct of either Plaintiff.   SUF204.  The Court entered final judgment for Giganews and Livewire on November 26, 2014.  SUF207.  On March 24, 2015, the Court granted Plaintiffs' motion for attorney's fees and expenses, awarding Plaintiffs approximately $5.6 million.[3]  SUF224.  In that order,

---

[3] The District Court awarded approximately $5.6 million; with an award of

FENWICK & WEST LLP
ATTORNEYS AT LAW

the Court noted : "Perfect 10's undisputed conduct in this action has been inconsistent with a party interested in protecting its copyrights.  All of the evidence before the Court demonstrates that Perfect 10 is in the business of litigation, not protecting its copyrights or 'stimulat[ing] artistic creativity for the general public good.'"  SUF225.  Three-and-a-half years later, Perfect 10 has not voluntarily paid any part of that judgment.  SUF226.

### B.   Defendants Concealed Perfect 10 Assets from Its Creditors, Including Plaintiffs.

Over the course of its history as a litigation business, when Perfect 10 received settlement proceeds, Zada typically took the money out of the company within two months, even if Perfect 10 also anticipated significant expenses.  SUF275.  When Perfect 10's bank balance decreased beyond its ability to pay, Zada would make equity contributions back to the company from his personal accounts to cover them.  SUF276.  This had the effect, among other things, of protecting Perfect 10's cash from potential unwanted creditors.

In early 2014, as Perfect 10 lost motion after motion in its copyright action, Zada caused Perfect 10 to begin transferring corporate assets to himself in anticipation of further unfavorable court rulings and a possible judgment for attorneys' fees.  Zada made ten separate transfers of money, totaling $2,204,002, from Perfect 10 to himself.  SUF184, 186, 188, 191-92, 195, 198-99, 205, 240, 251.

In August 2014, Giganews moved for substantial sanctions.  SUF197.  The motion papers identified massive, pervasive misconduct by Perfect 10 and its counsel.  *See id.*  That motion remained pending for several months.

Zada's transfers included an $850,000 transfer just six days after the Court granted summary judgment in November 2014.  SUF205.  Zada confessed that he made this transfer due to the "summary judgment orders" because, after those

_____

appellate fees by the Ninth Circuit, the award has since climbed to approximately $6.5 million.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1  "orders were issued, [he] did not see any point in keeping more cash than [he and

2  Perfect 10] needed in the account."  SUF206.  The same day, █████████████

3  ███████████████ Norfield Court mansion that serves as both his residence

4  and Perfect 10's offices.  SUF207.

5       With the summary judgment ruling, it also became clear that Giganews

6  would seek its attorney's fees.  The district court's judgment on November 26,

7  2014, reflecting proposals by the parties, gave Giganews additional time after the

8  judgment to move for fees.  SUF208.

9       On December 8 and 9, 2014, with the sanctions issue pending and

10  Giganews's motion for attorney's fees imminent, Melanie Poblete, Perfect 10's

11  paralegal and bookkeeper, and Zada's close personal assistant and rent-free

12  housemate, ████████████████████████████

13  ████████████████████████████ Perfect 10's

14  tax returns, which Zada signed under penalty of perjury: for many years the tax

15  returns had consistently identified Zada's financial contributions to the company █

16  ████████████████████████████

17  ████████████████████████████

18  ████████████████████████████

19  ████████████████████████████

20  █████████████████████

21       On February 4, 2015, the Magistrate Judge entered a 55-page order of

22  "further interim findings" on the motion for sanctions.  SUF221.  It stated:

23  "Defendants have presented this Court with extensive evidence showing unjustified

24  discovery noncompliance, numerous violations of this Court's orders, and

25  pervasive failures by Perfect 10, its attorneys, and the Perfect 10-affiliated

26  witnesses.  The court will proceed to determine the reasonable amount of monetary

27  sanctions, and whether they should be assessed against Perfect 10 and/or its

28  counsel."  *Id*.  During this month, █████████████████████

FENWICK & WEST LLP
ATTORNEYS AT LAW

SUF222.

On March 24, 2015, the district court issued the attorney's fee award to Giganews.  SUF224.  Zada immediately moved into high gear.  Mere hours after the award issued,

thus revealing his knowledge that those transfers were part of an integrated and pervasive fraudulent scheme.  *Id*.

Zada then also drew up corporate minutes purporting to transfer some of Perfect 10's physical assets to himself for $20,000.  SUF237.  A week later, on April 1, 2015, he did the same for all Perfect 10's remaining physical assets, ostensibly transferring them to himself for $50,000.  SUF242.  Zada admitted that he caused Perfect 10 to make these transfers because "it would have been totally disruptive to have those [assets] seized" in satisfaction of the judgment.  SUF261. He needed to "save" the Perfect 10 business from "the judgment."  *Id*.  The minutes themselves also state that Zada made the transfer "in light of the recent attorneys [sic] fees award, to avoid complete disruption" of Perfect 10's legal business. SUF242.

The transfers were a sham.  Zada transferred $70,000 to Perfect 10, but Perfect 10's records

The assets never changed location; Zada and Poblete continued to use them for the Perfect 10 business.  SUF284.

The assets that Zada supposedly "bought" for $70,000 included a Lexus automobile, furniture, 4000 back issues of the Perfect 10 magazine, computers, office equipment, and furniture.  SUF246.  The value of the magazines standing

alone was between $46,000 and $120,000.  SUF303.  The Lexus was worth around

$30,000.[4]  SUF304.  Perfect 10's tax returns show that the original value of its

office furniture and equipment was $555,464, and their value at the time of transfer

was approximately $55,000.[5]  SUF247.

On March 26 and 27, 2015, while the sanctions motion was pending (which

unlike a fee award could have required payment by Perfect 10's lawyers), Zada also

contributed an additional $454,002.05 to Perfect 10, which exact amount, not

coincidentally, it then paid over to its lawyers for the potential sanctions award

against them personally.  SUF238-39, 241.  The district court later decided that

sanctions were moot in light of the attorney's fees award.  SUF248.  The day after

that decision, the lawyers ██████████████████████████████████, shortly

after that, Zada quickly took $454,002.05 out of Perfect 10's account to avoid

attachment.  SUF249-51.

On March 30, 2015, Zada ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████ imminent, he then also offered to settle the underlying

case on April 4, 2015 for $2 million in cash plus a $3.819 million deed of trust on

the mansion.  SUF216.  Zada represented to the Court that he did not have

sufficient cash to pay the judgment.  SUF217.  But on April 21, 2015, he closed██

---

[4] The evidence also shows that Mr. Zada did not pay genuine attention to the assets
he was purchasing or their actual value:  Perfect 10 now contends that a Lexus
belonged to Mr. Zada all along, and that he mistakenly paid Perfect 10 for it; this
admission only adds to the inference that the transfer was an actual fraud.  SUF6.  It
demonstrates that Mr. Zada only cared that he became the nominal owner so he
could protect the assets from the judgment.

[5] Zada has recently tried to claim that Perfect 10 ██████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

FENWICK & WEST LLP
ATTORNEYS AT LAW

1 ████████████████████████████████████

2    That same week, Melanie ████████████████████████

3 ████████████████████████████████████████████

4 ██████████████████    She also contacted Perfect 10's accountant to

5 discuss "how we pay things" in light of the "$5M judgment" against Perfect 10.

6 SUF212.  Ultimately, Zada directed that any money coming into Perfect 10 should

7 be "given over" to him, on the basis that he would hold it and pay Perfect 10's

8 expenses personally.  SUF213.

9 **III.  LEGAL STANDARDS**

10        To obtain summary judgment, Perfect 10 and Norman Zada must establish

11 that the undisputed facts compel a judgment in their favor and that no reasonable

12 jury could find for Giganews and Livewire.  Fed. R. Civ. P. 56(a); *Anderson v.*

13 *Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986).  A party is entitled to summary

14 judgment if the movant shows that there is no genuine dispute as to any material

15 fact.  *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014).

16 The "inferences to be drawn from the underlying facts . . . must be viewed in the

17 light most favorable to the party opposing the motion."  *United States v. Diebold,*

18 *Inc.*, 369 U.S. 654, 655 (1962).  If reasonable minds could differ on the inferences

19 to be drawn from the facts, a court should deny summary judgment.  *Lake*

20 *Nacimiento Ranch Co. v. San Luis Obispo Cnty.*, 841 F.2d 872, 875 (9th Cir.

21 1987).[6]

Fenwick & West LLP
Attorneys at Law

---

[6] Defendants rely on declarations of "character witnesses" and other inadmissible evidence to prove Zada's intent, as Giganews's objections describe.  The Court cannot consider this evidence on summary judgment.  Fed. R. Civ. P. 56(c)(2).

**IV.   ARGUMENT**

    **A.   The Court should deny summary judgment as to Plaintiffs' claims for actual fraudulent transfer, as ample evidence would allow a reasonable jury to conclude that Zada and Perfect 10 transferred cash and assets to hinder, delay, or defraud creditors.**

California Civil Code allows a plaintiff to establish a fraudulent transfer under two distinct theories: actual fraud and constructive fraud.  *See* Cal. Civ. Code §§ 3439.04(a)(1) and (2), 3439.05.  A transfer is fraudulent under an actual fraud theory "whether the creditor's claim arose before or after the transfer was made or the obligation was incurred" if it was made "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor."  Cal. Civ. Code § 3439.04(a)(1); *Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008); *see also Opperman v. Path*, 87 F. Supp. 3d 1018, 1066 (N.D. Cal. 2014); *Kirkeby v. Super. Ct.*, 33 Cal. 4th 642, 648 (2004). Here, Defendants moved for summary judgment on the element of intent and, as to specific transfers, on the element of harm to Plaintiffs.  None of Defendants' arguments warrants judgment in their favor.

    **1.   Granting summary judgment as to a fraudulent transfer defendant's mental state is typically reversible error.**

Whether a transfer was made with fraudulent intent is a question of fact, and "[t]he issue of fraudulent intent is one for the trier of fact." *Locke v. Warner Bros., Inc.*, 57 Cal. App. 4th 354, 368 (1997); *see also Tatung Co. v. Hsu*, 217 F. Supp. 3d 1138, 1187 (C.D. Cal. 2016) (quoting *Filip v. Bucurenciu*, 129 Cal. App. 4th 825, 834 (2005)).  Deciding intent requires credibility determinations, the weighing of the evidence and the drawing of legitimate inferences from the facts, which are jury functions, not those of a judge on summary judgment.  *Heller Ehrman LLP v. Jones Day (In re Heller Ehrman LLP)*, No. 08-32514DM, 2013 WL 951706, *6 (Bankr. N.D. Cal. Mar. 11, 2013).  For that reason, the Ninth Circuit has repeatedly stated that summary judgment on intent is inappropriate:

FENWICK & WEST LLP
ATTORNEYS AT LAW

> Cases where intent is a primary issue generally are inappropriate for summary judgment.  Fraud claims, in particular, normally are so attended by factual issues (including those related to intent) that summary judgment is seldom possible.

*Plise v. Krohn (In re Plise)*, 719 F. App'x 622, 624 (9th Cir. 2018) (quoting *Provenz v. Miller*, 102 F.3d 1478, 1489 (9th Cir. 1996)) (second citation omitted); *see also In re Tenorio*, 2018 WL 989691, at *12 (B.A.P. 9th Cir. Feb 8, 2018) ("Normally, it is error to grant summary judgment on an issue of intent."). Summary judgment is only appropriate where "one party's version of events is so utterly discredited by the record that no reasonable jury could have believed him." *In re Plise*, 719 F. App'x at 624 (citation omitted).  As discussed below, the record discredits only Zada's version of events.  The Court should deny the motion.

> **2.**    **Plaintiffs have substantial evidence that Defendants made the transfers with intent to hinder, delay, or defraud creditors.**

Substantial evidence of Mr. Zada's fraudulent intent precludes summary judgment in favor of Perfect 10.  Plaintiffs can meet their burden by showing an intent to hinder "any creditor," i.e., *either* a specific intent to hinder their own collection, *or* an intent to hinder another creditor or *creditors generally.*  Cal. Civ. Code § 3439.04(a)(1).  First, there is direct evidence of fraud:  Zada made a transfer of $850,000 to himself only six days after the court granted summary judgment against Perfect 10.  He testified that those orders are what prompted him to move this money.  SUF206.  Zada also admitted he transferred Perfect 10's physical assets to himself after the fee award in order to "save" the Perfect 10 business by shielding the assets from the "disruption" of judgment.  SUF261 ("it would have been totally disruptive to have those [assets] seized"); *see also* Dkt. 73 (Zada MSJ Decl.) at 2–3.  These are direct admissions that he made transfers to hinder Giganews's ability to enforce its judgment against Perfect 10's assets.

Direct evidence like this is rarely available; fraudulent intent is typically

FENWICK & WEST LLP
ATTORNEYS AT LAW

established purely by inference from circumstances. *See Wolkowitz v. Beverly (In re Beverly)*, 374 B.R. 221, 235 (B.A.P. 9th Cir. 2007), *aff'd in part, dismissed in part*, 551 F.3d 1092 (9th Cir. 2008). Here Plaintiffs have also uncovered further, if indirect, evidence of Zada's and Perfect 10's fraudulent intent, which, together with the admissions, enable the jury to conclude that all transfers were fraudulent.

Zada began moving Perfect 10 assets in early 2014. The transfers largely coincided with unfavorable rulings in the case against Giganews. The largest, admittedly fraudulent, transfer of $850,000 came just six days after the summary judgment order ended Perfect 10's case. *See* SUF205. Zada's and his housemate's behavior after the order confirms the fraud. ████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ █████████████████████. SUF227. In other words, he immediately sought to cover up *all* his 2014 transfers. Zada also transferred $454,002.05 of Perfect 10's cash to himself with the fee award outstanding. And together with his paralegal and accountant, Zada decided that Perfect 10's money should be "given over" to him to pay expenses because of the judgment. SUF213. Perfect 10 has not voluntarily paid any part of the judgment. SUF226.

Zada has claimed that he took Perfect 10's cash because he was "entitled" to it as an investor. But his transfers did not in any sense "repay" Zada, since he continued to pay Perfect 10 expenses from his accounts. As further evidence of fraud, Perfect 10 also continued to use the "transferred" physical property for its business ████████████████████████████████. SUF245. ██████████████ ██████████████████████████████████████████████████████████ ██████████████████████.

A reasonable juror has an ample basis to conclude that Zada acted with the

FENWICK & WEST LLP
ATTORNEYS AT LAW

actual intent to hinder, delay or defraud with respect to all the transfers.  Given the extensive evidence, including a cover-up attempt reaching back to the January 2014 transfer and an actual request for sanctions as of August 2014, it would be error for the Court to rule as a matter of law that Zada lacked the requisite intent before the November summary judgment order.

### 3. The "badges of fraud" analysis does not control on summary judgment, but the presence of badges here indicates that the jury will find the transfers were fraudulent.

The Uniform Fraudulent Transfer Act ("UFTA") lists eleven factors, called "badges of fraud," as evidencing wrongful intent.  Legis. Comm. Comments, 12A West's Ann. Civ. Code (1997 ed.) foll. § 3439.04; Cal. Civ. Code § 3439.04(b).  No minimum number of factors is necessary to support a finding of fraudulent intent. *Filip*, 129 Cal. App. 4th at 834.  Instead, "the trier of fact should consider all of the relevant circumstances surrounding the transfer."  *In re Ezra*, 537 B.R. 924, 931 (B.A.P. 9th Cir. 2015).  "A trier of fact is entitled to find actual intent based on the evidence in the case, even if no 'badges of fraud' are present.  Conversely, specific evidence may negate an inference of fraud notwithstanding the presence of a number of 'badges of fraud.'"  *In re Beverly*, 374 B.R. at 236.

Given both Zada's direct admissions and the circumstantial evidence, a reasonable jury could find fraudulent intent without any of the "badges."  But Plaintiffs have evidence of many of them:

- *Perfect 10 made the transfers to an insider.*   The relevant test for an "insider" focuses "on the closeness of the parties and the degree to which the transferee is able to exert control or influence over the debtor."  *Browning Interests v. Allison (In re Holloway)*, 955 F.2d 1008, 1011 (5th Cir. 1992) (relying on Ninth Circuit authorities).  Zada was the president and sole shareholder of Perfect 10, and he had complete control of its assets and operations.  SUF175.

Fenwick & West LLP
Attorneys at Law

- *Perfect 10 retained possession or control of the property transferred after the transfer.*  Zada paid Perfect 10 expenses personally after the transfers. SUF282, 292.  Perfect 10's assets also remained in the same location, and Zada and Poblete continued to use them for the Perfect 10 business. SUF284.

- *Zada removed and concealed assets, and he continues to do so.*  Zada removed Perfect 10's physical assets; and, although the Court ordered him to identify the transferred assets, he has still not provided a complete identification.  SUF285.

- *Perfect 10 did not receive reasonably equivalent consideration.*  Equivalent value for a transfer exists where "property is transferred or an antecedent debt is secured or satisfied."  Cal. Civ. Code § 3439.03.  Zada testified he made the 2014 cash transfers to reduce Perfect 10's bank balance and because of the "summary judgment orders," and the 2015 transfer because Perfect 10's attorney was no longer threatened with sanctions.  In other words, Perfect 10 did not receive consideration in return.  As discussed below, Perfect 10 also did not receive equivalent value for its assets.

- *Perfect 10 had pending litigation that carried with it risks of multiple judgments.*  The fact finder must also consider "[w]hether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit."  Cal. Civ. Code § 3439.04(b)(4).  During the transfers, Perfect 10 had four pending copyright suits against eleven defendants.  In *three* of those cases, defendants expressly sought an award of their attorney's fees under the Copyright Act.  SUF183, 190.  In the fourth, which Perfect 10 dismissed on April 2, 2015, shortly after this Court's fee award, the defendant had not yet filed an answer.  SUF301.

- *The transfers occurred shortly before a substantial debt was incurred.*  "[T]hese transfers all occurred shortly before a substantial debt was incurred.

FENWICK & WEST LLP
ATTORNEYS AT LAW

By drawing all logical inferences in favor of Plaintiff," the Court should hold that "Plaintiff has produced sufficient evidence . . . to raise a disputed fact as to intent to hinder delay and defraud . . . ." *In re Empire Land, LLC*, 2016 WL 1371278, at *6 (Bankr. C.D. Cal. Apr. 4, 2016).

- *The transfers represented substantially all of Perfect 10's assets.* Zada had emptied the Perfect 10 bank account by the time of the fee award. By April 2015, Perfect 10 had a balance of $27,000, as well as IP assets for which the receiver has found only two willing purchasers: Zada, for $300,000, and Giganews whose $500,000 bid was not in case, but rather a credit based on payments into the receivership and a reduction of the judgment. SUF294-96. SUF305 (balances for October 2014 ($1.28 million in cash) and April 2015 ($27,000)).

- *Perfect 10 became insolvent as a result of the transfers.* A transfer leaves a debtor with assets that are unreasonably small in relation to the debtor's business under the UFTA if the assets are not reasonably likely to meet the debtor's needs. *See Intervest Mortg. Inv. Co. v. Skidmore*, 655 F. Supp. 2d 1100, 1105–06 (E.D. Cal. 2009). After the transfers,[7] Perfect 10 was unable to meet its foreseeable expenses, which Zada instead paid directly. SUF292 ("So I provided Perfect 10 with the money as I had been doing for years.").

Defendants cite two authorities for the proposition that evidence of several badges of fraud may be insufficient to preclude summary judgment. Mot. at 8. But neither bears on the facts of this case. In *Wyzard v. Goller*, 23 Cal. App. 4th 1183 (1993), a client gave his attorney a promissory note secured by other assets to cover

---

[7] For this analysis, courts assess the *cumulative effect* of the pattern or series of transactions on the debtor's solvency. *See Soza v. Hill (In re Soza)*, 542 F.3d 1060, 1067 (5th Cir. 2008); *Vill. of San Jose v. McWilliams*, 284 F.3d 785, 791 (7th Cir. 2002); *In re Leneve*, 341 B.R. 53, 61 (Bankr. S.D. Fla. 2006); *In re Cansorb Indus. Corp.*, No. 07-50041, 2009 WL 4062220, at *8 (Bankr. M.D.N.C. Nov. 20, 2009); *In re Dawley*, No. 01-32215DWS, 2005 WL 2077074, at *11 (Bankr. E.D. Pa. Aug. 10, 2005). This makes sense, as otherwise debtors could avoid liability for all but the very last in a string of related fraudulent transfers.

FENWICK & WEST LLP
ATTORNEYS AT LAW

anticipated services.  In *Annod Corp. v. Hamilton & Samuels*, 100 Cal. App. 4th 1286 (2002), a law firm allowed its partners to draw their salaries while the firm owed a rent payment.  In both cases, the transferees provided equivalent value in services under the terms of a written agreement.  In *Annod,* the record also contained "overwhelming" evidence that the partners were not "looting" the firm. *Id.* at 1296.  This case is exactly the opposite.  Perfect 10 did not make the transfers in repayment of an antecedent debt memorialized in a writing.  Although Zada created fraudulent documents after the fact to make it *appear* that way, he testified that the transfers were for other reasons, including to reduce Perfect 10's balance and because of the "summary judgment orders," not in payment of a debt.

### 4. None of Defendants' arguments or evidence establishes an honest intent as a matter of law.

Defendants argue that for various reasons a jury cannot find fraudulent intent. These arguments ignore the reality.

### a. Receipt of payment for the physical assets does not preclude an "actual fraud" theory.

Defendants argue that Zada's nominal payment for the physical assets precludes his liability under any theory.  Mot. at 10.  As Plaintiffs discussed above, a question of fact exists as to whether Perfect 10 truly received *any* payment for the assets, given that Perfect 10 recorded and reported the $70,000 payment to the IRS as an equity contribution.  More important, any value that Perfect 10 received for the assets, while relevant to *constructive* fraud, is wholly irrelevant to the *actual* fraud claim.  An actual fraud theory is "independent" of constructive fraud "and does not require proof of anything more than actual intent to defraud."  *Lyons v. Sec. Pac. Nat. Bank*, 40 Cal. App. 4th 1001, 1020 (1995), *as modified on denial of reh'g* (Nov. 30, 1995); *In re Singh*, No. AP 12-02370, 2015 WL 1887939, at *17 (Bankr. E.D. Cal. Apr. 22, 2015) (finding of "reasonably equivalent value" did not affect liability for actual fraudulent transfer); *see also In re Indep. Clearing House*

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   *Co.*, 77 B.R. 843, 859 (D. Utah 1987) ("A transfer made for reasonably equivalent

2   value can still be fraudulent and hence avoidable if it was made 'with actual intent

3   to hinder, delay, or defraud'. . . .").

4                     **b.**      **The Ninth Circuit's rejection of an alter ego judgment**

5                                 **against Zada does not collaterally estop any portion of**

6                                 **the fraud claims.**

7         Defendants have twice argued that a statement in the Ninth Circuit opinion

8   affirming the district court's ruling on *alter ego* collaterally estops Giganews from

9   asserting a fraudulent transfer claim.  They argue that, when the Ninth Circuit

10  affirmed this Court's decision not to add Zada to the judgment against Perfect 10 as

11  alter ego, it necessarily blessed Zada's withdrawals from Perfect 10's bank account

12  as not fraudulent.  The Court already rejected this argument as to both theories of

13  fraud, and it should not reconsider that correct ruling.

14        A party asserting collateral estoppel must demonstrate: "(1) the issue at stake

15  was identical in both proceedings; (2) the issue was actually litigated and decided in

16  the prior proceedings; (3) there was a full and fair opportunity to litigate the issue;

17  and (4) the issue was necessary to decide the merits."  *Oyeniran v. Holder*, 672 F.3d

18  800, 806 (9th Cir. 2012). Even where grounds for its application exist, a court

19  should not apply the doctrine when considerations of policy or fairness outweigh

20  the doctrine's purposes.  *Vandenberg v. Super. Ct.*, 21 Cal. 4th 815, 829 (1999).

21        The doctrine of collateral estoppel does not preclude litigation of an issue

22  unless it is identical to the one in the former proceeding.  *See Bostick v. Flex Equip.*

23  *Co.*, 147 Cal. App. 4th 80, 96–97 (2007);[8] *see also Sutton v. Golden Gate Bridge,*

24  *Highway & Transp. Dist*., 68 Cal. App. 4th 1149, 1155 (1998).  The doctrine

25  requires "strict identity," in other words the issues must be "precisely identical."

26  *See United Educators of S.F. AFT/CFT v. Cal. Unemployment Ins. Appeals Bd*.,

27

28  [8] A federal district court sitting in diversity must apply the collateral estoppel rules of the forum state.  *See Pardo v. Olson & Sons, Inc*., 40 F.3d 1063, 1066 (9th Cir. 1994).

FENWICK & WEST LLP
ATTORNEYS AT LAW

247 Cal. App. 4th 1235, 1245–46 (2016).

The Ninth Circuit affirmed the ruling that Giganews had not shown it would be manifestly unfair to require it to collect the judgment from Perfect 10 alone, based on a determination that neither bad faith nor stripping of assets had rendered Perfect 10 "so undercapitalized" that it could not meet its expected debts. *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 678 (9th. Cir. 2017), *cert. denied*, 138 S. Ct. 504 (2017). It did not consider the issue of whether Zada made withdrawals from Perfect 10's bank account to keep money away from creditors. Those issues are logically and legally distinct: the "alter ego" issue did not specifically challenge the three transfers that incidentally appeared in the record.[9] Defendants argue that "bad faith" and "fraudulent intent" are related mental states. Mot. at 13. But whether Zada engaged in bad faith by using Perfect 10 to shield *himself* from personal liability is a separate issue from whether Zada shielded *Perfect 10* from attachment of its assets through fraudulent transfers. They are not "identical" issues giving rise to preclusion.

Second, collateral estoppel does not apply where a party had no full and fair opportunity to litigate the issue in the earlier proceeding. *Kerner v. Super. Ct.*, 206 Cal. App. 4th 84, 125 (2012); *see also Bostick*, 147 Cal. App. 4th at 97. Plaintiffs had no ability to litigate the issue of fraudulent transfers in the copyright case. The Court entered final judgment in November 2014. Zada revealed the fraud at his January 2016 debtor's examination, where he confessed that "the summary judgment orders" caused him to take money from Perfect 10's bank account.

---

[9] This Court has already ruled that the bulk of the transfers, including the $850,000 that Zada took immediately after losing summary judgment, were not before the Court in the related case. (Dkt. 25 at 7.) The Court's ruling that Perfect 10 was not *undercapitalized* in "bad faith" as of March 2014 did not consider the new facts that Zada later took out over a million more dollars and took ownership of Perfect 10's physical assets, as well as the extensive other evidence of fraud that has emerged.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    Plaintiffs had no ability to assert claims for fraudulent transfer in the original case.

2    Defendants have improperly invoked collateral estoppel in an attempt to bar the

3    litigation of issues which the earlier case never determined.  Plaintiffs are entitled to

4    a fair proceeding to present their new case fully.

5         Defendants also misuse the Ninth Circuit's alter ego holding in their

6    argument for a "good faith" defense.[10]  Mot. at 23.  Defendants have the burden of

7    proof on that defense.  *See In re Beverly*, 374 B.R. at 239.  In a case involving a

8    debtor with actual fraudulent intent, the defense applies only to good faith

9    transferees who made transfers for value. Cal. Civ. Code § 3439.08(a).  But Zada,

10   as a transferee, lacks good faith under the statute if he either "(1) colludes with the

11   debtor or otherwise actively participates in the debtor's fraudulent scheme, or (2)

12   has actual knowledge of facts that would suggest to a reasonable person that the

13   transfer was fraudulent."  *In re First Alliance Mortg. Co.*, 298 B.R. 652, 665 (C.D.

14   Cal. 2003) (quoting *CyberMedia, Inc. v. Symantec Corp.*, 119 F. Supp. 2d 1070,

15   1075 (N.D. Cal. 1998)); *see also Nautilus, Inc. v. Yang*, 11 Cal. App. 5th 33, 46 (Ct.

16   App. 2017), *reh'g denied* (May 8, 2017), *review denied* (Aug. 9, 2017) ("actual

17   knowledge of the transferor's fraudulent intent" precludes transferee from raising

18   good faith defense); *accord In re Beverly*, 374 B.R. at 239.  There is a genuine

19   dispute regarding many, if not all, facts Defendants claim to support "good faith" *as*

20   *to the transfers*.  Summary judgment is therefore inappropriate.

21               **c.    Defendants' illusory offer to settle demonstrates**

22                        **bad faith, not good faith.**

23        Defendants repeat their twice-failed argument that Zada's conditional offer to

24   settle the litigation for $2 million and a deed of trust, with many strings attached, is

25

26   _____
     [10] None of Defendants' authorities apply here, where significant questions of
     material fact exist.  *See* Mot. at 13.  *Benny* involves the appeal of a jury instruction
27   for a conviction for RICO violations; *In re Leavitt* and *In re @Vantage.com* discuss
     whether bad faith is a cause for dismissal under the Bankruptcy Code; and "there
28   was no serious claim of factual dispute" that transferees "paid reasonably
     equivalent value" in *Lewis*.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1  such strong evidence of Zada's good-faith desire to pay the judgment that it

2  precludes the jury from finding to the contrary as a matter of law.  *After* he had

3  already taken steps to insulate Perfect 10's cash and assets, Zada proposed a

4  "settlement" that included negotiating terms of a *conditional* first deed of trust over

5  his residence.  But this was a sham.  Zada could resist enforcement later, forcing

6  Giganews into new litigation over its right to foreclose.  Zada could never have

7  imposed these conditions without first shielding Perfect 10's assets through the

8  fraudulent transfers.  Without the transfers, those assets would have remained with

9  Perfect 10 and Giganews would have simply enforced its judgment against them.

10  This is clear evidence of Zada's fraud, not his good faith, and on a motion for

11  summary judgment the Court must interpret the evidence in the light most favorable

12  to Giganews.

### 5.   Plaintiffs have evidence of harm sufficient to preclude summary judgment.

15  Plaintiffs can easily establish the element of harm, entitling them to void

16  completely all of the transfers.  "Under the UFTA, a creditor, […] who has a right

17  to payment, suffers an injury in fact when a debtor fraudulently transfers property

18  as defined by the UFTA."  *Nikko Materials USA, Inc. v. Navcom Def. Elecs., Inc.*,

19  No. CV 05-4158-JFW (VBKx), 2014 WL 12700714, at *4 (C.D. Cal. Jan. 22,

20  2014).  A creditor-plaintiff shows harm by demonstrating that the transfer put

21  "beyond reach" money or property that otherwise would be subject to payment of

22  the debt.  *Mehrtash v. Mehrtash*, 93 Cal. App. 4th 75, 80 (2001).  Once the plaintiff

23  establishes a transfer is fraudulent, he or she is entitled to "*avoidance* of the transfer

24  or obligation *to the extent necessary to satisfy the creditor's claim*."  Cal. Civ.

25  Code. § 3439.07.

26  Plaintiffs have met this standard.  Perfect 10 made each of the fraudulent

27  transfers to Zada, who was personally "beyond reach" of the judgment when the

28  Court denied the alter ego judgment.  Plaintiffs are entitled to void each of the

FENWICK & WEST LLP
ATTORNEYS AT LAW

transfers.  What Zada did later with the money, and whether he ultimately used it to pay other Perfect 10 expenses, does not matter.  Defendants' claims that Plaintiffs were not harmed because they did not accept an oppressive settlement offer, or did not move quickly enough to attach amounts that Zada filtered back through the Perfect 10 bank account for fleeting amounts of time, are similarly irrelevant. Zada's removal of the funds and assets demonstrates the "harm" element required by UFTA.

Nor is there any legal or logical support for the notion that Zada's so-called "putback" of funds or his personal payments to other Perfect 10 creditors has any bearing on the amount of his liability for fraudulent transfers.  Perfect 10 offers no authority that would allow it to "net" out these amounts from Giganews's recovery. The "general rule permitting a debtor to prefer one creditor or group of creditors over others has long been subject to exceptions in cases of fraud." *Wyzard*, 23 Cal. App. 4th at 1187.

The only relevant "netting" rule is from the statutory "good faith" defense that permits innocent individuals implicated in a constructive fraudulent transfer (for instance, good faith investors in a Ponzi scheme) to limit their damages. *Donell*, 533 F.3d at 771–72 (explaining relationship between Cal. Civ. Code § 3439.08(a) and so-called "netting rule").  Such an approach has no place in cases of an actual fraudulent transfer.  In cases of actual fraudulent transfers, a plaintiff may "recover the entire amount" of the offending transfer, "*including* amounts which could be considered 'return of principal.'"  *Id.* at 771.  Giganews is trying to void payments from Zada's accounts to Zada, not to innocent third parties.  Given the substantial evidence of Zada's fraudulent intent, the statute provides no basis for the Court to rule that any transfers are not voidable.  Nor is there any other basis for limiting Giganews's recovery on summary judgment.

FENWICK & WEST LLP
ATTORNEYS AT LAW

**B.      The Court should deny summary judgment as to Plaintiffs'
alternative claims for constructive fraudulent transfer and grant
summary judgment for Plaintiffs as non-moving parties.**

"Constructive" fraud is distinct from "actual" fraud and gives rise to a
separate legal claim.  *See Reddy v. Gonzalez*, 8 Cal. App. 4th 118, 122–123 (1992).
Intent is irrelevant to constructive fraud.  *See* Cal. Civ. Code §§ 3439.04(a)(2),
3439.05.  "A transfer is constructively fraudulent if the debtor made the transfer
without receiving 'reasonably equivalent value' in exchange and the debtor either:
(1) was engaged or about to engage in a business or transaction for which the
debtor's remaining assets were unreasonably small in relation to the business or
transaction; *or* (2) intended to incur or believed (or reasonably should have
believed) that it would incur debts beyond its ability to repay; *or* (3) was insolvent
at the time, or was rendered insolvent by the transfer or obligation."  *United States
v. Whitman*, No. 2:12-CV-2316-MCE-EFB, 2013 WL 3968083, at *7 (E.D. Cal.
July 31, 2013), *report and recommendation adopted*, No. 2:12-CV-2316-MCE-
EFB, 2013 WL 4516009 (E.D. Cal. Aug. 26, 2013) (emphases added); *accord
Choice Hotels Int'l, Inc. v. Wright*, No. CV 03-3785-RGK (JTLx), 2005 WL
8156289, at *3 (C.D. Cal. Mar. 24, 2005).  Here, the evidence would justify
summary judgment in favor of *Plaintiffs* as non-moving parties.  *See* Fed. R. Civ.
P. 56(f).  At the very least a material question of fact exists as to all elements.

**1.      A reasonable jury will conclude that Perfect 10 did not
receive reasonably equivalent value for the transfers.**

"Value is given for a transfer or an obligation if, in exchange for the transfer
or obligation, property is transferred or an antecedent debt is secured or
satisfied . . . ."  Cal Civ Code § 3439.03.  The evidence shows that Perfect 10 did
not receive reasonably equivalent value for the transfers.

- Perfect 10 received nothing of value in exchange for its cash: Zada just put
  its money into his own accounts.  SUF277.  This Court itself concluded that

FENWICK & WEST LLP
ATTORNEYS AT LAW

Zada's testimony about the reasons for the 2014 transfers is inconsistent with the idea that Perfect 10 received value for them.  SUF278.  The reason for the 2015 transfer from Perfect 10 to Zada—that imposition of monetary sanctions never occurred—is similar.

- Perfect 10 received for its assets either nothing of value or a nominal payment of $70,000 that was far less than their fair value.  (*See* pg 6-7.)  Perfect 10 classified the $70,000 "payment" ███████████████████████████████████████████████.  SUF2.

Defendants offer several conflicting reasons why the Court should infer that Perfect 10 received equivalent value for its 2014 cash transfers.  *See* Mot. at 15.  None of the reasons is legally sufficient to raise a triable issue of fact, let alone warrant summary judgment in favor of Defendants.  First, Defendants argue the transfers "paid" Zada for his 18 years of work for Perfect 10.  But without some written instrument establishing an existing obligation, the requirement that the debtor "receive value" requires a contemporaneous exchange.  *See* Cal. Civ. Code § 3439.03; *In re Brobeck, Phleger & Harrison LLP*, 408 B.R. 318, 342, 347 (Bankr. N.D. Cal. 2009) (quoting *Jackson v. Mishkin (In re Adler, Coleman Clearing Corp.)*, 263 B.R. 406, 466–67 (S.D.N.Y. 2001)) (construing "essentially the same" constructive fraudulent transfer provision in Bankruptcy Code).  There is no record evidence that the transfers were a delayed salary payment.  Again, the Court has already correctly observed that Zada's own sworn testimony contradicts that explanation.  SUF278.

Next, Defendants argue the transfers returned Zada's capital investment in Perfect 10, and the "value" it received was a corresponding write-down on its books.  But "[b]ecause the policy behind fraudulent conveyance law is to preserve assets of the estate, reasonably equivalent value is determined from the standpoint of the estate's creditors, it is not determined from the defendant's perspective."  *In re 3dfx Interactive, Inc.*, 389 B.R. 842, 863 (Bankr. N.D. Cal. 2008), *aff'd*, 585 F.

Fenwick & West LLP
Attorneys at Law

App'x 626 (9th Cir. 2014); *accord Kirkland v. Risso*, 98 Cal. App. 3d 971, 977 (1979).  A reduction in *equity* in the accounting records is not an asset that has *any* value to creditors.

Finally, Defendants argue that the transfers repaid a debt.  But the undisputed evidence, including *years* of Perfect 10 accounting records and tax filings, shows that Zada held an equity investment in Perfect 10, not debt.  Defendants failed to present as evidence the falsified "repayment" notes Zada and Poblete created around the time of the fee award, tacitly acknowledging they are fraudulent.  The only evidence of a "debt" is Zada's own self-serving and uncorroborated declaration, which the Court must disregard.  *See In re EPD Inv. Co.*, No. 2:10-BK-62208-ER, 2018 WL 947636, at *8 (Bankr. C.D. Cal. Feb. 17, 2018) (disregarding declaration asserting that declarant lent debtor over $2 million, where declarant failed to provide documentary evidence substantiating the alleged loans).

As to the physical assets, Defendants claim they were "worth at most $11,900." Mot. at 2–3.  But according to Perfect 10's records, it received *nothing* for them.  Instead, ███████████████████████████████████████.  But even if treated as a bona fide purchase, the value of the assets exceeded $70,000: the car and magazines alone exceed that amount, the furniture and computing equipment had substantial additional value, and there are other valuable assets that Zada transferred but did not disclose.  *Cf. Attebury Grain LLC v. Grayn Co.*, 721 F. App'x 669, 671–72 (9th Cir. 2018) ("any reasonable juror would have to find […] payment of $140,000 was not reasonably equivalent value for the $306,900 worth of assets plus an unspecified value of corn inventory").

### 2.    A reasonable jury will conclude the transfers left Perfect 10 with insufficient assets to carry on its business.

The evidence also establishes the second element of constructive fraud, regardless of which prong is applied.  "[A] transfer leaves a debtor with assets that are 'unreasonably small in relation to [the debtor's] business or transaction' if the

FENWICK & WEST LLP
ATTORNEYS AT LAW

assets are not reasonably likely to meet the debtors' present and future needs." *Intervest Mortg. Inv. Co. v. Skidmore,* 655 F. Supp. 2d at 1106; *see also In re AWTR Liquidation Inc.*, 548 B.R. 300, 312–13 & n.2 (Bankr. C.D. Cal. 2016) (lack of capital would lead to an inability to generate enough cash flow to sustain operations).

Here, the transfers indisputably left Perfect 10 with insufficient ability to carry on its existing business or pay its foreseeable expenses.[11]  First, the 2015 asset transfer and transfer of $454,000 both occurred after the Court had entered a $5.6 million judgment against Perfect 10.  Second, the transfers left Perfect 10 with insufficient assets to carry on its existing business *regardless* of whether that judgment was ever entered.  After the transfers, Perfect 10 had to lay off its employees, including its paralegal and bookkeeper Melanie Poblete (who continued to be Zada's close personal assistant and housemate), stop work by its accountant, definitively ████████████████████, and dismiss other pending litigation.  SUF281.  It also could not pay its legal fees in the *Giganews* case: Zada paid these personally out of his own accounts.  SUF282.

Given all these facts, Giganews does not have to show that the fee award was a foreseeable expense to overcome summary judgment.  Nevertheless, the evidence establishes that Perfect 10 reasonably should have anticipated the expense of a fee award.  Reasonable foreseeability is an objective, not subjective, test.  *In re Heller Ehrman*, 2013 WL 951706, at *10.  Perfect 10 had four pending U.S. cases in 2014,

---

[11] A debtor cannot insulate itself from a constructive fraud claim by making many smaller fraudulent transfers and arguing only the last rendered it unable to carry on its business.  The Court must analyze the effect of the transfers together.  *See* fn 7; *In re Martirosian*, No. 1:15-BK-11139-MB, 2017 WL 1041107, at *3 (Bankr. C.D. Cal. Mar. 14, 2017) (on a motion for preliminary injunction, analyzing "a series of transfers and transactions" used in a "scheme" that allowed debtor and his wife to shelter real property from creditors); *Davidson v. Barnhardt*, No. CV 11-7298 FMO (VBKx), 2013 WL 6388354, at *10 (C.D. Cal. Dec. 6, 2013) (considering, on motion for default judgment, seven transfers spanning five years).

FENWICK & WEST LLP
ATTORNEYS AT LAW

all of which carried a risk of a fee award.  It lost at every stage of its lawsuit against Giganews.  Starting in 2014, it suffered adverse court orders nearly every month, and Giganews requested a substantial sanctions award in August 2014.  The Court itself found that Perfect 10 "was objectively unreasonable" in pursuing its direct infringement claim with no evidence, making a fee award a significant risk. SUF224.  *Cf. Attebury Grain*, 721 F. App'x at 671–72 (adverse judgment in breach of contract action was reasonably foreseeable).  The timing of the transfers, together with Zada's testimony that the summary judgment orders caused his largest withdrawal, establishes objectively that Perfect 10 had reason to believe it would suffer an attorney's fee award.

The Court should deny Perfect 10's motion for summary judgment on the constructive fraudulent transfer claims, and it should enter partial summary judgment in favor of Plaintiffs as non-moving parties.

## V.    CONCLUSION

Nearly three years ago, Norman Zada sat for a debtor's examination and forthrightly discussed how he had taken personal possession of Perfect 10's cash and property to keep it free from the "interference" of the Court's judgment.  Since that time, waves of damning evidence of the fraud have emerged.  Zada and his paralegal/bookkeeper/personal assistant/housemate falsified records to disguise each of his 2014 transfers as loan repayments.  Zada misrepresented his cash position to the Court.  Zada either does not know or refuses to identify all the assets that he transferred.  The list goes on.  The Court should not allow Zada to escape the consequences of his behavior and laugh at the law's impotence.  Giganews and Livewire respectfully request that the Court deny the motion and grant them summary judgment on their second cause of action for constructive fraudulent transfer as non-moving parties, as to all of the cash and asset transfers.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    Dated:  November 9, 2018          FENWICK & WEST LLP

2

3                                      By:  */s/ Todd R. Gregorian*
                                            Todd R. Gregorian
4

5                                      RONALD P. SLATES P.C.

6

7                                      By:  */s/ Ronald P. Slates*
                                            Ronald P. Slates
8

9                                      Attorneys for Plaintiffs/Judgment Creditors,
                                       GIGANEWS, INC., and LIVEWIRE
10                                     SERVICES, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW