# EXHIBIT 43

1  Matthew C. Mickelson (S.B.N. 203867)
   LAW OFFICES OF MATTHEW C.
2  MICKELSON
   matthew@mickelsonlegal.com
3  16055 Ventura Boulevard, Ste. 1230
4  Encino, CA 91436
   818-382-3360
5
6
7  Attorney for Defendants PERFECT 10, INC. and
   NORMAN ZADA
8
9                  UNITED STATES DISTRICT COURT
10                 CENTRAL DISTRICT OF CALIFORNIA
11
   | GIGANEWS, INC., a Texas corporation; | Case No.: 2:17-cv-05075-AB (JPR) |
   | LIVEWIRE SERVICES, INC., a Nevada corporation, | |
   | | **Before Honorable Jean P. Rosenbluth** |
   | Plaintiffs, | |
   | v. | **DEFENDANT DR. NORMAN ZADA'S THIRD AMENDED RESPONSE TO PLAINTIFF GIGANEWS'S SECOND SET OF INTERROGATORIES (COVERS ONLY COURT-ORDERED INTERROGATORIES)** |
   | PERFECT 10, INC. a California corporation, NORMAN ZADA, an individual, and DOES 1-50, inclusive | |
   | Defendants. | |

                                    1
   Zada's Third Amended Response to Giganews's Second Set of Interrogatories

| | |
|---|---|
| PROPOUNDING PARTY: | **PLAINTIFF GIGANEWS, INC.** |
| RESPONDING PARTY: | **DEFENDANT NORMAN ZADA** |
| SET NUMBER: | TWO (NO. 3-10) |

Defendant Norman Zada ("Dr. Zada") amends his response for the third time to the Second Set of Interrogatories propounded by Plaintiff Giganews, Inc. ("Giganews") as follows:

## INTERROGATORIES AND RESPONSES

**INTERROGATORY NO. 3:**

Identify all physical assets owned or otherwise controlled by Norman Zada (including, but no limited to furniture, electronics, computer hardware, photographic equipment, real property, and automobiles) at any time from January 1, 2011 to the present, including: (a) the current owner of the assets and (b) all circumstances regarding the receipt, acquisition, transfer or disposition of the asset, including the amount of any consideration exchanged for the assets, the date of the exchanges, and the parties to the exchanges.

**SECOND AMENDED RESPONSE TO INTERROGATORY NO. 3:**

1. Real property located 11803 Norfield Court, Los Angeles, CA, which was purchased in or around November of 2010 for $4.25 million.
2. Real property located at 4572 Martson, Encino, California, purchased in or around June 2015, to generate some income, for $1.725 million.
3. 2009 Lexus automobile purchased in April of 2012 from Lexus when the lease agreement expired, for approximately $33,000. Movie Slumber Party Slaughter, created in 2011-12 for approximately $4.6 million.
4. Seventeen ounces of gold
5. Geneve watch
6. Cash in safe totaling $70,000.

7. In March-April of 2015, Dr. Zada purchased from Perfect 10, some furniture and computers and other physical items for a total of $70,000. Those assets, and or other assets belonging to Dr. Zada are detailed below:

   a. roughly 4000 Perfect 10 Magazines, printed by Perfect 10.
   b. roughly 300 DVDs or tapes (manufactured by Perfect 10)
   c. roughly 100 T-shirts (manufactured by Perfect 10)
   d. roughly 50 hats (manufactured by Perfect 10)
   e. Three bed sets (manufactured by Georgio Collection, Bed Rooms&Board, and what appears to be ALF (hard to read) The ALF has a serial number of 20340)
   d. Two desks – The large desk does not appear to have a manufacturer or model number, it was custom made. The small desk was manufactured by 2-Line Degree, Inc. The manufacturing date was 01/2011, model number SP930-01CDC, with an SKU of 753242.
   e. Six small computers – no model names, these were constructed with off-the-shelf components by Perfect 10's tech consultant, John Wilkins. Three have Intel i5 processors, three have i7 processors.
   f. One scanner – Ricoh (Lanier) model LD035. Two safes, a cannon purchased in 2004. The other safe is manufactured by First Alert. The numbers on the safe are 2096DF-12144-15191, BZ-741695, and R15209. Both safes were purchased for $300 or less.
   g. One sofa --- No manufacturer names or model name information has been found; it was purchased at some furniture store just about San Vicente Blvd. in West Hollywood, near La Cienega, and was custom made.
   h. Some chairs. One chair was manufactured by VIA, and has a price tag on it of $110.07; another chair was manufactured by True Innovations, LLC, with a manufactured date of 12/8/2010. SBG item number 20497. SKU number 898290.
   i. Five printers – Two HP Office Jet Pro 8100; One HP Laserjet 2300; and

two HP LaserJet Pro 400s. One inexpensive filing cabinet, EFFEKTIV, with additional numbers of 0337 and 13662 on the tag.

  j. Fax Machine -- Brother Intellifax 4750e. There is some computer equipment downstairs, which is owned by Dr. Zada. At least some of it was purchased from Perfect 10 but Dr. Zada is not sure which items were:

  k. Miscellaneous Computer Equipment:
    1. Two Netgear GS724T Smart Switches.;
    2. Cisco RV042G router;
    3. Buffalo TS-h0.0tgl/r5 Ethernet port;
    4. 2 Synology 1515+ diskstations (purchased by Dr. Zada himself);
    5. Two Barracuda spam firewall 100s,
    6. Trendnet TK-803R USB Port;
    7. Dell Powervault DP500 server;
    8. Dell Poweredge 2950 server;
    9. Smart UPS 1500 XLM Battery Pack;
    10. APC 1000 XL power supply.

The other physical assets that Dr. Zada owns and has owned from January 1, 2013 to December 31, 2017 (the "Relevant Period"), which were not transferred from Perfect 10 to Dr. Zada in March and April, 2015, but whose value he believes are in excess of $750, would be a Geneve watch that he purchased in the late 1980's for $2,250 dollars, and 17 ounces of gold, $70,000 in cash, and the movie Slumber Party Slaughter.

**INTERROGATORY NO. 4:**

Identify all intangible assets owned or otherwise controlled by Norman Zada (including, but not limited to furniture, electronics, computer hardware, photographic equipment, real property, and automobiles) at any time from January 1, 2011 to the present, including (a) the current owner of the assets and (b) all circumstances regarding the receipt, acquisition, transfer or disposition of the assets,

4

Zada's Third Amended Response to Giganews's Second Set of Interrogatories

including the amount of any consideration exchanged for the assets, the dates of the exchanges, and the parties to the exchanges.

**SECOND AMENDED RESPONSE TO INTERROGATORY NO. 4:**

Dr. Zada's understanding of "intangible assets" would be goodwill, copyrights, and trademarks. The movie Slumber Party Slaughter may be viewed as an intangible asset. Dr. Zada owns the copyright to his book "Winning Poker Systems" published by Prentice Hall in 1974. He presumably owns some type of right to the papers that he has published. Other than that, he does not believe that he has any other "intangible asset." He has invested money in CW International.

**INTERROGATORY NO. 5:**

For each asset that Interrogatory 3 or 4 calls to be identified, identify all facts regarding the asset's value, including all valuations of the assets, at any time from January 1, 2011 to the present.

**AMENDED RESPONSE TO INTERROGATORY NO. 5:**

1.  Dr. Zada purchased his home at 11803 Norfield Court in November of 2010, for $4.25 million. In June of 2015, it was appraised at $5.5 million.
2.  Dr. Zada purchased his home at 4572 Martsen, in Encino, CA for $1.725,000, on or around June 30, 2015.
3.  The value of an ounce of gold is currently around $1200 an ounce. He has seventeen ounces of gold
4.  Geneve watch, purchased in late 1980s for $2,250.
5.  Cash in safe totaling $70,000.
6.  "Winning Poker Systems" published by Prentice Hall in 1974 and published papers that he has published; value unknown.
7.  Investment in CW International – he invested between $300,000 and $800,000. The current value of this investment is unknown.
8.  The value of the bank, brokerage and other asset accounts is located on the faces of the statements produced.

9. Physical Items Transferred from Perfect 10 to Dr. Zada in March and April 2015:

   a. 4000 Perfect 10 Magazines – retail price was typically $6.99. These have been sold for 10 cents each in bulk, so total value is $400.

   b. 300 DVDs or tapes. Unknown cost to purchase. Best estimate of their value is zero.

   c. 100 T-shirts -- Unknown cost to purchase. Best estimate of their value is zero.

   d. 50 hats -- Unknown cost to purchase. Best estimate of their value is zero.

   e. Three bed sets – Purchased for $2,000 each in the year 2000. Best estimate of their value, based on e-bay, is $500 each at most, for a total of $1,500 in total value.

   d. Two desks – One desk was purchased for $10,000 in the year 2000. Estimated value of that desk now is $3,000. There is no purchase information for the other desk, it is old, and is valued at zero. So total value of desks is $3,000.

   e. Six small computers – They were build by Perfect 10's tech person, John Wilkins. To the best of Dr. Zada's memory, Mr. Wilkins charged around $2000 for each machine which included the monitor and keyboard. They don't have model names. Dr. Zada estimates that their age in 2015 was between 3 and 7 years old. Computers with i7 processors appear to list used on Ebay for around $200. (PN-USED-PRICES-0002). Perfect 10 may have also owned three computers with Intel i5 processors in them. They were also made by Perfect 10's tech advisor, and do not have model names. To the best of Dr. Zada's memory, Perfect 10's tech person charged either Dr. Zada or Perfect 10 around $2,000 for those computers as well. Machines with i5 processors seem to sell used on Ebay for around $150. (PN-USED-PRICES-0001). Dr. Zada estimated the value of these computers plus the

---

6

Zada's Third Amended Response to Giganews's Second Set of Interrogatories

workstation downstairs and its peripheral attachments to be worth around $3,000 in 2015.

  f. One scanner – Purchased for $8,000 in 2004. The receiver refused to take it, so it's current value is zero.

  g. One sofa --- purchased for $8,000 in the year $2,000, is valued at a maximum of $3,000 now. The prices of used couches offered on Ebay suggest that the value may actually be substantially less. See PN-USED-PRICES-0003.

  h. Some chairs -- Unknown cost to purchase. Best estimate of their value is zero.

  i. Five printers – Two HP Office Jet Pro 8100, unknown purchase price, it lists new for around $250.00. There is a used one being offered on ebay for $70. (PN-USED-PRICES-0004). HP Laserjet 2300, unknown purchase price, it sells used for around $100; (PN-USED-PRICES-0005). Two HP Lasetjet Pro 400 color printers, unknown purchase price, they appear to sell used for around $120. (PN-USED-PRICES-0006).

  j. Fax Machine – Brother Intellifax 4750e. Unknown purchase price; it is old and appears to be listed for sale on e-bay used for around $200. (PN-USED-PRICES-0007-8).

  k. Miscellaneous Computer Equipment (no purchase price available for any of these):

    1. Two Netgear GS724T Smart Switches., listed on e-bay for roughly $40 (PN-USED-PRICES-0009);

    2. Cisco RV042G router; listed used on e-bay for around $50. (PN-USED-PRICES-0010).

    3. Buffalo TS-h0.0tgl/r5 Ethernet port; listed used on e-bay for around $100. (PN-USED-PRICES-0011).

    4. 2 Synology 1515+ diskstations; appear to be listed on e-bay new for around $700. (PN-USED-PRICES-0012). These were purchased by Dr. Zada

(Not P10) for $899 each on 11/6/2015.

      5.    Two Barracuda spam firewall 100s, listed on e-bay used for around $150 each. (PN-USED-PRICES-0013).

      6.    Trendnet TK-803R USB Port; listed on e-bay for $150 new, $50 used. (PN-USED-PRICES-0014).

      7.    Dell Powervault DP500 server; appears to be listed on e-bay used for $50. (PN-USED-PRICES-0016).

      8.    Dell Poweredge 2950 server; listed on e-bay for $100 used. (PN-USED-PRICES-0015).

      9.    Smart UPS 1500 XLM Battery Pack; listed on e-bay for roughly $100. (PN-USED-PRICES-0017).

      10.    APC 1000 XL power supply; discontinued, worth zero

While the values above are roughly the values of those items to Dr. Zada, he believes that the items would have no value to the receiver, but the receiver would have to transport the items, store them, and hire someone to sell them. Dr. Zada believes that those costs exceed whatever the items could be sold for.

**INTERROGATORY NO. 6:**

Identify all transfers of assets (including money) between Perfect 10 and Norman Zada, including the date of transfer and the nature and amount of any consideration in exchange for the transfer.

**THIRD AMENDED RESPONSE TO INTERROGATORY NO. 6:**

Perfect 10 responds as follows: Dr. Zada and Perfect 10 have already described the physical transfers which occurred in March-April of 2015 for $70,000, and hereby incorporate in this response their response to Interrogatory No. 3.

With regard to the transfers of money, Dr. Zada refers Plaintiffs to Perfect 10's financial statements, which are in their possession. Plaintiffs already know the transfers from Perfect 10 to Dr. Zada because they listed them in their FAC. Documents sufficient to identify all those transfers were produced at P-FIN003876-

8

Zada's Third Amended Response to Giganews's Second Set of Interrogatories

3939 (BOA P10 account Jan 2013 to Mar 2014); Perfect 10 Bank of America statements from April 2014 to Nov 2015, produced at P-FIN009555 to 9676; Perfect 10 Bank of America statements from Nov 2015 to Apr 2018, produced at PN-BOA-P10-0001-0048; P-FIN006551-6600; P10 BOA reconciliation reports for Jan 2013 to Mar 2014, produced at P-FIN006551 – 6609; P10 BOA reconciliation reports for Jan 2014 to 10/31/2015 produced at Pn-BOA-REC-0001-83; Perfect 10 Financial reports from Jan 2013 to Mar 2014, produced at P-FIN009029—9126; Perfect 10 Financial reports from Mar 31 to 2014 to Sept 30 2014, produced at P-FIN009987-10020; P-FIN-003924-3939; P-FIN009555-9671; P-FIN003786-3801; Perfect 10's 2013 and 2014 tax returns, produced at P-FIN009817-9886; Perfect 10's 2015 and 2016 tax returns, produced at PN-P10-TAX-15 16-0001-24; Payments made by Dr. Zada directly in 2015, produced at P-FIN009750-9775; Dr. Zada's Personal tax returns from 2014-2016, produced at PN-NZTAX0001-160; Dr. Zada's personal 2013 Tax Return, produced at PN-NZTAX1-0001-44; Dr. Zada's personal BOA statements from Dec 2012 to Mar 2015, produced at PN-BOA-NZ0001-75; Dr. Zada's personal BOA statements from Mar 2015 to 2018, produced at PN-BOA-NZ1-0001-242; Dr. Zada's personal BOA reconciliation reports for Jan 2015-jan 2017, produced at PN-BOA-RECNZ0001-184.

  When Dr. Zada transferred money to Perfect 10, he was under the impression that he was lending Perfect 10 that money, which was his to remove at any time at his discretion. So the "consideration" for any transfer from Perfect 10 to Dr. Zada would be a reduction in the amount Perfect 10 owed to Dr. Zada. However, if the Dr. Zada's monies were viewed as an investment, then the consideration would be a reduction in Dr. Zada's investment. The "consideration" could also be some other change in Perfect 10's books, since as a reduction in retained earnings. Dr. Zada left those issues up to Perfect 10's account. From his standpoint, the transfers to him represented a reduction in the amount Perfect 10 owed him. However, the transferred money could also be viewed as compensation to Dr. Zada for his years of

work for Perfect 10 without salary. Since, Dr. Zada had worked for Perfect 10 for at least 18 years, if he was entitled to only $100,000 a year for his efforts, he would still be entitled to at least $1.8 million, which is more than the $1.75 million at issue. So another way of viewing the consideration that Perfect 10 received, was that Dr. Zada was being paid for his work for Perfect 10, for his efforts in running and managing Perfect 10 and for his efforts in bringing in revenue via legal settlements. Those efforts included doing a substantial part of Perfect 10's legal work to minimize its overall legal expenditures. The Court found in its order awarding attorneys fees to Plaintiffs, that Dr. Zada had apparently done several million dollars in legal work for Perfect 10 in the related case alone. Since the pendency of the case, Perfect 10 transferred approximately a net $550,000 to Dr. Zada, not $1,750,000 as Plaintiffs claim.

Defendants have also provided a spreadsheet of such transfers in their motion for summary judgment, see Document 76, Exhibit 29, pages 225-226.

**INTERROGATORY NO. 7:**

For each transfer that Interrogatory No. 6 calls to be identified, identify all facts concerning the value of the exchanged assets and consideration.

**AMENDED RESPONSE TO INTERROGATORY NO. 7:**

Dr. Zada incorporates here his response to Interrogatories No. 3 through. 6, which he believes suitably answers this interrogatory.

**INTERROGATORY NO. 8:**

Identify all accounts (including but not limited to bank accounts, credit card accounts, brokerage accounts, investment account, retirement accounts, pension accounts, lease accounts, internet or other online service accounts, internet or other online service account, utility accounts, alarm or security service accounts, cable or satellite television accounts, domain name accounts, mortgages, lines of credit, real property, physical assets, cash assets, crypto currency or crypto assets) associated with Perfect 10 or Norman Zada.

**SECOND AMENDED RESPONSE TO INTERROGATORY NO. 8:**

Between January of 2013 and December of 2017, Perfect 10 has had no credit card accounts, brokerage accounts, retirement accounts, pension accounts, lease accounts, mortgages, lines of credit, or crypto currency. The real property/physical assets have been fully described in Perfect 10's response to Interrogatory No. 3, which is incorporated here. Perfect 10's bank accounts and cash are identified by P-FIN003876-3939 (BOA P10 account Jan 2013 to Mar 2014); Perfect 10 Bank of America statements from April 2014 to Nov 2015, produced at P-FIN009555 to 9676; Perfect 10 Bank of America statements from Nov 2015 to Apr 2018, produced at PN-BOA-P10-0001-0048. Plaintiffs are in possession of all of domain names that Perfect 10 previously owned. Documents identifying those domains were produced at P-DOMN000001-5.

Between January of 2013 and December of 2017, Dr. Zada has had no lines of credit other than possibly what is available on his credit cards. He has had no crypto currency. Documents identifying his bank accounts, brokerage accounts, credit card accounts, investment accounts, retirement accounts, pension accounts, mortgages, have been produced in Defendants first production at AmEx 2014 1 2017 1 (PN-AMEX-0001-542; BOA credit cards (PN-BOA-CC-0001-139); BOA Dec 2012 to mar 2015 NZ (PN-BOA-NZ0001-75), chase (PN-CHASE0001-108), credit cards misc. (PN-CC-MISC0001-3, CW (PN-CW-0001-7), Lexus pink slip (PN-LEXUS-0001), Lexus purchase by NZ (PN-LEXUS-PUR-0001-5), loan docs (PN-LOAN-0001), Morgan Stanley (PN-MS-0001-353). Additional documents were produced in Defendants second production at Amex 2018 confidential (not bates stamped), Amex 2013 Feb 2017 onward confidential (PN-AMEX1-0001-314) BOA credit cards 2 confidential (PN-BOA-CC1-0001-167); BOA NZ 2015 to 2018 confidential (PN-BOA-NZ1-0001), BOFA for parents confidential(PN-BOAP-0001-102); chase added 2013 2018 confidential (PN-CHASE-0109-182), chase stocks confidential (PN-CHASES-0001-2), Citi 1140 Statement breakdown 2015-8-28 (no bates

number), Citi confidential more coming (PN-CI-0001-9), etrade confidential (PN-ET-0001-6), JP Morgan 2013 confidential (no bates), Morgan Stanley 2013 onwards confidential (PN-MS-0354-0933), Putnam 2013 confidential (PN-PUT-13-0001-4), Putnam confidential (PN-PUT-0001-6), Tradestation futures confidential (PN-TSF-0001-125), Tradestation stocks confidential (PN-TSS-0001-27), WF Advisors 2013 onward confidential (PN-WFADV1-0001-578. Additional documents were produced in Defendants third production as Citi 2013 to 2018 (PN-CITI-2-0001-28), all of production 3. In production 4, additional documents were produced at PN-RET-UBS-0001-512, and PN-RET-TDA-0001-40. In production 5, additional documents were produced at boa5851 PN-BOA5851-0001-163), chase added (CHASE-ADDED-0001-142), more Citi (PN-CITI-3-0001-96), MS July 18 (PN-MS1-0001-8), Putnam (PN-PUT1-0001-19), Ret TDA added (PN-RET-TDA1-0001-11), Ret UBS added (PN-RET-UBS1-0001-134), Tradestation July 2018 (PN-RET-TDA1-0001-7); value of scanner (no bates numbers), value of used items (no bates numbers), WF Advisors added (Pn-WFADV2-0001-24). In production 6, additional documents were produced as "Parent accounts." (PN-PARENTS-0001-22). In production 7, additional documents were produced at Citi 2016 (no bates numbers) and UBS Aug 2014 PN-RET-UBSAUG-0001-10). In production 8, additional documents were produced at chase 3238 3954 (PN-CHASECC-0001-94). In production 9, additional documents were produced at BofA bank plus credit card (Pn-BOAADDED-0001-9); chase bank (PN-CHASEADDED-0001-12); Morgan Stanley, (PN-MSADDED-0001-7); prices of computer accessories (PN-PRICES-0001-12. In production 10, additional documents were produced at Morgan Stanley added 18 (PN-MSADDED18-0001).

**INTERROGATORY NO. 9:**

Identify each Perfect 10 asset transferred to any Person from January 1, 2011 to the present (including but not limited to bank accounts, credit card accounts, brokerage accounts, investment accounts, retirement accounts, pension accounts,

lease accounts, internet or other online service accounts, domain name accounts, mortgages, lines of credit, real property, physical assets, cash assets, crypto assets, or other assets owned or otherwise controlled by Perfect 10), and all facts concerning the value of each asset at the time of transfer.

**SECOND AMENDED RESPONSE TO INTERROGATORY NO. 9:**

Dr. Zada 10 is not aware of any transfers of credit card accounts, brokerage accounts, crypto accounts, etc. Dr. Zada does not view payments to attorneys and employees as "transfers," but rather has payments. The only "transfer" that Dr. Zada is aware of, would be a transfer of around $454,000 to Eric Benink in or around March 27, 2015, which was later returned, and the transfers from Perfect 10 to Dr. Zada described in the Plaintiffs' First Amended Complaint. The only payments that Dr. Zada is aware of are reflected by Perfect 10's bank statements and other financial records, which are already in possession of the Plaintiffs. Documents sufficient to identify those payments were produced at P-FIN003876-3939 (BOA P10 account Jan 2013 to Mar 2014); Perfect 10 Bank of America statements from April 2014 to Nov 2015, produced at P-FIN009555 to 9676; Perfect 10 Bank of America statements from Nov 2015 to Apr 2018, produced at PN-BOA-P10-0001-0048; P-FIN006551-6600; P10 BOA reconciliation reports for Jan 2013 to Mar 2014, produced at P-FIN006551 – 6609; P10 BOA reconciliation reports for Jan 2014 to 10/31/2015 produced at Pn-BOA-REC-0001-83; Perfect 10 Financial reports from Jan 2013 to Mar 2014, produced at P-FIN009029—9126; Perfect 10 Financial reports from Mar 31 to 2014 to Sept 30 2014, produced at P-FIN009987-10020; P-FIN-003924-3939; P-FIN009555-9671; P-FIN003786-3801; Perfect 10's 2013 and 2014 tax returns, produced at P-FIN009817-9886; Perfect 10's 2015 and 2016 tax returns, produced at PN-P10-TAX-15 16-0001-24; Payments made by Dr. Zada directly in 2015, produced at P-FIN009750-9775; Dr. Zada's Personal tax returns from 2014-2016, produced at PN-NZTAX0001-160; Dr. Zada's personal 2013 Tax Return, produced at PN-NZTAX1-0001-44; Dr. Zada's personal BOA

statements from Dec 2012 to Mar 2015, produced at PN-BOA-NZ0001-75; Dr. Zada's personal BOA statements from Mar 2015 to 2018, produced at PN-BOA-NZ1-0001-242; Dr. Zada's personal BOA reconciliation reports for Jan 2015-jan 2017, produced at PN-BOA-RECNZ0001-184.

The only physical assets that were transferred in exchange for a payment of $70,000 in March of 2015, have already been discussed, along with all information concerning their value, in the response to Interrogatory Nos. 3, 4 and 5, which are incorporated herein by reference.

**INTERROGATORY NO. 10:**

Identify all facts concerning the statement(s) of Perfect 10 or Zada referred to in paragraph 28 of the FAC, including the statements that "Dr. Zada and Perfect 10 did not have the funds to pay the full amount [of the judgment] in case," and/or "Dr. Zada and Perfect 10 did the best they could given the limited amount of cash they had available."

**SECOND AMENDED RESPONSE TO INTERROGATORY NO. 10:**

Dr. Zada has produced in 2014 tax return along with brokerage and bank statements for all accounts identified in that return, along with brokerage statements for his retirement account. These documents show that when the $5.63 million award was entered, between Dr. Zada and Perfect 10, they had about $4.5 million available in cash and cash equivalents outside of Dr. Zada's retirement account, which had about $1.5 million, which was not enough to pay the $5.63 million award in cash and leave Dr. Zada with enough money to live, which is why he was forced to offer to pay part via a first trust deed on his home. The supporting documents which support these claims were recently filed as part of Defendants motion for summary judgment. They appear Document 73, Declaration of Dr. Norman Zada, ¶ 60, which reads as follows: Plaintiffs now contend that our offer was fraudulent because we actually had that much in cash. That is simply not the case. Attached as Exhibit 36 are true and correct copies of a portion of my 2014 tax return (PN-

NZTAX0105, 111), and the December 2014 (PN-BOA-NZ0064) and March 2015 bank (PN-BOA-NZ0073) and brokerage statements for the accounts listed on the return, along with the March 2015 statement for my retirement account. The Bank of America account shows a value of $1.011 million as of March 20, 2015. The Chase statement (PN-CHASE0069, 0087) shows a value of approximately $1.507 million as of March 31, 2015. The Morgan Stanley statement (PN-MS-0215) shows a value of approximately $1.045 million as of March 31, 2015. The Wells Fargo advisors statement shows a value of approximately $0.527 million as of March 31, 2015. (PN-WFADV-0053). The combined value of those accounts was approximately $4.090 million. My retirement account had about $1.548 million but I didn't want to touch that. Furthermore, I had to have cash to live and pay the cost of the appeal. Perfect 10 and I simply did not have enough in cash to pay $5.819 million with enough cash left for other predictable expenses. I have also included a page from my 2015 return, which shows that I lost approximately $673,000 in 2015. In other words, my financial situation deteriorated in 2015. See also supporting documents attached as Exhibit 36, pages 307-317 of that declaration.

Dated: September 24, 2018

LAW OFFICES OF MATTHEW C. MICKELSON

By: _____
Matthew C. Mickelson
Attorney for Defendants

Zada's Third Amended Response to Giganews's Second Set of Interrogatories

## VERIFICATION

I, Norman Zada, Ph.D., declare as follows:

1. I am a Defendant in this action.
2. I have read the foregoing **DEFENDANT DR. NORMAN ZADA'S THIRD AMENDED RESPONSE TO PLAINTIFF GIGANEWS'S SECOND SET OF INTERROGATORIES (COVERS ONLY COURT-ORDERED INTERROGATORIES)** and I am familiar with the contents thereof.
3. To the best of my knowledge and belief, the matters set forth in this Response are true and accurate.
4. I reserve the right to make changes in this Response if it should appear at any time that omissions or errors have been made or that additional or more accurate information has been obtained.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, to the best of my knowledge.

Executed on September 24, 2018 in Los Angeles County, California.

_____
Norman Zada, Ph.D.

# PROOF OF SERVICE
## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and am not a party to the within action; my business address is: 16055 Ventura Blvd., Ste. 1230, Encino CA 91436

On September 24, 2018, I served the foregoing document described as follows:

**DEFENDANT DR. NORMAN ZADA's THIRD AMENDED RESPONSE TO PLAINTIFF GIGANEWS'S SECOND SET OF INTERROGATORIES (COVERS ONLY COURT ORDERED INTERROGATORIES)**
on the interested parties in this action by sending a copy by:

☑ **MAIL:** I placed a true copy thereof enclosed in a sealed envelope addressed to the address(es) listed below. I placed such envelope with fully prepaid postage thereon in the United States mail at Encino, California.

Andrew P. Bridges | Todd Gregorian
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104

Ronald P. Slates, Konrad Trope, Jesse Yanco
Ronald P. Slates, P.C.
500 S. Grand Ave. Ste. 2010
Los Angeles, CA 90071

☑ **EMAIL**: I transmitted by electronic mail such documents to the email addresses below.

| Andrew P. Bridges | Todd Gregorian |
| abridges@fenwick.com | tgregorian@fenwick.com |
| Ronald P. Slates | Konrad Trope |
| Rslates2@rslateslaw.com | ktrope@rslateslaw.com |

**FEDERAL**: I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. I declare, under penalty of perjury, that the foregoing is true and correct.

---

17
Zada's Third Amended Response to Giganews's Second Set of Interrogatories

Executed on September 24, 2018 at Encino, California.

BY: _____
MATTHEW C. MICKELSON