Matthew C. Mickelson (S.B.N. 203867)
**LAW OFFICES OF MATTHEW C. MICKELSON**
16055 Ventura Boulevard, Ste. 1230
Encino, CA 91436
818-382-3360

Attorney for Defendants PERFECT 10, INC.
and NORMAN ZADA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIGANEWS, INC., a Texas corporation; LIVEWIRE SERVICES, INC., a Nevada corporation, <br><br> Plaintiffs, <br> v. <br> PERFECT 10, INC., a California corporation, NORMAN ZADA, an individual, and DOES 1-50, inclusive <br><br> Defendants. | Case No.: 2:17-cv-05075-AB (JPR) <br><br> *Before Honorable André Birotte, Jr.* <br><br> **OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* #3 TO EXCLUDE EVIDENCE RELATING TO SETTLEMENT AND MEDIATION COMMUNICATIONS** <br><br> Date:          March 1, 2019 <br> Time:          11:00 a.m. <br> Courtroom:  7B, 350 West First Street, Los Angeles, CA 90012 |

## I. MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs' contention – that the jury should not be allowed to learn that Defendants offered to pay the fee award *in full* – is absurd for multiple reasons, as well as completely unjust, since it the most important document that Defendants have to prove that they had no fraudulent intent, and is also highly relevant to issues of mitigation of damages, punitive damages, and Plaintiffs' alleged harm.

The offer to satisfy the judgement in full was ***not*** an offer to settle the case. It was an offer to satisfy the judgment, was not part of a mediation, and was not subject to protection under California Evidence Code §1119. Secondly, Plaintiffs have already used that very same document for their own purposes multiple times. For example, Plaintiffs attached the offer to satisfy judgment they complain about now, as Related Case Dkt. 703-15, Exh. 14, which they publicly filed on April 21, 2015, as part of the declaration of Andrew Bridges. They also filed that offer to satisfy the judgment as part of the appeal to the Ninth Circuit, and then referred that same offer in their First Amended Complaint. And even more crucially, Plaintiffs have themselves offered evidence of the offer in this case as their trial exhibit 179. So it appears that Plaintiffs are asking the Court to allow them to refer to certain exhibits but not allowing Defendants to do so. There is absolutely no legal support for such a position.

### A. The March/April 2015 Offer to Satisfy the Judgment is the Most Important Piece of Evidence In The Entire Case

Not surprisingly, Defendants seek to strip from Dr. Zada the most important document he has to defend himself against their repeated attempts to bankrupt him. Defendants attempt do to so by mischaracterizing Dr. Zada's offer to satisfy the judgment as an inadmissible "settlement offer." It was not a settlement offer. It was an offer to satisfy the judgment. The cornerstone of Plaintiffs' suit is the contention that Defendants have been frustrating Plaintiffs' efforts to collect on the judgment. But Defendants cannot so contend when Plaintiffs ***actually offered to satisfy the***

*judgment*. Plaintiffs cannot have it both ways – they cannot level an accusation against Defendants, while, simultaneously, preventing Defendants from contradicting that accusation. Plaintiffs surely recognize the absurdity of their argument here. At a minimum, Plaintiffs have "opened the door" to Dr. Zada's presenting evidence that he – contrary to Plaintiffs' accusations – did *not* attempt to frustrate their collection efforts.

Moreover, Dr. Zada's offer to satisfy the judgment also demonstrates his honor and integrity, and supports his testimony that when he removed the $850,000 on November 20, 2014, he made that transfer because he was owed the money and entitled to it, and not because he was planning on "keeping it from" Plaintiffs. The offer of $2,000,000, plus a first trust deed of $3.819 million on his home, confirms the validity of that testimony. The $850,000 was part of the $2,000,000 in cash that was offered.

Second, the offer demonstrates Plaintiffs' failure to mitigate damages. If they had simply accepted the offer, we would not be here now, and all of Perfect 10's copyrights and trademarks, which Dr. Zada spent 18 years of his life and $52 million to create, would not be in the hands of Plaintiffs.

Third, the offer demonstrates that Dr. Zada believed that Perfect 10's copyrights and trademarks were worth far more than $1.75 million, which is yet another reason why he could not possibly have removed the $1.75 million with the intent of keeping that money from Plaintiffs, and then lose what was worth far more to him than that.

Finally, it is extraordinarily important from the standpoint of punitive damages. An offer to satisfy the judgment in full (an amount of money far greater than the amount of money transferred) is utterly inconsistent with malice, oppression, and fraud.

/////

/////

### B. Plaintiffs Have No Basis to Object to a Document They Repeatedly Use Themselves

Plaintiffs have no basis to object to the document that they are using themselves. Plaintiffs' suggestion that the document "does not bear on the claims or defenses in the case" (Motion p. 2 at lines 14-16) is completely disingenuous. The offer to pay the judgment in full was not part of a mediation nor was it a settlement negotiation. Thus, Rule 408 does not apply.

Defendants do not agree with the Plaintiffs' dismissal of the relevance of a full price offer of $4 million -- more than the amount transferred days after the fee award was entered. This is supremely relevant as to Dr. Zada's state of mind and sheds direct light on his intent during the relevant period. It is silly for Plaintiffs to contend that introduction of this evidence will "confuse" the jury. Rather, it is Plaintiffs' plan to keep the jury in the dark. The jury won't be confused at all when they discover that Dr. Zada offered to pay $4 million more than he transferred, even though he had no obligation to do so. They will understand that he is not the fraudster Plaintiffs attempt to make him out to be. Furthermore, nobody takes $850,000 to keep it from creditors and then offers them $5 million more than that. If the Court prohibits Defendants from bringing that extraordinary demonstration of good faith to the attention of the jury, it will gut Dr. Zada's defense.

### C. The $500,000 Offer Which Perfect 10 Rejected in Late January, 2014

Again, Plaintiffs concede that, in order to prevail, they must prove that Dr. Zada knew, when he made a particular asset transfer, that he was going to lose the Related Case. Plaintiffs' $500,000 offer to settle – which Perfect 10 declined – is absolutely relevant to a fair resolution of this case. By contending that Perfect 10 knew it was going to lose on January 13, 2014, they have made that rejected offer relevant to a fair adjudication. That offer alone demonstrates that Plaintiffs filed a complaint based on a key allegation that they knew to be false. Obviously, if

1  Perfect 10 had any inkling of the upcoming disaster that was about to befall it, it
2  would have taken Plaintiffs offer.
3       Plaintiffs' response is that "Plaintiffs have not located evidence of such an
4  offer outside of the context of the mediation: Defendants produced none in
5  discovery."  So what?  The fact that Plaintiffs deny the existence of a certain
6  piece of evidence is not a reason to exclude testimony that that evidence exists.
7  Plaintiffs' denial is not gospel.  It is not the "last word" on the subject.  If
8  Plaintiffs deny ever making the $500,000 offer, then they have the right to cross-
9  examine Dr. Zada on the issue – and let the jury decide who is more credible.
10 Plaintiffs' counsel is not the trier of fact – the jury is.
11      While Plaintiffs appeal to the sanctity of settlement discussions, they have
12 repeatedly filed offers made in confidential settlement discussions on their own,
13 without Perfect 10's permission.  For example, Plaintiffs filed a confidential
14 settlement proposal in open court as Related Case Dkt. 655-33.
15      **D.**     **Mediators' Discussion with Dr. Zada and Mr. Mickelson in 2018**
16      Plaintiffs' conversation with the mediator, where they claimed that they
17 were willing to throw good money after bad to destroy Dr. Zada, is highly
18 relevant because it contradicts Plaintiffs' claim that they didn't take the $5.819
19 million offer because they believed it was fraudulent.  Based on their
20 conversation with the mediator, the real reason was they wanted to prolong the
21 litigation to point where Dr. Zada would be destroyed, and they didn't care what
22 Dr. Zada's destruction would cost.
23      Plaintiffs claim (falsely) that "Mr. Yokubaitis and the mediator both deny
24 the statement that Mr. Zada claims to report."  Again – so what?  Plaintiffs'
25 denial of a fact is not gospel, any more than Defendants' assertion of a fact is not
26 gospel.  The jury gets to decide who is telling the truth – not Plaintiffs' counsel.
27      In any event: the mediator first made that statement to Mr. Mickelson, Dr.
28 Zada's attorney.  Mr. Mickelson then told Dr. Zada about it.  Then the mediator

4     Case No.: 2:17-cv-05075-AB (JPR)
Defendants' Opposition to Plaintiffs' Motion *in Limine* #3 to Exclude Evidence Relating to
Settlement and Mediaition Communications

made that same statement to Dr. Zada, so Defendants have two witnesses. If Mr. Yokubaitis and the mediator deny making the statements, they can do so via declaration. Plaintiffs are welcome to cross-examine Dr. Zada on the issue. Mr. Gregorian's "representations" are not evidence of anything. The jury is not obligated to believe Plaintiffs' version of events.

## II. CONCLUSION

The offer to satisfy the judgment – where the offer was $4 million more than the disputed amount transferred – is extraordinarily significant. It cannot be excluded from the case, particularly since a) it is in Plaintiffs' *own* exhibits, b) it is directly relevant from the standpoint of actual damages, c) it is directly relevant to issues of punitive damages, and d) it is clearly an extraordinary demonstration of good faith and good intent, which directly negates Plaintiffs' basis for an award of punitive damages.

Defendants' rejection of a $500,000 settlement offer is absolutely relevant because it shows Dr. Zada's state of mind and intent when he made the transfers. A party who expects to lose a case does not turn down $500,000.

DATED: February 8, 2019         LAW OFFICES OF MATTHEW C. MICKELSON

By: */s/ Matthew C. Mickelson*
MATTHEW C. MICKELSON
Attorney for Defendants Perfect 10, Inc. and NORMAN ZADA