1
2
3
4
5
6
7

**FILED**
CLERK, U.S. DISTRICT COURT

4/2/2019

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ CB _____ DEPUTY

8 UNITED STATES DISTRICT COURT

9 CENTRAL DISTRICT OF CALIFORNIA

10

11 GIGANEWS, INC., a Texas
corporation;  and LIVEWIRE
12 SERVICES, INC., a Nevada
corporation,
13

Case No. 2:17-cv-05075-AB (JPRx)

**CLOSING JURY INSTRUCTIONS**

14 Plaintiffs,

15 v.

16 PERFECT 10, INC., a California
corporation; NORMAN ZADA, an
17 individual; and DOES 1-50, inclusive,

18 Defendants.

19

20      The following are the Court's jury instructions to guide your consideration of

21 the evidence in this case.

22

23

24 Dated:  April 2, 2019

25 _____
HONORABLE ANDRÉ BIROTTE JR.
26 UNITED STATES DISTRICT COURT JUDGE

27

28

1.

## CLOSING JURY INSTRUCTION NO. 1

### DUTY OF THE JURY

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you as to the law of the case. A copy of these instructions will be sent with you to the jury room when you deliberate. Some of these will sound familiar because they were also read to you at the beginning of the trial.

You must not infer from these instructions or from anything I have said or done as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

# CLOSING JURY INSTRUCTION NO. 2

## CLAIMS AND DEFENSES

To help you deliberate, I will give you a brief summary of the positions of the parties:

The plaintiffs Giganews, Inc. ("Giganews") and Livewire Services. Inc. ("Livewire") assert that Defendants Norman Zada and Perfect 10, Inc. ("Perfect 10") fraudulently transferred Perfect 10's money and personal property to Defendant Norman Zada. The Plaintiffs have the burden of proving these claims.

The Plaintiffs are also seeking punitive damages.

The Defendants deny these claims.

## **CLOSING JURY INSTRUCTION NO. 3**

### **BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE**

When a party has the burden of proof on any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that a claim is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

## <u>CLOSING JURY INSTRUCTION NO. 4</u>

**BURDEN OF PROOF—CLEAR AND CONVINCING EVIDENCE**

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

## CLOSING JURY INSTRUCTION NO. 5

### WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

1.    the sworn testimony of any witness;

2.    the exhibits that are admitted into evidence;

3.    any facts to which the lawyers have agreed; and

4.    any facts that I may instruct you to accept as proved.

# CLOSING JURY INSTRUCTION NO. 6
## WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

1. Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses. What they may say in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2. Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3. Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered. In addition, some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

4. Anything you may see or hear when the court is not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

## CLOSING JURY INSTRUCTION NO. 7
### DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned-on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

## CLOSING JURY INSTRUCTION NO. 8
### RULING ON OBJECTIONS

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  If I overruled the objection, the question was answered or the exhibit received. If I sustained the objection, the question was not answered, and the exhibit cannot be received.  Whenever I sustained an objection to a question, you were ignore the question and must not guess what the answer might have been.

Sometimes I ordered that evidence be stricken from the record and that you disregard or ignore the evidence.  That means that when you are deciding the case, you must not consider the stricken evidence for any purpose.

## CLOSING JURY INSTRUCTION NO. 9
### BENCH CONFERENCES AND RECESSES

From time to time during the trial, it became necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury was present in the courtroom, or by calling a recess.  Please understand that while you were waiting, we were working.  The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we have done what we could to keep the number and length of these conferences to a minimum.  I did not always grant an attorney's request for a conference.  Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

# CLOSING JURY INSTRUCTION NO. 10
## CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness said, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1. the opportunity and ability of the witness to see or hear or know the things testified to;
2. the witness's memory;
3. the witness's manner while testifying;
4. the witness's interest in the outcome of the case, if any;
5. the witness's bias or prejudice, if any;
6. whether other evidence contradicted the witness's testimony;
7. the reasonableness of the witness's testimony in light of all the evidence; and
8. any other factors that bear on believability.

Sometimes a witness may have said something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but

told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses are, and how much weight you think their testimony deserves.

## <u>CLOSING JURY INSTRUCTION NO. 11</u>

**DEPOSITION IN LIEU OF LIVE TESTIMONY**

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded.

Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

# CLOSING JURY INSTRUCTION NO. 12

## USE OF INTERROGATORIES

Evidence was presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side.  These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures.  You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

## CLOSING JURY INSTRUCTION NO. 13

**CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE**

Certain charts and summaries not admitted into evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

## CLOSING JURY INSTRUCTION NO. 14

### NO TRANSCRIPT AVAILABLE TO THE JURY

During deliberations, you will have to make your decision based on what you recall of the evidence.  You will not have a transcript of the trial.

## CLOSING JURY INSTRUCTION NO. 15

### TRIAL NOTES

Some of you took notes during trial.  You may take your notes with you into the jury room for deliberations.  Whether or not you took notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory.  You should not be overly influenced by your notes or those of your fellow jurors.

When you leave, your notes should be left in the jury room.  No one will read your notes.  They will be destroyed at the conclusion of the case.

# CLOSING JURY INSTRUCTION NO. 16

## STIPULATIONS OF FACT

The parties have agreed to certain facts that will be read to you.  You must therefore treat these facts as having been proved.

Perfect 10 transferred the following amounts from Perfect 10's bank account to Norman Zada's bank account:

- $200,000 on January 13, 2014;
- $50,000 on March 10, 2014;
- $100,000 on March 19, 2014;
- $100,000 on May 14, 2014;
- $100,000 on May 28, 2014;
- $150,000 on July 8, 2014;
- $100,000 on September 4, 2014;
- $100,000 on October 7, 2014;
- $850,000 on November 20, 2014; and
- $454,002.05 on May 13, 2015.

# CLOSING JURY INSTRUCTION NO. 17

## JUDICIAL NOTICE

The court has decided to accept as proved the facts stated in Jury Instruction No. 22, which was read to you earlier and which is attached at the end of these Closing Jury Instructions. You must accept these facts as true.

## CLOSING JURY INSTRUCTION NO. 18

### FIRST CAUSE OF ACTION—ACTUAL FRAUDULENT TRANSFER— ESSENTIAL FACTUAL ELEMENTS

Giganews and Livewire claim they were harmed because Defendants caused Perfect 10 to transfer property to Norman Zada in order to avoid paying a debt to Plaintiffs. This is called "actual fraud." To establish this claim against Norman Zada and Perfect 10, Giganews and Livewire must prove all of the following:

1. That Giganews and Livewire have a right to payment from Perfect 10 for the amount of the underlying judgment;

2. That Perfect 10 transferred funds or property to Norman Zada;

3. That Perfect 10 made the transfers with the intent to hinder, delay, or defraud one or more of Perfect 10's creditors;

4. That Giganews and Livewire were harmed; and

5. That Perfect 10's conduct was a substantial factor in causing Giganews and Livewire's harm.

To prove intent to hinder, delay, or defraud creditors, it is not necessary to show that Perfect 10 had a desire to harm Perfect 10's creditors. Giganews and Livewire need only show that Perfect 10 intended to remove or conceal assets to make it more difficult for Perfect 10's creditors to collect payment.

It does not matter whether Giganews and Livewire's right to payment arose before or after Perfect 10 transferred funds or property.

## CLOSING JURY INSTRUCTION NO. 19

## FACTORS TO CONSIDER IN DETERMINING ACTUAL INTENT TO HINDER, DELAY, OR DEFRAUD

In determining whether Perfect 10 intended to hinder, delay, or defraud any creditor by transferring Perfect 10's funds or property to Norman Zada, you may consider, among other factors, the following:

(a)   Whether the transfers were to an insider such as the president, CEO, or an officer of the company;

(b)   Whether Perfect 10 retained possession or control of the property after it was transferred;

(c)   Whether the transfers were disclosed or concealed;

(d)   Whether before the transfers were made Perfect 10 had been sued or threatened with suit;

(e)   Whether the transfers were of substantially all of Perfect 10's assets;

(f)   Whether Perfect 10 fled;

(g)   Whether Perfect 10 removed or concealed assets;

(h)   Whether the value received by Perfect 10 was not reasonably equivalent to the value of the funds or property transferred;

(i)   Whether Perfect 10 was insolvent or became insolvent shortly after **the** transfers were made;

(j)   Whether the transfers occurred shortly before or shortly after a substantial debt was incurred; and

(k)   Whether Perfect 10 transferred the essential assets of the business to a lienholder who transferred the assets to an insider of Perfect 10.

Evidence of one or more factors does not automatically require a finding that Perfect 10 acted with the intent to hinder, delay, or defraud creditors. The presence of

one or more of these factors is evidence that may suggest the intent to delay, hinder, or defraud.

## CLOSING JURY INSTRUCTION NO. 20

## SECOND CAUSE OF ACTION—CONSTRUCTIVE FRAUDULENT

## TRANSFER—ESSENTIAL FACTUAL ELEMENTS

Giganews and Livewire claim they were harmed because Perfect 10 transferred property to Norman Zada and, as a result, Perfect 10 was unable to pay Giganews and Livewire money that was owed.  This is called "constructive fraud." To establish this claim against Defendants Giganews and Livewire must prove all of the following:

1. That Giganews and Livewire have a right to payment from Perfect 10;

2. That Perfect 10 transferred property to Norman Zada;

3. That Perfect 10 did not receive a reasonably equivalent value in exchange for the transfer;

4. That Perfect 10 was in business or about to enter a transaction when its remaining assets were unreasonably small for the business or transaction; or

   That Perfect 10 intended to incur debts beyond its ability to pay as they became due;

   or

   That Perfect 10 believed or reasonably should have believed that it would incur debts beyond its ability to pay as they became due;

5. That Giganews and Livewire were harmed; and

6. That Perfect 10's conduct was a substantial factor in causing Giganews and Livewire's harm.

If you decide that Giganews and Livewire have proved all of the above, they do not have to prove that Defendants intended to defraud any creditors.

It does not matter whether Giganews and Livewire's right to payment arose before or after Perfect 10 transferred funds or property.

23.

# CLOSING JURY INSTRUCTION NO. 21

## "TRANSFER" EXPLAINED

"Transfer" means every method of parting with a debtor's property or an interest in a debtor's property.

In this case, payments from Perfect 10's bank account to Norman Zada's bank account are transfers. A change in ownership of physical property from Perfect 10 to Norman Zada is also a transfer.

## CLOSING JURY INSTRUCTION NO. 22

## "INSOLVENCY" EXPLAINED

Perfect 10 was insolvent at the time or as a result of the transfers if, at fair valuation, the total amount of its debts was greater than the total amount of its assets.

In determining Perfect 10's assets, do not include any funds or property that has been transferred, concealed, or removed:

1.     with intent to hinder, delay, or defraud creditors; or

2.     when Perfect 10 was in business or about to enter a transaction and its remaining assets were unreasonably small for the business or transaction; or

3.     when Perfect 10 believed or reasonably should have believed that it would incur debts beyond its ability to pay as they became due.

## CLOSING JURY INSTRUCTION NO. 23

### PRESUMPTION OF INSOLVENCY

A debtor who is generally not paying its debts as they become due, other than because of a legitimate dispute, is presumed to be insolvent.

In determining whether Perfect 10 was generally not paying its debts as they became due, you may consider all of the following:

(a)     The number of Perfect 10 debts;

(b)     The percentage of debts that were not being paid;

(c)     How long those debts remained unpaid;

(d)     Whether special circumstances explain any failure to pay the debts; and

(e)     Perfect 10 payment practices before the period of alleged nonpayment and the payment practices of Perfect 10 industry.

If Plaintiffs prove that Perfect 10 was generally not paying debts as they became due, then you must find that Perfect 10 was insolvent unless Perfect 10 proves that Perfect 10 was solvent.

## CLOSING JURY INSTRUCTION NO. 24

## THIRD CAUSE OF ACTION—FRAUDULENT CONVEYANCE WITHOUT DELIVERY OF PERSONAL PROPERTY

Giganews and Livewire claim that the physical assets Perfect 10 transferred to Norman Zada were never delivered.  To establish this claim against Perfect 10 and Norman Zada, Giganews and Livewire must prove all of the following:

1.  That Giganews and Livewire have a right to payment from Perfect 10;

2.  That Perfect 10 transferred personal property to Norman Zada; and

3.  The transfer was not accompanied by an immediate delivery to Norman Zada, followed by an actual and continued change of possession of the property.

# CLOSING JURY INSTRUCTION NO. 25

## DAMAGES

If you decide that Giganews and Livewire have proved their claims against Norman Zada or Perfect 10, you also must decide how much money will reasonably compensate Giganews and Livewire for the harm.  This compensation is called "damages."

The amount of damages must include an award for each item of harm that was caused by Defendants' wrongful conduct, even if the particular harm could not have been anticipated.

Plaintiffs do not have to prove the exact amount of damages that will provide reasonable compensation for the harm.  However, you must not speculate or guess in awarding damages.

# CLOSING JURY INSTRUCTION NO. 26

## PUNITIVE DAMAGES

If you decide that Norman Zada's or Perfect 10's conduct caused Plaintiffs' harm, you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiffs and to discourage similar conduct in the future.

You may award punitive damages against Norman Zada only if Plaintiffs prove by clear and convincing evidence that Norman Zada engaged in that conduct with malice, oppression, or fraud.

You may award punitive damages against Perfect 10 only if Plaintiffs prove that Perfect 10 acted with malice, oppression, or fraud. To do this, Plaintiffs must prove the following by clear and convincing evidence: That the malice, oppression, or fraud was conduct of one or more officers, directors, or managing agents of Perfect 10 who acted on behalf of Perfect 10.

"Malice" means that a Defendant acted with intent to cause injury or that a Defendant's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A person acts with knowing disregard when he or she is aware of the probable dangerous consequences of his or her conduct and deliberately fails to avoid those consequences.

"Oppression" means that a Defendant's conduct was despicable and subjected Plaintiffs to cruel and unjust hardship in knowing disregard of their rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

"Fraud" means that a Defendant intentionally misrepresented or concealed a material fact and did so intending to harm Plaintiffs.

There is no fixed formula for determining the amount of punitive damages, and you are not required to award any punitive damages. If you decide to award punitive damages, you should consider all of the following factors in determining the amount:

(a)   How reprehensible was a Defendant's conduct? In deciding how reprehensible a Defendant's conduct was, you may consider, among other factors:

      1.   Whether the conduct caused physical harm;

      2.   Whether a Defendant disregarded the health or safety of others;

      3.   Whether Plaintiffs were financially weak or vulnerable and a Defendant knew Plaintiffs were financially weak or vulnerable and took advantage of them;

      4.   Whether a Defendant's conduct involved a pattern or practice; and

      5.   Whether a Defendant's acted with trickery or deceit.

(b)   Is there a reasonable relationship between the amount of punitive damages and Plaintiffs' harm?

(c)   In view of a Defendant's financial condition, what amount is necessary to punish them and discourage future wrongful conduct? You may not increase the punitive award above an amount that is otherwise appropriate merely because a Defendant has substantial financial resources.  Any award you impose may not exceed a Defendants' ability to pay.  Punitive damages may not be used to punish a Defendant for the impact of their alleged misconduct on persons other than Plaintiffs.

## CLOSING JURY INSTRUCTION NO. 27

## DAMAGES FROM MULTIPLE DEFENDANTS

In this case, Giganews and Livewire seek damages from more than one defendant.

In deciding on an amount of damages, consider only Giganews and Livewire's claimed losses. Do not attempt to divide the damages between the defendants. The allocation of responsibility for payment of damages among multiple defendants is to be done by the court after you reach your verdict.

# CLOSING JURY INSTRUCTION NO. 28

## PUBLICITY DURING TRIAL

If there is any news media account or commentary about the case or anything to do with it, you must ignore it. You must not read, watch or listen to any news media account or commentary about the case or anything to do with it. The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies. If any juror is exposed to any outside information, please notify me immediately.

## <u>CLOSING JURY INSTRUCTION NO. 29</u>

### DUTY TO DELIBERATE

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

## CLOSING JURY INSTRUCTION NO. 30

## CONSIDERATION OF THE EVIDENCE—CONDUCT OF THE JURY

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any Internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed

during the trial.  Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court.  Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process.  If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over.  If any juror is exposed to any outside information, please notify the court immediately.

# CLOSING JURY INSTRUCTION NO. 31
## COMMUNICATION WITH THE COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff, signed by any one of you.  No member of the jury should ever attempt to communicate with me except by a signed writing.  I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court.  If you send out a question, I will consult with the lawyers before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

## <u>CLOSING JURY INSTRUCTION NO. 32</u>

### RETURN OF VERDICT

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the bailiff that you are ready to return to the courtroom.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

GIGANEWS, INC., a Texas
corporation;  and LIVEWIRE
SERVICES, INC., a Nevada
corporation,

          Plaintiffs,

     v.

PERFECT 10, INC., a California
corporation; NORMAN ZADA, an
individual; and DOES 1-50, inclusive,

          Defendants,

Case No. 2:17-cv-05075-AB (JPRx)

**JURY INSTRUCTION NO. 22**

# JURY INSTRUCTION NO. 22

## JUDICIAL NOTICE

The court has decided to accept as proved the following facts.  You must accept these facts as true.

1. On April 28, 2011, Perfect 10 filed a lawsuit against Giganews and Livewire for trademark infringement, trademark dilution, violation of California's Unfair Competition Law, violation of publicity rights, and copyright infringement.

2. On March 19, 2012, the Court denied Perfect 10's motion for a preliminary injunction against Giganews and Livewire, based on Perfect 10's failure to show that it was likely to suffer immediate irreparable harm from Giganews and Livewire's conduct.

3. On March 8, 2013, the Court granted in part and denied in part Giganews and Livewire's motion to dismiss. It dismissed Perfect 10's claims for (1) trademark infringement, (2) trademark dilution, (3) violation of California's Unfair Competition Law, and (4) violation of the right of publicity. It allowed Perfect 10 to proceed on claims for indirect copyright infringement.

4. On July 10, 2013, the Court granted in part and denied in part Giganews and Livewire's motion to dismiss Perfect 10's amended complaint. The Court dismissed Perfect 10's claims for indirect copyright infringement against Livewire. It allowed Perfect 10's claims for indirect copyright infringement to proceed against Giganews, and its claim for direct copyright infringement to proceed against Giganews and Livewire on the theory that their employees had uploaded infringing materials.

5. On July 24, 2013, Giganews and Livewire filed an answer to Perfect 10's complaint. In that document they asked for an award of their attorneys' fees and costs of the lawsuit against Perfect 10.

6. On August 15, 2013, Giganews and Livewire filed an amended answer to Perfect 10's complaint, with a counterclaim for declaratory relief of non-

infringement and no liability to Perfect 10. In that document Giganews and Livewire asked the court to award them attorneys' fees and costs of the lawsuit against Perfect 10.

7.  On January 29, 2014, the Court denied Perfect 10's motion for summary judgment on the issue of whether Perfect 10's notices of claimed infringement met the requirements for valid notices under the Digital Millennium Copyright Act. Valid notices would have triggered a requirement for Giganews to remove infringing material if it wished to take advantage of certain protections under copyright law. The Court held that Perfect 10 had not established that, as a matter of law, its notices complied with the Act, and that instead this question was a triable issue of fact.

8.  On February 13, 2014, the Court compelled Giganews to answer interrogatories and produce documents as described in its order.

9.  On February 26, 2014, the Court compelled Giganews to answer interrogatories and produce documents as described in its order.

10. The Court entered four orders compelling Perfect to 10 to answer interrogatories and produce documents on March 17, 2014, April 24, 2014, June 5, 2014, and June 23, 2014.

11. On June 5, 2014, the Court also entered an order compelling discovery compliance from Perfect 10-affiliated third-party witnesses.

12. On August 18, 2014, Giganews filed a motion seeking sanctions against Perfect 10.

13. On October 31, 2014, the Court entered three orders excluding testimony of Perfect 10 witnesses in expert capacities: it excluded all the testimony of Richard Waterman, it excluded part of the testimony of Douglas Tygar, and it excluded the testimony of Norman Zada to the extent it claimed to be expert testimony.

14. On November 14, 2014, the Court granted Giganews and Livewire's motions for partial summary judgment on Perfect 10's claims for copyright infringement.

15. On November 26, 2014, the Court entered Judgment in favor of Giganews and Livewire and against Perfect 10.

16. On March 6, 2015, the Court entered an order denying Perfect 10's motion to reconsider the Court's summary judgment orders.

17. On February 4, 2015, the Court entered further interim findings regarding Giganews and Livewire's motion for sanctions.

18. On March 24, 2015, the Court awarded attorneys' fees and nontaxable costs in Giganews and Livewire's favor and against Perfect 10 in the amount of $5,637,352.53.

19. On March 24, 2015, the Court entered an order that, "[i]n light of the Order Granting Defendants' Motion for Attorneys' Fees and Costs, the Magistrate Judge DENIES the Discovery Sanctions Motion. The Attorneys' Fees and Costs award subsumes what is sought in the Sanctions Motion. The hearing date is vacated, as [are the February 4, 2015 interim findings]."

20. On May 7, 2015, the Court entered an order denying Giganews and Livewire's motion for review of the order denying their Motion for Discovery Sanctions.

21. On January 23, 2017, the Ninth Circuit Court of Appeals affirmed the summary judgment rulings of the district court and the fee award, as well as the District Court's ruling which denied Giganews's motion to add Dr. Zada as a judgment debtor.

22. On April 24, 2018, the Ninth Circuit Court of Appeals entered an order granting Giganews and Livewire their attorneys' fees and costs on appeal in the amount of $855,532.72.